ORIGINAL FILED

07 SEP 14 AM 10: 02

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  Matthew S. Hale, Esq.
   HALE & ASSOCIATES
2  Calif. State Bar No. 136690
   45 Rivermont Drive
3  Newport News, VA 23601

4  Mailing Address:
   P.O. Box 1951
5  Newport News, VA 23601

6  Telephone No. (757) 596-1143
   E-Mail: matthale@verizon.net
7

8  Attorney for Plaintiffs, DAVID J. LEE and
   DANIEL R. LLOYD

*E-filing*

9              UNITED STATES DISTRICT COURT

10        FOR THE NORTHERN DISTRICT OF CALIFORNIA        **MJJ**

11

12  DAVID J. LEE and DANIEL R. LLOYD,    Case No.:
    as individuals and, on behalf of others       **C 07 4732**
13  similarly situated,                    )
                                           )   Complaint For:  Injunctive And
14                                         )   Restitutionary Relief Arising From
              Plaintiffs,                  )   Violation Of California Bus. & Prof.
15                                         )   Code §§ 17200, et seq.;  Injunctive and
         vs.                               )   Restitutionary Relief, Punitive
16                                         )   Damages Arising From Violation of
                                           )   California Civil Code § 1770 (a)(19);
17  CHASE MANHATTAN BANK U.S.A.,           )   Fraud And Deceit; And, Declaratory
    N.A., a Delaware corporation, CHASE    )   Judgment
18  MANHATTAN BANK U.S.A., N.A. d.b.a.     )
    CHASE BANK U.S.A., N.A., JPMORGAN      )
19  CHASE & CO., a Delaware corporation;   )        CLASS ACTION
    and DOES 1, through 100, inclusive,    )
20                                         )
                                           )
21                                         )
                                           )
22            Defendants.                  )
                                           )
23  _____    )

24

25

David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,
Complaint

Plaintiffs allege:

# I.

## Introduction

1.    The action deals only with Chase credit cards for which an annual fee is paid by the card holder, and presents three overarching issues:

(a)    Did Chase commit fraud in the inducement of the card holder agreement arising from its practices and knowing misrepresentations as to the legality and conscionability of the agreements or portions thereof (excluding the arbitration provision) that were relied upon by Plaintiffs and the persons whom they seek to represent in entering into the agreement and making fee payments thereunder?

(b)    As a separate matter, does the card holder agreement drafted by Chase (and excluding any reference to the arbitration provision it contains) contain unconscionable and illegal terms in violation of various California consumer protection statutes entitling Plaintiffs to statutory remedies?

(c)    Is the arbitration provision drafted and inserted by Chase in its card agreements (without reference to the unconscionability of the card agreement itself) unconscionable or illegal, and thereby in violation of various California consumer protection statutes entitling Plaintiffs to statutory remedies?

In each instance and as a result of the unconscionability and illegality of the arbitration provision and entire agreement, respectively, that make one or both unenforceable, the fee-paying card holder suffered damage by receiving something worth monetarily less than that for which he/she contracted and paid (as well as by the loss of use of that portion of the fee following its payment).  In the context of California's consumer protection laws, Plaintiffs were

1

thereby damaged and suffered an "injury in fact" and a "loss of money or property" entitling them to statutory relief.  In the context of the fraud cause of action which is made only with regard to the agreement as a whole (excluding the arbitration provision),[1] receiving less than that for which they paid is the requisite injury necessary to give rise to a right of rescission and restitution, in whole or part, of the fees paid.

2.       The payment of the fee for the respective card provides Plaintiffs and similarly situated persons, among other things, a contractual right to mandatory arbitration that has pecuniary value:  i.e., the right to demand (pursuant to an enforceable arbitration agreement) mandatory arbitration of any "claim" they have against Chase and the business/person supplying the goods or services for which payment was made using the credit card.    However, the card holder received something worth monetarily less than that for which he/she paid the fee because of the unconscionability and illegality of Chase's arbitration provision (an amount to which the value of the loss of the use of money paid as fees must be added): e.g., rather than getting a legal and enforceable arbitration provision that endows the card holder with the right to invoke mandatory binding arbitration, they got only an unconscionable and illegal (and thereby unenforceable and invalid) arbitration provision that they can not, as a matter of fact and law and public policy, invoke or use against any one.   That is an "injury in fact" and results in a "loss of money" (but which does not constitute recompensable "damages" since "damages" are not allowed under the UCL and are not sought under the CLRA causes of action) mandating that statutory restitution and injunctive relief be ordered.

3.       The scheme from which Plaintiffs' "injury in fact" and resultant monetary loss results with regard to the arbitration provision is the systematic and continuing violation of California's

---

[1]       Unless otherwise specified, reference to the "card agreement" or "card agreement in whole" shall mean the "card agreement (excluding the arbitration provision)."

**David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,**
**Complaint**

consumer protection laws resulting from the unconscionability and illegality of its terms.  The

terms of that provision and, indeed, the provision itself is unconscionable and illegal in that it:

♦    was imposed on all card holders on a "take it or leave it" basis with no

opportunity by the card holder to negotiate any term thereof;

♦    was contained in an adhesive form agreement prepared by Chase and

concerning which Chase was in a much stronger bargaining position than the card

holder;

♦    provides that "ANY DISPUTE WILL BE RESOLVED BY BINDING

ARBITRATION" and "YOU WILL NOT BE ABLE TO BRING A CLASS

ACTION OR OTHER REPRESENTATIVE CLAIM IN COURT SUCH AS

THAT IN THE FORM OF A PRIVATE ATTORNEY GENERAL ACTION;

NOR WILL YOU BE ALLOWED TO BRING ANY CLASS IN

ARBITRATION AS A CLASS ACTION OR OTHER REPRESWENTAIVE

ACTION …." in a context where predictably only "small" amounts of money are

involved (the fee) and as part of a scheme to deliberately cheat large numbers of

its card holders out of the individually "small" amounts represented by the fees

paid for the card (capitalization in original);

♦    provides "neither you nor we agree to any arbitration on a class or

representative basis, and the arbitrator shall have no authority to proceed on such

basis.  That means that even if a class action lawsuit or other representative

action, such as that in the form of a private attorney general action, is filed, any

Claim between us related to the issues raised in such lawsuits will be subject to an

individual arbitration claim if either you or we so select" in a context where

3

predictably only "small" amounts of money are involved (the fee) and as part of a scheme to deliberately cheat large numbers of its card holders out of the individually "small" amounts represented by the fees paid for the card;

♦       provides that even in the event of the certification of a class by some other card holder, all other card holders cannot become members of that class, a complete derogation of Fed.R.Civ.P. 23;

♦       provides that "Claims subject to the Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement";

♦       provides that the arbitrator "will not have the power to award relief to, against, or for the benefit of any person who is not a party to this proceeding" thereby forbidding the entry of any injunctive relief in the arbitration;

♦       provides "No arbitration will be consolidated with any other arbitration proceeding without the consent of all parties" in a context where predictably only "small" amounts of money are involved (the fee) and as part of a scheme to deliberately cheat large numbers of its card holders out of the individually "small" amounts represented by the fees paid for the card;

♦       provides that all "Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondeat superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief";

4

♦     provides that in arbitration all claims shall be resolved by "one of two arbitration administrators:    American Arbitration Association or National Arbitration Forum";

♦     provides no alternative means by which some other arbiter or arbitral organization may be chosen by the card holder;

♦     provides that arbitration "will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless those procedures or regulations are inconsistent with the Arbitration Agreement, in which case this Arbitration Agreement will prevail…";

♦     provides no way for the card holder to know at the time he/she initially agreed to arbitrate what the rules would be at the time of the arbitration as well as what inconsistencies existed between the agreement and the Code because Chase has given itself the unilateral right to amend the arbitration provision at any time (including before, during, or after any arbitration) and the arbitration provision otherwise makes the applicable arbitration rules those in effect when the arbitration is filed;

♦     provides that "[i]f any portion of this Arbitration Agreement is deemed invalid or unenforceable, the remaining portions nevertheless remain in force" even though all determinations as to severability of the provision is a matter exclusively reserved for the Courts;

♦     provides, relative to the costs of arbitration, that Chase "will reimburse you for the initial arbitration filing fee paid by you up to the amount of $500 upon

5

receipt of proof of payment.  Additionally, if there is a hearing, we will pay any fee of the arbitrator and arbitration administrator for the first two days of that hearing…   All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law";

♦       provides that "Each party will bear their own fees, costs and expenses for any appeal, but a party may recover any or all fees, costs and expenses from another party, if the majority of the panel of arbitrators, applying applicable law, so determines"; and,

♦       provides only a vague and overbroad statement of what effect arbitration will have on the legal rights of card holders.

4.    The unconscionable and illegal terms of the arbitration provision is a continuing act or practice:  (a) in violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, et seq. ("UCL"), on the basis that the arbitration provision and its terms are unlawful and unfair; and, (b) (as to Plaintiff Lee) in violation of California's Consumer Legal Remedies Act, California Civil Code § 1770(a)(19) ("CLRA"), which makes insertion of an unconscionable provision in a contract an unlawful act.  Plaintiffs, on behalf of themselves and/or all other similarly situated consumers and residents, respectively, in California  are thus entitled to:  (1) a Declaratory Judgment declaring the arbitration provision to be unconscionable, illegal and unenforceable, and severable from the remainder of the card agreement; (2) statutorily authorized injunctive and restitutionary relief (including disgorgement of profits) as to the UCL causes of action;  (3) (as to Plaintiff Lee) statutorily authorized injunctive and restitutionary relief, and punitive damages as to the CLRA causes; (4) prejudgment interest; and, (5)

6

attorney's fees (including costs) specifically authorized by the CLRA, and otherwise available in UCL causes of action under the laws and precedents of California.

5.    The claim regarding the card agreement as a whole (excluding its arbitration provision) centers on its inclusion of a variety of terms that are unconscionable and illegal under controlling California and Ninth Circuit law as well as Chase's fraud in inducing card holders to enter the agreement and make payment thereunder.  Having paid a fee for that agreement and the rights contained therein, Plaintiffs and similarly situated persons receive something worth monetarily less than that for which they paid:   they receive only an unconscionable and unenforceable agreement which causes them "injury in fact" and a loss of money as a result.  On the one hand and reflecting the misrepresentations made by Chase that are of a nature calculated to induce the making of a contract and payment and display a lack of fair dealing, the inclusion of those unconscionable or illegal terms gives rise to a non-statutory cause of action for fraud and deceit that, due to the permeation of the unconscionable terms, requires non-statutory rescission of the agreement as a whole and common law restitution of the fees paid.  These unconscionable terms include, in addition to the adhesive nature of the contract itself, such matters as Chase's unilateral right to change any term of the agreement at its will and without any reason (which is denied to the card holder), Chase's unilateral right to take any action without waiving its rights under the agreement which is denied to the card holder, and its statement that the laws of Delaware are the controlling laws.

On the other hand, the mere inclusion of those unconscionable and illegal terms (without consideration of any fraud in inducing the agreement) is an unlawful and unfair practice, respectively, that has, is and continues to occur:  (a) in violation of UCL on the basis that the unconscionable terms are illegal and unfair; and, (b) (as to Plaintiff Lee) in violation of the

7

CLRA, which makes insertion of an unconscionable provision in a contract an unlawful act. Similar to the arbitration provision, the card holder simply gets less than that for which he paid due to the inclusion of these unconscionable terms and conditions which, alone or in tandem, render the agreement itself unconscionable.   With regard to the consumer statute causes of action, Plaintiffs, on behalf of themselves and/or all other similarly situated consumers and residents, respectively, in California  are entitled to:  (1) a Declaratory Judgment declaring the card agreement to be unconscionable, illegal and unenforceable; (2) statutorily authorized injunctive and restitutionary relief (including disgorgement of profits) as to the UCL causes of action;  (3) (as to Plaintiff Lee) statutorily authorized injunctive and restitutionary relief, and punitive damages as to the CLRA causes of action; (4) prejudgment interest; and, (5)  attorney's fees (including costs) specifically authorized by the CLRA, and otherwise available in UCL causes of action under the laws and precedents of California.

## II.
## The Parties

6.    Plaintiff David J. Lee ("Lee") is an individual who, at all relevant times herein mentioned, resided in the City of Kentfield, Marin County, State of California and, hence, within the geographic boundaries of this District Court.

7.    Plaintiff Daniel R. Lloyd ("Lloyd") is an individual who, at all relevant times herein mentioned, resided in the City of Paso Robles, San Luis Obispo County, State of California.

8.    Plaintiffs respectively bring this as a class action composed of all similarly situated "consumers" (as to the CLRA causes of action and Plaintiff Lee alone as representative) and "persons" (as to all other causes of action)   residing in the State of California more fully described in paragraph 94 below.

David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,
Complaint

9.    Defendant JPMorgan Chase & Company ("JPMorgan") is a Delaware corporation whose principle place of business is located in the State of New York.[2]  It is the parent company of all other presently named Defendants.    Plaintiffs are advised and believe, and thereon allege, that during some or all of the periods mentioned herein, it has been or is, among other things, in the business of opening Chase credit card accounts with individuals and/or business entities for which an annual fee is paid.  JPMorgan is authorized to conduct business within the State of California.

10.    Defendant Chase Manhattan Bank U.S.A., N.A. (Chase Manhattan), is a Delaware corporation having its principle place of business in New York.   It is a wholly owned subsidiary of JPMorgan and Plaintiffs are advised and believe, and thereon allege, that it is, among other things, in the business of issuing Chase charge credit cards to persons and/or business entities. It is authorized to conduct business within the State of California.

11.    Defendant Chase Manhattan Bank U.S.A., N.A. d.b.a. Chase Bank U.S.A., N.A. ("Chase Bank") is a wholly owned subsidiary of JPMorgan and related to Chase Manhattan which, from time to time, does business as Chase Bank.  As relevant here and without limitation, at the present time it, among others, issues the following Chase credit cards for which an annual fee is paid:   Chase Contractor Cash Rewards card, Continental Airlines Business card, Marriott Rewards Vista Business Card, Priority Club Rewards Business card, Southwest Airlines Rapid Rewards Visa Business Card, United Mileage Plus Platinum Business card, British Airways card, Continental WorldCard, Marriott Rewards, Priority Club Rewards Visa Signature card, Southwest Airlines Rapid Rewards Visa Signature Card, United Mileage Plus Signature Visa Card, and Marriott Rewards Premier Visa Signature Card.  The "business" cards can be used for

---

[2]        Unless otherwise specified, all Defendants are referred to collectively as "Chase."

**David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,**
**Complaint**

either business or personal/household use just as the non-business cards can be used for either business or personal/household use.

12.     The true names and capacities of the defendants sued herein as Does 1 through 100 are unknown to Plaintiffs who therefore sue them by such fictitious names.  Plaintiffs will amend this complaint to allege the true names and capacities of these defendants when they have been determined.  Each of the fictitiously named defendants is responsible in some manner for the acts alleged herein.

13.     At all times mentioned in the causes of action alleged herein, each and every defendant was an agent and/or employee of each and every other defendant.  In doing the things alleged in the causes of action stated herein, each and every defendant was acting within the course and scope of this agency or employment and was acting with the consent, permission and authorization of each of the remaining defendants.  All actions of each defendant as alleged in the causes of action stated herein were ratified and approved by every other defendant or their officers or managing agents, and by agreeing to actively conceal the true facts regarding the acts and omissions, as alleged herein, engaged in conspiratorial conduct with each other.

### III.
### Jurisdiction and Venue

14.     Since Plaintiffs on their own behalf and on behalf of similarly situated consumers and residents of California, respectively, are requesting restitutionary relief, statutory restitutionary relief (including disgorgement of profits), punitive damages, and prejudgment interest totaling an amount in excess of $5,000,000.00, jurisdiction arises under 28 U.S.C. § 1332 (diversity).

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because:  the products at issue are advertised, promoted, sold and used in the geographic parameters of the United States

**David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,**
**Complaint**

District for the Northern District of California; Defendants have received substantial compensation from the sale of the products at issue in this District by engaging in acts and practices that constitute unfair competition and violation of law within this District and which had an effect in this District; and, Plaintiff Lee is a resident of this District.

## IV.

### The Facts

#### A.    The Facts Concerning Chase Credit Cards

16.    As relevant here, Chase issues, for an annual fee, "credit" cards that are revolving credit instruments that do not need to be paid off in full at the end of the monthly billing cycle, upon which no late fee is charged as long as the minimum payment is timely made but which charges a late fee when payment is untimely, and which carries a balance forward as a loan charging interest.[3]  Credit cards are a necessity in today's world:  they are required to rent a car, reserve airline tickets, stay at a hotel, make a purchase on the internet, or cash a third-party check at Wells Fargo Bank.

17.    Chase credit cards are means of and used to obtain goods and/or services (including services furnished in connection with the sale or repair of goods) from any person or business who accepts the respective card in payment for the goods or services provided.  That includes cards denominated as "business" cards.

18.    The purchase of a Chase credit card cardmembership (for which a fee is paid) relative to a credit card purchases and provides a "convenience service" even when "credit" can be implicated if the monthly balance is not paid in full upon receipt of the monthly billing statement.   It provides a means of payment which leaves the option open to the card holder to

---

[3]    Unless otherwise specified, all Chase credit cards referred to herein are credit cards for which an annual fee is charged.

11

**David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,**
**Complaint**

either pay his/her monthly statement in full upon its receipt (and thus not incur any interest indebtedness or otherwise use the "credit" service of the card) or to not pay the bill in full and use the revolving credit feature. Regardless of which option is chosen by the card holder, the use of the credit card has distinct advantages over cash, checks, and other means of payment: i.e., the credit card not only minimizes the need to carry cash and allows the user to defer payment and establish a favorable credit history but also, importantly, increases the card holder's ability to purchase goods and services and in so doing avoid the red tape involved in obtaining a personal loan. Plaintiffs are informed and believe, and on that basis allege, that some holders of credit cards do, from time to time or all of the time, pay the monthly balance in full upon receipt of the monthly billing statement and do not avail themselves of the credit feature of the card.

19.    Plaintiffs are informed and believe, and on that basis allege, that Chase maintains records identifying – for at least the last four years preceding the filing of this Complaint -- each holder of a specific Chase credit card and their current/last known address, the amount of fees paid by him/her, the date(s) upon which a card was issued to that person, the charges made by that person on his Chase card, and other means by which each card holder may be identified.

20.    Upon information and belief, Plaintiffs allege that Chase has currently approximately 79,500,000 credit card accounts in the United States, approximately and at least ten (10) per cent of which are issued to California consumers and/or residents, respectively. Upon information and belief, Plaintiffs further allege that Chase receives a "merchant fee" for each charge made on the card, payable by the merchant based on a percentage of the sales price.

David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,
Complaint

24.    During some or all of the four years preceding the filing of the Complaint and three years preceding the filing of the Complaint, respectively, Chase issued credit cards at the following annual fees:

(a)    Chase Contractor Cash Reward card -- $50.00 annual fee.  A true and correct copy of the Chase official Internet website setting for the terms and conditions for this card is Exhibit 1 and is incorporated herein by reference;

(b)    Continental Airlines Business Master Card – $75.00 annual, $20.00 annual fee for each additional card.  A true and correct copy of the Chase official Internet website setting for the terms and conditions for this card is Exhibit 2 and is incorporated herein by reference;

(c)    Marriot Rewards Visa Business Card – first year's fee free, $30.00 annual fee for each year thereafter.  A true and correct copy of the Chase official Internet website setting for the terms and conditions for this card is Exhibit 3 and is incorporated herein by reference;

(d)    Priority Club Rewards Business Card – first year's fee free, $29.00 annual fee for each year thereafter.  A true and correct copy of the Chase official Internet website setting for the terms and conditions for this card is Exhibit 4 and is incorporated herein by reference;

(e)    Southwest Airlines Rapid Rewards Visa Business Card -- $59.00 annual fee.  A true and correct copy of the Chase official Internet website setting for the terms and conditions for this card is Exhibit 5 and is incorporated herein by reference;

13

(f)    United Airlines Mileage Plus Platinum Business Card; $75.00 annual fee, $25.00 for each additional card.  A true and correct copy of the Chase official Internet website setting for the terms and conditions for this card is Exhibit 6 and is incorporated herein by reference;

(g)    British Airways card -- $75.00 annual fee.  A true and correct copy of the Chase official Internet website setting for the terms and conditions for this card is Exhibit 7 and is incorporated herein by reference;

(h)    Continental WorldCard Master Card -- $85.00 annual fee for World card holders, $65.00 for Platinum card holders.  A true and correct copy of the Chase official Internet website setting for the terms and conditions for this card is Exhibit 8 and is incorporated herein by reference;

(i)    Marriott Rewards Card -- fee free for first year, $30.00 fee for each following year.  A true and correct copy of the Chase official Internet website setting for the terms and conditions for this card is Exhibit 9 and is incorporated herein by reference;

(j)    Priority Club Rewards Visa Signature Card -- free fee first year, $29.00 annual fee in each following year.  A true and correct copy of the Chase official Internet website setting for the terms and conditions for this card is Exhibit 10 and is incorporated herein by reference;

(k)    Southwest Airlines Rapid Rewards Signature Visa Card -- $50.00 annual for Signature card holders, $39.00 annual fee for Classic card holders.  A true and correct copy of the Chase official Internet website setting for the terms and conditions for this card is Exhibit 11 and is incorporated herein by reference;

David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,
Complaint

(l)    Marriott Rewards Premier Visa Signature Card -- $65.00 annual fee.  A true and correct copy of the Chase official Internet website setting for the terms and conditions for this card is Exhibit 12 and is incorporated herein by reference; and,

(m)    United Mileage Plus Signature Visa Card --$60.00 annual fee.  A true and correct copy of the Chase official Internet website setting for the terms and conditions for this card is Exhibit 13 and is incorporated herein by reference.

## B.    Plaintiffs' Facts

25.    Plaintiff Lee obtained a Chase United Airlines credit card from Chase in or about the late 1990s.  He obtained the card for, among other things, personal and/or household use to purchase, among other things, goods or services (including services furnished in connection with the sale or repair of goods) for his personal or household use.  He has annually paid the fee charged by Chase on that credit card.  A true and correct copy of the cardmember agreement applicable to Plaintiff Lee's credit card is Exhibit 14 hereto and incorporated herein by reference.  The cardmember agreement by which his card is governed is Exhibit 14 hereto.  That agreement has been, from time to time during the period in which Lee has been a card member, amended (including amendments to the arbitration provision) and the amendment sent to Plaintiff as a "bill stuffer."

26.    Plaintiff Lloyd obtained a Chase United Airlines Mileage Plus Platinum card in or about 2000.  He has paid the annual fee in each of the years thereafter until the present time.  He obtained the card for his personal use to purchase, among other things, goods or services (including services furnished in connection with the sale or repair of goods) for his personal or household use.   The cardmember agreement by which his card is governed is Exhibit 14 hereto.

David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,
Complaint

That agreement has been, from time to time during the period in which Lloyd has been a card member, amended (including amendments to the arbitration provision) and the amendment sent to Plaintiff as a "bill stuffer."

27      In making the payments of the fees owed by him, Plaintiffs Lee and Lloyd relied upon the statements and misrepresentations made by Chase as specifically set forth in this Complaint.

28.     In accepting the contractual terms presented to them by Chase on a "take it or leave it" basis – which was effected by the use of the card rather than by formal written agreement or other writing – and paying their respective annual fees Plaintiffs acted as reasonable consumers who were unwary and trusting of Chase.

29.     In accepting the contractual terms presented to them by Chase on a "take it or leave it" basis and paying their respective annual fees, Plaintiffs relied upon the honesty of Chase that it would not insert illegal, unconscionable and/or unenforceable terms and conditions in the arbitration provision of the agreement or other terms of the agreement, respectively, since, among other things, they had no duty to and did not suspect the dishonesty of Chase.

30.     Plaintiffs, as reasonable consumers, were unaware of the illegality or unconscionability of the arbitration provision or of the card agreement as a whole, respectively, at the times they entered into their agreement with Chase and paid the fees requested from them.

31      Arbitration, pursuant to a contractual arbitration provision, is a speedy and inexpensive means of dispute resolution in comparison to judicial proceedings that can, under a conscionable and enforceable arbitration provision, be beneficial to the card holder.

32.     The arbitration provision is a material term of the Chase card agreement.

David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,
**Complaint**

33.    The ability to demand arbitration under an arbitration provision is an important and material factor relied upon by Plaintiffs in agreeing to enter into the Chase agreements and to pay their fees.

34.    Plaintiffs are advised and believe, and thereon allege, that the right to mandatory arbitration has a pecuniary value that reflects, in whole or in part, the fees paid by them for their cards and their respective use of their cards.

35.    Plaintiffs are advised and believe, and thereon allege, that if the arbitration provision contained in the agreement relating to their credit cards is unconscionable, illegal and unenforceable, Plaintiffs received something lower in value than that for which they paid and, as a result, they have lost money as a result of the unconscionability, illegality, and unenforceability of the Chase-imposed arbitration provision.

36.    Plaintiffs are advised and believe, and thereon allege, that the rights provided them by the card agreement to Chase's credit cards have a pecuniary value that reflects, in whole or in part, the fees paid by them for their cards and their respective use of their cards.

37.    Plaintiffs are advised and believe, and thereon allege, that if the cardmember agreement, in whole or in part, is unconscionable, illegal and unenforceable, Plaintiffs received something lower in value than that for which they paid and, as a result, they have lost money as a result of the unconscionability, illegality, and unenforceability of the Chase-imposed card agreement.

38.    In accepting the contractual terms presented to them by Chase on a "take it or leave it" basis and paying their respective annual fees, Plaintiffs contracted with Chase in reliance with their reasonable belief that Chase would not commit an illegal, unfair, or fraudulent act upon them in presenting them with a form agreement on a "take it or leave it" basis that contained an

David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,
Complaint

arbitration provision and other provisions, respectively, that were and are illegal, unfair, unconscionable, and invalid.

39.    Plaintiffs had no meaningful choice of reasonably available alternative sources for credit cards free of the terms claimed to be illegal, unconscionable, invalid, and unenforceable since seemingly all credit cards issued by Chase and its competitors (including Capital One, American Express, Bank of America, and HSBC) contain the same or similar arbitration and other provisions challenged in this action.

40.    Plaintiffs, on behalf of themselves and similarly situated persons, have a technically arbitrable claim against Chase relating solely to the card agreement: i.e., that they were induced to enter into the agreement and paid the fees by them as a result of Chase's fraud, deceit, and misrepresentations.

41.    Plaintiffs, on behalf of themselves and similarly situated persons, are and have been willing to immediately invoke the Chase arbitration provision so that their fraud claims against Chase would be decided in the arbitral context by an arbitrator if the arbitration provision is conscionable, legal, and enforceable.

42.    Plaintiffs are advised and believe, and thereon allege, that their claim of fraud against Chase in the inducement of the card agreement is an issue that should be decided by an arbitrator under an enforceable, valid, and conscionable arbitration provision.  See, e.g., Nagrampa v. Mailcoups, Inc., 469 F.3d 1257 (9th Cir. 2006); Buckeye Check Cashing Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1987).

43.    Plaintiffs are advised and believe, and thereon allege on behalf of themselves and similarly situated persons, that their invoking the arbitration provision relative to their fraud

David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,
Complaint

claims and seeking arbitration of that claim would be against public policy and would otherwise be an illegal act by seeking to enforce an illegal and unconscionable arbitration provision. Plaintiffs further are advised and believe, and thereon allege, on behalf of themselves and similarly situated persons that it would be futile to invoke arbitration under the unenforceable arbitration provision and that doing so would be a waste of time and money.    See Bertero v. Superior Court, 216 Cal. App. 2d 213, 230 Cal. Rptr. 719 (1963) (parties improperly ordered to arbitrate "would be put to the unnecessary delay and expense of an arbitration, further court proceedings, and an appeal, after which they would be required to start over"), disapproved on other grounds in St. Agnes Medical Center v. PacifiCare of California, 31 Cal.4th 1187, 1192, 8 Cal. Rptr. 3d 517, 82 P.3d 727 (2003).

44.    Plaintiffs are advised and believe, and thereon allege on behalf of themselves and similarly situated persons, that the exercise of their contractual right to demand mandatory arbitration of their fraud claim against Chase would and/or could waive their right and ability to challenge the unconscionability of the arbitration provision and/or the agreement as a whole, respectively.

45.    The harm to Plaintiffs' interest, as well as of the interest of similarly situated persons, arising from the inability to enforce the arbitration provision in order to arbitrate their fraud and consumer statute claims (relating only to the agreement and not the arbitration provision) due to its/their unenforceability/unconscionability/illegality, is actual or imminent.

46.    On March 26, 2007, the Motion to Compel Arbitration and Stay by Chase in Davis v. Chase Bank U.S.A., N.A., et al., Case No. CV 06-04804 DDP (PJWx) (C.D.Cal.), a case in which the issues of the consciability and legality of the Chase arbitration provision is involved.  A true and correct copy of the Order Denying Motion to Compel Arbitration and Stay

1   is Exhibit 15 hereto and is incorporated herein by reference. The basis for that Ruling was that

2   many of the arbitration provisions challenged here which were directly before the court were

3   unconscionable and illegal (including the class action waiver).    Plaintiffs are advised and

4   believe, and thereon allege, that no writ or interlocutory appeal of that Order has been timely

5   filed.  Plaintiffs are further advised and believe, and thereon allege, that in view of the recent

6   Ninth Circuit opinion in Shroyer v. New Cingular Wireless Services, Inc., 2007 U.S.App.LEXIS

7   19560 (9th Cir. 2007), that is a final and binding ruling on the issue of the unconscionability and

8   unenforceability of the Chase arbitration agreement.

9   47.    Plaintiffs are advised and believe, and thereon allege, that it has been, is and will

10  continue to be the practice of Chase to uniformly advise its card holders, directly or by

11  implication that the card holder agreements are conscionable and legal, and governed by the

12  laws of the State of Delaware.

### C.    The Chase Card Agreements

48.    The 2007 version of the amended and standardized contractual agreement (which is

presently used) entered into between Plaintiffs Lee and Lloyd (and similarly situated persons

they seek to represent) and Chase relating is an Arbitration Agreement. It in pertinent part,

provides

> "IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING
> ARBITRATION.    ARBITRATION REPLACES THE RIGHT TO GO TO
> COURT.  YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR
> OTHER REPRESENATIVE ACTION IN COURT SUCH AS THAT IN THE
> FORM OF A PRIVATE ATTORNEY GENERAL ACTION, NOR WILL
> YOUBE ABLE TO BRING ANY CLAIM IN ARBITRATION AS A CLASS
> ACTION OR OTHER REPRESENTATIVE ACTION.  YOU WILL NOT BE
> ABLE TO BE PART OF ANY CLASS ACTION OR OTHER
> REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE OR BE
> REPRESENTED IN A CLASS ACTION OR OTHER REPRESWENTATIVE
> ACTION IN THE ABSENCE OF THIS ARBITRATION AGREEMENT.  YOU
> ANDE WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY

TO BRING CLAIMS IN A COURT BEFORE A JUDGE OR JURY, AND/OR TO PARTICIPATE OR BGE REPRESENTED IN A CASE FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS AND OTHER REPRESENATATIVE ACTIONS). OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO A COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION MAY BE MORE LIMITED. EXCEPT AS OTHERWISE PROVIDED BELOW, THOSE RIGHTS ARE WAIVED. …

"Either you or we may, without the other's consent, elect mandatory, finding arbitration of any claim, dispute or controversy by either you or us against the other, or against the employees, parents, subsidiaries, affiliates, beneficiaries, agents or assigns of the other, arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement … The Arbitration Agreement governs all Claims, whether such claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision , or any legal theory of law such as respondeat superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to the Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement.

"Claims subject to arbitration include Claims that are made as counterclaims, cross claims, third party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any such Claims advanced in the lawsuit by any party or parties….

"No arbitration will be consolidated with an other arbitration proceeding without the consent of all parties…

"The party filing a Claim in arbitration must choose one of the following two arbitration administrators:  American Arbitration Association, or National Arbitration Forum. … You may obtain copies of the current rules of each of the two arbitration administrators, information about arbitration and arbitration fees, and instructions for initiating arbitration by contacting the arbitration administrators …

"… The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Arbitration Agreement, in which case this Agreement will prevail. … The arbitrator … will not have the power to award relief to, against, or for the benefit of any person who is not a party to the proceedings. ….

"We will reimburse you for the initial arbitration filing fee paid by you up to the amount of $500 upon receipt of proof of payment. Additionally, if there is a

hearing, we will pay any fees of the arbitration and arbitration administrator for the first two days of that hearing. … All other fees swill be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is good reason for requiring us to do so or you ask us and we determine there is good cause for doing so. Each party will bear the expense of the fees and costs of that party's attorneys fees, witnesses, documents, and other expenses, regardless of which party prevails, for arbitration and any appeal … except that the arbitrator shall apply any applicable law in determining whether a party should receive any or all fees and costs from another party."

"The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration organization. The panel will r4econsider all factual and legal issues anew … Each party will bear their own fees, costs and expenses for any appeal, but a party may recover any or all fees, costs and expenses from another party, if the majority of the panel of arbitrators, applying applicable law, so determines.

Exhibit 14.

49. The relevant provisions of the cardmember agreement (excepting the arbitration provision) include:

"We can change this agreement at any time, regardless of whether you have access to your account, by adding, deleting, or modifying any provision. Our right to add, delete, or modify provisions includes financial terms, such as the APRs and fees, and other terms such as the nature, extent and enforcement of the rights and obligations you or we may have relating to this agreement. Modifications, additions, or deletions are called 'Changes' or a 'Change.'"

"We can delay enforcing or not enforced any of our rights under the agreement without losing out right to enforce them in the future. If any of the terms of this agreement are found to be unenforceable, all other terms will remain full force."

"THE TERMS AND ENFORCEMENT OF THIS AGREEMENT AND YOU ACCOUNT WILL BE GOVERENDED AND INTERPRETED IN ACCORDANCE WITH FEDERAL LAW AND, TO THE EXTENT STATE LAW APPLIES, THE LAW OF DELAWARE. WITHOUT REGARD TO CONFLICT-OF-LAW PRINCIPLES, THE LAW OF DELAWARE, WHERE WE AND YOUR ACCOUNT ARE LOCATED, WILL APPLY NO MATTER WHERE YOU LIVE OR USE THE ACCOUNT." (Capitalization in original)

Ibid.

David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,
Complaint

# VI.
## Causes of Action

### First Cause of Action
**(Arbitration Provision --Violation of Bus. & Prof. Code 17200 et seq. Due To
Illegal Practice Under Civil Code § 1670.5
And The Common Law)**

50.    Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-4, 6-36, and 38-48 as though fully set forth herein.

51.    California Bus. & Prof. Code § 17200 provides, in relevant part:

"As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice…

52.    California Bus. & Prof. Code § 17203 provides, in relevant part:

"Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined by any court of competent jurisdiction.  The court may make such orders or judgments … as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition …. or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.  Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 [that he "has suffered injury in fact and has lost money or property as a result of such unfair competition"] …."

53.    California Code of Civil Procedure § 382 provides, in relevant part:

**David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,**
**Complaint**

"… when the question is of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

54.    California Civil Code § 1670.5 is the codification of the common law relating to unconscionability of contracts and/or contractual provisions and provides, in relevant part:

"(a)    If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

55.    The arbitration clause, which was inserted into the contract between Chase and Plaintiffs (and other similarly situated persons), is unconscionable, illegal and thereby violates California Civil Code § 1670.5 and the common law relating to unconscionability of contracts and contractual provision in that, among other reasons, it

(a)    was imposed on all card holders on a "take it or leave it" basis with no opportunity by the card holder to negotiate any term thereof (see Discover Bank v. Superior Court, 36 Cal.App.4th 148, 159-160, 40 Cal.Rtpr.3d 76 (2005); Armanderiz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 113-114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000); Shroyer v. New Cingular Wireless Services, Inc., 2007 U.S.App.LEXIS 19560 (9th Cir. 2007));

(b)    was contained in an adhesive form agreement prepared by Chase and concerning which Chase was in a much stronger bargaining position than the card holder (ibid.; Gentry v. Superior Court, 2007 Cal.LEXIS 9376 (2007));

24

(c)      provides that "ANY DISPUTE WILL BE RESOLVED BY BINDING ARBITRATION" and "YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE CLAIM IN COURT SUCH AS THAT IN THE FORM OF A PRIVATE ATTORNEY GENERAL ACTION; NOR WILL YOU BE ALLOWED TO BRING ANY CLASS IN ARBITRATION AS A CLASS ACTION OR OTHER REPRESWENTAIVE ACTION …." in a situation, as here, involving a class action waiver in the context where predictably only "small" amounts of money are involved (the annual fee) and as part of a scheme to deliberately cheat large numbers of its card holders out of the individually "small" amounts represented by the fees paid for the card and the diminution in value of that which Plaintiffs and similarly situated card holders received (Gentry v. Superior Court, supra Discover Bank, supra; Schroyer, supra (adopting Discover Bank as the law of the Ninth Circuit); Ting v. AT&T, 319 F.3d 1126, 1150 (9th Cir. 2003); Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1176 (9th Cir. 2003));

(d)      provides "neither you nor we agree to any arbitration on a class or representative basis, and the arbitrator shall have no authority to proceed on such basis.  That means that even if a class action lawsuit or other representative action, such as that in the form of a private attorney general action, is filed, any Claim between us related to the issues raised in such lawsuits will be subject to an individual arbitration claim if either you or we so select" in a context where predictably only "small" amounts of money are involved (the fee) and as part of a

David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,
Complaint

scheme to deliberately cheat large numbers of its card holders out of the individually "small" amounts represented by the fees paid for the card (see, ibid.);

(e)    provides that even in the event of the certification of a class by some other card holder, all other card holders cannot become members of that class, a complete derogation of Fed.R.Civ.P. 23;

(f)    provides that "Claims subject to the Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement" in direct contravention of Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), Nagrampa v. Mailcoups, Inc., 469 F.3d 1257 (9th Cir. 2006), Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 405-404, 87 S.Ct. 1801, 103 L.Ed.2d 1038 (1967), Flores v. TransAmerica Home First, Inc., Cal.App.4th 846, 113 Cal.Rptr.2d 376 (2001), and Stirlin v. Supercuts, Inc., 51 Cal.App.4th 1519, 60 Cal.Rptr.2d 138 (1997) ;

(g)    provides that the arbitrator "will not have the power to award relief to, against, or for the benefit of any person who is not a party to this proceeding" thereby forbidding the entry of any injunctive relief in the arbitration even though statutory injunctive relief under the UCL and CLRA are unwaiveable (Broughton v. Cigna Healthplans, 21 Cal.4th 1066, 90 Cal.Rptr.2d 334, 988 P.2d 334 (1999); Cruz v. PacifiCare Health Systems, Inc., 30 Cal.4th 303, 133 Cal.Rptr.2d 58, 66 P.3d 1157 (2003); Davis v. O'Melveny & Meyers, 485 F.3d 1066, 1080 (9th Cir. 2007); Nagrampa v. Mailcoups, Inc., supra, 469 F.3d at 1289-1293;

David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,
Complaint

(h)    provides "No arbitration will be consolidated with any other arbitration proceeding without the consent of all parties" in a context where, as here, predictably only "small" amounts of money (the fees) are involved and as part of a scheme to deliberately cheat large numbers of its card holders out of the individually "small" amounts represented by the fees paid for the card (see Discover Bank v. Superior Court, supra, 36 Cal.App.4th at 153; Szetla v. Discover Bank, 97 Cal.App.4th 1094, 118 Cal.Rptr. 862 (2002); Comb v. PayPal, Inc., 218 F.Supp.2d 1165, 175 (N.D.Cal. 2002));

(i)    provides that all "Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondeat superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief" even though, for instance, injunction requests under the CLRA and UCL are never arbitrable (Broughton v. Cigna Healthplans, supra; Cruz v. PacificCare Health Systems, Inc., supra);

(j)    provides that in arbitration all claims shall be resolved by "one of two arbitration administrators:    American Arbitration Association, or National Arbitration Forum";

(k)    provides no alternative means by which some other arbiter or arbitral organization may be chosen by the card holder;

(l)    provides that arbitration "will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless those procedures or regulations are inconsistent with

27

the Arbitration Agreement, in which case this Arbitration Agreement will prevail…" but fails to advise of any specific inconsistency those codes may have with the Arbitration Provision and, further, does not provide the card holder with copies of the rules of those arbitration organizations or specify which of several codes of procedure applies to the arbitration (see Ultimo v. Harper, 113 Cal.App.4th 1402, 7 Cal.Rptr.2d 418 (2003); Fitz v. NCR Corp., 118 Cal.App.4th 702, 721, 13 Cal.Rptr.2d 88 (2004); Dunham v. Envtl. Chem. Corp. 2006 U.S.Dist.LEXIS 61068 (N.D.Cal. 2006));

(m)     provides no way for the card holder to know at the time he/she initially agreed to arbitrate what the rules would be at the time of the arbitration as well as what inconsistencies existed between the agreement and the Code because Chase has given itself the unilateral right to amend the arbitration provision at any time (including before, during, or after any arbitration) and the arbitration provision otherwise makes the applicable arbitration rules those in effect when the arbitration is filed (see Net Global Marketing, Inc. v. Dialtone, Inc., 217 Fed.Appx. 598, 2007 U.S.App.LEXIS 674 (9th Cir. 2007); Ingle v. Circuit City Stores, Inc., 328 F.3d at 1179; Geoffrey v. Washington Mutual Bank, 484 F.Supp.2d 1115, 1123 (S.D.Cal. 2007); Bragg v. Linder Research, Inc., 487 F.Supp.2d 593, 609 (E.D.Pa. 2007)(applying California law); Conglamur v. Circuit City Stores, Inc., 2004 Cal.App.Unpub.LEXIS 8140 at *13-14 (2004));

(n)     provides that "[i]f any portion of this Arbitration Agreement is deemed invalid or unenforceable, the remaining portions nevertheless remain in force" even though all determinations as to severability of the provision is a matter

28

exclusively reserved for the Courts (see California Civil Code § 1670.5 (a); Armanderiz, supra, 24 Cal.4th at 1121-24; Stirlin, supra; Flores, supra);

(o)    provides, relative to the costs of arbitration, that Chase "will reimburse you for the initial arbitration filing fee paid by you up to the amount of $500 upon receipt of proof of payment.  Additionally, if there is a hearing, we will pay any fee of the arbitrator and arbitration administrator for the first two days of that hearing…    All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law" in violation of Nagrampa and Armanderiz;

(p)    provides that "Each party will bear their own fees, costs and expenses for any appeal, but a party may recover any or all fees, costs and expenses from another party, if the majority of the panel of arbitrators, applying applicable law, so determines" (ibid.); and,

(q)    provides only a vague and overbroad statement of what effect arbitration will have on the legal rights of card holders.

56.    Plaintiffs, as set forth below in paragraph 94 (the allegations of which are incorporated herein by reference), bring this action on behalf of themselves and similarly situated persons in 2 subclasses, all of which qualify for certification pursuant to California Code of Civil Procedure § 382 on the grounds that:

(a)    the classes as defined are ascertainable since membership therein is defined by and limited to persons (either California consumers or residents of California depending on whether the class is under the CLRA, the UCL, or the fraud cause of action) having a Chase credit card for which a fee was paid during

29

the period covering the limitations period and the time of final judgment under a card agreement containing the same or similar arbitration provision or agreement terms, respectively, as Plaintiffs (copies of which agreements and arbitration provisions are referenced in the class definition).  Those classes, each of which is likely to contain at least hundreds of thousands of persons (either consumers or residents) are identifiable by Chase which keeps the records of all such persons, including their last known billing addresses.

(b)    there is a commonality of interests by and between Plaintiffs and the members of the classes they seek to represent that is patent in that

(1)    predominant common questions of law or fact are exclusively involved: _i.e._, the unconscionability of terms in the arbitration provision and card agreement, respectively, that are common to all of the form provisions and agreements imposed by Chase on a "take it or leave it" basis on the card holders; as to the fraud cause of action, common representations and reliance on the misrepresentations by Plaintiffs and class members exists;

(2)    the Plaintiffs, as class representatives, are typical of the classes and have only claims and defenses that are typical of those of the respective classes in that, for instance, the claims for and quantum of injunctive and restitutionary relief are identical for each member of each class (_i.e._, the amount of the fee(s) paid by them) or easily subject to proof without separate adjudications; and,

30

David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,
Complaint

(3)    Plaintiffs can and will adequately represent the interests of the class since they are committed to maintaining the action and are represented by counsel knowledgeable and experienced in consumer and class action law.

(c)    The issues which may be jointly tried (most of which are singularly ones of law), when compared with the issues requiring separate adjudication, are so numerous or substantial that the maintenance of a class action is advantageous to the judicial process and to the litigants.

### Second Cause of Action
### (Arbitration Provision --Violation of Bus. & Prof. Code 17200 et seq. Due To Illegal Practice Under Civil Code §§ 1668 and 3513

57.    Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-4, 6-36, 38-48, and 50-56 as though fully set forth herein.

58.    California Civil Code § 1668 provides, in relevant part,

"All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

59.    California Civil Code § 3513 provides, in relevant part,

"Any one may waive the advantage of a law intended solely for his benefit.  But a law established for a public reason cannot be contravened by a private agreement.

60.    The Chase arbitration provision violates Civil Code §§ 1668 and 3513, respectively, including, but not limited to, its provisions that no class or representative action can be maintained, and no injunctive relief may be given to any card holder.  See, e.g., Stroyer v. New

31

David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,
Complaint

*Cingular Wireless Services, Inc.*, supra, 2007 U.S.App.LEXIS 1560 at * 30; <u>Discover Bank v. Superior Court</u>, supra, 36 Cal.4th at 160-163, 165; <u>Gentry v. Superior Court</u>, supra.

**Third Cause of Action**
**(Arbitration Provision --Violation of Bus. & Prof. Code 17200 <u>et seq.</u> Due To Illegal Practice Under Code of Civil Procedure § 1281.4)**

61.     Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-4, 6-36, 38-48, and 50-56 as though fully set forth herein.

62.     Code of Civil Procedure § 1281.4(a), in pertinent part, provides:

"No neutral arbitrator or private arbitration company shall administer a consumer arbitration under any agreement or rule requiring that a consumer who is a party to the arbitration pay the fees and costs incurred by an opposing party if the consumer does not prevail in the arbitration, including, but not limited to, the fees and costs of the arbitrator, provider organization, attorney, or witnesses."

63.     The Chase arbitration provision violates Section 1281.4.

**Fourth Cause of Action**
**(Arbitration Provision --Violation of Bus. & Prof. Code 17200 <u>et seq.</u> Due To Unfair Practice**

64.     Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-4, 6-36, 38-48, 50-56, and 61-63 as though fully set forth herein.

65.     Chase's arbitration provision, due to its unconscionability and illegality, is an unfair practice that either "offends an established public policy [as represented by Civil Code §§ 1670.5, 1281.4, 1668 and/or 3513] or … is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," [<u>Smith v. State Farm Mutual Automobile Ins. Co.</u>, 93 Cal.App.4th 700,   718-719, 113 Cal.Rtpr.2d 399 (2001)], or which violates public policy tethered to specific constitutional, statutory or regulatory provisions such as Sections 1670.5,

32

<u>David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.</u>,
**Complaint**

1281.4, 1668, and/or 3513. <u>Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.</u>, 20 Cal.4[th] 163, 187, 83 Cal.Rptr.2d 548, 973 P.2d 527.

66.    An unconscionable contract or contract provision or term is, as a matter of law, an unfair practice under the UCL. <u>See</u> <u>Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.</u>, <u>supra</u>, 20 Cal.4[th] at 183; <u>People v. McKale</u>, 25 Cal.3d 626, 683-84 (1979); <u>Smith v. State Farm Mutual Automobile Ins Co.</u>, <u>supra</u>, 93 Cal.App.4[th] at 719; <u>State Farm Fire & Casualty Co. v. Superior Court</u>, 45 Cal.App.4[th] 1093, 1104, 53 Cal.Rptr.2d 229 (1996); <u>Lyddon v. Rocha-Albertsen</u>, 2006 U.S.Dist.LEXIS 78957 (E.D. Cal. 2006); <u>Ting v. AT&T</u>, 182 F.Supp.2d 902, 921-22, aff'd in part, rev'd on other grounds in part, 319 F.3d 1126, 1150 (9th Cir. 2003).

**<u>Fifth Cause of Action</u>**
**(Arbitration Provision --Violation of CLRA, Civil Code**
**§ 1770(a)(19) As To Plaintiff Lee**

67.    Plaintiff Lee repeats and re-alleges each of the allegations contained in paragraphs 1-4, 6-36, 38-48, and 50-56 as though fully set forth herein.

68.    The Chase credit card for which an annual fee is paid is a good or service subject to the requirements of CLRA and is used to obtain goods or services.

69.    By letters dated June 30, 2007 sent to the respective Defendants' Presidents/CEOs (all of which were sent certified mail, return receipt requested), Plaintiff Lee pointed out the unconscionability and illegality of the agreement relating to his credit card, particularly its arbitration provision, under California law and requested that Chase "'correct, repair, replace or otherwise rectify the goods or services" caused by the violation of California Civil Code § 1770(a)(19) which makes it illegal to "insert[] an unconscionable provision into a contract." True and correct copies of these letters are Exhibits 16, 17 and 18 hereto, respectively, and are

<u>David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,</u>
**Complaint**

incorporated herein by reference.  True and correct copies of the return receipt of the letters to these officials are Exhibits 19, 20 and 21, respectively, and incorporated herein by reference.  No timely written response was received by Plaintiff Lee to any of these letters.  No action relative to the Chase card agreement or its arbitration provision has been taken.

70.     The actions of Chase in inserting the arbitration provision into the charge card agreement common to Plaintiffs and similarly situated persons was done in violation of Subdivision 19 of California Civil Code § 1770(a) which states that:

> "(a)    The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
>
> …  (19).        Inserting an unconscionable provision in the contract."

71.     At all times herein mentioned, Chase knew that one or more of the terms of the arbitration provision and/or the arbitration provision itself was unconscionable and illegal under California law.  Notwithstanding that knowledge, Chase with oppression, fraud or malice and./or in willful and conscious disregard of the laws of California and the legal rights of Plaintiffs and similarly situated persons inserted and maintained those unconscionable terms and/or arbitration provision in its card agreements.

**Sixth Cause of Action**
**(Arbitration Provision --Violation of Bus. & Prof. Code**
**§ 17200 et seq. Due To**
**Illegal Practice In Violation Of Civil Code § 1770 (a)(19)**

72.     Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-4, 6-36, 38-48, and 50-56 as though fully set forth herein.

34

73.    The actions of Chase in inserting the arbitration provision into the card agreement common to Plaintiffs and similarly situated persons was done in violation of Subdivision 19 of California Civil Code § 1770(a) which states that:

> "(a)    The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
>
> …  (19).      Inserting an unconscionable provision in the contract.""

74.    That is a violation of California Bus. & Prof. Code § 17200 as it is an act in violation of the CLRA.

### Seventh Cause Of Action
### (Card Agreement – Fraud And Deceit)

75.    Plaintiffs  repeat and re-allege each of the allegations contained in paragraphs 1, 5, 6-30, 36-47, and 49  as though fully set forth herein.

76.    Beginning at least three years prior to the filing of this Complaint and continuing until the present time (and into the future unless enjoined), Chase made misrepresentations to Plaintiffs and similarly situated Chase card holders that the terms contained in its card member agreement (excluding its arbitration provision) to its credit cards and the card agreement itself was conscionable, legal, and enforceable, and that the controlling law pertaining to those cards was Delaware law.  These representations were made not only in the card agreement themselves but in direct communications between the card holder and Chase and on the official Chase Internet website.   Specifically, the terms of the card agreement about which these misrepresentations were made are:

**David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,**
**Complaint**

"We can change this agreement at any time, regardless of whether you have access to your account, by adding, deleting, or modifying any provision. Our right to add, delete, or modify provisions includes financial terms, such as the APRs and fees, and other terms such as the nature, extent and enforcement of the rights and obligations you or we may have relating to this agreement. Modifications, additions, or deletions are called 'Changes' or a 'Change.'"

"We can delay enforcing or not enforced any of our rights under the agreement without losing out right to enforce them in the future. If any of the terms of this agreement are found to be unenforceable, all other terms will remain full force."

"THE TERMS AND ENFORCEMENT OF THIS AGREEMENT AND YOU ACCOUNT WILL BE GOVERENDED AND INTERPRETED IN ACCORDANCE WITH FEDERAL LAW AND, TO THE EXTENT STATE LAW APPLIES, THE LAW OF DELAWARE. WITHOUT REGARD TO CONFLICT-OF-LAW PRINCIPLES, THE LAW OF DELAWARE, WHERE WE AND YOUR ACCOUNT ARE LOCATED, WILL APPLY NO MATTER WHERE YOU LIVE OR USE THE ACCOUNT." (Capitalization in original)

Ex. 14

77.     These representations made by Chase were in fact false and made with the intention to deceive and defraud the Plaintiffs and similarly situated persons to induce them to act in reliance on these misrepresentations by agreeing to the terms of the agreement and paying fees thereunder.   The true facts are that the identified provisions and the agreement as a whole are unconscionable and illegal under California law (including precedents of the Ninth Circuit Court of Appeals and district courts interpreting and applying California law) on the basis that, for instance, they

(a)     were imposed on all card holders on a "take it or leave it" basis with no opportunity by the card holder to negotiate any term thereof (see Gentry v. Superior Court, supra; Discover Bank v. Superior Court, 36 Cal.App.4th 148, 159-160, 40 Cal.Rtpr.3d 76 (2005); Armanderiz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 113-114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000);

36

*Shroyer v. New Cingular Wireless Services, Inc.*, 2007 U.S.App.LEXIS 19560 (9th Cir. 2007));

(b)     were contained in an adhesive form agreement prepared by Chase and concerning which Chase was in a much stronger bargaining position than the card holder (Discover *Bank v. Superior Court*, *supra*, 36 Cal.App.4th at 159-160; *Armanderiz v. Foundation Health Psychcare Services, Inc.*, *supra*, 24 Cal.4th at 113-114; *Shroyer v. New Cingular Wireless Services, Inc.*, 2007 U.S.App.LEXIS 19560;

(c)     provide Chase with a "right" to make any unilateral modification, including adding new terms to the agreement but provide no such right to the card holder, which makes that provision unconscionable and illegal pursuant to *Net Global Marketing, Inc. v. Dialtone, Inc.*, 217 Fed.Appx. 598, 2007 U.S.App.LEXIS 674 (9th Cir. 2007); *Ingle v. Circuit City Stores, Inc.*, *supra*, 328 F.3d at 1179; *Geoffrey v. Washington Mutual Bank*, 484 F.Supp.2d 1115, 1123 (S.D.Cal. 2007); *Bragg v. Linder Research, Inc.*, 487 F.Supp.2d 593, 609 (E.D.Pa. 2007)(applying California law); *Conglamur v. Circuit City Stores, Inc.*, 2004 Cal.App.Unpub.LEXIS 8140 at *13-14 (2004).

(d)     provide Chase, but not the cardholder, with the ability to take any action without waiving any rights that it might have under the agreement or under the law; and,

(e)     Chase has been long been on notice not only that its arbitration provision is unconscionable and unenforceable but, importantly, that in spite of its statements to the contrary, the agreement is controlled by California law.

37

78.   Plaintiffs and similarly situated persons, at the time these representations were made by Chase and at the time Plaintiffs and similarly situated persons took the actions herein alleged, were ignorant of the falsity of Chase's representations and believed them to be true.  In reliance on these representations, Plaintiffs and similarly situated persons were induced to and did enter into the card agreement with Chase.

79.   The aforementioned conduct of Chase was an intentional misrepresentation, deceit, or concealment of a material fact(s) known to Chase with the intention on the part of Chase of thereby inducing Plaintiffs and similarly situated persons into entering the card agreement and making payment of the fees thereunder.  It was despicable conduct that subjected the Plaintiffs and similarly situated persons to a cruel and unjust hardship in conscious disregard of their rights, so as to justify an award of punitive damages.

### Eighth Cause of Action
#### (Card Agreement --Violation of CLRA, Civil Code § 1770(a)(19) As to Plaintiff Lee

80.   Plaintiff Lee  repeats and re-alleges each of the allegations contained in paragraphs 1, 5, 6-30, 36-47, 49, and  77(a)-(e) as though fully set forth herein.

81.   The Chase charge card for which an annual fee is paid is a good or service subject to the requirements of CLRA.

82   The actions of Chase in inserting unconscionable terms into the card agreement (excepting the arbitration provision) common to Plaintiffs and similarly situated persons was done in violation of Subdivision 19 of California Civil Code § 1770(a) which states that:

  "(a)   The following unfair methods of competition and unfair or deceptive acts

  or practices undertaken by any person in a transaction intended to result or

38

which results in the sale or lease of goods or services to any consumer are unlawful:

… (19).    Inserting an unconscionable provision in the contract."

83.    At all times herein mentioned, Chase knew that one or more of the terms of the card agreement (excluding the arbitration provision) and/or the agreement itself was unconscionable and illegal under California law.  Notwithstanding that knowledge, Chase with oppression, fraud or malice and./or in willful and conscious disregard of the laws of California and the legal rights of Plaintiffs and similarly situated persons inserted and maintained those unconscionable terms and/or arbitration provision in its card agreements.

### Ninth Cause of Action
### (Card Agreement --Violation of Bus. & Prof. Code 17200 et seq.
### Due To Illegal Practice Under Civil Code § 1670.5
### And The Common Law)

84.    Plaintiff Lee  repeats and re-alleges each of the allegations contained in paragraphs 1, 5, 6-30, 36-47, 49, and  77(a)-(e) as though fully set forth herein.

85    Various of the card agreement terms (excepting the arbitration provision) and the agreement itself which was inserted into the contract between Chase and Plaintiffs (and other similarly situated persons), is unconscionable, illegal and thereby violates California Civil Code § 1670.5 and the common law relating to unconscionability of contracts and contractual provision in that, among other reasons, it

(a)    were imposed on all card holders on a "take it or leave it" basis with no opportunity by the card holder to negotiate any term thereof (see Gentry v. Superior Court, supra; Discover Bank v. Superior Court, 36 Cal.App.4th 148, 159-160, 40 Cal.Rtpr.3d 76 (2005); Armanderiz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 113-114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000);

39

_Shroyer v. New Cingular Wireless Services, Inc._, 2007 U.S.App.LEXIS 19560 (9th Cir. 2007));

(b)    were contained in an adhesive form agreement prepared by Chase and concerning which Chase was in a much stronger bargaining position than the card holder (_ibid._);  _Discover Bank v. Superior Court_, supra, 36 Cal.App.4[th] at 159-160; _Armanderiz v. Foundation Health Psychcare Services, Inc._, supra, 24 Cal.4[th] at 113-114;  _Shroyer v. New Cingular Wireless Services, Inc._, 2007 U.S.App.LEXIS 19560;

(c)    provide Chase with a "right" to make any unilateral modification, including adding new terms to the agreement but provide no such right to the card holder, which makes that provision unconscionable and illegal pursuant to _Net Global Marketing, Inc. v. Dialtone, Inc._, 217 Fed.Appx. 598, 2007 U.S.App.LEXIS 674 (9th Cir. 2007); _Ingle v. Circuit City Stores, Inc._, supra, 328 F.3d at 1179; _Geoffrey v. Washington Mutual Bank_, 484 F.Supp.2d 1115, 1123 (S.D.Cal. 2007); _Bragg v. Linder Research, Inc._, 487 F.Supp.2d 593, 609 (E.D.Pa. 2007)(applying California law); _Conglamur v. Circuit City Stores, Inc._, 2004 Cal.App.Unpub.LEXIS 8140 at *13-14 (2004).

(d)    provide Chase, but not the cardholder, with the ability to take any action without waiving any rights that it might have under the agreement or under the law; and,

(e)    Chase has long been on notice not only that its arbitration provision is unconscionable and unenforceable but, importantly, that in spite of its statements to the contrary, the agreement is controlled by California law.

40

**Tenth Cause of Action**
**(Card Agreement --Violation of Bus. & Prof. Code 17200 et seq.**
**Due To Unfair Practice**

86.    Plaintiffs  repeat and re-allege each of the allegations contained in paragraphs 1, 5, 6-30, 36-47, 49, and  77(a)-(e) as though fully set forth herein.

87.    Chase's card agreement and/or its specified terms (excluding the arbitration provision), due to its unconscionability and illegality, is an unfair practice that either "offends an established public policy [as represented by Civil Code §§ 1670.5] or … is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," [Smith v. State Farm Mutual Automobile Ins. Co., 93 Cal.App.4th 700,  718-719, 113 Cal.Rtpr.2d 399 (2001)], or which violates public policy tethered to specific constitutional, statutory or regulatory provisions such as Sections 1670.5, 1668, and/or 3513.  Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 187, 83 Cal.Rptr.2d 548, 973 P.2d 527.

88.    An unconscionable contract or contract provision or term is, as a matter of law, an unfair practice under the UCL.  See  Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra, 20 Cal.4th at 183; People v. McKale, 25 Cal.3d 626, 683-84 (1979); Smith v. State Farm Mutual Automobile Ins Co., supra, 93 Cal.App.4th at 719; State Farm Fire & Casualty Co. v. Superior Court, 45 Cal.App.4th 1093, 1104, 53 Cal.Rptr.2d 229 (1996); Lyddon v. Rocha-Albertsen, 2006 U.S.Dist.LEXIS 78957 (E.D. Cal. 2006); Ting v. AT&T, 182 F.Supp.2d 902, 921-22, aff'd in part, rev'd on other grounds in part, 319 F.3d 1126, 1150 (9th Cir. 2003).

**Eleventh Cause Of Action**
**(Declaratory Judgment)**

89.    Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-49 as though fully set forth herein.

41

David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,
Complaint

90.     An actual   controversy has arisen and now exists between Plaintiffs and Chase concerning the unconscionability and illegality of Chase's card agreement and arbitration provision contained in that card agreement, respectively, that is common to all credit cards issued by Chase for which a fee is paid by the card holder.  Plaintiffs take the position that the card agreement and the arbitration provision contained therein are unconscionable and illegal under controlling California and Ninth Circuit law and precedents.  Chase takes the obverse position claiming that its card agreement and its arbitration provision contained therein are conscionable and legal.

91.     Plaintiffs desire a judicial determination of their rights and duties, and a declaration that the arbitration provision and/or the card agreement and/or specified terms of the card agreement are unconscionable, illegal and unenforceable.

92.     A judicial determination is necessary and appropriate at this time under the circumstances in order that Plaintiffs may ascertain their rights and duties.

### Class Allegations

93.     The Plaintiffs are members of classes of consumers and residents of California, respectively, and the members of these classes of consumers and residents of California are similarly situated and similarly affected by the acts of Chase.

94.     Pursuant to Fed.R.Civ.P. 23(b)(2) and, alternatively (b)(3)(insofar as an award of equitable statutory and non-statutory restitutionary and injunctive relief is secondary to any punitive damages monetary award), Plaintiffs seek certification of the following classes and subclasses:

(a)     Relative to all UCL and fraud causes of action,

David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,
Complaint

(1)    All persons and entities residing in California who, according to the records of Chase, have been issued and have paid or are paying annual fees to Chase for Chase credit cards issued by Chase (including its subsidiaries, affiliates, or licensees) bearing the Chase name or the Chase trade or service mark or logo pursuant to a card agreement containing the same or similar terms and provisions as those contained in Ex. 14 during any part of the period covered by the applicable limitations period and pendency of this action to the time of final judgment.

(b)    Relative to all CLRA causes of action (and as to Plaintiff Lee alone as representative Plaintiff),

(1)    All consumers residing in California who for personal or household use have been, according to the records of Chase, been issued and have paid or are paying annual fees to Chase for Chase credit cards issued by Chase (including its subsidiaries, affiliates, or licensees) bearing the Chase name or the Chase trade or service mark or logo pursuant to a card member agreement containing the same or similar terms and provisions as those contained in Ex. 14 during any part of the period covered by the applicable limitations period and pendency of this action to the time of final judgment.

95.    Excluded from each class of which Plaintiffs seek certification are (a) all officers and employees of Chase, including its subsidiaries, affiliates, or licensees; (b) persons who, as of the date of class certification, have pending in any court an individual action against any Defendant

43

named in this action, or who have obtained a judgment against any Defendant named in this action, or who have executed a release in favor of any Defendant named in this action which encompasses, adjudicates or releases all of the certified claims in this action; (c)  judges, court personnel, and jurors hearing this matter.

96.    It is impracticable to bring all members of the above classes, as individual plaintiffs, before this court for the reason that the members of the classes are too numerous, representing as they do the fee-paying holders of Chase credit cards residing in California, the number of which are estimated at approximately 7,900,000.

97.    Each member of the Plaintiff classes has suffered an injury of the type and size to that suffered by Plaintiffs and that denial of class relief would result in unjust advantage to Defendants.

98.    Plaintiffs are informed and believe, and thereon allege, that the questions of law or fact common to the classes are substantially similar and predominate over the questions affecting the individual members in that the predominating and primary issues presented are ones of law (i.e., a common core of salient facts and legal theories relating to the unconscionability and illegality of the common "form" arbitration provision and common "form" card agreement, respectively, imposed by Chase on its card holders) and the relief sought is identical (i.e., restitutionary relief, injunctive relief, and common pool of punitive damages).

99.    The claims and defenses of the Plaintiffs are typical of the claims and defenses of the classes in that there is a commonality of interests by and between Plaintiffs and the members of the classes they seek to represent that is patent in that (a) the nature of the claims are identical and predominant common questions of law or fact are exclusively involved (the unconscionability of terms in the arbitration provision and card agreement, respectively, that are

**David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,**
**Complaint**

common to all of the form provisions and agreements imposed by Chase on a "take it or leave it" basis on the card holders and, as to the fraud cause of action, common reliance on the misrepresentations by Plaintiffs and class members exists); (b)    the Plaintiffs, as class representatives, are typical of the classes and have only claims and defenses that are typical of those of the respective classes in that, for instance, the claims for and quantum of injunctive and restitutionary relief are identical for each member of each class (i.e., the amount of the fee(s) paid by them) or easily subject to proof without separate adjudications.

100.    The interests of the respective classes will be fairly and adequately protected by the plaintiffs for the reasons that the success or failure of the Plaintiffs is identical with the success or failure of each of the members of the classes, no antagonisms exist between the interest of the Plaintiffs and the classes, Plaintiffs are committed to the vigorous prosecution of this action, and Plaintiffs' counsel is experienced and knowledge in the area of consumer protection law and class actions.

101.    A risk exists that prosecution of separate actions by Plaintiffs and the members of the respective classes they seek to represent would create a risk of incompatible or inconsistent adjudications and incompatible standards of conduct for Defendant or create a risk of prejudice to individual class members not parties to the action.

102.    Chase has acted or refused to act on grounds generally applicable to the class in that it has a common form arbitration and card agreement, respectively, and uniformly refuses to modify its agreement and arbitration provision on grounds generally applicable to the class.

103.    The injunctive, restitutionary, and/or declaratory relief sought by the individual Plaintiffs would benefit the class as a whole.

45

104.    Common questions of fact or law involving the class claims predominate over questions affecting individual members and a class action is the superior method for a fair and efficient adjudication of the case.

105.    Plaintiffs are advised and believe, and on that basis allege, that as each of the classes and sub-classes as alleged no notice is required in that the statutory injunctive and restitutionary relief as well as declaratory relief sought predominate over any claim for monetary damages in the form of punitive damages.

**Prayer For Relief**

WHEREFORE, Plaintiffs pray on behalf of themselves and all other consumers and residents, respectively, who are similarly situated and constitute the respective classes, which Plaintiffs seek to represent judgment as follows:

a.    For an order requiring Defendants to show cause why they should not be enjoined as hereinafter set forth, during the pendency of this action;

b.    For a temporary restraining order, a preliminary injunction and a permanent injunction, all enjoining Defendants and their respective agents, servants, parents, subsidiaries, assigns and employees, and all persons acting under, in concert with, or for it from enforcing the Arbitration Provision of the Chase card agreement found to be unenforceable because of unconscionability or illegality.

c.    For a temporary restraining order, a preliminary injunction and a permanent injunction, all enjoining Defendants and their respective agents, servants, parents, subsidiaries, assigns and employees, and all persons acting under, in concert with, or for it from enforcing the Chase card agreement found to be unenforceable because of unconscionability or illegality, or fraud.

David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,
Complaint

d.      For non-statutory and/or statutory restitution (including disgorgement of profits) for all causes of action.

e.      For punitive damages relative to the CLRA and fraud causes of action, respectively.

f.      For declaratory judgment.

h.      For attorney's fees and costs as authorized by statute as to the CLRA claims and by precedent as to the respective UCL and fraud causes of action.

i.      For such other and further relief was the court may deem proper.


Dated: September 13, 2007                          Respectfully submitted,


                                                  _____
                                                  Matthew S. Hale
                                                  Attorney for Plaintiffs

David J. Lee, et al. v. Chase Manhattan Bank U.S.A., N.A., et al.,
Complaint

## RATE, FEE AND OTHER COST INFORMATION

**Annual Percentage Rate (APR) for purchases**

# 13.24% variable.[a]

For each Qualifying Purchase,[b] provided your account is not past due on the purchase date: 0% fixed for 60 days from the date of the transaction (promotional period).

**Other APRs**

Balance Transfer APR: 13.24% variable.

Cash Advance APR: 24.24% variable

Default APR: Up to 32.239998% variable. See explanation below.[c]

Overdraft Advance APR: 13.99% fixed (not available in some states)

**Variable rate information**

The following APRs may vary monthly based on the Prime Rate:[d]

Purchase and Balance Transfer APR: The Prime Rate plus 4.99%.

Cash Advance APR: The Prime Rate plus 15.99%.

Default APR: The Prime Rate plus up to 23.99%.

**Grace period for repayment of purchase balances**

At least 20 days.

**Method of computing the balance for purchases**

**Exhibit 1, Page 48**

Average daily balance method (including new purchases).

**Annual fee**

None first year. After that, $50.00.

**Minimum finance charge**

$1.00

**Transaction fee for balance transfers**

3% of the amount of each transaction, but not less than $5.00 nor more than $75.00.

**Transaction fees for cash advances**

3% of the amount of the transaction, but not less than $10.00.

**Late Payment fee**

$15.00 on balances up to, but not including, $100.00; $29.00 on balances of $100.00 up to, but not including, $250.00; and $39.00 on balances of $250.00 and over.

**Over-the-Credit-Limit fee**

None

**International Transactions**

3% of the U.S. dollar amount of the transaction, whether originally made in U.S. dollars or converted from a foreign currency.

[a]**Rates, fees, and terms may change:** We reserve the right to change the account terms (including the APRs) at any time for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account. For example, we may change the terms based on information in your credit report, such as the number of other credit card accounts you have and their balances. The APRs for this offer are not guaranteed; APRs may change to higher APRs, fixed APRs may change to variable APRs, or variable APRs may change to fixed APRs. Any changes will be in accordance with your account agreement.

[b]Qualifying Purchases are those that meet all of the following criteria. 1) The purchase amount posted to your account must be greater than $1,000. 2) The total purchase amount must be below your revolving credit amount, or if the purchase amount causes your account balance to exceed your revolving credit amount, that portion of the purchase amount that is below the revolving credit amount qualifies. 3) The purchase is made at retail establishments or with contractors that classify their merchant locations for Visa as contracted building services, building and construction materials, and landscaping services as defined in your account agreement. We reserve the right to determine which purchases qualify as Qualifying Purchases. Any purchase that does not meet the criteria for Qualifying Purchases is not eligible for promotional financing nor is it exempt from the minimum payment requirements, and will

**Exhibit 1, Page 49**

file:///C|/Documents%20and%20Settings/Matt%20Hale/M...20Documents/Contractor%20Terms%20&%20Conditions.htm (2 of 5)8/10/2007 9:03:18 AM

accrue finance charges at the applicable APR for purchases as provided in your account agreement. All balances above the revolving credit amount are added to your total minimum payment due. Other restrictions and exclusions apply. You will receive complete terms and conditions once you become a cardmember.

[c]Your APRs may increase if you default under any Cardmember Agreement you have with us for any of the following reasons: We do not receive, for any payment that is owed on this Account or any other account or loan with us, at least the minimum payment due by the date and time due; you exceed your credit line on this Account, if applicable; or you make a payment to us that is not honored by your bank. Your APRs may increase as of the first day of the billing cycle in which the default occurs. We may consider the following factors to determine the default rate: the length of time your Account has been open; the existence, seriousness and timing of defaults; other indications of your Account usage and performance; and information about your other relationships with us, any of our related companies or from consumer credit reports.

[d]The "Prime Rate" is the highest prime rate published in the Money Rates column of *The Wall Street Journal* two business days before the Closing Date on the statement for each billing period. Variable APRs are based on the 8.25% prime rate on 07/05/2006.

## TERMS & CONDITIONS

**Authorization:** When you ("you", "your" means the owner, officer, or partner of the company with the authority to bind the company to the terms & conditions of this offer and the Business Cardmember Agreement, and who is agreeing to the terms on their own behalf and that of the company) respond to this credit card offer from Chase Bank USA, N.A. ("Chase", "we", or "us"), you agree to the following:

1. You authorize us to obtain business and consumer credit bureau reports in connection with your request for an account. If an account is opened, we may obtain credit bureau reports in connection with extensions of credit or the review or collection of your account. If you ask, we will tell you the name and address of each credit bureau from which we obtained a report about you.
2. If an account is opened, you will receive a Cardmember Agreement with your card(s). By using the account or any card, or authorizing their use, you agree to the terms of the Cardmember Agreement.
3. You authorize us to allocate your payments and credits in a way that is most favorable to or convenient for us. For example, except for promotional balances for Qualifying Purchases, you authorize us to apply your payments and credits to balances with lower APRs (such as promotional APRs) before balances with higher APRs.
4. Claims and disputes are subject to arbitration.
5. **As described in the Cardmember Agreement, we reserve the right to change the**

**Exhibit 1, Page 50**

file:///C|/Documents%20and%20Settings/Matt%20Hale/M...20Documents/Contractor%20Terms%20&%20Conditions.htm (3 of 5)8/10/2007 9:03:18 AM

**terms of your account (including the APRs) at any time, for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account.**

6. **You also certify you have the authority to permit us to issue your credit card containing the Company name if completed on the form.**

**Individual and Company Liability:** **You understand that by responding to this offer you agree to be personally responsible for payment of all balances incurred on all cards and accounts issued pursuant to this application now or whenever such additional accounts may be established in the future, and that the Company is jointly liable for all balances on all accounts in the Company name. You understand that if you leave the employment of the Company, you will continue to be responsible for the outstanding balances on the accounts. You must notify us immediately to close the accounts and prevent further usage.**

Before we approve you for a credit card, we will review your credit report, the Company's financial information, and the information you provide with your response to confirm that you meet the criteria for this offer. Based on this review, you may not receive a card. We may request additional information for a revolving credit amount above $25,000.

If an account is approved, all cardmembers will have access to 100% of the approved revolving credit amount and any amount over the revolving credit amount that we authorize. If you would like to set spending limits on any cardmembers, please contact our Cardmember Service Department after the account has been opened.

By becoming a Visa Business Card cardmember, you agree that the card is being used only for business purposes and that the card is being issued to a public or private company including a sole proprietor or employees or contractors of an organization.

You understand that if we have received a request for a Visa Business Card from you within the last 60 days, this form will not be processed.

You must be at least 18 years old to qualify (19 in AL and NE).

We reserve the right to change the benefit features associated with your card at any time.

**Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all customers, and that credit reporting agencies maintain separate histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with the law.

**Balance Transfer Option:** You agree that all transferred balances consist of business-related

**Exhibit 1, Page 51**

file:///C|/Documents%20and%20Settings/Matt%20Hale/M...20Documents/Contractor%20Terms%20&%20Conditions.htm (4 of 5)8/10/2007 9:03:18 AM

expenses. The Visa,® MasterCard,® Discover,® American Express® or any store card account (s) you list will show a credit, reducing the amount you owe them by the amount you transferred. The available credit on your new account will be reduced, just as if you had made a purchase. The balance transfer amount(s) will show up on your initial statement for your new account. Your other credit card account(s) will not be closed even if you transfer your entire balance(s). If you want to close an account, please contact the other credit card company directly. It may take up to three weeks to set up your account and post the balance transfers. Therefore, you may need to make payments to your other account(s) to keep them current. Balance transfers are contingent upon issuance of your new account. There will be a transaction fee for each balance transfer if one is disclosed in the Rate, Fee and Other Cost Information that accompany this offer. We reserve the right to decline to process any partial or full balance transfer request and will not process a balance transfer request from any other account with us or any of our affiliates.

If you omit any information on the form, we may deny your request for an account. You must have a valid permanent home address, and the Company must be headquartered, within the 50 United States or the District of Columbia. The information about the costs of the card described in this form is accurate as of 07/05/2006. This information may have changed after that date. To find out what may have changed, call 888-215-3049.

**USA Patriot Act:** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means to you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

© 2005 JPMorgan Chase & Co.

**Exhibit 1, Page 52**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Documents...0Re%20Chase%20Continental%20Airlines%20Business%20MasterCard.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 54 of 147

# RATE, FEE AND OTHER COST INFORMATION

**Annual Percentage Rate (APR) for purchases**

A 7.99% fixed APR for the first 6 billing cycles following the opening of your account. After that, 18.24% variable.[a]

**Other APRs**

Balance Transfer APR: A 7.99% fixed APR for the first 6 billing cycles following the opening of your account. After that, 18.24% variable.

Cash Advance APR: 24.24% variable

Default APR: Up to 32.239998% variable. See explanation below.[b]

Overdraft Advance APR: 13.99% fixed (not available in some states)

**Variable rate information**

The following APRs may vary monthly based on the Prime Rate:[c]

Purchase and Balance Transfer APR: The Prime Rate plus 9.99% for outstanding and new balances after the introductory period.

Cash Advance APR: The Prime Rate plus 15.99%.

Default APR: The Prime Rate plus up to 23.99%.

**Grace period for repayment of purchase balances**

At least 20 days.

**Method of computing the balance for purchases**

**Exhibit 2, Page 53**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My...20Continental%20Airlines%20Business%20MasterCard.htm (1 of 5)8/10/2007 10:19:31 AM

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Documents...0Re%20Chase%20Continental%20Airlines%20Business%20MasterCard.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 55 of 147

Average daily balance method (including new purchases).

## Annual fee

Annual membership fee: $75.00 per year; each additional card: $20.00 per year.

## Minimum finance charge

$1.00

## Transaction fee for balance transfers

3% of the amount of each transaction, but not less than $5.00 nor more than $75.00.

## Transaction fees for cash advances

3% of the amount of the transaction, but not less than $10.00.

## Late Payment fee

$15.00 if the balance is up to but not including $250.00; $39.00 if the balance is $250.00 and over.

## Over-the-Credit-Limit fee

$39.00

## International Transactions

3% of the U.S. dollar amount of the transaction, whether originally made in U.S. dollars or converted from a foreign currency.

[a]**Rates, fees, and terms may change:** We reserve the right to change the account terms (including the APRs) at any time for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account. For example, we may change the terms based on information in your credit report, such as the number of other credit card accounts you have and their balances. The APRs for this offer are not guaranteed; APRs may change to higher APRs, fixed APRs may change to variable APRs, or variable APRs may change to fixed APRs. Any changes will be in accordance with your account agreement.

[b]Your APRs may increase if you default under any Cardmember Agreement you have with us for any of the following reasons: We do not receive, for any payment that is owed on this Account or any other account or loan with us, at least the minimum payment due by the date and time due; you exceed your credit line on this Account, if applicable; or you make a payment to us that is not honored by your bank. Your APRs may increase as of the first day of the billing cycle in which the default occurs. We may consider the following factors to determine the default rate: the length of time your Account has been open; the existence, seriousness and timing of defaults; other indications of your Account usage and performance; and information about your other relationships with us, any of our related companies or from consumer credit reports.

**Exhibit 2, Page 54**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Documents...0Re%20Chase%20Continental%20Airlines%20Business%20MasterCard.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 56 of 147

cThe "Prime Rate" is the highest prime rate published in the Money Rates column of *The Wall Street Journal* two business days before the Closing Date on the statement for each billing period. Variable APRs are based on the 8.25% prime rate on 07/05/2006.

## TERMS & CONDITIONS

**Authorization:** When you ("you", "your" means the owner, officer, or partner of the company with the authority to bind the company to the terms & conditions of this offer and the Business Cardmember Agreement, and who is agreeing to the terms on their own behalf and that of the company) respond to this credit card offer from Chase Bank USA, N.A. ("Chase", "we", or "us"), you agree to the following:

1. You authorize us to obtain business and consumer credit bureau reports in connection with your request for an account. If an account is opened, we may obtain credit bureau reports in connection with extensions of credit or the review or collection of your account. If you ask, we will tell you the name and address of each credit bureau from which we obtained a report about you.
2. If an account is opened, you will receive a Cardmember Agreement with your card(s). By using the account or any card, or authorizing their use, you agree to the terms of the Cardmember Agreement.
3. You authorize us to allocate your payments and credits in a way that is most favorable to or convenient for us. For example, you authorize us to apply your payments and credits to balances with lower APRs (such as promotional APRs) before balances with higher APRs.
4. Claims and disputes are subject to arbitration.
5. **As described in the Cardmember Agreement, we reserve the right to change the terms of your account (including the APRs) at any time, for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account.**
6. **You also certify you have the authority to permit us to issue your credit card containing the Company name if completed on the form.**

**Individual and Company Liability: You understand that by responding to this offer you agree to be personally responsible for payment of all balances incurred on all cards and accounts issued pursuant to this application now or whenever such additional accounts may be established in the future, and that the Company is jointly liable for all balances on all accounts in the Company name. You understand that if you leave the employment of the Company, you will continue to be responsible for the outstanding balances on the accounts. You must notify us immediately to close the accounts and prevent further usage.**

**Exhibit 2, Page 55**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Documents...0Re%20Chase%20Continental%20Airlines%20Business%20MasterCard.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 57 of 147

Before we approve you for a credit card, we will review your credit report, the Company's financial information, and the information you provide with your response to confirm that you meet the criteria for this offer. Based on this review, you may not receive a card. We may request additional information for a credit line above $25,000.

If an account is approved, all cardmembers will have access to 100% of the approved credit limit. If you would like to set spending limits on any cardmembers, please contact our Cardmember Service Department after the account has been opened.

By becoming a MasterCard BusinessCard cardmember, you agree that the card is being used only for business purposes and that the card is being issued to a public or private company including a sole proprietor or employees or contractors of an organization.

You understand that if we have received a request for a MasterCard BusinessCard from you within the last 60 days, this form will not be processed.

You must be at least 18 years old to qualify (19 in AL and NE).

We reserve the right to change the benefit features associated with your card at any time.

**Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all customers, and that credit reporting agencies maintain separate histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with the law.

**Balance Transfer Option:** You agree that all transferred balances consist of business-related expenses. The Visa,® MasterCard,® Discover,® American Express® or any store card account (s) you list will show a credit, reducing the amount you owe them by the amount you transferred. The available credit on your new account will be reduced, just as if you had made a purchase. The balance transfer amount(s) will show up on your initial statement for your new account. Your other credit card account(s) will not be closed even if you transfer your entire balance(s). If you want to close an account, please contact the other credit card company directly. It may take up to three weeks to set up your account and post the balance transfers. Therefore, you may need to make payments to your other account(s) to keep them current. Balance transfers are contingent upon issuance of your new account. There will be a transaction fee for each balance transfer if one is disclosed in the Rate, Fee and Other Cost Information that accompany this offer. We reserve the right to decline to process any partial or full balance transfer request and will not process a balance transfer request from any other account with us or any of our affiliates.

If you omit any information on the form, we may deny your request for an account. You must have a valid permanent home address, and the Company must be headquartered, within the 50

**Exhibit 2, Page 56**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Documents...0Re%20Chase%20Continental%20Airlines%20Business%20MasterCard.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 58 of 147

United States or the District of Columbia. The information about the costs of the card described in this form is accurate as of 07/05/2006. This information may have changed after that date. To find out what may have changed, call 888-215-3049.

**USA Patriot Act:** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means to you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

© 2005 JPMorgan Chase & Co.

**Exhibit 2, Page 57**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My...20Continental%20Airlines%20Business%20MasterCard.htm (5 of 5)8/10/2007 10:19:31 AM

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Documen...%20-%20Chase%20Marriott%20Rewards%20Visa%20Business%20Card.htm

Case 3:07-cv-04732-MJJ     Document 1     Filed 09/14/2007     Page 59 of 147

Exhibit 1, Page 48

# RATE, FEE AND OTHER COST INFORMATION

**Annual Percentage Rate (APR) for purchases**

A 3.90% fixed APR for the first 6 billing cycles following the opening of your account. After that, 18.24% variable.[a]

**Other APRs**

Balance Transfer APR: A 3.90% fixed APR for the first 6 billing cycles following the opening of your account. After that, 18.24% variable.

Cash Advance APR: 24.24% variable

Default APR: Up to 32.239998% variable. See explanation below.[b]

Overdraft Advance APR: 13.99% fixed (not available in some states)

**Variable rate information**

The following APRs may vary monthly based on the Prime Rate:[c]

Purchase and Balance Transfer APR: The Prime Rate plus 9.99% for outstanding and new balances after the introductory period.

Cash Advance APR: The Prime Rate plus 15.99%.

Default APR: The Prime Rate plus up to 23.99%.

**Grace period for repayment of purchase balances**

At least 20 days.

**Method of computing the balance for purchases**

**Exhibit 3, Page 58**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Documen...%20-%20Chase%20Marriott%20Rewards%20Visa%20Business%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 60 of 147

Average daily balance method (including new purchases).

**Annual fee**

None first year. After that, $30.00.

**Minimum finance charge**

$1.00

**Transaction fee for balance transfers**

3% of the amount of each transaction, but not less than $5.00 nor more than $75.00.

**Transaction fees for cash advances**

3% of the amount of the transaction, but not less than $10.00.

**Late Payment fee**

$15.00 on balances up to, but not including, $100.00; $29.00 on balances of $100.00 up to, but not including, $250.00; and $39.00 on balances of $250.00 and over.

**Over-the-Credit-Limit fee**

$39.00

**International Transactions**

3% of the U.S. dollar amount of the transaction, whether originally made in U.S. dollars or converted from a foreign currency.

[a]**Rates, fees, and terms may change:** We reserve the right to change the account terms (including the APRs) at any time for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account. For example, we may change the terms based on information in your credit report, such as the number of other credit card accounts you have and their balances. The APRs for this offer are not guaranteed; APRs may change to higher APRs, fixed APRs may change to variable APRs, or variable APRs may change to fixed APRs. Any changes will be in accordance with your account agreement.

[b]Your APRs may increase if you default under any Cardmember Agreement you have with us for any of the following reasons: We do not receive, for any payment that is owed on this Account or any other account or loan with us, at least the minimum payment due by the date and time due; you exceed your credit line on this Account, if applicable; or you make a payment to us that is not honored by your bank. Your APRs may increase as of the first day of the billing cycle in which the default occurs. We may consider the following factors to determine the default rate: the length of time your Account has been open; the existence, seriousness and timing of defaults; other indications of your Account usage and performance; and information about your other relationships with us, any of our related companies or from consumer credit reports.

**Exhibit 3, Page 59**

file:///C|/Documents%20and%20Settings/Matt%20Hale/...%20Marriott%20Rewards%20Visa%20Business%20Card.htm (2 of 5)8/10/2007 10:23:09 AM

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Documen...%20-%20Chase%20Marriott%20Rewards%20Visa%20Business%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 61 of 147

<sup>c</sup>The "Prime Rate" is the highest prime rate published in the Money Rates column of *The Wall Street Journal* two business days before the Closing Date on the statement for each billing period. Variable APRs are based on the 8.25% prime rate on 07/05/2006.

## TERMS & CONDITIONS

**Authorization:** When you ("you", "your" means the owner, officer, or partner of the company with the authority to bind the company to the terms & conditions of this offer and the Business Cardmember Agreement, and who is agreeing to the terms on their own behalf and that of the company) respond to this credit card offer from Chase Bank USA, N.A. ("Chase", "we", or "us"), you agree to the following:

1. You authorize us to obtain business and consumer credit bureau reports in connection with your request for an account. If an account is opened, we may obtain credit bureau reports in connection with extensions of credit or the review or collection of your account. If you ask, we will tell you the name and address of each credit bureau from which we obtained a report about you.
2. If an account is opened, you will receive a Cardmember Agreement with your card(s). By using the account or any card, or authorizing their use, you agree to the terms of the Cardmember Agreement.
3. You authorize us to allocate your payments and credits in a way that is most favorable to or convenient for us. For example, you authorize us to apply your payments and credits to balances with lower APRs (such as promotional APRs) before balances with higher APRs.
4. Claims and disputes are subject to arbitration.
5. **As described in the Cardmember Agreement, we reserve the right to change the terms of your account (including the APRs) at any time, for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account.**
6. **You also certify you have the authority to permit us to issue your credit card containing the Company name if completed on the form.**

**Individual and Company Liability:** **You understand that by responding to this offer you agree to be personally responsible for payment of all balances incurred on all cards and accounts issued pursuant to this application now or whenever such additional accounts may be established in the future, and that the Company is jointly liable for all balances on all accounts in the Company name. You understand that if you leave the employment of the Company, you will continue to be responsible for the outstanding balances on the accounts. You must notify us immediately to close the accounts and prevent further usage.**

**Exhibit 3, Page 60**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Documen...%20-%20Chase%20Marriott%20Rewards%20Visa%20Business%20Card.htm

Case 3:07-cv-04732-MJJ     Document 1     Filed 09/14/2007     Page 62 of 147

Before we approve you for a credit card, we will review your credit report, the Company's financial information, and the information you provide with your response to confirm that you meet the criteria for this offer. Based on this review, you may not receive a card. We may request additional information for a credit line above $25,000.

If an account is approved, all cardmembers will have access to 100% of the approved credit limit. If you would like to set spending limits on any cardmembers, please contact our Cardmember Service Department after the account has been opened.

By becoming a Visa Business Card cardmember, you agree that the card is being used only for business purposes and that the card is being issued to a public or private company including a sole proprietor or employees or contractors of an organization.

You understand that if we have received a request for a Visa Business Card from you within the last 60 days, this form will not be processed.

You must be at least 18 years old to qualify (19 in AL and NE).

We reserve the right to change the benefit features associated with your card at any time.

**Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all customers, and that credit reporting agencies maintain separate histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with the law.

**Balance Transfer Option:** You agree that all transferred balances consist of business-related expenses. The Visa,® MasterCard,® Discover,® American Express® or any store card account (s) you list will show a credit, reducing the amount you owe them by the amount you transferred. The available credit on your new account will be reduced, just as if you had made a purchase. The balance transfer amount(s) will show up on your initial statement for your new account. Your other credit card account(s) will not be closed even if you transfer your entire balance(s). If you want to close an account, please contact the other credit card company directly. It may take up to three weeks to set up your account and post the balance transfers. Therefore, you may need to make payments to your other account(s) to keep them current. Balance transfers are contingent upon issuance of your new account. There will be a transaction fee for each balance transfer if one is disclosed in the Rate, Fee and Other Cost Information that accompany this offer. We reserve the right to decline to process any partial or full balance transfer request and will not process a balance transfer request from any other account with us or any of our affiliates.

If you omit any information on the form, we may deny your request for an account. You must have a valid permanent home address, and the Company must be headquartered, within the 50

**Exhibit 3, Page 61**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Documen...%20-%20Chase%20Marriott%20Rewards%20Visa%20Business%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 63 of 147

United States or the District of Columbia. The information about the costs of the card described in this form is accurate as of 07/05/2006. This information may have changed after that date. To find out what may have changed, call 888-215-3049.

**USA Patriot Act:** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means to you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

© 2005 JPMorgan Chase & Co.

**Exhibit 3, Page 62**

file:///C|/Documents%20and%20Settings/Matt%20Hale/...%20Marriott%20Rewards%20Visa%20Business%20Card.htm (5 of 5)8/10/2007 10:23:09 AM

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Documen...20Re%20Chase%20Priority%20Rewards%20Visa%20Business%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 64 of 147

**Exhibit 1, I**

## RATE, FEE AND OTHER COST INFORMATION

**+**                                                                                    **+**

**Annual Percentage Rate (APR) for purchases**

A 0% fixed APR for the first 6 billing cycles following the opening of your account. After that, 16.24% variable.[a]

**Other APRs**

Balance Transfer APR: A 0% fixed APR for the first 6 billing cycles following the opening of your account. After that, 16.24% variable.

Cash Advance APR: 24.24% variable

Default APR: Up to 32.239998% variable. See explanation below.[b]

Overdraft Advance APR: 13.99% fixed (not available in some states)

**Variable rate information**

The following APRs may vary monthly based on the Prime Rate:[c]

Purchase and Balance Transfer APR: The Prime Rate plus 7.99% for outstanding and new balances after the introductory period.

Cash Advance APR: The Prime Rate plus 15.99%.

Default APR: The Prime Rate plus up to 23.99%.

**Grace period for repayment of purchase balances**

At least 20 days.

**Method of computing the balance for purchases**

**Exhibit 4, Page 63**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Documen...20Re%20Chase%20Priority%20Rewards%20Visa%20Business%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 65 of 147

Average daily balance method (including new purchases).

**Annual fee**

None first year. After that, $29.00.

**Minimum finance charge**

$1.00

**Transaction fee for balance transfers**

3% of the amount of each transaction, but not less than $5.00 nor more than $75.00.

**Transaction fees for cash advances**

3% of the amount of the transaction, but not less than $10.00.

**Late Payment fee**

$15.00 if the balance is up to but not including $250.00; $39.00 if the balance is $250.00 and over.

**Over-the-Credit-Limit fee**

$39.00

**International Transactions**

3% of the U.S. dollar amount of the transaction, whether originally made in U.S. dollars or converted from a foreign currency.

[a]**Rates, fees, and terms may change:** We reserve the right to change the account terms (including the APRs) at any time for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account. For example, we may change the terms based on information in your credit report, such as the number of other credit card accounts you have and their balances. The APRs for this offer are not guaranteed; APRs may change to higher APRs, fixed APRs may change to variable APRs, or variable APRs may change to fixed APRs. Any changes will be in accordance with your account agreement.

[b]Your APRs may increase if you default under any Cardmember Agreement you have with us for any of the following reasons: We do not receive, for any payment that is owed on this Account or any other account or loan with us, at least the minimum payment due by the date and time due; you exceed your credit line on this Account, if applicable; or you make a payment to us that is not honored by your bank. Your APRs may increase as of the first day of the billing cycle in which the default occurs. We may consider the following factors to determine the default rate: the length of time your Account has been open; the existence, seriousness and timing of defaults; other indications of your Account usage and performance; and information about your other relationships with us, any of our related companies or from consumer credit reports.

**Exhibit 4, Page 64**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Documen...20Re%20Chase%20Priority%20Rewards%20Visa%20Business%20Card.htm

Case 3:07-cv-04732-MJJ     Document 1     Filed 09/14/2007     Page 66 of 147

<sup>c</sup>The "Prime Rate" is the highest prime rate published in the Money Rates column of *The Wall Street Journal* two business days before the Closing Date on the statement for each billing period. Variable APRs are based on the 8.25% prime rate on 07/05/2006.

## TERMS & CONDITIONS

**Authorization:** When you ("you", "your" means the owner, officer, or partner of the company with the authority to bind the company to the terms & conditions of this offer and the Business Cardmember Agreement, and who is agreeing to the terms on their own behalf and that of the company) respond to this credit card offer from Chase Bank USA, N.A. ("Chase", "we", or "us"), you agree to the following:

1. You authorize us to obtain business and consumer credit bureau reports in connection with your request for an account. If an account is opened, we may obtain credit bureau reports in connection with extensions of credit or the review or collection of your account. If you ask, we will tell you the name and address of each credit bureau from which we obtained a report about you.
2. If an account is opened, you will receive a Cardmember Agreement with your card(s). By using the account or any card, or authorizing their use, you agree to the terms of the Cardmember Agreement.
3. You authorize us to allocate your payments and credits in a way that is most favorable to or convenient for us. For example, you authorize us to apply your payments and credits to balances with lower APRs (such as promotional APRs) before balances with higher APRs.
4. Claims and disputes are subject to arbitration.
5. **As described in the Cardmember Agreement, we reserve the right to change the terms of your account (including the APRs) at any time, for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account.**
6. **You also certify you have the authority to permit us to issue your credit card containing the Company name if completed on the form.**

**Individual and Company Liability: You understand that by responding to this offer you agree to be personally responsible for payment of all balances incurred on all cards and accounts issued pursuant to this application now or whenever such additional accounts may be established in the future, and that the Company is jointly liable for all balances on all accounts in the Company name. You understand that if you leave the employment of the Company, you will continue to be responsible for the outstanding balances on the accounts. You must notify us immediately to close the accounts and prevent further usage.**

**Exhibit 4, Page 65**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Documen...20Re%20Chase%20Priority%20Rewards%20Visa%20Business%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 67 of 147

Before we approve you for a credit card, we will review your credit report, the Company's financial information, and the information you provide with your response to confirm that you meet the criteria for this offer. Based on this review, you may not receive a card. We may request additional information for a credit line above $25,000.

If an account is approved, all cardmembers will have access to 100% of the approved credit limit. If you would like to set spending limits on any cardmembers, please contact our Cardmember Service Department after the account has been opened.

By becoming a Visa Business Card cardmember, you agree that the card is being used only for business purposes and that the card is being issued to a public or private company including a sole proprietor or employees or contractors of an organization.

You understand that if we have received a request for a Visa Business Card from you within the last 60 days, this form will not be processed.

You must be at least 18 years old to qualify (19 in AL and NE).

We reserve the right to change the benefit features associated with your card at any time.

**Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all customers, and that credit reporting agencies maintain separate histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with the law.

**Balance Transfer Option:** You agree that all transferred balances consist of business-related expenses. The Visa,® MasterCard,® Discover,® American Express® or any store card account (s) you list will show a credit, reducing the amount you owe them by the amount you transferred. The available credit on your new account will be reduced, just as if you had made a purchase. The balance transfer amount(s) will show up on your initial statement for your new account. Your other credit card account(s) will not be closed even if you transfer your entire balance(s). If you want to close an account, please contact the other credit card company directly. It may take up to three weeks to set up your account and post the balance transfers. Therefore, you may need to make payments to your other account(s) to keep them current. Balance transfers are contingent upon issuance of your new account. There will be a transaction fee for each balance transfer if one is disclosed in the Rate, Fee and Other Cost Information that accompany this offer. We reserve the right to decline to process any partial or full balance transfer request and will not process a balance transfer request from any other account with us or any of our affiliates.

If you omit any information on the form, we may deny your request for an account. You must have a valid permanent home address, and the Company must be headquartered, within the 50

**Exhibit 4, Page 66**

United States or the District of Columbia. The information about the costs of the card described in this form is accurate as of 07/05/2006. This information may have changed after that date. To find out what may have changed, call 888-215-3049.

**USA Patriot Act:** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means to you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

© 2005 JPMorgan Chase & Co.

**Exhibit 4, Page 67**

file:///C|/Documents%20and%20Settings/Matt%20Hale/...%20Priority%20Rewards%20Visa%20Business%20Card.htm (5 of 5)8/10/2007 10:29:19 AM

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Document...hwest%20Airlines%20Rapid%20Rewards%20Visa%20Business%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 69 of 147

**Exhibit 1,**

# RATE, FEE AND OTHER COST INFORMATION

+                                                                                  +

**Annual Percentage Rate (APR) for purchases**

16.9% variable.[a]

**Other APRs**

Balance Transfer APR: 16.9% variable.

Cash Advance APR: 24.24% variable

Default APR: 32.239998% variable. See explanation below.[b]

Overdraft Advance APR: 13.99% fixed (not available in some states)

**Variable rate information**

The following APRs may vary monthly based on the Prime Rate:[c]

Purchase and Balance Transfer APR: The Prime Rate plus 8.65%.

Cash Advance APR: The Prime Rate plus 15.99%.

Default APR: The Prime Rate plus up to 23.99%.

**Grace period for repayment of purchase balances**

At least 20 days

**Method of computing the balance for purchases**

Average daily balance method (including new purchases).

**Exhibit 5, Page 68**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Document...hwest%20Airlines%20Rapid%20Rewards%20Visa%20Business%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 70 of 147

**Annual fee**

$59.00

**Minimum finance charge**

$1.00

**Transaction fee for balance transfers**

3% of the amount of each transaction, but not less than $5.00 nor more than $75.00.

**Transaction fees for cash advances**

3% of the amount of the transaction, but not less than $10.00.

**Other fees**

**Late Payment fee:** $15.00 on balances up to, but not including, $100.00; $29.00 on balances of $100.00 up to, but not including, $250.00; and $39.00 on balances of $250.00 and over.

**Over-the-Credit-Limit fee:** $39.00

**International Transactions:** 3% of the U.S. dollar amount of the transaction, whether originally made in U.S. dollars or converted from a foreign currency.

[a]**Rates, fees, and terms may change:** We reserve the right to change the account terms (including the APRs) at any time for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account. For example, we may change the terms based on information in your credit report, such as the number of other credit card accounts you have and their balances. The APRs for this offer are not guaranteed; APRs may change to higher APRs, fixed APRs may change to variable APRs, or variable APRs may change to fixed APRs. Any changes will be in accordance with your account agreement.

[b]Your APRs may increase if you default under any Cardmember Agreement you have with us for any of the following reasons: We do not receive, for any payment that is owed on this Account or any other account or loan with us, at least the minimum payment due by the date and time due; you exceed your credit line on this Account, if applicable; or you make a payment to us that is not honored by your bank. Your APRs may increase as of the first day of the billing cycle in which the default occurs. We may consider the following factors to determine the default rate: the length of time your Account has been open; the existence, seriousness and timing of defaults; other indications of your Account usage and performance; and information about your other relationships with us, any of our related companies or from consumer credit reports.

**Exhibit 5, Page 69**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Document...hwest%20Airlines%20Rapid%20Rewards%20Visa%20Business%20Card.htm

Case 3:07-cv-04732-MJJ     Document 1     Filed 09/14/2007     Page 71 of 147

cThe "Prime Rate" is the highest prime rate published in the Money Rates column of *The Wall Street Journal* two business days before the Closing Date on the statement for each billing period. Variable APRs are based on the 8.25% prime rate on 07/05/2006.

## TERMS & CONDITIONS

**Authorization:** When you respond to this credit card offer from Chase Bank USA, N.A. ("Chase", "we", or "us"), you agree to the following:

1. You authorize us to obtain business and consumer credit bureau reports in connection with your request for an account. If an account is opened, we may obtain credit bureau reports in connection with extensions of credit or the review or collection of your account. If you ask, we will tell you the name and address of each credit bureau from which we obtained a report about you.
2. If an account is opened, you will receive a Cardmember Agreement with your card(s). By using the account or any card, or authorizing their use, you agree to the terms of the Cardmember Agreement.
3. You authorize us to allocate your payments and credits in a way that is most favorable to or convenient for us. For example, you authorize us to apply your payments and credits to balances with lower APRs (such as promotional APRs) before balances with higher APRs.
4. Claims and disputes are subject to arbitration.
5. **As described in the Cardmember Agreement, we reserve the right to change the terms of your account (including the APRs) at any time, for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account.**
6. **You also certify you have the authority to permit us to issue your credit card containing the Company name if completed on the form.**

**Individual and Company Liability: You understand that by applying for this offer you agree to be personally responsible for payment of all balances incurred on all cards and accounts issued pursuant to this application now or whenever such additional accounts may be established in the future. If you indicated that you are acting as an officer of the Company with the ability to bind the Company to the obligations of this agreement, then the Company is jointly liable for all balances on all accounts in the Company name. You understand that if you leave the employment of the Company, you will continue to be responsible for the outstanding balances on the accounts. You must notify us immediately to close the accounts and prevent further usage.**

Before we approve you for a credit card, we will review your credit report, the Company's financial information, and the information you provide with your response to confirm that you meet the criteria for this offer. Based on this review, you may not receive a card. We may

**Exhibit 5, Page 70**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Document...hwest%20Airlines%20Rapid%20Rewards%20Visa%20Business%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 72 of 147

request additional information for a credit line above $25,000.

If an account is approved, all cardmembers will have access to 100% of the approved credit limit. If you would like to set spending limits on any cardmembers, please contact our Cardmember Service Department after the account has been opened.

By becoming a Visa Business Card cardmember, you agree that the card is being used only for business purposes and that the card is being issued to a public or private company including a sole proprietor or employees or contractors of an organization.

You understand that if we have received a request for a Visa Business Card from you within the last 60 days, this form will not be processed.

You must be at least 18 years old to qualify (19 in AL and NE).

We reserve the right to change the benefit features associated with your card at any time.

**Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all customers, and that credit reporting agencies maintain separate histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with the law.

**Balance Transfer Option:** You agree that all transferred balances consist of business-related expenses. The Visa,® MasterCard,® Discover,® American Express® or any store card account (s) you list will show a credit, reducing the amount you owe them by the amount you transferred. The available credit on your new account will be reduced, just as if you had made a purchase. The balance transfer amount(s) will show up on your initial statement for your new account. Your other credit card account(s) will not be closed even if you transfer your entire balance(s). If you want to close an account, please contact the other credit card company directly. It may take up to three weeks to set up your account and post the balance transfers. Therefore, you may need to make payments to your other account(s) to keep them current. Balance transfers are contingent upon issuance of your new account. There will be a transaction fee for each balance transfer if one is disclosed in the Rate, Fee and Other Cost Information that accompany this offer. We reserve the right to decline to process any partial or full balance transfer request and will not process a balance transfer request from any other account with us or any of our affiliates.

If you omit any information on the form, we may deny your request for an account.

The information about the costs of the card described in this form is accurate as of 07/05/2006. This information may have changed after that date. To find out what may have changed, call 888-215-3049.

**Exhibit 5, Page 71**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Document...hwest%20Airlines%20Rapid%20Rewards%20Visa%20Business%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 73 of 147

We comply with Section 326 of the USA PATRIOT Act. This law mandates that we verify certain information about you while processing your account application.

© 2005 JPMorgan Chase & Co.

Exhibit 5, Page 72

file:///C|/Documents%20and%20Settings/Matt%20Hale/...nes%20Rapid%20Rewards%20Visa%20Business%20Card.htm (5 of 5)8/10/2007 10:30:03 AM

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Document...itions%20-%20Re%20United%20Mileage%20Plus%20Business%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 74 of 147

**Exhibit** 

# RATE, FEE AND OTHER COST INFORMATION

+

+

**Annual Percentage Rate (APR) for purchases**

18.24% variable.[a]

**Other APRs**

Balance Transfer APR: 18.24% variable.

Cash Advance APR: 24.24% variable

Default APR: Up to 32.239998% variable. See explanation below.[b]

Overdraft Advance APR: 13.99% fixed (not available in some states)

**Variable rate information**

The following APRs may vary monthly based on the Prime Rate:[c]

Purchase and Balance Transfer APR: The Prime Rate plus 9.99%.

Cash Advance APR: The Prime Rate plus 15.99%.

Default APR: The Prime Rate plus up to 23.99%.

**Grace period for repayment of purchase balances**

At least 20 days.

**Method of computing the balance for purchases**

Average daily balance method (including new purchases).

**Annual fee**

**Exhibit 6, Page 73**

file:///C|/Documents%20and%20Settings/Matt%20Hale/...Re%20United%20Mileage%20Plus%20Business%20Card.htm (1 of 5)8/10/2007 10:33:05 AM

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Document...itions%20-%20Re%20United%20Mileage%20Plus%20Business%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 75 of 147

Annual membership fee: $75.00 per year; each additional card: $25.00 per year.

## Minimum finance charge

$1.00

## Transaction fee for balance transfers

3% of the amount of each transaction, but not less than $5.00 nor more than $75.00.

## Transaction fees for cash advances

3% of the amount of the transaction, but not less than $10.00.

## Late Payment fee

$15.00 if the balance is up to but not including $250.00; $39.00 if the balance is $250.00 and over.

## Over-the-Credit-Limit fee

$39.00

## International Transactions

3% of the U.S. dollar amount of the transaction, whether originally made in U.S. dollars or converted from a foreign currency.

[a]**Rates, fees, and terms may change:** We reserve the right to change the account terms (including the APRs) at any time for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account. For example, we may change the terms based on information in your credit report, such as the number of other credit card accounts you have and their balances. The APRs for this offer are not guaranteed; APRs may change to higher APRs, fixed APRs may change to variable APRs, or variable APRs may change to fixed APRs. Any changes will be in accordance with your account agreement.

[b]Your APRs may increase if you default under any Cardmember Agreement you have with us for any of the following reasons: We do not receive, for any payment that is owed on this Account or any other account or loan with us, at least the minimum payment due by the date and time due; you exceed your credit line on this Account, if applicable; or you make a payment to us that is not honored by your bank. Your APRs may increase as of the first day of the billing cycle in which the default occurs. We may consider the following factors to determine the default rate: the length of time your Account has been open; the existence, seriousness and timing of defaults; other indications of your Account usage and performance; and information about your other relationships with us, any of our related companies or from consumer credit reports.

[c]The "Prime Rate" is the highest prime rate published in the Money Rates column of *The Wall Street Journal* two business days before the Closing Date on the statement for each billing period. Variable APRs are based on the 8.25% prime rate on 07/05/2006.

**Exhibit 6, Page 74**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Document...itions%20-%20Re%20United%20Mileage%20Plus%20Business%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 76 of 147

## TERMS & CONDITIONS

**Authorization:** When you ("you", "your" means the owner, officer, or partner of the company with the authority to bind the company to the terms & conditions of this offer and the Business Cardmember Agreement, and who is agreeing to the terms on their own behalf and that of the company) respond to this credit card offer from Chase Bank USA, N.A. ("Chase", "we", or "us"), you agree to the following:

1. You authorize us to obtain business and consumer credit bureau reports in connection with your request for an account. If an account is opened, we may obtain credit bureau reports in connection with extensions of credit or the review or collection of your account. If you ask, we will tell you the name and address of each credit bureau from which we obtained a report about you.
2. If an account is opened, you will receive a Cardmember Agreement with your card(s). By using the account or any card, or authorizing their use, you agree to the terms of the Cardmember Agreement.
3. You authorize us to allocate your payments and credits in a way that is most favorable to or convenient for us. For example, you authorize us to apply your payments and credits to balances with lower APRs (such as promotional APRs) before balances with higher APRs.
4. Claims and disputes are subject to arbitration.
5. **As described in the Cardmember Agreement, we reserve the right to change the terms of your account (including the APRs) at any time, for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account.**
6. **You also certify you have the authority to permit us to issue your credit card containing the Company name if completed on the form.**

**<u>Individual and Company Liability:</u> You understand that by responding to this offer you agree to be personally responsible for payment of all balances incurred on all cards and accounts issued pursuant to this application now or whenever such additional accounts may be established in the future, and that the Company is jointly liable for all balances on all accounts in the Company name. You understand that if you leave the employment of the Company, you will continue to be responsible for the outstanding balances on the accounts. You must notify us immediately to close the accounts and prevent further usage.**

Before we approve you for a credit card, we will review your credit report, the Company's financial information, and the information you provide with your response to confirm that you meet the criteria for this offer. Based on this review, you may not receive a card. We may request additional information for a credit line above $25,000.

**Exhibit 6, Page 75**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Document...itions%20-%20Re%20United%20Mileage%20Plus%20Business%20Card.htm

Case 3:07-cv-04732-MJJ     Document 1     Filed 09/14/2007     Page 77 of 147

If an account is approved, all cardmembers will have access to 100% of the approved credit limit. If you would like to set spending limits on any cardmembers, please contact our Cardmember Service Department after the account has been opened.

By becoming a Visa Business Card cardmember, you agree that the card is being used only for business purposes and that the card is being issued to a public or private company including a sole proprietor or employees or contractors of an organization.

You understand that if we have received a request for a Visa Business Card from you within the last 60 days, this form will not be processed.

You must be at least 18 years old to qualify (19 in AL and NE).

We reserve the right to change the benefit features associated with your card at any time.

**Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all customers, and that credit reporting agencies maintain separate histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with the law.

**Balance Transfer Option:** You agree that all transferred balances consist of business-related expenses. The Visa,® MasterCard,® Discover,® American Express® or any store card account (s) you list will show a credit, reducing the amount you owe them by the amount you transferred. The available credit on your new account will be reduced, just as if you had made a purchase. The balance transfer amount(s) will show up on your initial statement for your new account. Your other credit card account(s) will not be closed even if you transfer your entire balance(s). If you want to close an account, please contact the other credit card company directly. It may take up to three weeks to set up your account and post the balance transfers. Therefore, you may need to make payments to your other account(s) to keep them current. Balance transfers are contingent upon issuance of your new account. There will be a transaction fee for each balance transfer if one is disclosed in the Rate, Fee and Other Cost Information that accompany this offer. We reserve the right to decline to process any partial or full balance transfer request and will not process a balance transfer request from any other account with us or any of our affiliates.

If you omit any information on the form, we may deny your request for an account. You must have a valid permanent home address, and the Company must be headquartered, within the 50 United States or the District of Columbia. The information about the costs of the card described in this form is accurate as of 07/05/2006. This information may have changed after that date. To find out what may have changed, call 888-215-3049.

**USA Patriot Act:** To help the government fight the funding of terrorism and money

**Exhibit 6, Page 76**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Document...itions%20-%20Re%20United%20Mileage%20Plus%20Business%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 78 of 147

laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means to you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

© 2005 JPMorgan Chase & Co.

Exhibit 6, Page 77

**Exhibit 2, F**

# RATE, FEE AND OTHER COST INFORMATION

+

+

**Annual Percentage Rate (APR) for purchases**

A 4.90% fixed APR for the first 5 billing cycles following the opening of your account. After that, 17.24% variable.[a]

**Other APRs**

Balance Transfer APR: A 4.90% fixed APR for the first 5 billing cycles following the opening of your account. After that, 17.24% variable.

Cash Advance APR: 24.24% variable

Default APR: Up to 32.239998% variable. See explanation below.[b]

Overdraft Advance APR: 13.99% fixed (not available in some states)

**Variable rate information**

The following APRs may vary monthly based on the Prime Rate:[c]

Purchase and Balance Transfer APR: The Prime Rate plus 8.99% for outstanding and new balances after the introductory period.

Cash Advance APR: The Prime Rate plus 15.99%.

Default APR: The Prime Rate plus up to 23.99%.

**Grace period for repayment of purchase balances**

At least 20 days.

**Method of computing the balance for purchases**

**Exhibit 7, Page 78**

Average daily balance method (including new purchases).

**Annual fee**

$75.00

**Minimum finance charge**

$1.00

**Transaction fee for balance transfers**

3% of the amount of each transaction, but not less than $5.00 nor more than $75.00.

**Transaction fees for cash advances**

3% of the amount of the transaction, but not less than $10.00.

**Late Payment fee**

$15.00 if the balance is up to but not including $250.00; $39.00 if the balance is $250.00 and over.

**Over-the-Credit-Limit fee**

None

**International Transactions**

3% of the U.S. dollar amount of the transaction, whether originally made in U.S. dollars or converted from a foreign currency.

[a]**Rates, fees, and terms may change:** We reserve the right to change the account terms (including the APRs) at any time for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account. For example, we may change the terms based on information in your credit report, such as the number of other credit card accounts you have and their balances. The APRs for this offer are not guaranteed; APRs may change to higher APRs, fixed APRs may change to variable APRs, or variable APRs may change to fixed APRs. Any changes will be in accordance with your account agreement.

[b]Your APRs may increase if you default under any Cardmember Agreement you have with us for any of the following reasons: We do not receive, for any payment that is owed on this Account or any other account or loan with us, at least the minimum payment due by the date and time due; you exceed your credit line on this Account, if applicable; or you make a payment to us that is not honored by your bank. Your APRs may increase as of the first day of the billing cycle in which the default occurs. We may consider the following factors to determine the default rate: the length of time your Account has been open; the existence, seriousness and timing of defaults; other indications of your Account usage and performance; and information about your other relationships with us, any of our related companies or from consumer credit reports.

**Exhibit 7, Page 79**

<sup>c</sup>The "Prime Rate" is the highest prime rate published in the Money Rates column of *The Wall Street Journal* two business days before the Closing Date on the statement for each billing period. Variable APRs are based on the 8.25% prime rate on 07/05/2006.

## TERMS & CONDITIONS

**Authorization:** When you respond to this credit card offer from Chase Bank USA, N.A. ("Chase", "we", or "us"), you agree to the following:

1. You authorize us to obtain credit bureau reports in connection with your request for an account. If an account is opened, we may obtain credit bureau reports in connection with extensions of credit or the review or collection of your account. If you ask, we will tell you the name and address of each credit bureau from which we obtained a report about you.
2. If an account is opened, you will receive a Cardmember Agreement with your card(s). By using the account or any card, or authorizing their use, you agree to the terms of the Cardmember Agreement.
3. You authorize us to allocate your payments and credits in a way that is most favorable to or convenient for us. For example, you authorize us to apply your payments and credits to balances with lower APRs (such as promotional APRs) before balances with higher APRs.
4. Claims and disputes are subject to arbitration.
5. **As described in the Cardmember Agreement, we reserve the right to change the terms of your account (including the APRs) at any time, for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account.**

Before we approve you for a credit card, we will review your credit report and the information you provide with your response to confirm that you meet the criteria for this offer. Based on this review, you may not receive a card.

You must be at least 18 years old to qualify (19 in AL and NE).

We reserve the right to change the benefit features associated with your card at any time.

**Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all customers, and that credit reporting agencies maintain separate histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with the law.

**Notice to Married Wisconsin Residents:** No provision of any marital property agreement,

unilateral statement or court decree adversely affects our rights, unless you give us a copy of such agreement, statement or court order before we grant you credit, or we have actual knowledge of the adverse obligation. All obligations on this account will be incurred in the interest of your marriage or family. You understand that we may be required to give notice of this account to your spouse. **Married Wisconsin residents must furnish their (the applicant's) name and social security number as well as the name and address of their spouse to Cardmember Service at P.O. Box 15218, Wilmington, DE 19850-5218.**

**Balance Transfer Option:** The Visa,® MasterCard,® Discover,® American Express® or any store card account(s) you list will show a credit, reducing the amount you owe them by the amount you transferred. The available credit on your new account will be reduced, just as if you had made a purchase. The balance transfer amount(s) will show up on your initial statement for your new account. Your other credit card account(s) will not be closed even if you transfer your entire balance(s). If you want to close an account, please contact the other credit card company directly. It may take up to three weeks to set up your account and post the balance transfers. Therefore, you may need to make payments to your other account(s) to keep them current. Balance transfers are contingent upon issuance of your new account. There will be a transaction fee for each balance transfer if one is disclosed in the Rate, Fee and Other Cost Information that accompany this offer. We reserve the right to decline to process any partial or full balance transfer request and will not process a balance transfer request from any other account with us or any of our affiliates.

**Affiliate Information Sharing: Chase Bank USA, N.A. is part of JPMorgan Chase & Co. We and our JPMorgan Chase & Co. affiliates may share information about you among affiliates in order to offer products and services of interest to you. If you would prefer that we do not share information from your application, credit bureaus or third parties, please call us at 1-888-868-8618. For more information about our information handling policies, visit us on the web at: http://www.chase.com/privacypolicy.**

If you omit any information on the form, we may deny your request for an account. You must have a valid permanent home address within the 50 United States or the District of Columbia. The information about the costs of the card described in this form is accurate as of 07/05/2006. This information may have changed after that date. To find out what may have changed, write to us at Cardmember Service, P.O. Box 15043, Wilmington, DE 19850-5043.

**USA Patriot Act:** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means to you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**Exhibit 7, Page 81**

© 2005 JPMorgan Chase & Co.

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Documents...itions%20-%20Re%20Chase%20Contenital%20Airlines%20MasterCard.htm

Case 3:07-cv-04732-MJJ     Document 1     Filed 09/14/2007     Page 84 of 147

**Exhibit 3, I**

# RATE, FEE AND OTHER COST INFORMATION

➕                                                                              ➕

**Annual Percentage Rate (APR) for purchases**

A 7.99% fixed APR for the first 6 billing cycles following the opening of your account. After that, 18.24% variable.[a]

**Other APRs**

Balance Transfer APR: A 7.99% fixed APR for the first 6 billing cycles following the opening of your account. After that, 18.24% variable.

Cash Advance APR: 24.24% variable

Default APR: Up to 32.239998% variable. See explanation below.[b]

Overdraft Advance APR: 13.99% fixed (not available in some states)

**Variable rate information**

The following APRs may vary monthly based on the Prime Rate:[c]

Purchase and Balance Transfer APR: The Prime Rate plus 9.99% for outstanding and new balances after the introductory period.

Cash Advance APR: The Prime Rate plus 15.99%.

Default APR: The Prime Rate plus up to 23.99%.

**Grace period for repayment of purchase balances**

At least 20 days.

**Method of computing the balance for purchases**

**Exhibit 8, Page 83**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Documents...itions%20-%20Re%20Chase%20Contenital%20Airlines%20MasterCard.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 85 of 147

Average daily balance method (including new purchases).

## Annual fee

$85.00 for World cardmembers; $65.00 for Platinum cardmembers.

## Minimum finance charge

$1.00

## Transaction fee for balance transfers

3% of the amount of each transaction, but not less than $5.00 nor more than $75.00.

## Transaction fees for cash advances

3% of the amount of the transaction, but not less than $10.00.

## Late Payment fee

$15.00 if the balance is up to but not including $250.00; $39.00 if the balance is $250.00 and over.

## Over-the-Credit-Limit fee

None for World; $39.00 for Platinum.

## International Transactions

3% of the U.S. dollar amount of the transaction, whether originally made in U.S. dollars or converted from a foreign currency.

[a]**Rates, fees, and terms may change:** We reserve the right to change the account terms (including the APRs) at any time for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account. For example, we may change the terms based on information in your credit report, such as the number of other credit card accounts you have and their balances. The APRs for this offer are not guaranteed; APRs may change to higher APRs, fixed APRs may change to variable APRs, or variable APRs may change to fixed APRs. Any changes will be in accordance with your account agreement.

[b]Your APRs may increase if you default under any Cardmember Agreement you have with us for any of the following reasons: We do not receive, for any payment that is owed on this Account or any other account or loan with us, at least the minimum payment due by the date and time due; you exceed your credit line on this Account, if applicable; or you make a payment to us that is not honored by your bank. Your APRs may increase as of the first day of the billing cycle in which the default occurs. We may consider the following factors to determine the default rate: the length of time your Account has been open; the existence, seriousness and timing of defaults; other indications of your Account usage and performance; and information about your other relationships with us, any of our related companies or from consumer credit reports.

**Exhibit 8, Page 84**

file:///C|/Documents%20and%20Settings/Matt%20Hale/M...Re%20Chase%20Contenital%20Airlines%20MasterCard.htm (2 of 5)8/10/2007 9:41:56 AM

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Documents...itions%20-%20Re%20Chase%20Contenital%20Airlines%20MasterCard.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 86 of 147

<sup>c</sup>The "Prime Rate" is the highest prime rate published in the Money Rates column of *The Wall Street Journal* two business days before the Closing Date on the statement for each billing period. Variable APRs are based on the 8.25% prime rate on 07/05/2006.

## TERMS & CONDITIONS

**Authorization:** When you respond to this credit card offer from Chase Bank USA, N.A. ("Chase", "we", or "us"), you agree to the following:

1. You authorize us to obtain credit bureau reports in connection with your request for an account. If an account is opened, we may obtain credit bureau reports in connection with extensions of credit or the review or collection of your account. If you ask, we will tell you the name and address of each credit bureau from which we obtained a report about you.
2. If an account is opened, you will receive a Cardmember Agreement with your card(s). By using the account or any card, or authorizing their use, you agree to the terms of the Cardmember Agreement.
3. You authorize us to allocate your payments and credits in a way that is most favorable to or convenient for us. For example, you authorize us to apply your payments and credits to balances with lower APRs (such as promotional APRs) before balances with higher APRs.
4. Claims and disputes are subject to arbitration.
5. **As described in the Cardmember Agreement, we reserve the right to change the terms of your account (including the APRs) at any time, for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account.**

Before we approve you for a credit card, we will review your credit report and the information you provide with your response to confirm that you meet the criteria for this offer. Based on this review, you may receive a Platinum card with different benefits and without the no pre-set spending limit feature, or you may not receive a card.

You must be at least 18 years old to qualify (19 in AL and NE).

World services are available only to World cardmembers. We reserve the right to change the benefit features associated with your card at any time.

**Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all customers, and that credit reporting agencies maintain separate histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with the law.

**Exhibit 8, Page 85**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Documents...itions%20-%20Re%20Chase%20Contenital%20Airlines%20MasterCard.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 87 of 147

**Notice to Married Wisconsin Residents:** No provision of any marital property agreement, unilateral statement or court decree adversely affects our rights, unless you give us a copy of such agreement, statement or court order before we grant you credit, or we have actual knowledge of the adverse obligation. All obligations on this account will be incurred in the interest of your marriage or family. You understand that we may be required to give notice of this account to your spouse. **Married Wisconsin residents must furnish their (the applicant's) name and social security number as well as the name and address of their spouse to Cardmember Service at P.O. Box 15218, Wilmington, DE 19850-5218.**

**Balance Transfer Option:** The Visa,® MasterCard,® Discover,® American Express® or any store card account(s) you list will show a credit, reducing the amount you owe them by the amount you transferred. The available credit on your new account will be reduced, just as if you had made a purchase. The balance transfer amount(s) will show up on your initial statement for your new account. Your other credit card account(s) will not be closed even if you transfer your entire balance(s). If you want to close an account, please contact the other credit card company directly. It may take up to three weeks to set up your account and post the balance transfers. Therefore, you may need to make payments to your other account(s) to keep them current. Balance transfers are contingent upon issuance of your new account. There will be a transaction fee for each balance transfer if one is disclosed in the Rate, Fee and Other Cost Information that accompany this offer. We reserve the right to decline to process any partial or full balance transfer request and will not process a balance transfer request from any other account with us or any of our affiliates.

**Affiliate Information Sharing: Chase Bank USA, N.A. is part of JPMorgan Chase & Co. We and our JPMorgan Chase & Co. affiliates may share information about you among affiliates in order to offer products and services of interest to you. If you would prefer that we do not share information from your application, credit bureaus or third parties, please call us at 1-888-868-8618. For more information about our information handling policies, visit us on the web at: http://www.chase.com/privacypolicy.**

If you omit any information on the form, we may deny your request for an account. You must have a valid permanent home address within the 50 United States or the District of Columbia. The information about the costs of the card described in this form is accurate as of 07/05/2006. This information may have changed after that date. To find out what may have changed, write to us at Cardmember Service, P.O. Box 15043, Wilmington, DE 19850-5043.

**USA Patriot Act:** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means to you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**Exhibit 8, Page 86**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Documents...itions%20-%20Re%20Chase%20Contenital%20Airlines%20MasterCard.htm

Case 3:07-cv-04732-MJJ     Document 1     Filed 09/14/2007     Page 88 of 147

© 2005 JPMorgan Chase & Co.

**Exhibit 8, Page 87**

file:///C|/Documents%20and%20Settings/Matt%20Hale/M...Re%20Chase%20Contenital%20Airlines%20MasterCard.htm (5 of 5)8/10/2007 9:41:56 AM

**Exhibit 3, Page 6**

# RATE, FEE AND OTHER COST INFORMATION

✚                                                                                              ✚

## Annual Percentage Rate (APR) for purchases

A 3.90% fixed APR for the first 6 billing cycles following the opening of your account. After that, 18.24% variable.[a]

## Other APRs

Balance Transfer APR: A 3.90% fixed APR for the first 6 billing cycles following the opening of your account. After that, 18.24% variable.

Cash Advance APR: 24.24% variable

Default APR: Up to 32.239998% variable. See explanation below.[b]

Overdraft Advance APR: 13.99% fixed (not available in some states)

## Variable rate information

The following APRs may vary monthly based on the Prime Rate:[c]

Purchase and Balance Transfer APR: The Prime Rate plus 9.99% for outstanding and new balances after the introductory period.

Cash Advance APR: The Prime Rate plus 15.99%.

Default APR: The Prime Rate plus up to 23.99%.

## Grace period for repayment of purchase balances

At least 20 days.

## Method of computing the balance for purchases

**Exhibit 9, Page 88**

file:///C|/Documents%20and%20Settings/Matt%20Hale/M...ments/Terms%20&%20Conditions%20Chase%20Marriott.htm (1 of 5)8/10/2007 9:16:37 AM

Average daily balance method (including new purchases).

**Annual fee**

None first year. After that, $30.00.

**Minimum finance charge**

$1.00

**Transaction fee for balance transfers**

3% of the amount of each transaction, but not less than $5.00 nor more than $75.00.

**Transaction fees for cash advances**

3% of the amount of the transaction, but not less than $10.00.

**Late Payment fee**

$15.00 on balances up to, but not including, $100.00; $29.00 on balances of $100.00 up to, but not including, $250.00; and $39.00 on balances of $250.00 and over.

**Over-the-Credit-Limit fee**

None

**International Transactions**

3% of the U.S. dollar amount of the transaction, whether originally made in U.S. dollars or converted from a foreign currency.

[a]**Rates, fees, and terms may change:** We reserve the right to change the account terms (including the APRs) at any time for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account. For example, we may change the terms based on information in your credit report, such as the number of other credit card accounts you have and their balances. The APRs for this offer are not guaranteed; APRs may change to higher APRs, fixed APRs may change to variable APRs, or variable APRs may change to fixed APRs. Any changes will be in accordance with your account agreement.

[b]Your APRs may increase if you default under any Cardmember Agreement you have with us for any of the following reasons: We do not receive, for any payment that is owed on this Account or any other account or loan with us, at least the minimum payment due by the date and time due; you exceed your credit line on this Account, if applicable; or you make a payment to us that is not honored by your bank. Your APRs may increase as of the first day of the billing cycle in which the default occurs. We may consider the following factors to determine the default rate: the length of time your Account has been open; the existence, seriousness and timing of defaults; other indications of your Account usage and performance; and information about your other relationships with us, any of our related companies or from consumer credit reports.

**Exhibit 9, Page 89**

[c]The "Prime Rate" is the highest prime rate published in the Money Rates column of *The Wall Street Journal* two business days before the Closing Date on the statement for each billing period. Variable APRs are based on the 8.25% prime rate on 07/05/2006.

## TERMS & CONDITIONS

**Authorization:** When you respond to this credit card offer from Chase Bank USA, N.A. ("Chase", "we", or "us"), you agree to the following:

1. You authorize us to obtain credit bureau reports in connection with your request for an account. If an account is opened, we may obtain credit bureau reports in connection with extensions of credit or the review or collection of your account. If you ask, we will tell you the name and address of each credit bureau from which we obtained a report about you.
2. If an account is opened, you will receive a Cardmember Agreement with your card(s). By using the account or any card, or authorizing their use, you agree to the terms of the Cardmember Agreement.
3. You authorize us to allocate your payments and credits in a way that is most favorable to or convenient for us. For example, you authorize us to apply your payments and credits to balances with lower APRs (such as promotional APRs) before balances with higher APRs.
4. Claims and disputes are subject to arbitration.
5. **As described in the Cardmember Agreement, we reserve the right to change the terms of your account (including the APRs) at any time, for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account.**

Before we approve you for a credit card, we will review your credit report and the information you provide with your response to confirm that you meet the criteria for this offer. Based on this review, you may not receive a card.

You must be at least 18 years old to qualify (19 in AL and NE).

We reserve the right to change the benefit features associated with your card at any time.

**Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all customers, and that credit reporting agencies maintain separate histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with the law.

**Notice to Married Wisconsin Residents:** No provision of any marital property agreement,

**Exhibit 9, Page 90**

unilateral statement or court decree adversely affects our rights, unless you give us a copy of such agreement, statement or court order before we grant you credit, or we have actual knowledge of the adverse obligation. All obligations on this account will be incurred in the interest of your marriage or family. You understand that we may be required to give notice of this account to your spouse. **Married Wisconsin residents must furnish their (the applicant's) name and social security number as well as the name and address of their spouse to Cardmember Service at P.O. Box 15218, Wilmington, DE 19850-5218.**

**Balance Transfer Option:** The Visa,® MasterCard,® Discover,® American Express® or any store card account(s) you list will show a credit, reducing the amount you owe them by the amount you transferred. The available credit on your new account will be reduced, just as if you had made a purchase. The balance transfer amount(s) will show up on your initial statement for your new account. Your other credit card account(s) will not be closed even if you transfer your entire balance(s). If you want to close an account, please contact the other credit card company directly. It may take up to three weeks to set up your account and post the balance transfers. Therefore, you may need to make payments to your other account(s) to keep them current. Balance transfers are contingent upon issuance of your new account. There will be a transaction fee for each balance transfer if one is disclosed in the Rate, Fee and Other Cost Information that accompany this offer. We reserve the right to decline to process any partial or full balance transfer request and will not process a balance transfer request from any other account with us or any of our affiliates.

**Affiliate Information Sharing: Chase Bank USA, N.A. is part of JPMorgan Chase & Co. We and our JPMorgan Chase & Co. affiliates may share information about you among affiliates in order to offer products and services of interest to you. If you would prefer that we do not share information from your application, credit bureaus or third parties, please call us at 1-888-868-8618. For more information about our information handling policies, visit us on the web at: http://www.chase.com/privacypolicy.**

If you omit any information on the form, we may deny your request for an account. You must have a valid permanent home address within the 50 United States or the District of Columbia. The information about the costs of the card described in this form is accurate as of 07/05/2006. This information may have changed after that date. To find out what may have changed, write to us at Cardmember Service, P.O. Box 15043, Wilmington, DE 19850-5043.

**USA Patriot Act:** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means to you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**Exhibit 9, Page 91**

© 2005 JPMorgan Chase & Co.

Exhibit 9, Page 92

file:///C|/Documents%20and%20Settings/Matt%20Hale/M...ments/Terms%20&%20Conditions%20Chase%20Marriott.htm (5 of 5)8/10/2007 9:16:37 AM

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Document...Chase%20Priority%20Club%20Rewards%20Visa%20Signature%20Card.htm

Case 3:07-cv-04732-MJJ     Document 1     Filed 09/14/2007     Page 94 of 147

**Exhibit 3, Page**

## RATE, FEE AND OTHER COST INFORMATION

Ex

⊞                                                                                    ⊞

### Annual Percentage Rate (APR) for purchases

A 0% fixed APR for the first 6 billing cycles following the opening of your account. After that, 16.24% variable.[a]

### Other APRs

Balance Transfer APR: A 0% fixed APR for the first 6 billing cycles following the opening of your account. After that, 16.24% variable.

Cash Advance APR: 24.24% variable

Default APR: Up to 32.239998% variable. See explanation below.[b]

Overdraft Advance APR: 13.99% fixed (not available in some states)

### Variable rate information

The following APRs may vary monthly based on the Prime Rate:[c]

Purchase and Balance Transfer APR: The Prime Rate plus 7.99% for outstanding and new balances after the introductory period.

Cash Advance APR: The Prime Rate plus 15.99%.

Default APR: The Prime Rate plus up to 23.99%.

### Grace period for repayment of purchase balances

At least 20 days.

### Method of computing the balance for purchases

**Exhibit 10, Page 93**

file:///C|/Documents%20and%20Settings/Matt%20Hale/M...rity%20Club%20Rewards%20Visa%20Signature%20Card.htm (1 of 5)8/10/2007 9:30:30 AM

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Document...Chase%20Priority%20Club%20Rewards%20Visa%20Signature%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 95 of 147

Average daily balance method (including new purchases).

**Annual fee**

None first year. After that, $29.00.

**Minimum finance charge**

$1.00

**Transaction fee for balance transfers**

3% of the amount of each transaction, but not less than $5.00 nor more than $75.00.

**Transaction fees for cash advances**

3% of the amount of the transaction, but not less than $10.00.

**Late Payment fee**

$15.00 if the balance is up to but not including $250.00; $39.00 if the balance is $250.00 and over.

**Over-the-Credit-Limit fee**

None for Signature; $39.00 for Platinum.

**International Transactions**

3% of the U.S. dollar amount of the transaction, whether originally made in U.S. dollars or converted from a foreign currency.

[a]**Rates, fees, and terms may change:** We reserve the right to change the account terms (including the APRs) at any time for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account. For example, we may change the terms based on information in your credit report, such as the number of other credit card accounts you have and their balances. The APRs for this offer are not guaranteed; APRs may change to higher APRs, fixed APRs may change to variable APRs, or variable APRs may change to fixed APRs. Any changes will be in accordance with your account agreement.

[b]Your APRs may increase if you default under any Cardmember Agreement you have with us for any of the following reasons: We do not receive, for any payment that is owed on this Account or any other account or loan with us, at least the minimum payment due by the date and time due; you exceed your credit line on this Account, if applicable; or you make a payment to us that is not honored by your bank. Your APRs may increase as of the first day of the billing cycle in which the default occurs. We may consider the following factors to determine the default rate: the length of time your Account has been open; the existence, seriousness and timing of defaults; other indications of your Account usage and performance; and information about your other relationships with us, any of our related companies or from consumer credit reports.

**Exhibit 10, Page 94**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Document...Chase%20Priority%20Club%20Rewards%20Visa%20Signature%20Card.htm

Case 3:07-cv-04732-MJJ     Document 1     Filed 09/14/2007     Page 96 of 147

cThe "Prime Rate" is the highest prime rate published in the Money Rates column of *The Wall Street Journal* two business days before the Closing Date on the statement for each billing period. Variable APRs are based on the 8.25% prime rate on 07/05/2006.

## TERMS & CONDITIONS

**Authorization:** When you respond to this credit card offer from Chase Bank USA, N.A. ("Chase", "we", or "us"), you agree to the following:

1. You authorize us to obtain credit bureau reports in connection with your request for an account. If an account is opened, we may obtain credit bureau reports in connection with extensions of credit or the review or collection of your account. If you ask, we will tell you the name and address of each credit bureau from which we obtained a report about you.
2. If an account is opened, you will receive a Cardmember Agreement with your card(s). By using the account or any card, or authorizing their use, you agree to the terms of the Cardmember Agreement.
3. You authorize us to allocate your payments and credits in a way that is most favorable to or convenient for us. For example, you authorize us to apply your payments and credits to balances with lower APRs (such as promotional APRs) before balances with higher APRs.
4. Claims and disputes are subject to arbitration.
5. **As described in the Cardmember Agreement, we reserve the right to change the terms of your account (including the APRs) at any time, for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account.**

Before we approve you for a credit card, we will review your credit report and the information you provide with your response to confirm that you meet the criteria for this offer. Based on this review, you may receive a Platinum card with different benefits and without the no pre-set spending limit feature, or you may not receive a card.

You must be at least 18 years old to qualify (19 in AL and NE).

Signature services are available only to Signature cardmembers. We reserve the right to change the benefit features associated with your card at any time.

**Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all customers, and that credit reporting agencies maintain separate histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with the law.

**Exhibit 10, Page 95**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Document...Chase%20Priority%20Club%20Rewards%20Visa%20Signature%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 97 of 147

**Notice to Married Wisconsin Residents:** No provision of any marital property agreement, unilateral statement or court decree adversely affects our rights, unless you give us a copy of such agreement, statement or court order before we grant you credit, or we have actual knowledge of the adverse obligation. All obligations on this account will be incurred in the interest of your marriage or family. You understand that we may be required to give notice of this account to your spouse. **Married Wisconsin residents must furnish their (the applicant's) name and social security number as well as the name and address of their spouse to Cardmember Service at P.O. Box 15218, Wilmington, DE 19850-5218.**

**Balance Transfer Option:** The Visa,® MasterCard,® Discover,® American Express® or any store card account(s) you list will show a credit, reducing the amount you owe them by the amount you transferred. The available credit on your new account will be reduced, just as if you had made a purchase. The balance transfer amount(s) will show up on your initial statement for your new account. Your other credit card account(s) will not be closed even if you transfer your entire balance(s). If you want to close an account, please contact the other credit card company directly. It may take up to three weeks to set up your account and post the balance transfers. Therefore, you may need to make payments to your other account(s) to keep them current. Balance transfers are contingent upon issuance of your new account. There will be a transaction fee for each balance transfer if one is disclosed in the Rate, Fee and Other Cost Information that accompany this offer. We reserve the right to decline to process any partial or full balance transfer request and will not process a balance transfer request from any other account with us or any of our affiliates.

**Affiliate Information Sharing: Chase Bank USA, N.A. is part of JPMorgan Chase & Co. We and our JPMorgan Chase & Co. affiliates may share information about you among affiliates in order to offer products and services of interest to you. If you would prefer that we do not share information from your application, credit bureaus or third parties, please call us at 1-888-868-8618. For more information about our information handling policies, visit us on the web at: http://www.chase.com/privacypolicy.**

If you omit any information on the form, we may deny your request for an account. You must have a valid permanent home address within the 50 United States or the District of Columbia. The information about the costs of the card described in this form is accurate as of 07/05/2006. This information may have changed after that date. To find out what may have changed, write to us at Cardmember Service, P.O. Box 15043, Wilmington, DE 19850-5043.

**USA Patriot Act:** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means to you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**Exhibit 10, Page 96**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Document...Chase%20Priority%20Club%20Rewards%20Visa%20Signature%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 98 of 147

© 2005 JPMorgan Chase & Co.

**Exhibit 10, Page 97**

file:///C|/Documents%20and%20Settings/Matt%20Hale/M...rity%20Club%20Rewards%20Visa%20Signature%20Card.htm (5 of 5)8/10/2007 9:30:30 AM

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Document...west%20Airlines%20Rapid%20Rewards%20Visa%20Signature%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 99 of 147

**Exhibit 4, Pag**

# RATE, FEE AND OTHER COST INFORMATION

E

**Annual Percentage Rate (APR) for purchases**

# 16.9% variable.[a]

**Other APRs**

Balance Transfer APR: 16.9% variable.

Cash Advance APR: 24.24% variable

Default APR: Up to 32.239998% variable. See explanation below.[b]

Overdraft Advance APR: 13.99% fixed (not available in some states)

**Variable rate information**

The following APRs may vary monthly based on the Prime Rate:[c]

Purchase and Balance Transfer APR: The Prime Rate plus 8.65%.

Cash Advance APR: The Prime Rate plus 15.99%.

Default APR: The Prime Rate plus up to 23.99%.

**Grace period for repayment of purchase balances**

At least 20 days.

**Method of computing the balance for purchases**

Average daily balance method (including new purchases).

**Annual fee**

**Exhibit 11, Page 98**

file:///C|/Documents%20and%20Settings/Matt%20Hale/...es%20Rapid%20Rewards%20Visa%20Signature%20Card.htm (1 of 5)8/10/2007 9:45:17 AM

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Document...west%20Airlines%20Rapid%20Rewards%20Visa%20Signature%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 100 of 147

$59.00 for Signature cardmembers; $39.00 for Classic cardmembers.

**Minimum finance charge**

$1.00

**Transaction fee for balance transfers**

3% of the amount of each transaction, but not less than $5.00 nor more than $75.00.

**Transaction fees for cash advances**

3% of the amount of the transaction, but not less than $10.00.

**Late Payment fee**

$15.00 on balances up to, but not including, $100.00; $29.00 on balances of $100.00 up to, but not including, $250.00; and $39.00 on balances of $250.00 and over.

**Over-the-Credit-Limit fee**

None for Signature; $39.00 for Classic.

**International Transactions**

3% of the U.S. dollar amount of the transaction, whether originally made in U.S. dollars or converted from a foreign currency.

[a]**Rates, fees, and terms may change:** We reserve the right to change the account terms (including the APRs) at any time for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account. For example, we may change the terms based on information in your credit report, such as the number of other credit card accounts you have and their balances. The APRs for this offer are not guaranteed; APRs may change to higher APRs, fixed APRs may change to variable APRs, or variable APRs may change to fixed APRs. Any changes will be in accordance with your account agreement.

[b]Your APRs may increase if you default under any Cardmember Agreement you have with us for any of the following reasons: We do not receive, for any payment that is owed on this Account or any other account or loan with us, at least the minimum payment due by the date and time due; you exceed your credit line on this Account, if applicable; or you make a payment to us that is not honored by your bank. Your APRs may increase as of the first day of the billing cycle in which the default occurs. We may consider the following factors to determine the default rate: the length of time your Account has been open; the existence, seriousness and timing of defaults; other indications of your Account usage and performance; and information about your other relationships with us, any of our related companies or from consumer credit reports.

[c]The "Prime Rate" is the highest prime rate published in the Money Rates column of *The Wall Street Journal* two business days before the Closing Date on the statement for each billing period. Variable APRs are based on the 8.25% prime rate on 07/05/2006.

**Exhibit 11, Page 99**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Document...west%20Airlines%20Rapid%20Rewards%20Visa%20Signature%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 101 of 147

# TERMS & CONDITIONS

**Authorization:** When you respond to this credit card offer from Chase Bank USA, N.A. ("Chase", "we", or "us"), you agree to the following:

1. You authorize us to obtain credit bureau reports in connection with your request for an account. If an account is opened, we may obtain credit bureau reports in connection with extensions of credit or the review or collection of your account. If you ask, we will tell you the name and address of each credit bureau from which we obtained a report about you.
2. If an account is opened, you will receive a Cardmember Agreement with your card(s). By using the account or any card, or authorizing their use, you agree to the terms of the Cardmember Agreement.
3. You authorize us to allocate your payments and credits in a way that is most favorable to or convenient for us. For example, you authorize us to apply your payments and credits to balances with lower APRs (such as promotional APRs) before balances with higher APRs.
4. Claims and disputes are subject to arbitration.
5. **As described in the Cardmember Agreement, we reserve the right to change the terms of your account (including the APRs) at any time, for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account.**

Before we approve you for a credit card, we will review your credit report and the information you provide with your response to confirm that you meet the criteria for this offer. Based on this review, you may receive a Classic card with different benefits and without the no pre-set spending limit feature, or you may not receive a card.

You must be at least 18 years old to qualify (19 in AL and NE).

Signature services are available only to Signature cardmembers. We reserve the right to change the benefit features associated with your card at any time.

**Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all customers, and that credit reporting agencies maintain separate histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with the law.

**Notice to Married Wisconsin Residents:** No provision of any marital property agreement, unilateral statement or court decree adversely affects our rights, unless you give us a copy of such agreement, statement or court order before we grant you credit, or we have actual knowledge of the adverse obligation. All obligations on this account will be incurred in the

**Exhibit 11, Page 100**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Document...west%20Airlines%20Rapid%20Rewards%20Visa%20Signature%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 102 of 147

interest of your marriage or family. You understand that we may be required to give notice of this account to your spouse. **Married Wisconsin residents must furnish their (the applicant's) name and social security number as well as the name and address of their spouse to Cardmember Service at P.O. Box 15218, Wilmington, DE 19850-5218.**

**Balance Transfer Option:** The Visa,® MasterCard,® Discover,® American Express® or any store card account(s) you list will show a credit, reducing the amount you owe them by the amount you transferred. The available credit on your new account will be reduced, just as if you had made a purchase. The balance transfer amount(s) will show up on your initial statement for your new account. Your other credit card account(s) will not be closed even if you transfer your entire balance(s). If you want to close an account, please contact the other credit card company directly. It may take up to three weeks to set up your account and post the balance transfers. Therefore, you may need to make payments to your other account(s) to keep them current. Balance transfers are contingent upon issuance of your new account. There will be a transaction fee for each balance transfer if one is disclosed in the Rate, Fee and Other Cost Information that accompany this offer. We reserve the right to decline to process any partial or full balance transfer request and will not process a balance transfer request from any other account with us or any of our affiliates.

**Affiliate Information Sharing: Chase Bank USA, N.A. is part of JPMorgan Chase & Co. We and our JPMorgan Chase & Co. affiliates may share information about you among affiliates in order to offer products and services of interest to you. If you would prefer that we do not share information from your application, credit bureaus or third parties, please call us at 1-888-868-8618. For more information about our information handling policies, visit us on the web at: http://www.chase.com/privacypolicy.**

If you omit any information on the form, we may deny your request for an account. You must have a valid permanent home address within the 50 United States or the District of Columbia. The information about the costs of the card described in this form is accurate as of 07/05/2006. This information may have changed after that date. To find out what may have changed, write to us at Cardmember Service, P.O. Box 15043, Wilmington, DE 19850-5043.

**USA Patriot Act:** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means to you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**Exhibit 11, Page 101**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Document...west%20Airlines%20Rapid%20Rewards%20Visa%20Signature%20Card.htm

© 2005 JPMorgan Chase & Co.

**Exhibit 11, Page 102**

# Pricing & Terms

Please take a moment to carefully review the Pricing & Terms below.

### RATE, FEE AND OTHER COST INFORMATION

| |
|---|
| **Annual Percentage Rate (APR) for purchases** |
| A 3.90% fixed APR for the first 6 billing cycles following the opening of your account. After that, 18.24% variable.[a] |
| **Other APRs** |
| Balance Transfer APR: A 3.90% fixed APR for the first 6 billing cycles following the opening of your account. After that, 18.24% variable. |
| Cash Advance APR: 24.24% variable |
| Default APR: Up to 32.24% variable. See explanation below.[b] |
| Overdraft Advance APR: 13.99% fixed (not available in some states) |
| **Variable rate information** |
| The following APRs may vary monthly based on the Prime Rate:[c] |
| Purchase and Balance Transfer APR: The Prime Rate plus 9.99% for outstanding and new balances after the introductory period. |
| Cash Advance APR: The Prime Rate plus 15.99%. |
| Default APR: The Prime Rate plus up to 23.99%. |
| **Grace period for repayment of purchase balances** |
| At least 20 days |
| **Method of computing the balance for purchases** |
| Average daily balance method (including new purchases). |
| **Annual fee** |
| $65.00 |
| **Minimum finance charge** |
| $1.00 |
| **Transaction fee for balance transfers** |

| 3% of the amount of each transaction, but not less than $5.00 nor more than $99.00. |
| :--- |
| **Transaction fees for cash advances** |
| 3% of the amount of the transaction, but not less than $10.00. |
| **Late Payment fee** |
| $15.00 on balances up to, but not including, $100.00; $29.00 on balances of $100.00 up to, but not including, $250.00; and $39.00 on balances of $250.00 and over. |
| **Over-the-Credit-Limit fee** |
| None |
| **International Transactions** |
| 3% of the U.S. dollar amount of the transaction, whether originally made in U.S. dollars or converted from a foreign currency. |

[a]**Rates, fees, and terms may change:** We reserve the right to change the account terms (including the APRs) at any time for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account. For example, we may change the terms based on information in your credit report, such as the number of other credit card accounts you have and their balances. The APRs for this offer are not guaranteed; APRs may change to higher APRs, fixed APRs may change to variable APRs, or variable APRs may change to fixed APRs. Any changes will be in accordance with your account agreement.

[b]Your APRs may increase if you default under any Cardmember Agreement you have with us for any of the following reasons: We do not receive, for any payment that is owed on this Account or any other account or loan with us, at least the minimum payment due by the date and time due; you exceed your credit line on this Account, if applicable; or you make a payment to us that is not honored by your bank. Your APRs may increase as of the first day of the billing cycle in which the default occurs. We may consider the following factors to determine the default rate: the length of time your Account has been open; the existence, seriousness and timing of defaults; other indications of your Account usage and performance; and information about your other relationships with us, any of our related companies or from consumer credit reports.

[c]The "Prime Rate" is the highest prime rate published in the Money Rates column of *The Wall Street Journal* two business days before the Closing Date on the statement for each billing period. Variable APRs are based on the 8.25% prime rate on 07/05/2006.

### TERMS & CONDITIONS

**Authorization:** When you respond to this credit card offer from Chase Bank USA, N.A. ("Chase", "we", or "us"), you agree to the following:

1. You authorize us to obtain credit bureau reports in connection with your request for an account. If an account is opened, we may obtain credit bureau reports in connection with extensions of credit or the review or collection of your account. If you ask, we will tell you the name and address of each credit bureau from which we obtained a report about you.
2. If an account is opened, you will receive a Cardmember Agreement with your card(s). By using the account or any card, or authorizing their use, you agree to the terms of the Cardmember Agreement.
3. You authorize us to allocate your payments and credits in a way that is most favorable to or convenient for us. For example, you authorize us to apply your payments and credits to balances with lower APRs (such as promotional APRs) before balances with higher APRs.
4. Claims and disputes are subject to arbitration.
5. **As described in the Cardmember Agreement, we reserve the right to change the terms of your account (including the APRs) at any time, for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account.**

Before we approve you for a credit card, we will review your credit report and the information you provide with your response to confirm that you meet the criteria for this offer. Based on this review, you may not receive a card.

You must be at least 18 years old to qualify (19 in AL and NE).

We reserve the right to change the benefit features associated with your card at any time.

**Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all customers, and that credit reporting agencies maintain separate histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with the law.

**Notice to Married Wisconsin Residents:** No provision of any marital property agreement, unilateral statement or court decree adversely affects our rights, unless you give us a copy of such agreement, statement or court order before we grant you credit, or we have actual knowledge of the adverse obligation. All obligations on this account will be incurred in the interest of your marriage or family. You understand that we may be required to give notice of this account to your spouse. **Married Wisconsin residents must furnish their (the applicant's) name and social security number as well as the name and address of their spouse to Cardmember Service at P.O. Box 15218, Wilmington, DE 19850-5218.**

**Balance Transfer Option:** The Visa,® MasterCard,® Discover,® American Express® or any store card account(s) you list will show a credit, reducing the amount you owe them by the amount you transferred. The available credit on your new account will be reduced, just as if you had made a purchase. The balance transfer amount(s) will show up on your initial statement for your new account. Your other credit card account(s) will not be closed even if you transfer your entire balance(s). If you want to close an account, please contact the other credit card company directly. It may take up to three weeks to set up your account and post the balance transfers. Therefore, you may need to make payments to your other

**Exhibit 12, Page 105**

account(s) to keep them current. Balance transfers are contingent upon issuance of your new account. There will be a transaction fee for each balance transfer if one is disclosed in the Rate, Fee and Other Cost Information that accompany this offer. We reserve the right to decline to process any partial or full balance transfer request and will not process a balance transfer request from any other account with us or any of our affiliates.

**Affiliate Information Sharing: Chase Bank USA, N.A. is part of JPMorgan Chase & Co. We and our JPMorgan Chase & Co. affiliates may share information about you among affiliates in order to offer products and services of interest to you. If you would prefer that we do not share information from your application, credit bureaus or third parties, please call us at 1-888-868-8618. For more information about our information handling policies, visit us on the web at: http://www.chase.com/privacypolicy.**

If you omit any information on the form, we may deny your request for an account.

This offer is available only to applicants who reside in the United States of America. The information about the costs of the card described in this form is accurate as of 07/05/2006. This information may have changed after that date. To find out what may have changed, write to us at Cardmember Service, P.O. Box 15043, Wilmington, DE 19850-5043.

We comply with Section 326 of the USA PATRIOT Act. This law mandates that we verify certain information about you while processing your response.

Close this window

© 2007 JPMorgan Chase & Co.

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Docume...%20-%20Re%20Chase%20United%20Mileage%20Plus%20Visa%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 108 of 147

**Exhibit 4, Pa**

# RATE, FEE AND OTHER COST INFORMATION

**Exh**

**Annual Percentage Rate (APR) for purchases**

## 18.24%  variable.[a]

**Other APRs**

Balance Transfer APR: 18.24% variable.

Cash Advance APR: 24.24% variable

Default APR: Up to 32.239998% variable. See explanation below.[b]

Overdraft Advance APR: 13.99% fixed (not available in some states)

**Variable rate information**

The following APRs may vary monthly based on the Prime Rate:[c]

Purchase and Balance Transfer APR: The Prime Rate plus 9.99%.

Cash Advance APR: The Prime Rate plus 15.99%.

Default APR: The Prime Rate plus up to 23.99%.

**Grace period for repayment of purchase balances**

At least 20 days.

**Method of computing the balance for purchases**

Average daily balance method (including new purchases).

**Annual fee**

**Exhibit 13, Page 107**

file:///C|/Documents%20and%20Settings/Matt%20Hale/...0Chase%20United%20Mileage%20Plus%20Visa%20Card.htm (1 of 5)8/10/2007 9:48:28 AM

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Docume...%20-%20Re%20Chase%20United%20Mileage%20Plus%20Visa%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 109 of 147

$60.00

**Minimum finance charge**

$1.00

**Transaction fee for balance transfers**

3% of the amount of each transaction, but not less than $5.00 nor more than $75.00.

**Transaction fees for cash advances**

3% of the amount of the transaction, but not less than $10.00.

**Late Payment fee**

$15.00 if the balance is up to but not including $250.00; $39.00 if the balance is $250.00 and over.

**Over-the-Credit-Limit fee**

None

**International Transactions**

3% of the U.S. dollar amount of the transaction, whether originally made in U.S. dollars or converted from a foreign currency.

[a]**Rates, fees, and terms may change:** We reserve the right to change the account terms (including the APRs) at any time for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account. For example, we may change the terms based on information in your credit report, such as the number of other credit card accounts you have and their balances. The APRs for this offer are not guaranteed; APRs may change to higher APRs, fixed APRs may change to variable APRs, or variable APRs may change to fixed APRs. Any changes will be in accordance with your account agreement.

[b]Your APRs may increase if you default under any Cardmember Agreement you have with us for any of the following reasons: We do not receive, for any payment that is owed on this Account or any other account or loan with us, at least the minimum payment due by the date and time due; you exceed your credit line on this Account, if applicable; or you make a payment to us that is not honored by your bank. Your APRs may increase as of the first day of the billing cycle in which the default occurs. We may consider the following factors to determine the default rate: the length of time your Account has been open; the existence, seriousness and timing of defaults; other indications of your Account usage and performance; and information about your other relationships with us, any of our related companies or from consumer credit reports.

[c]The "Prime Rate" is the highest prime rate published in the Money Rates column of *The Wall Street Journal* two business days before the Closing Date on the statement for each billing period. Variable APRs are based on the 8.25% prime rate on 07/05/2006.

**Exhibit 13, Page 108**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Docume...%20-%20Re%20Chase%20United%20Mileage%20Plus%20Visa%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 110 of 147

# TERMS & CONDITIONS

**Authorization:** When you respond to this credit card offer from Chase Bank USA, N.A. ("Chase", "we", or "us"), you agree to the following:

1. You authorize us to obtain credit bureau reports in connection with your request for an account. If an account is opened, we may obtain credit bureau reports in connection with extensions of credit or the review or collection of your account. If you ask, we will tell you the name and address of each credit bureau from which we obtained a report about you.
2. If an account is opened, you will receive a Cardmember Agreement with your card(s). By using the account or any card, or authorizing their use, you agree to the terms of the Cardmember Agreement.
3. You authorize us to allocate your payments and credits in a way that is most favorable to or convenient for us. For example, you authorize us to apply your payments and credits to balances with lower APRs (such as promotional APRs) before balances with higher APRs.
4. Claims and disputes are subject to arbitration.
5. **As described in the Cardmember Agreement, we reserve the right to change the terms of your account (including the APRs) at any time, for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account.**

Before we approve you for a credit card, we will review your credit report and the information you provide with your response to confirm that you meet the criteria for this offer. Based on this review, you may not receive a card.

You must be at least 18 years old to qualify (19 in AL and NE).

We reserve the right to change the benefit features associated with your card at any time.

**Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all customers, and that credit reporting agencies maintain separate histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with the law.

**Notice to Married Wisconsin Residents:** No provision of any marital property agreement, unilateral statement or court decree adversely affects our rights, unless you give us a copy of such agreement, statement or court order before we grant you credit, or we have actual knowledge of the adverse obligation. All obligations on this account will be incurred in the interest of your marriage or family. You understand that we may be required to give notice of this account to your spouse. **Married Wisconsin residents must furnish their (the**

**Exhibit 13, Page 109**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Docume...%20-%20Re%20Chase%20United%20Mileage%20Plus%20Visa%20Card.htm

Case 3:07-cv-04732-MJJ    Document 1    Filed 09/14/2007    Page 111 of 147

applicant's) name and social security number as well as the name and address of their spouse to Cardmember Service at P.O. Box 15218, Wilmington, DE 19850-5218.

**Balance Transfer Option:** The Visa,® MasterCard,® Discover,® American Express® or any store card account(s) you list will show a credit, reducing the amount you owe them by the amount you transferred. The available credit on your new account will be reduced, just as if you had made a purchase. The balance transfer amount(s) will show up on your initial statement for your new account. Your other credit card account(s) will not be closed even if you transfer your entire balance(s). If you want to close an account, please contact the other credit card company directly. It may take up to three weeks to set up your account and post the balance transfers. Therefore, you may need to make payments to your other account(s) to keep them current. Balance transfers are contingent upon issuance of your new account. There will be a transaction fee for each balance transfer if one is disclosed in the Rate, Fee and Other Cost Information that accompany this offer. We reserve the right to decline to process any partial or full balance transfer request and will not process a balance transfer request from any other account with us or any of our affiliates.

**Affiliate Information Sharing: Chase Bank USA, N.A. is part of JPMorgan Chase & Co. We and our JPMorgan Chase & Co. affiliates may share information about you among affiliates in order to offer products and services of interest to you. If you would prefer that we do not share information from your application, credit bureaus or third parties, please call us at 1-888-868-8618. For more information about our information handling policies, visit us on the web at: http://www.chase.com/privacypolicy.**

For additional information about your Mileage Plus account, please visit United online at www.united.com for complete terms and conditions.

For additional information about your application or current Mileage Plus Visa account, please call us at 1-800-537-7783.

If you omit any information on the form, we may deny your request for an account. You must have a valid permanent home address within the 50 United States or the District of Columbia. The information about the costs of the card described in this form is accurate as of 07/05/2006. This information may have changed after that date. To find out what may have changed, write to us at Cardmember Service, P.O. Box 15043, Wilmington, DE 19850-5043.

**USA Patriot Act:** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means to you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**Exhibit 13, Page 110**

file:///C|/Documents%20and%20Settings/Matt%20Hale/My%20Docume...%20-%20Re%20Chase%20United%20Mileage%20Plus%20Visa%20Card.htm

Case 3:07-cv-04732-MJJ     Document 1     Filed 09/14/2007     Page 112 of 147

© 2005 JPMorgan Chase & Co.

**Exhibit 13, Page 111**

Cardmember Service
P.O. Box 15298
Wilmington, DE 19850-5298
800 436-7937
VISIT US ONLINE AT www.cardmemberservices.com

**CHASE**

0000365 COD 003

Acct # 4388575251862988

**Page 1 of 8**

Date: 21 Jun 2007

00365 COD 001 003 17207 - 27
DAVID J LEE
65 LANCASTER AVE
KENTFIELD CA 94904-1604

RE: 4388575251862988

> **Your Cardmember Agreement is enclosed.**

Dear DAVID J LEE:

Your credit card is designed to provide you with everything you want in a credit card and more! That's why we are delighted to provide you with the sample enclosed Cardmember Agreement.

Please take a moment to review the Cardmember Agreement. You will find rate, fee and other terms and conditions of your credit card account explained in detail. This Cardmember Agreement does not include any applicable introductory rate term, and may not reflect certain change in terms information. For information about any introductory rate that may apply to your account, please call the phone number listed above. Also, please note that we recently rewrote the Cardmember Agreement to make it easier to read. Your original Cardmember Agreement as it may have been amended from time to time is the agreement that governs your account, not the sample Cardmember Agreement which is provided to you as a convenience.

There are many benefits and privileges associated with your credit card account. If you would like further explanation of any of these, we will be happy to provide them. Just give us a call at the phone number listed above. We're here 24 hours a day to serve your credit card needs.

Sincerely,

Financial Service Advisor
Cardmember Service

Enclosure

**Exhibit 14, Page 112**

# Cardmember Agreement

**ACCEPTANCE OF THIS AGREEMENT**

This agreement governs your credit card account with us referenced on the card carrier containing the card for this account. Any use of your account is covered by this agreement. Please read the entire agreement and keep it for your records. You authorize us to pay for and charge your account for all transactions made on your account. You promise to pay us for all transactions made on your account, as well as any fees or finance charges. If this is a joint account, each of you, together and individually, is responsible for paying all amounts owed, even if the account is used by only one of you. We may require that you pay the full amount owed without first asking the other person(s) to pay.

Please sign the back of your card when you receive it. You will be bound by this agreement if you or anyone authorized by you use your account for any purpose, even if you don't sign your card. Whether you use your account or not, you will be bound by this agreement unless you cancel your account within 30 days after receiving your card and you have not used your account for any purpose.

Throughout this agreement, the words "**we**", "**us**" and "**our**" mean Chase Bank USA, N.A., the issuer of your credit card and account. The words "**you**", "**your**" and "**yours**" mean all persons responsible for complying with this agreement, including the person who applied for the account and the person to whom we address billing statements, as well as any person who agrees to be liable on the account. The word "**card**" means one or more cards or other access devices, such as account numbers, that we have issued to permit you to obtain credit under this agreement.

**USING YOUR ACCOUNT**

Your account is a consumer account and shall be used only for personal, family or household purposes. Unless we agree or it is required by law, we will not be responsible for merchandise or services purchased or leased through use of your account. You promise to use your account only for valid and lawful transactions. For example, internet gambling may be illegal in some places. It is not our responsibility to make sure that you use your account only for permissible transactions, and you will remain responsible for paying for a transaction even if it is not permissible or contemplated under this agreement.

**Types of Transactions:**

- **Purchases:** You may use your card to pay for goods or services.
- **Checks:** We may provide you cash advance checks or balance transfer checks as a way to use your account. We also refer to them in this agreement as a check or checks. You may use a check to pay for goods or services, to transfer balances to your account, or for other uses we allow. But you may not use these checks to transfer balances to this account from other accounts with us or any of our related companies. Only the person whose name is printed on the check may sign the check. Cash advance checks are treated as cash advances and balance transfer checks are treated as balance transfers except as noted in this agreement or any offer we make to you. We may treat checks that we call convenience checks as balance transfer checks. However, checks that we call convenience checks and that we indicated to you are subject to the terms for cash advances, may be treated as cash advances and assessed cash advance rates and fees.
- **Balance Transfers:** You may transfer balances from other accounts or loans with other credit card issuers or other lenders to this account, or other balance transfers we allow. But you may not transfer balances to this account from other accounts with us or any of our related companies. If a portion of a requested balance transfer will exceed your available credit access line, we may process a partial balance transfer up to your available credit access line.
- **Cash Advances:** You may use your card to get cash from automatic teller machines, or from financial institutions accepting the card; or to obtain travelers checks, foreign currency, money orders, wire transfers or similar cash-like charges; or to obtain lottery tickets, casino gaming chips, race track wagers or for similar betting transactions. You may also use a third party service to make a payment on your behalf and bill the payment to this account.
- **Overdraft Advances:** If you have an eligible checking account with one of our related banks, you may link this account to your checking account with our related bank to cover an overdraft on that checking account under the terms of this agreement and your checking account agreement.

**Billing Cycle:** In order to manage your account, we divide time into periods called "billing cycles". Each billing cycle is approximately one month in length. For each calendar month, your account will have a billing cycle that ends in that month. Your account will have a billing cycle ending in each calendar month whether or not there is a billing statement for that billing cycle.

**Authorized Users:** If you allow someone to use your account, that person will be an authorized user. You may request an additional card for use by an authorized user on your account. If you do so, this account may appear on the credit report of that authorized user. You should think carefully before allowing anyone to become an authorized user because you are allowing that person to use the account as you can. You will remain responsible for the use of your account and each card issued on your account according to the terms of this agreement. This includes your responsibility for paying all charges on your account made by an authorized user.

You must notify us to terminate an authorized user's permission to use your account. If you notify us, we may close the account and/or issue a new card or cards with a different account number. You should also recover and destroy any cards, checks or any other means of access to your account from that authorized user.

**Credit Access Line:** Your credit access line appears on your billing statements. We may also refer to the credit access line as a revolving line. Amounts over your credit access line may be referred to as a non-revolving line. The credit access line is the maximum amount upon which you may defer payment on your account, subject to the minimum payment due. There is no pre-set spending limit for your account. Instead, each charge is evaluated based on the spending and payment patterns on the account, your other relationships with us, information from consumer credit reports obtained from credit bureaus including your experience with other creditors, and our understanding of your resources. We may decline an authorization request for any transaction at any time as described in this agreement. We may also request additional information from you at any time to evaluate a transaction request or your use of the account generally. Your billing statement may also show that only a portion of your credit access line may be used for cash advances. Cash advances, including cash advance checks, are charged against the cash advance portion of your credit access line, and all other transactions are charged against your credit access line. You are responsible for keeping track of your account balance, including any fees and finance charges. This agreement applies to any balance on your account, including any balance over your credit access line.

At our discretion, we may increase, reduce, or cancel your credit access line, or the cash advance portion of your credit access line, at any time. However, if you have asked us not to do so, we will not increase your credit access line. A change to your credit access line will not affect your obligation to pay us.

**International Transactions:** International transactions include any transaction that you make in a foreign currency or that you make outside of the United States of America even if it is made in U.S. dollars. If you make a transaction in a foreign currency, Visa International or MasterCard International, Inc., will convert the transaction into U.S. dollars by using its respective currency conversion procedures. The exchange rate each entity uses to convert currency is a rate that it selects either from the range of rates available in the wholesale currency markets for the applicable processing date (which rate may vary from the rate the respective entity itself receives), or the government-mandated rate in effect on the applicable processing date. The rate in effect on the applicable processing date may differ from the rate on the date you used your card or account. We reserve the right to charge you an additional 3% of the U.S. dollar amount of any international transaction, whether that transaction was originally made in U.S. dollars or was made in another currency and converted to U.S. dollars by Visa or MasterCard. In either case, the 3% will be calculated on the U.S. dollar amount provided to us by that entity. The same process and charges may apply if any international transaction is reversed.

**Refusal to Authorize Transactions:** We may, but are not required to, decline a transaction on your account for any of the following reasons:
- because of operational considerations,
- because your account is in default,
- if we suspect fraudulent or unlawful activity or,
- in our discretion, for any other reason.

We are not responsible for any losses if a transaction on your account is declined for any reason, either by us or a third party, even if you have sufficient credit available.

For online transactions, we may require that you register your account with an authorization system that we select. We will notify you if we want you to register. If you do not register, we may decline your online transactions.

**Refusal to Pay Checks:** Each check you write is your request for funds. When we receive a check for payment, we may review your account to decide whether to authorize that check. We may, but are not required to, reject and return unpaid a check for any reason, including the following examples:
- We or one of our related companies is the payee on the check.

3

## Cardmember Agreement (cont.)

- The check is post-dated. If a post-dated check is paid, resulting in another check being returned or not paid, we are not responsible.
- You have used the check after the date specified on it.
- You are in default or would be if we paid the check.

**Lost or Stolen Cards, Checks or Account Numbers:** If any card, check, account number or other means to access your account is lost or stolen, or you think someone used or may use them without your permission, you must notify us at once by calling the Cardmember Service telephone number shown on your card or billing statement. Do not use your account after you notify us, even if your card, check, account number or other means to access your account is found or returned. We may terminate or suspend your credit privileges when you notify us of any loss, theft or unauthorized use related to your account.

You may be liable if there is unauthorized use of your account from which you receive no benefit, but you will not be liable for more than $50.00 of such transactions, and you will not be liable for any such transactions made after you notify us of the loss, theft or unauthorized use. However, you must identify for us the unauthorized charges from which you received no benefit. We may require you to provide us information in writing to help us find out what happened. We may also require you to comply with certain procedures in connection with our investigation.

### PAYMENTS

**Payment Instructions:** Your billing statement and accompanying envelope include instructions you must follow for making payments and sets forth the date and time by which we must receive the payment.

You agree to pay us amounts you owe in U.S. dollars drawn on funds on deposit in a U.S. financial institution or the U.S. branch of a foreign financial institution using a payment check, money order or automatic debit that will be processed or honored by your financial institution. We will not accept cash payments. Your total available credit may not be restored for up to 15 days after we receive your payment.

Any payment check or other form of payment which you send to us for less than the full balance that is marked 'paid in full' or with a similar notation or that you otherwise tender in full satisfaction of a disputed amount (conditional payments), must be sent to us at the conditional payments address listed on your monthly statement. We reserve all our rights regarding such payments. For example, if it is determined there is no valid dispute or if any such payment is received at any other address, we may accept the payment and you will still owe any remaining balance. We may refuse to accept any such payment by returning it to you, not cashing it or by destroying it. All other payments that you make should be sent to the regular payment address shown on your monthly statements.

We reserve the right to electronically collect your eligible payment checks, at first presentment and any representment, from the bank account on which the check is drawn. Our receipt of your payment checks is your authorization for us to collect the amount of the check electronically, or, if needed, by a draft drawn against the bank account. Payment checks will be collected electronically by sending the check amount along with the check, routing and account numbers to your bank. Your bank account may be debited as early as the same day we receive your payment. The original payment check will be destroyed and an image will be maintained in our records.

**Minimum Payment:** You agree to pay at least the minimum payment due, as shown on your billing statement, so that we receive it by the date and time payment is due. You may pay more than the minimum payment due and may pay the full amount you owe us at any time. If you have a balance that is subject to finance charges, the sooner you pay us, the less you will pay in finance charges because finance charges accrue on your balance each day.

Your billing statement shows your beginning balance and your ending balance (the 'New Balance' on your billing statement). If the New Balance is $10.00 or less, your minimum payment due will be the New Balance. Otherwise, it will be the largest of the following: $10.00; 2% of the New Balance; or the sum of 1% of the New Balance, total billed periodic rate finance charges, and any billed late fees. As part of the minimum payment due, we also add any amount past due and any amount over your credit access line.

**Payment Allocation:** You agree that we are authorized to allocate your payments and credits in a way that is most favorable to or convenient for us. For example, you authorize us to apply your payments and credits to balances with lower APRs (such as promotional APRs) before balances with higher APRs.

**Credit Balances:** You may request a refund of a credit balance at any time. We may reduce the amount of any credit balance by the amount of new charges or fees billed to your account.

**Automatic Charges:** You may authorize a third party to automatically charge your account for repeat transactions (for example, monthly utility charges, memberships and insurance premiums). If automatic charges are stopped for any reason (including because your account is closed or suspended for any reason) or your account number changes, you are responsible for notifying the biller and paying these charges directly. If your account number changes, we may, but are not required to, pay from your new account number charges that you authorized to be billed to your old account number.

**Promotions:** From time to time we may offer special terms for your account. If we do, we will notify you about the terms of the offer and how long they will be in effect. Any promotion is subject to the terms of this agreement, as modified by the promotional offer.

### FINANCE CHARGES

**Daily Periodic Rates and Annual Percentage Rates:** Your annual percentage rates ("APRs") and the corresponding daily periodic rates are listed on the Rates and Fees Table that is at the end of this document or provided separately. To get the daily periodic rate we divide the APR by 365, and in effect always round up at the fifth place to the right of the decimal point.

**Variable Rates:** One or more APRs that apply to your account may vary with changes to the Prime Rate. When you have an APR that varies with changes to the Prime Rate, we calculate the APR by adding a margin to the Prime Rate published in *The Wall Street Journal* two business days before the Closing Date shown on your billing statement. The "Prime Rate" is the highest (U.S.) Prime Rate published in the Money Rates section of *The Wall Street Journal*. If *The Wall Street Journal* stops publishing the Prime Rate, we will select a similar reference rate and inform you on your billing statement or through a separate notice.

A 'margin' is the percentage we add to the Prime Rate to calculate the APR. A 'business day' is any day that is not a weekend or federal holiday. The Rates and Fees Table shows which rates, if any, are variable rates. It also lists the margin for each variable rate and any minimum daily periodic rate and corresponding APR.

Two business days before the Closing Date shown on your billing statement, we see what the Prime Rate is. We then add the applicable margin to that Prime Rate to get the APR. The daily periodic rate is calculated as described above.

If our calculation results in a change to a daily periodic rate from the previous billing cycle because the Prime Rate has changed, the new rate will apply as of the first day of your billing cycle that ends in the calendar month in which we made the calculation. If the daily periodic rate increases, you will have to pay a higher periodic finance charge and may have to pay a higher minimum payment.

**Default Rates:** Your APRs also may vary if you are in default under this agreement or any other agreement you have with us or any of our related companies for any of the following reasons:

- We do not receive, for any payment that is owed on this account or any other account or loan with us, at least the minimum payment due by the date and time due.
- You make a payment to us that is not honored by your bank.

If any of these events occurs, we may increase the APRs (including any promotional APR) on all balances (excluding overdraft advances) up to a maximum of the default rate stated in the Rates and Fees Table. We may consider the following factors to determine your default rate: the length of time your account has been open, the existence, seriousness and timing of the defaults on your account; other indications of your account usage and performance; information about your other relationships with us or any of our related companies; and information we obtain from consumer credit reports obtained from credit bureaus. The default rate will take effect as of the first day of the billing cycle in which the default occurs.

If we decide not to increase your APR even though there is a default or if we do not increase your APR up to the maximum default rate stated in the Rates and Fees Table, we reserve our right to increase your APR in the event of any future default. We may in our discretion determine to charge reduced default rates or reinstate standard rates for all or selected balances on your account.

**Finance Charge Calculation — Average Daily Balance Method (Including New Transactions):** We calculate periodic finance charges separately for each balance associated with a different category of transactions (for example, purchases, balance transfers, balance transfer checks, cash advances, cash advance checks, overdraft advances, and each promotion). These calculations may combine different categories with the same daily periodic rates. This is how it works:

We calculate periodic finance charges for purchases, balance transfers, balance transfer checks, cash advances, cash advance checks, and overdraft advances by multiplying the daily balance for each of those



4

## Cardmember Agreement (cont.)

categories by the daily periodic rate for each of those categories, each day. You may have overdraft advances only if you have linked this account to a checking account with one of our related banks. We calculate the periodic finance charges for purchases, balance transfers, balance transfer checks, cash advances, and cash advance checks subject to a promotional rate the same way, but we use the promotional rate.

To get the daily balance for each day for each category:
- We take the beginning balance for that day.
- We add to that balance any new transactions, fees, other charges, and debit adjustments that apply to that category. We add a new purchase, cash advance, balance transfer or overdraft advance, if applicable, to the daily balance as of the transaction date, or a later date of our choice. We add a new cash advance check or balance transfer check to the daily balance as of the date the cash advance check or balance transfer check is deposited by a payee, or a later date of our choice.
- We subtract from that balance any payments, credits, or credit adjustments that apply to that category and that are credited as of that day.
- We treat a credit balance as a balance of zero.

To get the beginning balance for each category for the next day, we add the daily periodic finance charge to the daily balance. If more than one daily periodic rate could apply to a category because the rate for the category may vary based on the amount of its average daily balance, we will use the daily periodic rate that applies for the average daily balance amount at the end of the billing cycle to calculate the daily periodic finance charge each day. This agreement provides for daily compounding of finance charges.

To get the total periodic finance charge for the billing cycle, we add all of the daily periodic finance charges for each category for each day during that billing cycle. However, if any periodic finance charge is due, we will charge you at least the minimum periodic finance charge stated in the Rates and Fees Table. If it is necessary to add an additional amount to reach the minimum finance charge, we add that amount to the balance for purchases made during the billing cycle.

The total finance charge on your account for a billing cycle will be the sum of the periodic finance charges plus any transaction fee finance charges.

For each category we calculate an average daily balance (including new transactions) for the billing cycle by adding all your daily balances and dividing that amount by the number of days in the billing cycle. If you multiply the average daily balance for a category by the applicable daily periodic rate, and multiply the result by the number of days in the billing cycle, the total will equal the periodic finance charges for that balance attributable to that billing cycle, except for minor variations due to rounding.

**Grace Period and Accrual of Finance Charges:** We accrue periodic finance charges on a transaction, fee, or finance charge from the date it is added to your daily balance until payment in full is received on your account. However, we do not charge periodic finance charges on new purchases billed during a billing cycle if we receive payment of your New Balance by the date and time your minimum payment is due and we received payment of your New Balance on your previous billing statement by the date and time your payment was due. This exception or "grace period" applies only to purchases and does not apply to balance transfers, balance transfer checks, cash advances, cash advance checks or overdraft advances, if applicable.

**Transaction Fees for Cash Advances:** We may charge you a cash advance fee in the amount stated in the Rates and Fees Table for cash advance checks and cash advances.

In addition, if you use a third party service to make a payment on your behalf and the service charges the payment to this account, we may charge a transaction fee for the payment.

These transaction fees are **finance charges**. We add the fee to the balance for the related category as of the transaction date of the cash advance. For example, a transaction fee for a cash advance would be added to your cash advance balance.

**Transaction Fees for Balance Transfers:** We may charge you a balance transfer fee in the amount stated in the Rates and Fees Table for balance transfer checks and balance transfers.

These transaction fees are **finance charges**. We add the fee to the balance for the related category as of the transaction date of the balance transfer. For example, a transaction fee for a balance transfer would be added to your balance transfer balance.

**OTHER FEES AND CHARGES**

We may charge the following fees. The amounts of these fees are listed in the Rates and Fees Table. These fees will be added to the balance for purchases made during the billing cycle.

**Annual Membership Fee:** If your account has an annual membership fee, it will be billed each year or in monthly installments (as stated in the Rates and Fees Table), whether or not you use your account, and you agree to pay it when billed. The annual membership fee is non-refundable unless you notify us that you wish to close your account within 30 days of the date we mail your billing statement on which the annual membership fee is charged and at the same time, you pay your outstanding balance in full. Your payment of the annual membership fee does not affect our right to close your account or your right to make transactions on your account. If your account is closed by you or us, we will continue to charge the annual membership fee until you pay your outstanding balance in full and terminate your account relationship.

**Late Fee:** If we do not receive at least the required minimum payment by the date and time it is due as shown on your billing statement for any billing cycle, we may charge the late fee shown in the Rates and Fees Table. If the late fee is based on a balance, we calculate the late fee using the Previous Balance on the current month's statement that shows the late fee. This balance is the same as the New Balance shown on the prior month's statement for which we did not receive at least the required minimum payment by the date and time it was due.

**Return Payment Fee:** If (a) your payment check or similar instrument is not honored, (b) an automatic debit or other electronic payment is returned unpaid, or (c) we must return a payment check because it is not signed or cannot be processed, we may charge a return payment fee.

**Return Check Fee:** If (a) we stop payment on a cash advance check or balance transfer check at your request, or (b) we refuse to pay a cash advance check or balance transfer check, we may charge a return check fee.

**Administrative Fees:** If you request a copy of a billing statement, sales draft or other record of your account or if you request two or more cards or any special services (for example, obtaining cards on an expedited basis), we may charge you for these services. However, we will not charge you for copies of billing statements, sales drafts or similar documents that you request for a billing dispute you may assert against us under applicable law. We may charge, for any services listed above and other services we provide, the fees from time to time in effect when we offer the service.

**DEFAULT/COLLECTION**

We may consider you to be in default if any of these occurs:
- We do not receive at least the minimum amount due by the date and time due as shown on your billing statement.
- You fail to comply with the terms of this agreement or any agreement with one of our related companies.
- We obtain information that causes us to believe that you may be unwilling or unable to pay your debts to us or to others on time.
- You file for bankruptcy.
- You become incapacitated or in the event of your death.

If we consider your account to be in default, we may close your account without notice and require you to pay your unpaid balance immediately. We also may require you to pay interest at the rate of two percent (2%) a month on the unpaid balance when we deem your account to be six or more billing cycles past due.

To the extent permitted by law, if you are in default because you have failed to pay us, you will pay our collection costs, attorneys' fees, court costs, and all other expenses of enforcing our rights under this agreement.

**CLOSING YOUR ACCOUNT**

You may close your account at any time. If you call us to close your account, we may require that you confirm your request in writing.

We may close your account at any time or suspend your credit privileges at any time for any reason without prior notice except as required by applicable law. If we close your account, we will not be liable to you for any consequences resulting from closing your account or suspending your credit privileges.

If you or we close your account, you and any authorized users must immediately stop using your account and destroy all cards, checks or other means to access your account or return them to us upon request. You will continue to be responsible for charges to your account, even if they are made or processed after your account is closed and you will be required to pay the outstanding balance on your account according to the terms of this agreement. In addition, to the extent allowed by law, we may require you to pay the outstanding balance immediately or at any time after your account is closed.

**ARBITRATION AGREEMENT**

PLEASE READ THIS AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT. YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN COURT SUCH

5

**Exhibit 14, Page 115**

## Cardmember Agreement (cont.)

AS THAT IN THE FORM OF A PRIVATE ATTORNEY GENERAL ACTION, NOR WILL YOU BE ABLE TO BRING ANY CLAIM IN ARBITRATION AS A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. YOU WILL NOT BE ABLE TO BE PART OF ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE, OR BE REPRESENTED IN A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. IN THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO BRING CLAIMS IN A COURT, BEFORE A JUDGE OR JURY, AND/OR TO PARTICIPATE OR BE REPRESENTED IN A CASE FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS AND OTHER REPRESENTATIVE ACTIONS). OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO A COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION MAY BE MORE LIMITED. EXCEPT AS OTHERWISE PROVIDED BELOW, THOSE RIGHTS ARE WAIVED.

**Binding Arbitration.** This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by and be enforceable under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1-16 as it may be amended. This Arbitration Agreement sets forth the circumstances and procedures under which Claims (as defined below) may be resolved by arbitration instead of being litigated in court.

**Parties Covered.** For the purposes of this Arbitration Agreement, "we", "us", and "our" also includes our parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, any purchaser of your Account, and all of their officers, directors, employees, agents, and assigns or any and all of them. Additionally, "we", "us" and "our" shall include any third party providing benefits, services, or products in connection with the Account (including but not limited to credit bureaus, merchants that accept any credit device issued under the Account, rewards programs and enrollment services, credit insurance companies, debt collectors, and all of their officers, directors, employees, agents and representatives) if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us.

**Claims Covered.** Either you or we may, without the other's consent, elect mandatory, binding arbitration of any claim, dispute or controversy by either you or us against the other, or against the employees, parents, subsidiaries, affiliates, beneficiaries, agents or assigns of the other, arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or the advertising, application or approval of your Account ("Claim"). This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondeat superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement. This Arbitration Agreement includes Claims that arose in the past, or arise in the present or the future. As used in this Arbitration Agreement, the term Claim is to be given the broadest possible meaning.

Claims subject to arbitration include Claims that are made as counterclaims, cross claims, third party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any such Claims advanced in the lawsuit by any party or parties.

As an exception to this Arbitration Agreement, you retain the right to pursue in a small claims court any Claim that is within that court's jurisdiction and proceeds on an individual basis. If a party elects to arbitrate a Claim, the arbitration will be conducted as an individual action. Neither you nor we agree to any arbitration on a class or representative basis, and the arbitrator shall have no authority to proceed on such basis. This means that even if a class action lawsuit or other representative action, such as that in the form of a private attorney general action, is filed, any Claim between us related to the issues raised in such lawsuits will be subject to an individual arbitration claim if either you or we so elect.

No arbitration will be consolidated with any other arbitration proceeding without the consent of all parties. The only Claims that may be joined in an individual action under this Arbitration Agreement are (1) those brought by us against you and any co-applicant, joint cardmember, or authorized user of your Account, or your heirs or your trustee in bankruptcy or (2) those brought by you and any co-applicant, joint cardmember, or authorized user of your Account, or your heirs or your trustee in bankruptcy against us.

**Initiation of Arbitration.** The party filing a Claim in arbitration must choose one of the following two arbitration administrators: American Arbitration Association; or National Arbitration Forum. These administrators are independent from us. The administrator does not conduct the arbitration. Arbitration is conducted under the rules of the selected arbitration administrator by an impartial third party chosen in accordance with the

rules of the selected arbitration administrator and as may be provided in this Arbitration Agreement. Any arbitration hearing that you attend shall be held at a place chosen by the arbitrator or arbitration administrator within the federal judicial district in which you reside at the time the Claim is filed, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the two arbitration administrators, information about arbitration and arbitration fees, and instructions for initiating arbitration by contacting the arbitration administrators as follows:

**American Arbitration Association,** 335 Madison Avenue, Floor 10, New York, NY 10017-4605, Web site: www.adr.org, 800-778-7879; or

**National Arbitration Forum,** P.O. Box 50191, Minneapolis, MN 55405, Web site: www.arbitration-forum.com, 800-474-2371.

**Procedures and law applicable in arbitration.** A single, neutral arbitrator will resolve Claims. The arbitrator will either be a lawyer with at least ten years experience or a retired or former judge. The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Arbitration Agreement, in which case this Agreement will prevail. These procedures and rules may limit the amount of discovery available to you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, and will honor claims of privilege recognized at law. You may choose to have a hearing and be represented by counsel. The arbitrator will take reasonable steps to protect customer Account information and other confidential information, including the use of protective orders to prohibit disclosure outside the arbitration, if requested to do so by you or us. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law, and will not have the power to award relief to, against, or for the benefit of any person who is not a party to the proceeding. If the law authorizes such relief, the arbitrator may award punitive damages or attorney fees. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. Upon a request by you or us, the arbitrator will provide a brief statement of the reasons for the award.

**Costs.** We will reimburse you for the initial arbitration filing fee paid by you up to the amount of $500 upon receipt of proof of payment. Additionally, if there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first two days of that hearing. The payment of any such hearing fees by us will be made directly to the arbitration administrator selected by you or us pursuant to this Arbitration Agreement. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is good reason for requiring us to do so or you ask us and we determine there is good cause for doing so. Each party will bear the expense of the fees and costs of that party's attorneys, experts, witnesses, documents and other expenses, regardless of which party prevails, for arbitration and any appeal (as permitted below), except that the arbitrator shall apply any applicable law in determining whether a party should recover any or all fees and costs from another party.

**Enforcement, finality, appeals.** Failure or any delay in enforcing this Arbitration Agreement at any time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims. Any decision rendered in such arbitration proceeding will be final and binding on the parties, unless a party appeals in writing to the arbitration organization within 30 days of issuance of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration organization. The panel will reconsider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Each party will bear their own fees, costs and expenses for any appeal, but a party may recover any or all fees, costs and expenses from another party, if the majority of the panel of arbitrators, applying applicable law, so determines. An award in arbitration will be enforceable as provided by the FAA or other applicable law by any court having jurisdiction.

**Severability, survival.** This Arbitration Agreement shall survive: (i) termination or changes in the Cardmember Agreement, the Account and the relationship between you and us concerning the Account, such as the issuing of a new account number or the transferring of the balance in the Account to another account; (ii) the bankruptcy of any party or any similar proceeding initiated by you or on your behalf; and (iii) payment of the debt in full by you or by a third party. If any portion of this Arbitration Agreement is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.

**CHANGES TO THIS AGREEMENT**

6



**DAVID J LEE**

## Cardmember Agreement (cont.)

We can change this agreement at any time, regardless of whether you have access to your account, by adding, deleting, or modifying any provision. Our right to add, delete, or modify provisions includes financial terms, such as the APRs and fees, and other terms such as the nature, extent, and enforcement of the rights and obligations you or we may have relating to this agreement. Modifications, additions, or deletions are called "Changes" or a "Change".

We will notify you of any Change if required by applicable law. These Changes may be effective with notice only, at the time stated in our notice, in accordance with applicable law. Unless we state otherwise, any Change will apply to the unpaid balances on your account and to new transactions. The notice will describe any rights you may have with respect to any Change, and the consequences if you do or do not exercise those rights. For example, the notice may state that you may notify us in writing by a specified date if you do not want to accept certain Changes we are making. If you notify us in writing that you do not accept the Changes, your account may be closed (if it is not already closed) and you will be obligated to pay your outstanding balance under the applicable terms of the agreement. If you do not notify us in writing by the date stated in the notice, or if you notify us but then use your account after the date stated in the notice, you will be deemed to accept all Changes in the notice and to accept and confirm all terms of your agreement and all Changes in prior notices we have sent you regardless of whether you have access to your account.

### CREDIT INFORMATION

We may periodically review your credit history by obtaining information from credit bureaus and others.

We may report information about you and your account to credit bureaus, including your failure to pay us on time. If you request additional cards on your account for others, we may report account information in your name as well as in the names of those other people.

If you think we have reported inaccurate information to a credit bureau, you may write to us at the Cardmember Service address listed on your billing statement. Please include your name, address, account number, telephone number and a brief description of the problem. If available, please provide a copy of the credit bureau report in question. We will promptly investigate the matter and, if our investigation shows that you are right, we will contact each credit bureau to which we reported the information and will request they correct the report. If we disagree with you after our investigation, we will tell you in writing or by telephone. We will also notify the credit bureau that you dispute the information unless you let us know that you no longer dispute the information.

### NOTICES/CHANGE OF PERSONAL INFORMATION

We will send cards, billing statements and other notices to you at the address shown in our files. Or, if this is a joint account, we can send billing statements and notices to any joint account holder. Notice to one of you will be considered notice to all of you and all of you will remain obligated on the account. If you change your name, address, or home, cellular or business telephone number or email address (if you elect to receive billing statements or other notices online), you must notify us immediately in writing at the address shown on your billing statement. We may, at our option, accept mailing address corrections from the United States Postal Service. We may contact you about your account, including for customer service or collection, at any address or telephone number as well as any cellular telephone number you provide us.

### TELEPHONE MONITORING AND RECORDING

We, and if applicable, our agents, may listen to and record your telephone calls with us. You agree that we, and if applicable, our agents, may do so, whether you or we initiate the telephone call.

### INFORMATION SHARING

You authorize us to share certain information about you and your account within our family of companies, and with others outside our family of companies including any company or organization whose name or mark may appear on the cards, as permitted by law. Our Privacy Policy, which is provided to you when you first receive an agreement and at least once each calendar year thereafter, describes our information sharing practices and the choices you have and directions you may give us about our sharing of information about you and your account with companies or organizations within and outside of our family of companies.

### ILLINOIS CARDMEMBERS

Illinois law provides that we may not share information about you with companies or other organizations outside of our family of companies unless you authorize the disclosure or unless the disclosure falls under another exception in the law (such as sharing information to process your transactions or in response to a subpoena). You hereby agree that, if you choose not to exercise the applicable opt out described in our Privacy Policy, you will be deemed to have authorized us to share personal information we have about you (including information related to any of the products or services you may have with any of our companies) with companies or other organizations outside of our family of companies.

### ENFORCING THIS AGREEMENT

We can delay enforcing or not enforce any of our rights under this agreement without losing our right to enforce them in the future. If any of the terms of this agreement are found to be unenforceable, all other terms will remain in full force.

### ASSIGNMENT

We may assign your account, and amounts you owe us, or any of our rights and obligations under this agreement to a third party. The person to whom we make the assignment will be entitled to any of our rights that we assign to that person.

### GOVERNING LAW

THE TERMS AND ENFORCEMENT OF THIS AGREEMENT AND YOUR ACCOUNT SHALL BE GOVERNED AND INTERPRETED IN ACCORDANCE WITH FEDERAL LAW AND, TO THE EXTENT STATE LAW APPLIES, THE LAW OF DELAWARE, WITHOUT REGARD TO CONFLICT-OF-LAW PRINCIPLES. THE LAW OF DELAWARE, WHERE WE AND YOUR ACCOUNT ARE LOCATED, WILL APPLY NO MATTER WHERE YOU LIVE OR USE THE ACCOUNT.

### FOR INFORMATION

Please call the Cardmember Service telephone number on your card or billing statement if you have any questions about your account or this agreement.

### YOUR BILLING RIGHTS

**Keep This Notice For Future Use**

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case Of Errors Or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the Cardmember Service address shown on your billing statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us at least three business days before the automatic payment is scheduled to occur.

**Your Rights And Our Responsibilities After We Receive Your Written Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit access line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50.00 of the questioned amount, even if your bill was correct.

**Special Rules for Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. This right does not apply to check transactions. There are two limitations on this right:

7

00365 COD 001 003 17207 -

**DAVID J LEE**

Acct # 4388575251862988

Page 7 of 8

Cardmember Agreement (cont.)

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and
(b) The purchase price must have been more than $50.00.
These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

Copyright ©2007 JPMorgan Chase & Co. All rights reserved.



8

**Exhibit 14, Page 118**

**DAVID J LEE**

Cardmember Agreement (cont.)

**RATES AND FEES TABLE**
(This table may also be referred to as the Table of Interest Charges)

**Rates (APR means Annual Percentage Rate)**

| |
|---|
| Purchase **APR**<br>The Prime Rate* plus 10.74%, currently 18.99% (0.05203% daily periodic rate) |
| Balance Transfer/Balance Transfer Check **APR**<br>The Prime Rate* plus 10.74%, currently 18.99% (0.05203% daily periodic rate) |
| Cash Advance/Cash Advance Check **APR**<br>The Prime Rate* plus 15.74%, currently 23.99% (0.06573% daily periodic rate) |
| Default **APR**<br>The Prime Rate* plus up to 23.99%, currently 32.24% (0.08833% daily periodic rate) |
| Overdraft Advance **APR**<br>13.99% fixed APR (0.03833% daily periodic rate) |

* Estimated variable APRs above are based on the 8.25% Prime Rate as of June 4, 2007.

**Fees and Finance Charges**

| | |
|---|---|
| ATM Cash Advance Fee -- **Finance Charge**<br>3% of transaction (minimum fee of $10.00) | |
| Non-ATM Cash Advance / Cash Advance Check Fee -- **Finance Charge**<br>3% of transaction (minimum fee of $10.00) | |
| Balance Transfer Fee -- **Finance Charge**<br>3% of transaction (minimum fee of $5.00) | |
| Balance Transfer Check Fee -- **Finance Charge**<br>3% of transaction (minimum fee of $5.00) | |
| Minimum Periodic **Finance Charge**<br>(If any periodic finance charge is payable for a billing cycle) | $1.00 |
| **Annual Membership Fee** | $60.00 |
| **Late Fees:**<br>$15.00 if the balance is up to, but not including $100.00;<br>$29.00 if the balance is $100.00 up to, but not including $250.00;<br>$39.00 if the balance is $250.00 and over | |
| **Return Payment Fee** | $39.00 |
| **Return Check Fee** | $39.00 |
| **Administrative Fees:**<br>Copy of Billing Statement or other record | $5.00 |

9

```
                                                      ✓  Priority
                    FILED                             ✓  Send
           CLERK, U.S. DISTRICT COURT                 ___ Clsd
                                                      ✓  Enter
                MAR 2 6 2007                     NO ✗ JS-5/JS-6
                                                      ___ JS-2/JS-3
           CENTRAL DISTRICT OF CALIFORNIA             ___ Scan Only
           BY                      DEPUTY
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GARY DAVIS, an individual,       )   Case No. CV 06-04804 DDP (PJWx)
on behalf of himself, and as     )
PRIVATE ATTORNEY GENERAL,        )   **ORDER DENYING MOTION TO COMPEL**
and on behalf of all others      )   **ARBITRATION AND STAY**
similarly situated,              )
                                 )   [Motion filed on September 25,
                Plaintiff,       )   2006]
                                 )
     v.                          )
                                 )
CHASE BANK U.S.A., N.A., a       )
Delaware corporation;            )
CIRCUIT CITY STORES, INC., a     )
Virginia corporation ,           )
                                 )
                Defendants.      )
_____  )

     This matter comes before the Court on the defendants' motion

to compel arbitration and stay, or alternatively, dismiss the

action.[1]  After reviewing the papers submitted by the parties and

hearing oral argument, the Court denies the motion and adopt the

following order.

```
                              DOCKETED ON CM

                                MAR 2 6 2007

                              BY        004
```

_____

     [1]  Circuit City has joined Chase's motion to compel
arbitration.

Exhibit 15, Page 120

## I.   BACKGROUND

1   Circuit City Stores, Inc. ("Circuit City") offers a special
2   Chase Bank USA, N.A. ("Chase") credit card to California residents
3   who use the card to make purchases at Circuit City Stores.  Through
4   the credit card, Chase and Circuit City provide customers with
5   certain benefits, such as rewards points redeemable at Circuit City
6   Stores.  In early 2006, Chase and Circuit City advertised that
7   credit card holders who made promotional purchases within a
8   specific time frame would pay no immediate interest on those
9   purchases.

   On March 3, 2006, Gary Davis ("Davis") purchased a television
   set from Circuit City, charging $2,000 to his credit card.  Circuit
   City and Chase treated the item as a promotional purchase, and
   granted Davis a "term of no interest" from the date of purchase
   until January 2008.

   Prior to Davis' purchase of the television, Chase billed Davis
   for other credit card purchases made between January 14, 2006, and
   February 13, 2006.  Davis alleges he paid this bill in full and on
   time on March 10, 2006.

   Sometime after March 13, 2006, Davis received his monthly
   statement from Chase for the purchases he made between February 14,
   2006, and March 13, 2006.  A $77.25 finance charge appeared on this
   statement.  Davis alleges that Chase and Circuit City improperly
   assessed the finance charge by applying the entire amount of his
   March 10 payment against his $2,000 interest-free promotional
   purchase, when it should have been applied to his interest-accruing
   February balance.  Davis further alleges that Chase and Circuit

2

1  City assessed similar finance charges against thousands of other

2  credit card holders.

3      On June 26, 2006, Davis brought this class action against

4  Chase and Circuit City (collectively "the defendants") for: (1)

5  violation of the Consumers Legal Remedies Act, California Civil

6  Code section 1750 et seq. ("CLRA"); (2) violation of the Unfair

7  Competition Law ("UCL"), California Business and Professions Code

8  section 17200 et seq. (unlawful and unfair business practices); (3)

9  violation of the UCL (false advertising); (4) fraud and deceit; (5)

10  breach of contract; (6) breach of the implied covenant of good

11  faith and fair dealing; and (7) unjust enrichment.

12      The defendants now move this Court to compel arbitration of

13  Davis' claims.  The defendants allege that Davis's Circuit City

14  credit card account was originally opened with First North American

15  National Bank ("FNANB") in August 2003.  (Mahoney Decl. ¶ 4.)  The

16  FNANB/Circuit City credit card agreement ("FNANB Agreement")

17  contained a clause that required claims to be resolved by binding

18  arbitration and that allowed for changes in terms to the

19  arbitration agreement upon written notice.  (Id. Ex. B.)  It did

20  not, however, expressly preclude class arbitration.  (Id.)

21      On May 25, 2004, Bank One, Delaware, N.A. ("Bank One") assumed

22  ownership of the Davis account.  (Id. ¶ 5.)  In July 2004, Bank One

23  mailed letters to FNANB cardholders, including Davis, with a

24  "Change in Terms" notification (the "Bank One Notice") and a new

25  cardmember agreement ("Bank One Agreement").  (Id.)  The Bank One

26  Notice and Agreement amended the FNANB agreement by, inter alia,

27  substituting a Delaware choice-of-law provision for the original

28  Georgia choice-of-law provision and by stating that arbitration

3

Exhibit 15, Page 122

1  must be conducted on an individual, non-class and non-consolidated

2  basis. (Id. & Defs.' Exs. D, E.)

3      On October 1, 2004, Bank One was acquired by Chase. (Id. ¶

4  6.) On March 10, 2005, Chase mailed a notice of changes in terms

5  (the "Chase Notice") to Davis, outlining the merger between Bank

6  One and Chase and the changes in terms to his account. (Id. ¶ 6,

7  Defs.' Exs. F, G.) The changes in terms included an amended

8  arbitration agreement which requires arbitration to be conducted on

9  an individual, non-class and non-consolidated basis (the "Chase

10  Agreement"). This agreement, which is several pages long and typed

11  in extremely small font[2], explains in pertinent part:

12      [E]ven if a class action lawsuit or other representative

13      action, such as that in the form of a private attorney

14      general action, is filed, any Claim between us related to

15      the issues raised in such lawsuits will be subject to an

16      individual arbitration claim if either you or we so elect.

17  (Id.)

18      Moreover, the Chase Notice sent to Davis provided that:

19      The changes summarized above will be effective the first

20      day of your billing cycle that includes May 4, 2005. The

21      new terms will apply to current and future balances on your

22      Account. You have the right to reject the new terms stated

23      in this notice. If you wish to reject these terms and

24      close your account, you must notify us in writing and we

25      must receive your written notice before the first day of

26      the billing cycle that begins on or after May 4, 2005. . .

27  _____

28      [2]  The font-size is not indicated. However, it appears to be
    smaller than ___ .

4

1    . If you give us notice that you wish to reject these

2    terms, you may not make any more charges to your Account.

3    You will, however, be entitled to pay off any existing

4    outstanding balance on your account under your current

5    terms.  Even if you send us the notice, if you use your

6    Card or Account on or after the first day of the billing

7    cycle that begins on or after May 4, 2005, you will be

8    deemed to have accepted the new terms and those terms will

9    be applied to you as if you had not sent us any notice.

10   (Id.)  After receiving the Chase Notice, Davis continued to

11   use his credit card.  (Id. ¶ 7.)

12       In this motion, Chase asks the Court to enforce the class-

13   action waiver of the arbitration agreement against Davis.

14

15   **II.  DISCUSSION**

16       A.    The Federal Arbitration Act and Preemption

17       The Federal Arbitration Act (FAA) provides that arbitration

18   agreements generally "shall be valid, irrevocable, and

19   enforceable."  9 U.S.C. § 2 (2002).  But when grounds "exist at law

20   or in equity for the revocation of any contract," courts may

21   decline to enforce such agreements.  Id.; Ingle v. Circuit City

22   Stores, Inc., 328 F.3d 1165, 1170 (9th Cir. 2003).

23       Arbitration agreements are subject to all defenses to

24   enforcement that apply to contracts generally.  See 9 U.S.C. § 2.

25   To evaluate the validity of an arbitration agreement, federal

26   courts "should apply ordinary state-law principles that govern the

27   formation of contract."  First Options of Chicago, Inc. v. Kaplan,

28   514 U.S. 938, 944 (1995).

5

1    In his motion, Davis argues that the FAA preempts this Court

2 from applying California law to decide whether the class-action

3 waiver provision of the arbitration agreement is enforceable.[3]

4 However, in 2005, the California Supreme Court analyzed at length

5 whether the FAA preempted courts from considering this very issue.

6 See Discover Bank v. Super. Ct., 36 Cal.4th 148, 163-173 (2005).

7 The court noted that the FAA is silent on the matter of class

8 actions and classwide arbitration; thus, it looked to United States

9 Supreme Court precedent and found that the FAA does not prohibit a

10 California court from refusing to enforce an unconscionable class

11 action waiver in an arbitration agreement. Id. at 173.

12    Discover Bank is the most recent decision from the California

13 Supreme Court on this issue, and it is the controlling authority in

14 this diversity action.[4] Accordingly, this Court must apply state

15 ──────────────

16    [3] In its Ex Parte Application, Chase cites to a Central
District case which held that a broad reading of Discover that

17 invalidates all class waivers, no matter how consumer-friendly they
may be, would frustrate congressional intent. Shroyer v. New

18 Cingular Wireless Services, Inc., CV 06-1792-R (FMOx) at 5-6 (C.D.
Cal. 2006). Aside from the fact that Shroyer is an unpublished

19 decision the Court is not obligated to follow, Plaintiff does not
seek to invalidate all class waivers, nor has Chase argued that the

20 terms of the class waiver are "consumer-friendly." Thus, the
discussion in Shroyer has no bearing on the Court's preemption

21 analysis.

22    [4] Chase relies on the Ninth Circuit decision in Ting v. AT&T,
319 F.3d 1126, 1147 (9th Cir. 2003), for the proposition that

23 arbitration agreements cannot be invalidated on the grounds that
enforcing them would waive the benefits of a state consumer-

24 protection law. (Reply at 11.) Notwithstanding the fact that
Chase overstates Ting's holding on this issue, the Court notes that

25 Ting was decided before Discover Bank and before the recent United
States Supreme Court decision in Green Tree Financial Corp. v.

26 Bazzle, 539 U.S. 444 (2003), which declined to address whether a
state court can, consistent with the FAA, hold a class action

27 waiver appearing in a contract of adhesion for arbitration
unconscionable or contrary to public policy, as part of an

28 arbitration-neutral law that finds all such waivers unenforceable.
                                                    (continued...)

6

Exhibit 15, Page 125

1  law principles to determine whether there are any defenses to the

2  enforcement of the Chase arbitration agreement.  Chase argues that,

3  per the choice of law provision in the agreement, Delaware law must

4  apply; Davis counters that California law should control the

5  agreement's enforceability.[5]

6      B.  <u>Choice of Law</u>

7      In <u>Nedlloyd Lines B.V. v. Super. Ct.</u>, 3 Cal.4th 459, 465-66

8  (1992), the California Supreme Court held that the Restatement

9  (Second) of Conflict of Laws § 187 (1971)(amend. 1988)(the

10  "Restatement") governs contractual choice-of-law provisions.

11      Section 187(2) of the Restatement delineates a three-part test

12  for the choice-of-law analysis.  First, the Court must determine:

13  "(1) whether the chosen state has a substantial relationship to the

14  parties or their transaction, or (2) whether there is any other

15  reasonable basis for the parties' choice of law."  <u>Id.</u> at 466.  If

16  neither of these tests is met, the choice of law provision is not

17  applied.

18      If one of foregoing tests is met, however, the Court must next

19  determine whether Delaware law is contrary to a fundamental policy

20

21

22      [4]  (...continued)

23  <u>See Discover Bank</u>, 36 Cal.4th at 171.  Therefore, the Court is does
    not find that the <u>Ting</u> analysis controls the FAA preemption issue.

24      [5]  The choice-of-law provision reads:
25          "The terms and enforcement of this Agreement and your
            Account   shall   be   governed   and   interpreted   in
26          accordance with federal law and, to the extent state
            law applies, the law of Delaware, without regard to
27          conflict-of-law principles.   The law of Delaware,
            where we and your Account are located, will apply no
28          matter where you live or use the Account."
    (Mahoney Decl. ¶ 12, Ex. E.)

7

1  of California.  If there is no conflict, the Court must enforce

2  Delaware law.  Id.

3      If, however, there is a fundamental conflict between Delaware

4  and California law, the Court must then determine whether

5  "California has a materially greater interest than [Delaware] in

6  the determination of the particular issue . . . . If [so], the

7  choice of law shall not be enforced, for the obvious reason that in

8  such circumstance the [Courts] will decline to enforce a law

9  contrary to this state's fundamental policy."  Id.

10          1.   Substantial Relationship or Other Reasonable Basis

11      Chase is a national bank located in Delaware, and thus has a

12  substantial relationship to Delaware.  See id. at 467 (finding that

13  the substantial relationship test is satisfied when one party is

14  domiciled or has a principal place of business in the chosen

15  state).  Davis concedes this argument.  Accordingly, the first step

16  in the Restatement analysis supports the application of Delaware

17  law.

18          2.   Whether Delaware law is contrary to a fundamental policy

19               of California

20               a.   Restatement Section 188

21      Chase argues that before this Court may consider whether

22  Delaware law is contrary to a fundamental policy of California, it

23  must first decide whether the parties' choice of law violates a

24  fundamental policy of the state whose law would apply "in the

25  absence of an effective choice of law by the parties" under

26  Restatement § 188.  As an initial matter, the Court notes that §

27  188 of the Restatement portion of the choice of law analysis is

28  ignored by many California courts.  See, e.g., Discover Bank;

8

1  Klussman v. Cross Country Bank, 134 Cal.App.4th 1283, 1291-92

2  (2005).  Chase argues that this is an unintentional omission; the

3  Court is not so certain.  When the California Supreme Court adopted

4  the Restatement's choice of law analysis, it laid out in detail the

5  steps California courts should follow.  See Nedlloyd, 3 Cal.4th at

6  465-67.  Notably, it referenced the "in the absence of an effective

7  choice of the law by the parties" language in a footnote and

8  explained that this language applies when "California is the forum,

9  and the parties have chosen the law of another state, but the law

10 of a third state. . . would apply absent the parties' choice."  Id.

11 at 466.  That was not the situation in Nedlloyd, nor is it the

12 situation here.  The Court need not look to the fundamental policy

13 of a third state to determine whether to apply the parties' choice

14 of law.  Thus, the Court cannot be certain that the California

15 Supreme Court intended § 188 to be part of the choice of law

16 analysis that lower courts would follow under these circumstances.[6]

17      Despite its concerns about the appropriateness of applying §

18 188, the Court has reviewed § 188 and finds that it does not

19 mandate the application of Delaware law in this case.  Section 188

20 provides:

21      In the absence of an effective choice of law by the parties

22      (see § 187), the contacts to be taken into account in

23      applying the principles of § 6 to determine the law

24      applicable to an issue include:

25           (a) the place of contracting,

26           (b) the place of negotiation of the contract,

27 _____

28      [6]  Chase has not cited any California cases that apply the §
   188 analysis.

Exhibit 15, Page 128

1                (c) the place of performance,

2                (d) the location of the subject matter of the contract,

3                and

4                (e) the domicil, residence, nationality, place of

5                incorporation and place of business of the parties.

6      These contacts are to be evaluated according to their

7      relative importance with respect to the particular issue.

8      Restatement § 188.

9      Taking these five factors into account, the Court agrees

10 with Davis that California is the state with the most

11 significant contacts to this case. Davis signed for the credit

12 card in California, made his credit card purchases in

13 California, and lives in California. Chase and Circuit City

14 also advertised the promotional rewards in California stores.

15 Additionally, although Davis' account is held in a Delaware

16 bank, when Davis signed up for the credit card, the choice of

17 law rules governing the agreement dictated that Georgia law, not

18 Delaware law, would apply. Thus, California has been the state

19 with the most consistent contacts with the parties and their

20 contract, and the Court may proceed with its choice of law

21 analysis.[7]

22          [7] Chase also argues that, even if the Court determines that
23 California has the more significant contacts in this case, its
    contacts must be judged in light of the general factors relevant to
24 choice of law, including:
        (a) the needs of the interstate and international systems,
25     (b) the relevant policies of the forum,
        (c) the relevant policies of other interested states and
26            the relative interests of those states in the
           determination of a particular issue,
27     (d) the protection of justified expectations,
        (e) the basic policies underlying a particular field of
28                                    (continued...)

**Exhibit 15, Page 129**

1       b.   <u>Delaware law on class action waivers</u>

2       Next, the Court must decide whether Delaware would invalidate

3  an arbitration clause because it prohibited class actions.  The

4  Supreme Court of Delaware would refuse to enforce an unconscionable

5  provision in an agreement.  <u>See</u> <u>Worldwide Ins. Group v. Klopp</u>, 603

6  A.2d 788, 790-91 (Del. 1992).  However, there is some indication

7  that Delaware would not invalidate an arbitration clause solely

8  because it prohibited class actions.  <u>See</u>, <u>e.g.</u>, <u>Edelist v. MBNA</u>

9  <u>America Bank</u>, 790 A.2d 1249, 1260-61 (Del. 2001) (Delaware Superior

10 Court declined to find a class action waiver unconscionable in

11 light of the "clearly articulated" statement waiving class

12 actions.)  Therefore, for purposes of the choice of law analysis,

13 the Court will assume that Delaware law permits class action

14 waivers in arbitration agreements.

15       c.   <u>California law on class action waivers</u>

16       The Court must now address whether California has a

17 "fundamental public policy" against the type of class action waiver

18 _____

19       [7]  (...continued)
             law,
20       (f)  the  certainty,  predictability  and  uniformity  of
             result, and
21       (g)  ease in the determination and application of the law
             to be applied.
22
   Restatement § 6.  Chase states that these factors are to be
23 evaluated according to their relative importance.  Here, the Court
   finds that "the protection of justified expectations" governs this
24 case, as it is "the basic policy underlying the field of
   contracts."  Restatement § 188 cmt. a.  As discussed below, the
25 Court cannot find that Davis was ever aware that Delaware law would
   govern his account, or that he was foregoing his right to bring a
26 class action against Chase or Circuit City.  Thus, without going
   into further detail, the Court finds that, in the absence of an
27 effective choice of law provision, California courts would apply
   California law to the facts of this case.

28

                                11

1 used by Chase.  Courts in California have not hesitated to

2 invalidate class action waivers when justice so requires.  See,

3 e.g., Klussman, 134 Cal.App. 4t h at 1298; America Online, Inc. v.

4 Super. Ct., 90 Cal.App.4th 1, 18 (2002); Szetla v. Discover Bank,

5 97 Cal.App.4th 1094, 1101 (2002).  Moreover, as Davis notes,

6 California statutes such as the CLRA and UCL - both of which are

7 pled in this case - encourage the use of class actions to protect

8 against unlawful business practices.  Indeed, a representative

9 action brought under the UCL can now only be maintained as a class

10 action.

11     Finally, although the California Supreme Court did not find

12 that all class action waivers in arbitration agreements were

13 contrary to the fundamental public policy of the state, it did

14 suggest that certain types would be.  See Discover Bank, 36

15 Cal.App.4th at 162-63 (quoted in full in the Court's discussion of

16 substantive unconscionability).  Applying this rationale to a

17 factually similar case, the Court of Appeals in Klussman held that

18 "California cases and the reasoning of the Discover Bank court

19 leave no doubt that Delaware's approval of class action waivers,

20 especially in the context of a 'take it or leave it' arbitration

21 clause is contrary to fundamental public policy in California."[8]

22 _____

23     [8]  Klussman also involved: (1) class action plaintiffs brining
    suit against a Delaware bank for violations of the UCL and CLRA;

24  (2) a cardmember agreement which contained a choice of law
    provision stating that Delaware law controlled, except where

25  federal law applied; and (3) an arbitration provision that
    prohibited class action lawsuits against the bank.  Klussman, 134
    Cal.App.4th at 1287-89.

26     Chase attempts to distinguish Klussman on the basis that its
    class action waiver, unlike the one in Klussman, was "clearly and

27  expressly set forth." (Reply at 10.)  The Court disagrees with this
    characterization of the Chase arbitration agreement, which was

28                                          (continued...)

12

Exhibit 15, Page 131

1  Therefore, in light of California's strong public policy against
2  unconscionable class action waivers (see unconscionability
3  discussion below), the Court finds that the second step of the
4  Restatement analysis weighs in favor of applying California law.

5            3.   Whether California has a materially greater interest
6                 than Delaware in determining the issue

7        As stated above, the Court finds that there is a fundamental
8  public policy in California against the type of class-action waiver
9  found within the Chase arbitration agreement, and that Delaware law
10 is in conflict with that fundamental public policy.  Thus, the
11 Court now addresses whether California has a materially greater
12 interest than Delaware in determining the issue before it.

13       The Court finds that California's fundamental public policy in
14 protecting its residents is materially greater than Delaware's
15 interest in uniformity in bank regulation – even where the bank,
16 like Chase, is a national bank.[9]  As the California Court of
17 Appeals stated in Klussman, "California's interest becomes even
18 more intense when it is protecting its citizens from 'take it or
19 leave it' agreements that incorporate one-sided protections and

21       [8]  (...continued)
22  typed in extremely small font, buried in the middle of the notice,
    and instituted a complicated "opt-out" procedure.

23       [9]  Unlike the bank in Klussman, Chase is a national bank that
24  is regulated by the Office of the Comptroller of the Currency
    ("OCC").  Chase relies on this difference to argue that Delaware's
25  interest goes beyond the interest in uniform bank regulation of
    general corporate matters. (Reply at 16.)  However, Chase's
26  reliance on this fact is misplaced because the objective of the OCC
    is to ensure and regulate sound banking practices, such as
27  investment and lending, which, like the regulation of general
    corporate matters relate to the inner workings of the bank, are not
28  the subject matter of this action.  Klussman, 134 Cal.App.4th at
    1299.

                                   13

1　impose hidden waivers without actual notice or a realistic

2　opportunity to reject them." Id. Although Chase argues that Davis

3　had a "realistic opportunity" to discover the class action waiver,

4　as discussed below in the unconscionability analysis, the Court

5　disagrees.

6　　Delaware's interest in uniformity does not outweigh

7　California's interest in protecting California citizens from unfair

8　use of superior bargaining power by a foreign bank.  If Delaware

9　law governed every class waiver in the credit card context, all

10　plaintiffs would be precluded from the protections afforded by

11　their own state law.  Furthermore, applying the California rule

12　will not change Delaware's uniform regulation of general corporate

13　matters, such as corporate internal affairs, of banks and credit

14　card issuers incorporated in Delaware.　Id.

15　　The purpose of Delaware's rule permitting class action waivers

16　is an important factor to be considered in determining Delaware's

17　interest in having its rule applied.  Restatement § 188 cmt. c.

18　The purpose of the Delaware rule is to give credit card issuers,

19　such as Chase, virtual immunity from suit.  Under Delaware law,

20　Chase can assess allegedly improper finance charges without

21　consequence, as the amounts in dispute are relatively small and few

22　plaintiffs, if any, will go through the time and trouble of suing

23　Chase.  Chase, therefore, has a notably reduced incentive to avoid

24　assessing improper finance charges.  See Discover, 36 Cal.4th at

25　159. Delaware could choose a uniform rule that would not enforce

26　class action waivers, but has not chosen to do so.

27　　Here, the plaintiff is a California resident, invoking claims

28　under California law only, based on transactions he made in

14

Exhibit 15, Page 133

1 | California.  The Defendants advertised the promotional rewards in

2 | California and both have a significant consumer market in

3 | California.  The Court finds that California's interest in the

4 | resolution of the dispute outweighs Delaware's.

5 |       C.   <u>Unconscionability under California law</u>

6 |      In California, a contract or clause is unenforceable if it is

7 | both procedurally and substantively unconscionable.  <u>See</u> <u>Armendariz</u>

8 | <u>v. Found. Health Psychcare Servs., Inc.</u>, 24 Cal.4th 83, 114 (2000).

9 | In determining unconscionability, courts apply a sliding scale:

10 | "the more substantively oppressive the contract terms, the less

11 | evidence of procedural unconscionability is required to come to the

12 | conclusion that the terms are unenforceable, and vice versa."  <u>Id.</u>

13 | at 114.

14 |       1.   <u>Procedural Unconscionability</u>

15 |      The procedural elements of unconscionability include

16 | "(1) 'oppression,' which refers to an inequality of bargaining power

17 | resulting in no real negotiation and the absence of meaningful

18 | choice; and (2) 'surprise,' which occurs when 'the supposedly

19 | agreed-upon terms of the bargain are hidden in a prolix printed

20 | form drafted by the party seeking to enforce the disputed terms.'"

21 | <u>Dean Witter Reynolds, Inc. v. Super. Ct.</u>, 211 Cal.App.3d 758, 767

22 | (1989)(quoting <u>A&M Produce</u>, 135 Cal.App.3d 473, 486 (1982)).  A

23 | contract is procedurally unconscionable if it is a contract of

24 | adhesion:  a standardized contract, drafted by the party of

25 | superior bargaining strength, that relegates to the subscribing

26 | party only the opportunity to adhere to the contract or reject it.

27 | <u>Ting</u>, 319 F.3d at 1148; <u>see also</u> <u>Flores v. Transamerica HomeFirst,</u>

28 | <u>Inc.</u>, 93 Cal.App.4th 846, 853 (2001)("A finding of a contract of

15

**Exhibit 15, Page 134**

1  adhesion is essentially a finding of procedural

2  unconscionability.")

3      Here, Chase sent Davis the notice of the changes in his

4  arbitration agreement after Davis already had signed for his credit

5  card.  The notice was several pages long and typed in extremely

6  small font.  If Davis did not approve of the proposed arbitration

7  agreement, his only option was to surrender his credit card.

8  Indeed, even if Davis had sent Chase a written notice canceling his

9  account, but had happened to use his credit card even once after

10 May 4, 2005, Chase would have ignored his written notice.  This

11 type of adhesion agreement, found in a "take it or leave it" mailed

12 notice, is precisely the type that California courts have routinely

13 found procedurally unconscionable, and the Court agrees with their

14 conclusion.  See, e.g., Cohen v. DirectV, Inc., 142 Cal.App.4th

15 1442, 1450 ("When a consumer is given an amendment to a customer

16 agreement in the form of a bill stuffer that he would be deemed to

17 accept if he did not close his account, an element of procedural

18 unconscionability is present.")(citing Discover Bank, 36 Cal.4th at

19 160.)

20          2.   Substantive Unconscionability

21      Substantive unconscionability focuses on the one-sidedness of

22 the contract terms.  Id. at 1449.  As the court in Discover Bank

23 explained:

24          We  do  not  hold  that  all  class  action  waivers  are

25          necessarily unconscionable.  But when the waiver is found

26          in a consumer contract of adhesion in a setting in which

27          disputes  between  the  contracting  parties  predictably

28          involve  small  amounts  of  damages,  and  when  it  is  alleged

                                16

Exhibit 15, Page 135

1     that the party with the superior bargaining power has

2     carried out a scheme to deliberately cheat large numbers of

3     consumers out of individually small sums of money, then, at

4     least to the extent the obligation at issue is governed by

5     California law, the waiver becomes in practice the

6     exemption of the party from responsibility for [its] own

7     fraud, or willful injury to the person or property of

8     another. Under these circumstances, such waivers are

9     unconscionable under California law and should not be

10     enforced.

11 Discover Bank, 36 Cal.4th 148, 162-63. Therefore, to determine

12 whether the Chase class action waiver is substantively

13 unconscionable, the Court must decide whether it fits the Discover

14 Bank criteria. See Cohen, 142 Cal.App.4th at 1450.

15     As in Klussman and Cohen, the facts before this Court suggest

16 that the class action waiver meets the unconscionability standard

17 identified in Discover Bank. Here, Davis has alleged that Chase

18 and Circuit City have assessed finance charges against him and

19 other rewards card holders. The amount charged - $77.25 - is

20 undisputably a small amount. Moreover, Davis seeks to bring his

21 class action on behalf of all rewards card holders who made

22 purchases at Circuit City in California and were then subject to

23 improperly assessed finance charges. Presumably, this is a large

24 number of consumers. Finally, Davis has alleged that these finance

25 charges were part of an overall plan on the part of Chase to profit

26 from unfair advertising. Therefore, Davis' action fits the

27 unconscionability criteria outlined in Discover Bank.

28

17

**Exhibit 15, Page 136**

1        With its arbitration agreement, Chase has attempted to prevent

2   any of its credit card users from bringing a class action against

3   it.  Given that banks generally assess small finance charges

4   against credit card users, as a practical matter, the Chase

5   arbitration agreement effectively acts to shield Chase from

6   liability for allegedly improper practices.  This is true because

7   the cost of bringing suit against a bank on such a small claim will

8   deter individuals from litigating in the first instance.  In short,

9   this type of agreement is precisely what the California Supreme

10  Court envisioned as both procedurally and substantively

11  unconscionable.

12

13  **III. CONCLUSION**

14       For the foregoing reasons, the Court denies Chase's motion and

15  finds the arbitration clause unenforceable as a whole.

16

17

18  IT IS SO ORDERED.

19

20

21  Dated:  _3-26-07_

22                                    DEAN D. PREGERSON
                                      United States District Judge

23

24

25

26

27

28

18

# Mr. David Lee
# 65 Lancaster Ave
# Kentfield, CA 94904-1604

June 30, 2007

**Certified Mail, Return Receipt Requested**
**Article Number 7006-2760-0002-7278-7236**

President/C.E.O.
Chase Manhattan Bank USA NA
500 Stanton Christiana Road
Building 4
Newark, DE 19713

Dear Sir or Madam:

It has recently come to my attention that the law in California has been changing when it comes to credit cards and the arbitration provisions contained in them (notably class action waivers, waivers of rights to obtain injunctions, and the ability to arbitrate the issue of unconscionability). As a holder, in good standing, of a Chase Mileage Plus Visa card issued by your bank, which I frequently (and to your company's great financial benefit) use, I find this to be unacceptable.

This letter is a demand, made under California Civil Code Section 1782, that Chase (including any and all of its affiliates and subsidiaries) "correct, repair, replace, or otherwise rectify the goods or services" specified above which I believe violate California Civil Code Section 1770(a)(19) which makes it illegal to "insert[] an unconscionable provision in the contract." Since Chase has reserved its purported right to make unilateral changes in any provision in the cardmember agreement, it should invoke that purported right to redraft the arbitration provision so that is not unconscionable and is enforceable.

This demand is made on behalf of me personally, and on behalf of a class of others similarly situated.

I look forward to hearing from you in writing, concerning this letter.

Very truly yours,

David Lee



**U.S. Postal Service** ™
**CERTIFIED MAIL** ™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

NEWARK DE 19713

OFFICIAL USE

| | | | |
|---|---|---|---|
| Postage | $ | $0.41 | 0655 |
| Certified Fee | | $2.65 | 08 |
| Return Receipt Fee (Endorsement Required) | | $2.15 | |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $5.21 | 06/30/2007 |

Sent To
*President/CEO-Chase Manhattan Bank USA*
Street, Apt. No.;
or PO Box No. *500 Stanton Christiana Rd.*
City, State, ZIP+4 *Building 4, Newark, DE 19713*

PS Form 3800, August 2006          See Reverse for Instructions

7006 2760 0002 7278 7236

# Mr. David Lee
# 65 Lancaster Ave
# Kentfield, CA 94904-1604

June 30, 2007

**Certified Mail, Return Receipt Requested**
**Article Number 7006-2760-0002-7278-7243**

President/C.E.O.
Chase Bank USA NA
1201 Market Street
Wilmington DE 19801

Dear Sir or Madam:

It has recently come to my attention that the law in California has been changing when it comes to credit cards and the arbitration provisions contained in them (notably class action waivers, waivers of rights to obtain injunctions, and the ability to arbitrate the issue of unconscionability). As a holder, in good standing, of a Chase Mileage Plus Visa card issued by your bank, which I frequently (and to your company's great financial benefit) use, I find this to be unacceptable.

This letter is a demand, made under California Civil Code Section 1782, that Chase (including any and all of its affiliates and subsidiaries) "correct, repair, replace, or otherwise rectify the goods or services" specified above which I believe violate California Civil Code Section 1770(a)(19) which makes it illegal to "insert[] an unconscionable provision in the contract."   Since Chase has reserved its purported right to make unilateral changes in any provision in the cardmember agreement, it should invoke that purported right to redraft the arbitration provision so that is not unconscionable and is enforceable.

This demand is made on behalf of me personally, and on behalf of a class of others similarly situated.

I look forward to hearing from you in writing, concerning this letter.

Very truly yours,

David Lee

Exhibit 1, Page 52



**Mr. David Lee**
**65 Lancaster Ave**
**Kentfield, CA 94904-1604**

June 30, 2007

**Certified Mail, Return Receipt Requested**
**Article Number 7006-2760-0002-7278-3733**

Mr. James Dimon
President & C.E.O.
JPMorgan Chase Bank
270 Park Avenue
New York, New York 10017

Dear Mr. Dimon:

It has recently come to my attention that the law in California has been changing when it comes to credit cards and the arbitration provisions contained in them (notably class action waivers, waivers of rights to obtain injunctions, and the ability to arbitrate the issue of unconscionability). As a holder, in good standing, of a Chase Mileage Plus Visa card issued by your bank, which I frequently (and to your company's great financial benefit) use, I find this to be unacceptable.

This letter is a demand, made under California Civil Code Section 1782, that Chase (including any and all of its affiliates and subsidiaries) "correct, repair, replace, or otherwise rectify the goods or services" specified above which I believe violate California Civil Code Section 1770(a)(19) which makes it illegal to "insert[] an unconscionable provision in the contract."   Since Chase has reserved its purported right to make unilateral changes in any provision in the cardmember agreement, it should invoke that purported right to redraft the arbitration provision so that is not unconscionable and is enforceable.

This demand is made on behalf of me personally, and on behalf of a class of others similarly situated.

I look forward to hearing from you in writing, concerning this letter.

Very truly yours,

David Lee

Exhibit 18, Page 142



U.S. Postal Service™
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

NEW YORK NY 10017

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.41 | 0655 |
| Certified Fee | $2.65 | 08 |
| Return Receipt Fee (Endorsement Required) | $2.15 | |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ | $5.21 | 06/30/2007 |

Postmark Here

SAN RAFAEL CA MISSION RAFAEL STA
JUN 30 2007

Sent To
James Dimon
Street, Apt. No.; or PO Box No.
270 Park Avenue
City, State, ZIP+4
New York, NY 10017

PS Form 3800, August 2006          See Reverse for Instructions

7006 2760 0002 7278 3733

**Exhibit 18, Page 143**

**SENDER:** *COMPLETE THIS SECTION*

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
  Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X *S. Ransome*    ☐ Agent
                  ☐ Addressee

B. Received by ( *Printed Name*)    C. Date of Delivery

*S. Ransome*

D. Is delivery address different from item 1?    ☐ Yes
   If YES, enter delivery address below:         ☐ No

1. Article Addressed to:

*President/CEO*
*Chase Manhattan Bank*
*USA, NA*
*500 Stanton Christiana Rd.*
*Building 4*
*Newark, DE 19713*

JUL -3 2007

NEWARK DE OFFICE USPS 19711

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)    ☐ Yes

2. Article Number
   *(Transfer from service label)*    7006 2760 0002 7278 7236

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

President/CEO
Chase Bank USA NA
Wilmington, DE 19801

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _S. Ransone_     ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery
S. RANSOM

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail     ☐ Express Mail
☐ Registered         ☐ Return Receipt for Merchandise
☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number
(Transfer from service label)     7006 2760 0002 7278 7243

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

**Exhibit 20, Page 145**

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. ■ Print your name and address on the reverse so that we can return the card to you. ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature X ☐ Agent ☐ Addressee |
| | B. Received by ( *Printed Name* ) C. Date of Delivery |
| 1. Article Addressed to: James Dimon JPMorgan Chase Bank 270 Park Avenue New York, NY 10017 | D. Is delivery address different from item 1? ☐ Yes If YES, enter delivery address below: ☐ No JUL 09 2007 HUB MAIL |
| | 3. Service Type ☑ Certified Mail ☐ Express Mail ☐ Registered ☐ Return Receipt for Merchandise ☐ Insured Mail ☐ C.O.D. |
| | 4. Restricted Delivery? *(Extra Fee)* ☐ Yes |
| 2. Article Number *(Transfer from service label)* | 7006 2760 0002 7278 3733 |

PS Form 3811, February 2004          Domestic Return Receipt                    102595-02-M-1540

**Exhibit 21, Page 146**