1  STROOCK & STROOCK & LAVAN LLP
   JULIA B. STRICKLAND (State Bar No. 083013)
2  STEPHEN J. NEWMAN (State Bar No. 181570)
3  2029 Century Park East, Suite 1800
   Los Angeles, California  90067-3086
4  Telephone: 310-556-5800
   Facsimile: 310-556-5959
5  lacalendar@stroock.com

6  Attorneys for Defendants
7    CHASE BANK USA, N.A.,
     erroneously sued as CHASE
8    MANHATTAN BANK USA,
     N.A., and JPMORGAN CHASE & CO.
9

10              **UNITED STATES DISTRICT COURT**

11             **NORTHERN DISTRICT OF CALIFORNIA**

12

13  DAVID J. LEE and DANIEL R.              )   **Case No. CV-07-4732  MJJ**
    LLOYD, individually and on behalf of   )
14  all others similarly situated,         )
                                           )   THE HON. MARTIN J. JENKINS
15             Plaintiffs,                 )
                                           )   **NOTICE OF MOTION AND**
16        vs.                              )   **MOTION TO DISMISS;**
                                           )   **MEMORANDUM OF POINTS AND**
17  CHASE MANHATTAN BANK U.S.A.,           )   **AUTHORITIES IN SUPPORT**
18  N.A., a Delaware corporation, CHASE    )   **THEREOF**
    MANHATTAN BANK U.S.A., N.A.            )
19  d.b.a. CHASE BANK U.S.A., N.A.,        )   DATE:    December 4, 2007
    JPMORGAN CHASE & CO., a                )   TIME:    9:30 a.m.
20  Delaware corporation; and DOES 1       )   PLACE:   Courtroom 11
21  through 100, inclusive,                )            19th Floor
                                           )            450 Golden Gate Ave.
22             Defendants.                 )            San Francisco, CA 94102
                                           )
23                                         )
                                           )
24  _____ )

25

26

27

28

LA 51005838v3

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

PLEASE TAKE NOTICE that on December 4, 2007, at 9:30 a.m. or as soon thereafter as this matter may be heard before the Honorable Martin J. Jenkins of the above-entitled court, located at 450 Golden Gate Ave., Courtroom 11, 19th Floor, San Francisco, CA 94102, Defendant Chase Bank USA, N.A. ("Chase" or "Defendant"), erroneously sued as Chase Manhattan Bank U.S.A., N.A. and JPMorgan Chase & Co.,[1] will and hereby does move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for dismissal of all claims alleged in the Complaint ("Comp."), on the following alternative grounds:[2] (1) as to all Causes of Action, Plaintiffs fail to allege any concrete, measurable harm they have suffered as a result of the credit card and arbitration agreements alleged, and thus Plaintiffs lack standing to bring this action; (2) as to all Causes of Action, the applicable statutes of limitations bar all of Plaintiffs' claims; (3) as to all Causes of Action, the National Bank Act and federal regulations promulgated thereunder preempt Plaintiffs' claims; (4) as to the Fifth and Eighth Causes of Action, the California Consumers Legal Remedies Act ("CLRA") claims lack merit because neither the arbitration agreements at issue here nor the credit card agreements themselves are regulated under that statute; and (5) as to the Seventh Cause of Action, Plaintiffs' fraud claim fails because it is not pleaded with particularity.  In summary, Plaintiffs may not use California legal theories to make a facial challenge to the reliability of an alternative dispute resolution provision set forth in a national bank's credit card agreement.

---

[1] To the extent a response by the erroneously-sued parties is necessary, they hereby join in the instant Motion.

[2] In their Complaint, Plaintiffs purport to allege the following against Chase: in their First through Fourth, Sixth, Ninth and Tenth Causes of Action, violations of California's Unfair Competition Law, Bus. & Prof. Code § 17200, et seq. (the "UCL"); in their Fifth and Eighth Causes of Action, violations of the California Consumers Legal Remedies Act, California Civil Code Sections 1770(a)(19); in their Seventh Cause of Action, common law fraud.

1    This Motion is and will be based upon this Notice of Motion and Motion, the

2  accompanying Memorandum of Points and Authorities, the pleadings and papers on

3  file herein, all other matters of which the Court may take judicial notice and upon

4  such other or further material as may be presented at or in connection with the

5  hearing of this matter.

6

7  Dated:  October 25, 2007            STROOCK & STROOCK & LAVAN LLP
                                       JULIA B. STRICKLAND
8                                      STEPHEN J. NEWMAN

9

10                                     By:   s/Stephen J. Newman

11                                           Stephen J. Newman

12                                     Attorneys for Defendants
                                       CHASE BANK USA, N.A.,
13                                     erroneously sued as CHASE
                                       MANHATTAN BANK USA, N.A.
14                                     and JPMORGAN CHASE & CO.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA 51005838v3

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION .................................................................. 1

II.  ALLEGATIONS OF THE COMPLAINT .................................. 2

III.  ARGUMENT ...................................................................... 4

    A.  Legal Standard ............................................................ 4

    B.  Plaintiffs Lack Standing To Bring This Action. ............... 5

        1.  Plaintiffs Lack Standing Under Article III To Plead Any Claims. ........................................................ 5

        2.  Plaintiffs' UCL Claims Also Are Barred Because They Lack UCL Standing. ......................................... 7

        3.  Plaintiffs Also Lack Standing To Allege A Claim Under The CLRA. ...................................................... 8

        4.  Plaintiffs Lack Standing To Assert A Fraud Claim. ....... 9

    C.  All Of Plaintiffs' Claims Also Are Barred By The Statute of Limitations ...................................................... 9

        1.  Plaintiffs' UCL Claims Are Time-Barred. ................. 10

        2.  Plaintiffs' CLRA Claims Are Time-Barred. ............... 10

        3.  Plaintiffs' Fraud Claim Is Time-Barred. ................... 10

    D.  Plaintiffs' Prosecution Of This Action Impairs Chase's Core Powers As A National Bank, And Thus Federal Law Preempts This Action. ........................................... 11

    E.  The CLRA Does Not Apply To Credit Card Agreements. ... 16

    F.  Plaintiffs' Fraud Claim Fails Because It Is Not Pleaded With Particularity. ............................................................ 19

IV.  CONCLUSION .................................................................. 20

LA 51005838v3

# TABLE OF AUTHORITIES

## CASES

Alascom, Inc. v. F.C.C.,
    727 F.2d 1212 (D.C. Cir. 1984)........................................................................6

American Bankers Ass'n v. Lockyer,
    239 F. Supp. 2d 1000 (E.D. Cal. 2002) ...............................................11, 12, 15

Ass'n of Nat'l Banks in Ins., Inc. v. Duryee,
    270 F. 3d 397 (6th Cir. 2001) .........................................................................15

Augustine v. FIA Card Servs., N.A.,
    485 F. Supp. 2d 1172 (E.D. Cal. 2007) ...........................................................18

Austin v. Provident Bank, No. Civ.A.4:04 CV 33 P B,
    2005 WL 1785285 (N.D. Miss. July 26, 2005)...............................................15

Bank of America v.  City & County of San Francisco,
    309 F. 3d 551 (9th Cir. 2002) ...................................................................11, 12

Barnett Bank of Marion County, N.A. v. Nelson,
    517 U.S. 25, 116 S. Ct. 1103, 134 L. Ed. 2d 237 (1996) ...............................12

Barry v. Carnival Corp.,
    424 F. Supp. 2d 1354 (S.D. Fla. 2006).........................................................6, 8

Bd. of Trade of the City of Chicago v. Commodity Futures Trading Cmm'n,
    704 F.2d 929 (7th Cir. 1983) .............................................................................6

Bell Atlantic Corp. v. Twombly,
    127 S. Ct. 1955 (2007)......................................................................................5

Beneficial Nat'l Bank v. Anderson,
    539 U.S. 1, 123 S. Ct. 2058, 156 L. Ed. 2d (2003) .......................................11

Berry v. American Express Publishing, Inc., et al.,
    147 Cal. App. 4th 224 (2007).........................................................2, 16, 18, 19

Bowen v. First Family Fin. Servs., Inc.,
    233 F.3d 1331 (11th Cir. 2000) .................................................................1, 6, 8

Brother v. CPL Investments, Inc.,
    317 F. Supp. 2d 1358 (S.D. Fla. 2004)..............................................................6

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

LA 51005838v3

Buckland v. Threshold Enterprises, Ltd.,
        No. B192832, 2007 WL 2773497 (Cal. App. 2 Dist., Sep 25, 2007) .......7, 20

Burke v. City of Charleston,
        139 F.3d 401 (4th Cir. 1998) ...............................................................6

California Assn. of Psychology Providers v. Rank,
        51 Cal.3d 1, 270 Cal.Rptr. 796, 793 P.2d 2 (1990).......................................18

Caprock Plains Fed. Bank Ass'n v. Farm Credit Admin.,
        843 F.2d 840 (5th Cir. 1988) ...............................................................6

Caro v. Proctor & Gamble Co.,
        18 Cal. App. 4th 644, 22 Cal. Rptr. 2d 419 (1993) ........................................8

Churchill Village, L.L.C. v. General Electric Co.,
        169 F. Supp. 2d 1119 (N.D. Cal. 2000).....................................................8

Civil Services Employees Ins. Co. v. Superior Court,
        22 Cal. 3d 362 (1978) ......................................................................19

Community Bankers Ass'n v. Clarke,
        766 F. Supp 1519 (S.D. Ind. 1990)........................................................11

Discover Bank v. Superior Court,
        134 Cal. App. 4th 886, 36 Cal. Rptr. 3d 456 (2005) ....................................3

Easton v. Iowa,
        188 U.S. 220 (1903) .......................................................................11

Edwards v. Marin Park,
        356 F.3d 1058 (9th Cir. 2004) ............................................................20

Fairbanks v. Superior Court,
        154 Cal. App. 4th 435 (2007) .............................................................19

Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta,
        458 U.S. 141, 102 S. Ct. 3014, 73 L. Ed. 2d 664 (1982) .............................13

First Nat'l Bank of McCook v. Fulkerson,
        2000 WL 33914121 (D. Colo. Mar. 7, 2000)...............................................12

First Union Nat'l Bank v. Burke,
        48 F. Supp. 2d 132 (D. Conn. 1999) .....................................................12

Franklin Nat'l Bank v. New York,
        347 U.S. 373 (1954) .......................................................................15

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

Geier v. American Honda Motor Co.,
    529 U.S. 861 (2000) ................................................................................... 12

Gikas v. Zolin,
    6 Cal.4th 841, 25 Cal.Rptr.2d 500, 863 P.2d 745 (1993) ............................. 18

Highsmith v. Chrysler Credit Corp.,
    18 F.3d 434 (7th Cir. 1994) ........................................................................... 6

Hillside Dairy, Inc. v. Kawamura,
    317 F. Supp. 2d 1194 (E.D. Cal. 2004) ...................................................... 8, 9

Hood v. Santa Barbara Bank & Trust,
    No. 1156354 (Cal. Super. Ct., May 18, 2005) ............................................. 15

Industrial Truck Ass'n, Inc. v. Henry,
    125 F. 3d 1305 (9th Cir. 1997) ................................................................... 12

Kacludis v. GTE Sprint Communications Corp.,
    806 F. Supp. 866 (N.D. Cal. 1992) ................................................................. 4

Krispin v. May Dept. Stores Co.,
    218 F. 3d 919 (8th Cir. 2000) ..................................................................... 15

Lloyd v. MNBA Am. Bank, N.A.,
    27 Fed. Appx. 82 (3d Cir. 2002) ................................................................. 15

Lujan v. Defenders of Wildlife,
    504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ............................. 5

Mass. Mut. Life Ins. Co. v. Super. Ct.,
    97 Cal. App. 4th 1282 (2002) ..................................................................... 10

Migliaccio v. Midland Nat'l Life Ins. Co., No. CV 06-1007 CASMANX,
    2007 WL 316873 (C.D. Cal. Jan. 30, 2007) ................................................. 18

National City Bank v. Boutris, No. Civ. S-03-0655,
    2003 WL 21536818 (E.D. Cal. July 2, 2003) ............................................... 12

National State Bank v. Long,
    630 F. 2d 981 (3rd Cir. 1980) ..................................................................... 12

North Star Int'l v. Arizona Corp. Comm'n,
    720 F. 2d 578 (9th Cir. 1983) ....................................................................... 4

People v. Goodloe,
    37 Cal.App.4th 485, 44 Cal.Rptr.2d 15 (1995) ............................................ 18

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LA 51005838v3

*Posern v. Prudential Secs., Inc.*,
   No. C-03-0507 SC, 2004 WL 771399 (N.D. Cal. Feb. 18, 2004) ................6

*Rich v. State Board of Optometry*,
   235 Cal.App.2d 591, 45 Cal.Rptr. 512 (1965) .............................................18

*Robertson v. Dean Witter Reynolds, Inc.*,
   749 F. 2d 530 (9th Cir. 1984) ......................................................................4

*Roe III v. Unocal Corp.*,
   70 F. Supp. 2d 1073 (C.D. Cal. 1999)..........................................................4

*Rose v. Chase Manhattan Bank U.S.A., N.A.*,
   396 F. Supp. 2d 1116 (C.D. Cal. 2005) .......................................................14

*Ruckelshaus v. Monsanto Co.*,
   467 U.S. 986 (1984) ......................................................................................6

*Ryman v. Sears, Roebuck and Co.*,
   No. 06-35630 (9th Cir. Oct. 12, 2007) ........................................................16

*SPGGC, LLC v.  Blumenthal*,
   No. 05-4711 (2d Cir. Oct. 19, 2007) ............................................................14

*Sagal v. First USA Bank, N.A.*,
   69 F. Supp. 2d 627 (D. Del. 1999) ...............................................................15

*Tamplenizza v. Josephthal & Co., Inc.*,
   32 F. Supp. 2d 702 (S.D.N.Y 1999) ..............................................................6

*Thomas v. Union Carbide Agric. Prods. Co.*,
   473 U.S. 568 (1985) ......................................................................................8

*Tiffany v. National Bank of Missouri*,
   85 U.S. 409 (1873) ......................................................................................11

*Transphase Sys., Inc. v. S. Cal. Edison Co.*,
   839 F. Supp. 711 (C.D. Cal. 1993)................................................................4

*Van Slyke v. Capital One Bank*,
   No. C, 07-00671 WHA, 2007 WL 1655641 (N.D. Cal. June 7, 2007).........18

*Ventura County Humane Soc'y v. Holloway*,
   40 Cal. App. 3d 897, 115 Cal. Rptr. 464 (1974) ...........................................9

*Ventura v. 1st Financial Bank USA*,
   No. C 03-4515 JF (RS), 2005 WL 2406029 (N.D. Cal. Sept. 29, 2005) ......15

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

- v -

Vess v. Ciba-Geigy Corp. USA,
    317 F.3d 1097 (9th Cir. 2003) ........................................................................19

Wachovia Bank, N.A. v. Burke,
    319 F. Supp. 2d 275 (D. Conn. 2004) ...........................................................12

Walton v. Mead,
    2004 WL 2415037 (N.D. Cal. Oct. 28, 2004) ..............................................20

Watters v. Wachovia Bank, N.A.,
    127 S. Ct. 1559 (2007).........................................................................1, 12, 13

Wells Fargo Bank, N.A. v. Boutris,
    252 F. Supp. 2d 1065 (E.D. Cal. 2003) ........................................................12

Wells Fargo Bank, N.A. v. Boutris,
    265 F. Supp. 2d 1162 (E.D. Cal. 2003) ........................................................12

Western Mining Council v. Watt,
    643 F. 2d 618 (9th Cir. 1981) .........................................................................4

Wilens v. TD Waterhouse Group, Inc.,
    120 Cal. App. 4th 746, 15 Cal. Rptr. 3d 271 (2003) .......................................8

Wilson v. City of Laguna Beach,
    6 Cal.App.4th 543, 7 Cal.Rptr.2d 848 (1992) ..............................................18

**FEDERAL STATUTES**

12 U.S.C. § 1 ...........................................................................................................11

12 U.S.C. § 24 .........................................................................................................11

12 U.S.C. § 93a .......................................................................................................13

**FEDERAL REGULATIONS**

12 C.F.R. §§ 7.4008(d)(2)..............................................................................2, 13, 14

**STATE STATUTES**

10 Del. C. § 8106 ....................................................................................................11

Cal. Bus. & Prof. Code § 17208 ..............................................................................10

Cal. Civ. Code § 1761 ..............................................................................................16

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

Cal. Civ. Code § 1780 ..................................................................................8

Cal. Civ. Code § 1783 ................................................................................10

Cal. Civ. Code § 1770(a)(19) .....................................................................17

Cal. Code Civ. Proc. § 338 .........................................................................11

Cal. Bus. & Prof. Code § 17200 ..............................................................1, 2

**OTHER**

Fed. R. Civ. P. 9(b) ...................................................................................19

Fed. R. Civ. P. 12(b)(6).........................................................................2, 4, 5

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

LA 51005838v3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

The Complaint is fatally defective on numerous alternative grounds.  <u>First</u>, this Court must reject Plaintiffs' sweeping challenge to the arbitration provision set forth in their credit card agreements because Plaintiffs lack standing both under Article III of the U.S. Constitution and under California law.  Plaintiffs do not allege that the arbitration agreements have been enforced against them, they do not describe any present dispute relating to their credit cards which might be subject to arbitration and they allege no concrete harm traceable to the agreements.  Plaintiffs' claims, therefore, must be dismissed in their entirety for lack of standing.

Second and alternatively, if the mere presence of the arbitration provision in the agreements somehow qualifies as an injury sufficient to confer standing, then the claims are entirely time-barred.  Plaintiffs have had their credit cards for many, many years, and until this lawsuit was filed never challenged the terms of the arbitration provision.[1]

Third, the claims also are defeated because state law theories may not be used to mount a facial attack on the terms of a national bank's credit card agreement.  The United States Supreme Court, in Watters v. Wachovia Bank, N.A., 127 S. Ct. 1559 (2007), recently reaffirmed the primacy of federal law in this area.  The National Bank Act and regulations promulgated thereunder by the Office of the Comptroller of the Currency completely and expressly preempt all of Plaintiffs' claims.  "A national bank may make non-real estate loans without regard to state law limitations concerning . . . [t]he terms of credit … [or] [d]isclosure and advertising, including laws requiring specific statements, information or other content to be included in

---

[1] All of Plaintiffs' state-law claims are under California law.  However, federal and/or Delaware law govern the terms of Plaintiffs' agreements with Chase.  See Exhibit 14 to Complaint, at 117.  If Plaintiffs' claim survives the present pleading challenge, it nonetheless will fail because California state law theories are not applicable to, and therefore cannot be invoked to challenge, those agreements.

credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents." 12 C.F.R. §§ 7.4008(d)(2)(iv) & (viii).

Finally, Plaintiffs' CLRA and fraud claims are not adequately pleaded, and may not be asserted here, regardless of the Court's conclusions as to the issues described above. Neither credit card agreements nor agreements to arbitrate disputes constitute contracts for the "sale or lease" of "goods and services," as the Consumers Legal Remedies Act ("CLRA") defines those terms. Pursuant to Berry v. American Express Publishing, Inc., et al., 147 Cal. App. 4th 224 (2007), the CLRA does not apply at all to credit card agreements as a matter of law. Additionally, Plaintiffs' fraud claim is not adequately pleaded under Federal Rule of Civil Procedure 9(b).

As amply demonstrated below, Plaintiffs' Complaint suffers from numerous weaknesses at its core, and should be rejected. This Court should grant Chase's motion to dismiss without leave to amend.

## II.   ALLEGATIONS OF THE COMPLAINT

This case relates to credit cards issued by a national bank located in Delaware. (See Comp. ¶ 1.)[2] Plaintiffs purport to allege violations of the UCL (Cal. Bus. & Prof. Code 17200) and common law fraud. Plaintiff Lee also purports to allege a claim under the CLRA. Plaintiffs' claims arise from their cardmember agreements with Chase, which specify the terms by which Chase extends credit and govern Chase's relationship with its cardmembers (the "Agreements"). Specifically, Plaintiffs challenge the Agreements' arbitration provision, which requires cardmembers to arbitrate certain disputes with Chase. (Comp. ¶¶ 1-5.)

The Agreements expressly provide that they are governed by Delaware or federal law, as may be appropriate. (Comp., Exhibit 14, at 117.) The arbitration provision has been included in the Agreements for more than four years before the filing of the Complaint in this action. (Comp. ¶¶ 25, 26; Exhibit 14, at 115.)

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

---

[2]  Plaintiffs maintain their accounts only with Chase Bank USA, N.A., not Chase Manhattan Bank U.S.A., N.A. and JPMorgan Chase & Co., which are erroneously sued. See Comp., Exhibit 14, at 113. Therefore, Chase Manhattan Bank U.S.A., N.A. and JPMorgan Chase & Co. are not properly parties to this action at all.

2

1    Plaintiffs contend, in their First through Fourth, Sixth, Ninth and Tenth Causes

2  of Action, that Chase violates the UCL because "[t]he arbitration clause, which was

3  inserted into the contract between Chase and Plaintiffs (and similarly situated

4  persons), is unconscionable, [and] illegal …" and "[v]arious of the card agreement

5  terms (excepting the arbitration provision) and the agreement itself which was

6  inserted into the contract between Chase and Plaintiffs (and other similarly situated

7  persons), is unconscionable, [and] illegal …."  (Comp. ¶¶ 55, 60, 63, 65, 73, 85, and

8  87.)[3]

9    Plaintiffs contend, in their Fifth and Eighth Causes of Action, that Chase

10 violates the CLRA because "one or more of the terms of the arbitration provision

11 and/or the arbitration provision itself was unconscionable and illegal under

12 California law" and "[t]he actions of Chase in inserting unconscionable terms into

13 the card agreement (excepting the arbitration provision) common to Plaintiffs and

14 similarly situated persons was done in violation of Subdivision 19 of California Civil

15 Code § 1770(a) …."  (Comp. ¶¶ 71, 82.)

16    Plaintiffs further contend, in their Seventh Cause of Action, that Chase "made

17 misrepresentations to Plaintiffs and similarly situated Chase card holders that the

18 terms contained in its card member agreement (excluding its arbitration provision) to

19 its credit cards and the card agreement itself was conscionable, legal, and

20 enforceable, and the controlling law pertaining to those cards was Delaware law."

21 (Comp. ¶ 76.)  Plaintiffs allege that "[t]hese representations were made not only in

22 the card agreement themselves but in direct communications between the card holder

23 and Chase and on the official Chase Internet website."  (Id.)  Moreover, in their

24 Eleventh Cause of Action, Plaintiffs contend that they are entitled to a declaratory

25 judgment "of their rights and duties, and a declaration that the arbitration provision

26

27    _____

[3] Chase contends that if Plaintiffs' claim survives the present pleading challenge, it
28 will nonetheless fail on the merits.  See Discover Bank v. Superior Court, 134 Cal.
App. 4th 886, 894, 36 Cal. Rptr. 3d 456 (2005).  As explained herein, however, this
Court need not reach the merits, but may dismiss Plaintiffs' claims on the pleadings.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

1    and/or the card agreement and/or specified terms of the card agreement are

2    unconscionable, illegal and unenforceable."  (Comp. ¶ 91.)

3        Plaintiffs seek injunctive relief, non-statutory and/or statutory restitution

4    (including disgorgement of profits) for all causes of action, punitive damages relative

5    to the CLRA and fraud causes of action, declaratory judgment, and attorneys' fees

6    and costs.  (Comp. at 46-47.)

7        Critically, Plaintiffs identify no present dispute with Chase in regard to any

8    specific charge on their accounts or any other issue relating to their accounts.  They

9    do not contend that they have <u>ever</u> been required or requested to arbitrate <u>any</u> dispute

10   with Chase.  Rather, and fatally, they make a facial challenge to the arbitration

11   agreement, in the abstract, without tying their challenge to any specific substantive

12   claim or dispute.

### III.    ARGUMENT

**A.    Legal Standard.**

15       A motion to dismiss for failure to state a claim tests the complaint's legal

16   sufficiency.  Fed. R. Civ. P. 12(b)(6); <u>North Star Int'l v. Arizona Corp. Comm'n</u>, 720

17   F. 2d 578, 581 (9th Cir. 1983); <u>Roe III v. Unocal Corp.</u>, 70 F. Supp. 2d 1073, 1075

18   (C.D. Cal. 1999).  "A complaint may be dismissed as a matter of law for one of two

19   reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts under a

20   cognizable legal claim."  <u>Kacludis v. GTE Sprint Communications Corp.</u>, 806 F.

21   Supp. 866, 870 (N.D. Cal. 1992) (quoting <u>Robertson v. Dean Witter Reynolds</u>, Inc.,

22   749 F. 2d 530, 534 (9th Cir. 1984).  A court need not necessarily "assume the truth of

23   legal conclusions merely because they are cast in the form of factual allegations."

24   <u>Western Mining Council v. Watt</u>, 643 F. 2d 618, 624 (9th Cir. 1981); <u>Transphase</u>

25   <u>Sys., Inc. v. S. Cal. Edison Co.</u>, 839 F. Supp. 711, 718 (C.D. Cal. 1993) (the Court

26   does not "need to accept as true conclusory allegations … or unreasonable

27   inferences").

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

4

Moreover, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted). A plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." Id. at 1974. Federal Rule of Civil Procedure 8(a)(2) requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief. Id. at 1965 n.3. Though such assertions may provide a defendant with the requisite "fair notice" of the nature of a plaintiff's claim, only factual allegations can clarify the "grounds" on which that claim rests. Id. "The pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action ." Id. at 1965 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1216, pp. 235-36 (3d ed. 2004)). Consequently, a Rule 12(b)(6) motion should be granted where the plaintiffs have failed to "nudge[ ] their claims across the line from conceivable to plausible." Id. at 1974.

Plaintiffs' allegations fail to state a cognizable legal claim against Defendants, and thus the Complaint should be dismissed without leave to amend.

**B.    Plaintiffs Lack Standing To Bring This Action.**

As is apparent from the face of the Complaint, Plaintiffs do not and cannot allege any actual harm that they personally have suffered as a direct result of the Agreements. Therefore, they do not meet the requirements of standing under Article III of the U.S. Constitution, the UCL, or the CLRA. Nor have they suffered any legally cognizable detriment giving rise to a fraud claim.

**1.    Plaintiffs Lack Standing Under Article III To Plead Any Claims.**

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Under Article III, Plaintiffs lack standing

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

1   unless they have already personally suffered concrete, measurable harm directly

2   attributable to the Agreements.  This is why the federal courts uniformly reject facial

3   challenges to arbitration agreements.  See Ruckelshaus v. Monsanto Co., 467 U.S.

4   986, 1019-20 (1984) (no standing where plaintiff "did not allege or establish that it

5   had been injured by actual arbitration under the statute"); Bd. of Trade of the City of

6   Chicago v. Commodity Futures Trading Cmm'n, 704 F.2d 929, 932-34 (7th Cir.

7   1983) (same); Tamplenizza v. Josephthal & Co., Inc., 32 F. Supp. 2d 702, 703, 704

8   (S.D.N.Y. 1999) (refusing to invalidate arbitration provision where no pending or

9   imminent arbitral proceeding); Posern v. Prudential Secs., Inc., No. C-03-0507 SC,

10  2004 WL 771399, at § 8 (N.D. Cal. Feb. 18, 2004) (same); Bowen v. First Family

11  Fin. Servs., Inc., 233 F.3d 1331, 1341 (11th Cir. 2000) (same).[4]

12      Plaintiffs plainly fail to meet the standing requirement of Article III.  They do

13  not show that they suffered a concrete, measurable injury based on a specific loss of

14  money or property and directly traceable to the Agreements.  Plaintiffs simply allege

15  that "if the arbitration provision contained in the agreement relating to their credit

16  cards is unconscionable, illegal and unenforceable, Plaintiffs received something

17  lower in value than that for which they paid and, as a result, they have lost money as

18  a result of the unconscionability, illegality, and unenforceability of the Chase-

19  imposed arbitration provision."  (Comp. ¶ 35.)  This is inadequate.

20      Plaintiffs stretch legal argument to the breaking point.  Nowhere in the

21  Complaint do Plaintiffs allege that they attempted to arbitrate a dispute with Chase

22  over their Agreements and were thwarted because the arbitration provision in the

23  Agreements was judged unenforceable.  Nor do they allege they were forced to

24  arbitrate against their will or under unfair conditions.  Plaintiffs' alleged "injury" is

25

26  [4] See also Highsmith v. Chrysler Credit Corp., 18 F.3d 434, 436-37 (7th Cir. 1994);

27  Barry v. Carnival Corp., 424 F. Supp. 2d 1354, 1358 (S.D. Fla. 2006); Caprock
    Plains Fed. Bank Ass'n v. Farm Credit Admin., 843 F.2d 840, 845-46 (5th Cir.

28  1988); Alascom, Inc. v. F.C.C., 727 F.2d 1212, 1217 (D.C. Cir. 1984); Burke v. City
    of Charleston, 139 F.3d 401, 406 (4th Cir. 1998); Brother v. CPL Investments, Inc.,
    317 F. Supp. 2d 1358, 1369 (S.D. Fla. 2004).

LA 51005838v3

hypothetical because it is based on Plaintiffs' allegation about what <u>might</u> happen if a potentially-arbitrable dispute might arise between them and Chase in the future. The loss of value Plaintiffs allege only could have meaning in the context of an actual dispute. An unactualized possibility is not an injury in fact. Therefore, <u>all</u> of Plaintiffs' claims should be dismissed for lack of Article III standing.

### 2.    Plaintiffs' UCL Claims Also Are Barred Because They Lack UCL Standing.

Plaintiffs also lack standing to plead their UCL claims under California law. Section 17204 of the UCL[5] provides, in pertinent part:

> Actions for any relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction … by any person who has suffered injury in fact and has lost money or property as a result of such unfair competition.

A private UCL plaintiff must prove standing based on a specific loss of money or property that is proximately caused by alleged UCL violation. <u>See</u> <u>Buckland v. Threshold Enterprises, Ltd.</u>, No. B192832, 2007 WL 2773497, *8 (Cal. App. 2 Dist., Sep 25, 2007) (plaintiffs must show, at a minimum, "a distinct and palpable injury" that is concrete and particularized, not "conjectural" or "hypothetical"). Plaintiffs allege only hypothetical harm here, defeating their UCL claims.

Again, the Complaint reveals on its face that Plaintiffs do not and cannot allege any actual harm that they personally have suffered as a direct result of the Agreements. They have not lost any money and have no pending claim involving a dispute with Chase regarding their credit cards. Because no actual pecuniary damages are alleged to exist at this time, Plaintiffs fail to meet the UCL's standing requirement, and their claims should be dismissed.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

---

[5] Proposition 64, which became effective on November 3, 2004, amended the UCL and placed restrictions on standing and how aggregated claims should proceed in actions filed by private individuals or entities.

LA 51005838v3

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

3.      **Plaintiffs Also Lack Standing To Allege A Claim Under The CLRA.**

Under the CLRA, <u>only</u> a damaged consumer has standing to sue.  A CLRA cause of action is available to "[a]ny consumer who <u>suffers any damage</u> as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770[.]"  Cal. Civ. Code § 1780(a) (emphasis added).  "Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof."  <u>Wilens v. TD Waterhouse Group, Inc.</u>, 120 Cal. App. 4th 746, 754-56, 15 Cal. Rptr. 3d 271 (2003) (court refused to certify a CLRA class where it could not presume that each class member suffered damage "by the mere insertion of the [unconscionable] provision in the … agreement[,]" and where "the individual issues here go beyond mere calculation; they involve each class member's <u>entitlement</u> to damages") (emphasis in original); <u>Caro v. Proctor & Gamble Co.</u>, 18 Cal. App. 4th 644, 659-660, 22 Cal. Rptr. 2d 419 (1993) (where benefits would be minimal or non-existent, CLRA class action failed).[6]  The mere assertion that the arbitration provision is "unconscionable" is not tantamount to injury and does not confer standing.

Plaintiffs lack standing under the CLRA to challenge an arbitration clause that has not been invoked, and the Agreements containing it, because such a claim involves "contingent future events that may not occur as anticipated, or indeed may not occur at all."  <u>Thomas v. Union Carbide Agric. Prods. Co.</u>, 473 U.S. 568, 580-81 (1985) (no standing to challenge arbitration clause not yet invoked); <u>Bowen v. First Family Fin. Servs., Inc.</u>, 233 F.3d 1331, 1341 (11th Cir. 2000) ("In the absence of a substantial likelihood that the arbitration agreement will be enforced against the plaintiffs, they lack standing to challenge its enforceability."); <u>see also</u> <u>Barry v. Carnival Corp.</u>, 424 F. Supp. 2d 1354, 1358 (S.D. Fla. 2006) (no standing to

---

[6]  <u>See also</u> <u>Churchill Village, L.L.C. v. General Electric Co.</u>, 169 F. Supp. 2d 1119, 1129 (N.D. Cal. 2000) ([s]peculative injury ... does not constitute irreparable injury") (citation omitted); <u>Hillside Dairy, Inc. v. Kawamura</u>, 317 F. Supp. 2d 1194, 1196 (E.D. Cal. 2004) (that state "may eventually attempt to enforce" statute failed to demonstrate irreparable injury).

challenge forum selection clause where injury stemming therefrom is neither actual nor imminent).

Plaintiffs nowhere allege that they were forced to individually arbitrate any claim against Chase. Stripped to its essence, Plaintiffs' alleged "injury" concerns what <u>might</u> happen if Plaintiffs were to attempt to arbitrate a dispute with Chase over the Agreements. In short, Plaintiffs allege no tangible loss or infringement of any cognizable legal right that a favorable decision under the CLRA could remedy. Absent some cognizable legal harm flowing directly from Chase's conduct, Plaintiffs cannot pursue an action under the CLRA, and their CLRA claims should be dismissed.

### 4. Plaintiffs Lack Standing To Assert A Fraud Claim.

For the same reasons set forth above, Plaintiffs' fraud claim also fails. They do not allege having suffered any concrete detriment resulting from their reliance on any alleged misrepresentation. Their alleged injuries are hypothetical and conjectural only, and this does not suffice to confer standing. <u>See</u> <u>Ventura County Humane Soc'y v. Holloway</u>, 40 Cal. App. 3d 897, 906, 115 Cal. Rptr. 464 (1974) ("it is the uncertainty as to the fact of damage rather than its amount which negatives the existence of a cause of action"); <u>Hillside Dairy, Inc. v. Kawamura</u>, 317 F. Supp. 2d 1194, 1196 (E.D. Cal. 2004) (that state "may eventually attempt to enforce" statute failed to demonstrate irreparable injury).

### C. All Of Plaintiffs' Claims Also Are Barred By The Statute of Limitations.

If, however, this Court should determine that mere inclusion into a contract of allegedly unconscionable language constitutes an injury sufficient to confer standing, then Chase is entitled to judgment by reason of the statute of limitations. Plaintiffs admit that their cardmember agreements have required individual arbitration for more than four years, the longest applicable limitations period. Therefore, Plaintiffs' UCL claims (the First through Fourth, Sixth, Ninth, and Tenth Causes of Action),

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

9

1    CLRA claims (the Fifth and Eighth Causes of Action), and fraud claim (the Seventh

2    Cause of Action) are barred by the applicable statutes of limitations.

3    **1.    Plaintiffs' UCL Claims Are Time-Barred.**

4    The statute of limitations for UCL actions is four years.  Cal. Bus. & Prof.

5    Code § 17208.  Plaintiffs knew or should have known the relevant facts giving rise to

6    their UCL claims when they first obtained the Chase credit cards and Agreements

7    that are the subject of this litigation.  Plaintiff Lee obtained a Chase United Airlines

8    credit card from Chase, and received his cardmember agreement, in or about the late

9    1990s.  (Comp. ¶ 25.)  Plaintiff Lloyd obtained a Chase United Airlines Mileage Plus

10   Platinum, and received his cardmember agreement, in or about 2000.  (Comp. ¶ 26.)

11   Thus, Plaintiffs were aware of, and should have discovered, the basis of their claims

12   at least seven years prior to the filing of their Complaint.  They had four years to

13   litigate these claims, which they failed to do.  Therefore, Plaintiffs' UCL claims are

14   time-barred and should be dismissed.

15   **2.    Plaintiffs' CLRA Claims Are Time-Barred.**

16   CLRA claims are subject to a three-year statute of limitations.  Cal. Civ. Code

17   § 1783.  Courts have held that the statute runs from the time that a reasonable person

18   would have discovered the basis for a claim.  See Mass. Mut. Life Ins. Co. v. Super.

19   Ct., 97 Cal. App. 4th 1282, 1295 (2002).  As alleged in the Complaint, Plaintiffs

20   have had their credit cards and the Agreements for more than seven years.  No basis

21   for tolling the statute of limitations is pleaded.  Plaintiffs' CLRA claims are time-

22   barred and should be dismissed.

23   **3.    Plaintiffs' Fraud Claim Is Time-Barred.**

24   Plaintiffs' fraud claim also is barred by the statute of limitations under

25   California and Delaware law.  Under both California and Delaware law, the

26   limitations period for commencement of a fraud action is three years.  See Code Civ.

27   Proc. § 338, subd. (d); 10 Del. C. § 8106.  The facts underlying Plaintiffs' fraud

28   claim were fully known to Plaintiffs when they obtained the Chase credit cards that

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

LA 51005838v3

1    are the subject of this litigation, in or about the late 1990s for Plaintiff Lee and in or

2    about 2000 for Plaintiff Lloyd.  (Comp. ¶¶ 25, 26.)  Thus, the clock has long run on

3    Plaintiffs' fraud claim and it should be dismissed.

4
5    **D.    Plaintiffs' Prosecution Of This Action Impairs Chase's Core Powers As A National Bank, And Thus Federal Law Preempts This Action.**

6         Plaintiffs also are barred from pursuing California liability theories at all

7    because they chose to obtain credit cards from a national bank located in Delaware.

8         Plaintiffs challenge activities that lie at the heart of Chase's powers as a

9    national bank.  Their claims, all pursued under state law, therefore are completely

10   preempted.  See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 11, 123 S. Ct. 2058,

11   2064, 156 L. Ed. 2d (2003); American Bankers Ass'n v. Lockyer, 239 F. Supp. 2d

12   1000, 1018 (E.D. Cal. 2002) ("the OCC states that terms and conditions of

13   extensions of credit as well as management of credit accounts are powers 'at the

14   heart of' the NBA authority to lend money").  "There are three functions considered

15   to constitute the core of the banking business:  accepting deposits, lending, and

16   cashing checks." Community Bankers Ass'n v. Clarke, 766 F. Supp 1519, 1528

17   (S.D. Ind. 1990) (building and loans that offered credit cards engaged in the banking

18   business) (citing Dep't of Banking & Consumer Finance v. Clarke, 809 F. 2d 266,

19   270 (5th Cir. 1987) and Volunteer State Bank v. Nat'l Bank of Commerce, 684 F.

20   Supp. 964, 966 (M.D. Tenn. 1988)); see 12 U.S.C. § 24 (Seventh) (federally-

21   chartered banks' powers include "loaning money on personal security").

22        Congress enacted the National Bank Act, 12 U.S.C. § 1 et seq. (the "NBA"), to

23   establish a national banking system free from excessive state regulation.  This federal

24   interest is beyond dispute.  "National banks have been National favorites.  They were

25   established for the purpose, in part, of providing a currency for the whole country …

26   It could not have been intended, therefore, to expose them to the hazard of unfriendly

27   legislation by the States …." Tiffany v. National Bank of Missouri, 85 U.S. 409, 413

28   (1873); accord Easton v. Iowa, 188 U.S. 220 (1903).  See also Bank of America v.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

1    City & County of San Francisco, 309 F. 3d 551, 561 (9th Cir. 2002) ("State attempts

2    to control the conduct of national banks are void if they conflict with federal law,

3    frustrate the purposes of the [NBA], or impair the efficiency of national banks to

4    discharge their duties.") (citing First Nat'l Bank v. California, 262 U.S. 366, 369

5    (1923)); American Bankers Ass'n, 239 F. Supp. 2d at 1007 (same).  When state law

6    infringes on the federal interest, it is preempted.  Barnett Bank of Marion County,

7    N.A. v. Nelson, 517 U.S. 25, 33-34, 116 S. Ct. 1103, 134 L. Ed. 2d 237 (1996) ("A

8    state cannot regulate a national bank where doing so would prevent or significantly

9    interfere with the national bank's exercise of its powers."); see also Geier v.

10   American Honda Motor Co., 529 U.S. 861, 885 (2000); Industrial Truck Ass'n, Inc.

11   v. Henry, 125 F. 3d 1305, 1309 (9th Cir. 1997).  When federal law preempts state

12   law, state law claims may not be asserted.  See Wachovia Bank, N.A. v. Burke, 319

13   F. Supp. 2d 275, 286 (D. Conn. 2004) ("state regulations that 'interfere[] with a

14   power which national banks are authorized to exercise' irreconcilably conflict with

15   the federal statute and are preempted") (quoting Wells Fargo Bank of Texas, N.A. v.

16   James, 321 F. 3d 488, 491-492 (5th Cir. 2003)), aff'd in part, rev'd in part on other

17   grounds, 414 F.3d 305 (2nd Cir. 2005), cert. denied, 127 S. Ct. 2093 (2007); Bank of

18   America, 309 F. 3d at 558.[7]

19   The purposes underlying the NBA recently were explained by the Supreme

20   Court in Watters v. Wachovia Bank, N.A., 127 S. Ct. 1559 (2007) (holding that the

21   mortgage business by the operating subsidiary of a national bank is subject to the

22   superintendence of the OCC, to the complete exclusion of state registration

23   requirements).  The Supreme Court stated that "[i]n the years since the NBA's

24   ────────────────────────

25   [7]   See also Wells Fargo Bank, N.A. v. Boutris, 252 F. Supp. 2d 1065 (E.D. Cal.
     2003) (state enforcement actions threaten the uniformity and predictability that the
     NBA and federal regulations establish, and violate the OCC's exclusive authority to

26   regulate national banks); Wells Fargo Bank, N.A. v. Boutris, 265 F. Supp. 2d 1162
     (E.D. Cal. 2003) (same); National City Bank v. Boutris, No. Civ. S-03-0655, 2003

27   WL 21536818 (E.D. Cal. July 2, 2003) (same); First Union Nat'l Bank v. Burke, 48
     F. Supp. 2d 132, 148-49 (D. Conn. 1999) (same); National State Bank v. Long, 630

28   F. 2d 981, 989 (3rd Cir. 1980) (same); First Nat'l Bank of McCook v. Fulkerson,
     2000 WL 33914121 (D. Colo. Mar. 7, 2000) (same).

LA 51005838v3

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

1    enactment, we have repeatedly made clear that federal control shields national

2    banking from unduly burdensome and duplicative state regulation." Id. at 1567.

3    "Diverse and duplicative superintendence of national banks' engagement in the

4    business of banking . . . is precisely what the NBA was designed to prevent." Id. at

5    1568.  "Congress did not intend, . . . 'to leave the field open for the States to attempt

6    to promote the welfare and stability of national banks by direct legislation ....

7    [C]onfusion would necessarily result from control possessed and exercised by two

8    independent authorities.'" Id. at 1568 (quoting Easton v. Iowa, 188 U.S. 220, 231-

9    232 (1903)).

10       Plaintiffs impermissibly would have California law rewrite the terms and

11   disclosures that Chase includes in its Agreements, implicating Chase's core power to

12   lend money.  "Within the framework of the NBA and other federal laws, national

13   banks are authorized to set the terms and conditions under which they offer

14   extensions of credit." Id.; see also 12 C.F.R. §§ 7.4008(b), 7.4009(b) ("Except where

15   made applicable by Federal law, state laws that obstruct, impair, or condition a

16   national bank's ability to fully exercise its powers to conduct activities authorized

17   under Federal law do not apply to national banks.").[8]

18       An OCC regulation, 12 C.F.R. § 7.4008(d)(2), expressly embodies this long-

19   established preemption concept, forbidding the States from regulating national bank

20   credit card agreements:

21       (d)    Applicability of state law.

22               (2)    A national bank may make non-real estate loans

23                      without regard to state law limitations concerning:

24                               (iv)    The terms of credit … [and]

25

26   _____

27   [8] Congress authorized the OCC to issue regulations implementing the NBA, see 12
     U.S.C. § 93a, and these regulations possess the power to preempt state law. See
28   Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153, 102 S. Ct.
     3014, 73 L. Ed. 2d 664 (1982) ("Federal regulations have no less preemptive effect
     than federal statutes.").

13

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

1
2
3
4
5
6

        (viii)     Disclosure and advertising, including laws requiring specific statements, information or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents.

7    12 C.F.R. §§ 7.4008(a) and (d).

8        Indeed, the courts repeatedly have concluded that OCC regulations flatly bar

9    state law from dictating a credit card agreement's terms and disclosures.  In Rose v.

10    Chase Manhattan Bank U.S.A., N.A., 396 F. Supp. 2d 1116, 1122 (C.D. Cal. 2005),

11    the court held that a California Civil Code provision purporting to mandate certain

12    disclosures in convenience check offers made to credit card account holders "is

13    expressly preempted by the plain language of Section 7.4008[.]" Id. at 1122, 1123.

14    The Rose court reasoned that the California Civil Code provisions at issue

15    constituted "an obstacle to the accomplishment and execution of the full purposes

16    and objectives of Congress[,]" because "Congress did not condition its grant of

17    power on a national bank's compliance with state laws which impose disclosure

18    requirements on a bank's ability to make loans to residents of the state." Id. at 1120

19    (citation omitted).  The Rose court concluded that because the Civil Code provision

20    "directs the disclosure of certain information in credit card solicitations, and

21    conditions a national bank's power to make convenience check loans on compliance

22    with those disclosures[,]" it "directly conflicts with [12 C.F.R.] Section 7.4008" and

23    was thus preempted." Id. at 1122.  See also Abel v. KeyBank, 313 F. Supp. 2d 720,

24    728-729 (N.D. Ohio 2004) ("[12 C.F.R.] Section 7.4008(d)(2)(iv), which indicates

25    that national banks may lend money without regard to state laws imposing

26    requirements as to the terms of credit, supports this Court's conclusion that the

27    federal government intended to preempt statutes such as RISA, which essentially

28    impose credit terms concerning defenses to repayment"); SPGGC, LLC v.

1    Blumenthal, No. 05-4711 (2d Cir. Oct. 19, 2007) (holding seller does state a valid

2    claim for NBA preemption against Connecticut Gift Card Law prohibiting the

3    imposition of an expiration date on a gift card); Austin v. Provident Bank, No.

4    Civ.A.4:04 CV 33 P B, 2005 WL 1785285, at *5-6 (N.D. Miss. July 26, 2005) (fraud

5    claim predicated on state contract and tort law more than incidentally affected

6    national bank's lending powers, and thus was completely preempted by the NBA);

7    see Ass'n of Nat'l Banks in Ins., Inc. v. Duryee, 270 F. 3d 397, 404 (6th Cir. 2001)

8    ("Where state and federal law are inconsistent, the state law is pre-empted even if it

9    was enacted by the state to protect its citizens or consumers"); American Bankers,

10   239 F. Supp. 2d at 1018 (state statute that required credit card disclosures regarding

11   minimum payments was preempted); Franklin Nat'l Bank v. New York, 347 U.S.

12   373, 377-79 (1954) (NBA preempted state statute prohibiting national banks from

13   using the word "saving" or "savings" in advertising); Krispin v. May Dept. Stores

14   Co., 218 F. 3d 919 (8th Cir. 2000); Hood v. Santa Barbara Bank & Trust, No.

15   1156354 (Cal. Super. Ct., May 18, 2005).

16       In spite of these plain statements of federal primacy, Plaintiffs identify no

17   provision of the NBA or the OCC's regulations prohibiting class action waivers or

18   limiting how national banks may structure their credit card agreements' arbitration

19   clauses, because no such federal provision exists.  To the contrary, numerous

20   authorities uphold national banks' right to include such terms in their agreements.

21   See Sagal v. First USA Bank, N.A., 69 F. Supp. 2d 627 (D. Del. 1999); Lloyd v.

22   MBNA Am. Bank, N.A., 27 Fed. Appx. 82, 84 (3d Cir. 2002); cf. Ventura v. 1st

23   Financial Bank USA, No. C 03-4515 JF (RS), 2005 WL 2406029, at *5 (N.D. Cal.

24   Sept. 29, 2005).

25       The National Bank Act and OCC regulations thus completely preempt all of

26   Plaintiffs' claims, and consequently they should be dismissed without leave to

27   amend.

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067–3086

**E.    The CLRA Does Not Apply To Credit Card Agreements.**

Plaintiffs' CLRA claims also fail as a matter of California law.  The Agreements between Chase and Plaintiffs do not constitute agreements for the "sale or lease of goods or services" as required to pursue a claim under the CLRA.  The California Court of Appeal has made clear that credit card issuers may <u>not</u> be sued under the CLRA for including allegedly unfair terms in their card agreements.  <u>Berry v. American Express Publishing, Inc., et al.</u>, 147 Cal. App. 4th 224 (2007).[9]  On May 16, 2007, the California Supreme Court denied review of the Court of Appeal's decision in <u>Berry</u>, and further denied multiple depublication requests.  This Court must apply the <u>Berry</u> rule and dismiss the CLRA claim.  <u>See</u> <u>Ryman v. Sears, Roebuck and Co.</u>, No. 06-35630 (9th Cir., Oct. 12, 2007) (when a federal court is required to apply a state law, and there is no relevant precedent from the state's highest court, the federal court must follow a relevant state intermediate appellate court decision unless there is convincing evidence that the state's supreme court likely will not follow it).

<u>Berry</u> alleged the exact claim currently before this Court.  Plaintiff in <u>Berry</u> asserted a single cause of action for violation of the CLRA, contending that his credit card agreement contained an allegedly "unconscionable" arbitration agreement in violation of Civil Code section 1770(a)(19).  Plaintiff contended that his credit card agreement was subject to the CLRA because a credit card supposedly constitutes a "good" or "service" as defined by Civil Code section 1761.

Following the plain text of the statute, the Fourth District Court of Appeal held that a credit card is not itself a "good" within the meaning of the CLRA, since an extension of credit is plainly not a "tangible chattel," even though a credit card may be used to purchase goods.  <u>See</u> <u>Berry</u>, 147 Cal. App. 4th at 229; Cal. Civ. Code § 1761(a) (defining "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes").  The Court of Appeal further analyzed

---

[9]  Plaintiffs' counsel herein, Matthew Hale, was counsel of record for the <u>Berry</u> plaintiff.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

1   whether an extension of credit constitutes a "service" under the CLRA, finding no

2   support for such an interpretation in either the text of the statute or in its legislative

3   history.  The Court of Appeal's reasoning is dispositive here:

4       Early drafts of section 1761, subdivision (d), defined "Consumer"
        as "an individual who seeks or acquires, by purchase or lease, any
5       goods, services, money, or credit for personal, family or
        household purposes." (Assem. Bill No. 292 (1970 Reg. Sess.)
6       Jan. 21, 1970, italics added.)  But the Legislature removed the
        references to "money" and "credit," before CLRA's enactment,
7       and they do not appear in the current version.

8       . . .

9       Other provisions in early drafts of CLRA confirm that deletion of
        the terms "money" and "credit" narrowed the act's scope.  For
10      example, an early draft of section 1780 gave standing to "[a]ny
        consumer who obtains credit, or purchases or leases, or agrees to
11      purchase or lease, goods or services primarily for personal,
        family, or household purposes, and who thereby suffers any
12      damage. . . ." (Italics added.)  The draft's placement of the phrase
        "obtains credit" demonstrates the Legislature viewed the
13      extension of credit as a separate activity from purchasing or
        leasing goods and services, rather than an example of it.  The
14      final version of section 1780 deleted the specific references to
        activities covered under the act, and it now confers standing on:
15      "Any consumer who suffers any damage as a result of the use or
        employment by any person of a method, act, or practice declared
16      to be unlawful by Section 1770. . . ."

17      Section 1770 lists the specific methods, practices, and acts
        deemed unlawful under CLRA.  Most of the matters in section
18      1770 appear directed toward the purchase and lease of tangible
        goods and services, and none suggests the statutory language
19      covered extensions of credit unrelated to a specific sale or lease
        transaction.  Moreover, the Legislature considerably narrowed
20      section 1770 before enacting CLRA.  For example, an earlier
        draft of the preface in subdivision (a) required the specified
21      unlawful acts or practices to have been "undertaken by any
        person in the conduct of any trade or commerce . . . ." The
22      Legislature later narrowed section 1770 to read "undertaken by
        any person in the sale or lease of goods or services to any
23      consumer . . . ."  The current preface to section 1770, subdivision
        (a), reads: "undertaken by any person in a transaction intended to
24      result or which results in the sale or lease of goods or services to
        any consumer . . . ."  Thus, the Legislature unmistakably
25      narrowed the act's scope by limiting liability to transactions
        involving the actual or contemplated sale or lease of goods and
26      services.  Consequently, providing credit separate and apart from
        the sale or lease of any specific good or service falls outside the
27      scope of section 1770.

28  Id. at 230-32 (italics in original).

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

In light of this undisputed history, the Court of Appeal applied well-established rules of statutory construction in finding that the CLRA does not apply to transactions for "money" or "credit":

> "The evolution of a proposed statute after its original introduction in the Senate or Assembly can offer considerable enlightenment as to legislative intent." (People v. Goodloe (1995) 37 Cal.App.4th 485, 490, 44 Cal.Rptr.2d 15.) Thus, an oft cited canon of statutory construction provides: """The rejection by the Legislature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omitted provision."" (Gikas v. Zolin (1993) 6 Cal.4th 841, 861, 25 Cal.Rptr.2d 500, 863 P.2d 745; Wilson v. City of Laguna Beach (1992) 6 Cal.App.4th 543, 555, 7 Cal.Rptr.2d 848; Rich v. State Board of Optometry (1965) 235 Cal.App.2d 591, 607, 45 Cal.Rptr. 512.) The simple reason for this canon is that a court "should not grant through litigation what could not be achieved through legislation." (California Assn. of Psychology Providers v. Rank (1990) 51 Cal.3d 1, 33, 270 Cal.Rptr. 796, 793 P.2d 2 (Rank ).) Thus, courts must not interpret a statute to include terms the Legislature deleted from earlier drafts. Here, the Legislature's deletion of the terms "money" and "credit" from CLRA's definition of "consumer" strongly counsels us not to stretch the provision to include extensions of credit unrelated to the purchase of any specific good or service.

Id. at 230 (emphasis added). Applying this broad principle to the specific case of a credit card agreement, the Court of Appeal concluded that "neither the express text of the CLRA nor its legislative history supports the notion that credit transactions separate and apart from any sale or lease of goods and services are covered under the act," and held that the Superior Court properly sustained defendant's demurrer to the complaint. Id. at 233-34.

Furthermore, since Berry, a uniform line of cases holds broadly that the CLRA generally does not regulate financial services. In Migliaccio v. Midland Nat'l Life Ins. Co., No. CV 06-1007 CASMANX, 2007 WL 316873 (C.D. Cal. Jan. 30, 2007), it was recognized that annuity sales practices are not actionable under the CLRA, even though an annuity arguably is a kind of retirement planning service. In Van Slyke v. Capital One Bank, No. C 07-00671 WHA, 2007 WL 1655641 (N.D. Cal. June 7, 2007), and Augustine v. FIA Card Servs., N.A., 485 F. Supp. 2d 1172, 1175 (E.D. Cal. 2007), two federal courts found Berry to be persuasive, reading it broadly

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

1    to bar all CLRA claims relating to credit cards, no matter how the card issuer/card
2    holder relationship is characterized in the pleadings.  Recently, in <u>Fairbanks v.</u>
3    <u>Superior Court</u>, 154 Cal. App. 4th 435, 444-48 (2007), the Court of Appeal followed
4    <u>Berry</u> and found that insurance is not a "good" or "service" under the CLRA.  These
5    cases, as well as <u>Berry</u> itself, simply develop the basic principle recognized in <u>Civil</u>
6    <u>Services Employees Ins. Co. v. Superior Court</u>, 22 Cal. 3d 362, 376 (1978), that the
7    CLRA only regulates such things as are "technically" goods or services, traditionally
8    understood.

9        It thus is well-settled that financial services are not "services" within the
10    meaning of the CLRA.  If the Legislature intended to regulate financial services
11    broadly with the CLRA, it would not have deleted the words "money or credit" from
12    the statute.  The CLRA claim should be dismissed in its entirety.

13    **F.    Plaintiffs' Fraud And UCL Claims Fail Because They Are Not Pleaded**
14    **       With Particularity.**

15        Plaintiffs baldly assert that Chase made misrepresentations to Plaintiffs and
16    other cardmembers that the terms contained in Chase's Agreements were
17    conscionable, legal, and enforceable, and that the controlling law pertaining to those
18    cards was Delaware law.  (Comp. ¶ 76.)  Plaintiffs allege that these representations
19    were made not only in the Agreements themselves but also in direct communications
20    between Plaintiffs and Chase and on the official Chase Internet website.  <u>Id.</u>
21    Plaintiffs' fraud claim fails.

22        A plaintiff who alleges fraud must meet the heightened pleading requirements
23    of Federal Rule of Civil Procedure 9(b).  Rule 9(b) provides that, "[i]n all averments
24    of fraud or mistake, the circumstances constituting fraud or mistake shall be stated
25    with particularity."  Fed. R. Civ. P. 9(b).  This heightened pleading standard also
26    applies in UCL cases.  <u>See</u> <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1101,
27    1103-1104 (9th Cir. 2003) (applying Rule 9(b) standard to UCL claim).  To avoid
28    dismissal for inadequacy under Rule 9(b), Plaintiffs must state the "time, place, and
       specific content of the false representations as well as the identities of the parties to

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

19

the misrepresentation." <u>Walton v. Mead</u>, No. C 03-4921 CRB, 2004 WL 2415037, *7 (N.D. Cal. October 28, 2004) (citing <u>Edwards v. Marin Park</u>, 356 F.3d 1058, 1066 (9th Cir. 2004).

Plaintiffs here do not meet these requirements.  Plaintiffs fail to identify with the requisite particularity any statement made by anyone at Chase <u>upon which Plaintiffs relied at the time they obtained their credit cards</u> more than seven years ago.  Plaintiffs allege no specific acts of wrongdoing by Chase.  Under California law, "[t]he elements of fraud ... are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." (citation omitted) <u>Buckland v. Threshold Enterprises, Ltd.</u>, No. B192832, 2007 WL 2773497, *3 (Cal.App. 2 Dist., Sept. 25, 2007).  Plaintiffs fail to plead the elements of fraud under California law with adequate specificity, and their fraud and UCL claims should be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Chase respectfully requests that this Court grant the Motion and dismiss the Complaint in its entirety.

Respectfully submitted,

Dated:  October 25, 2007

STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND
STEPHEN J. NEWMAN


By:   s/Stephen J. Newman
      Stephen J. Newman

Attorneys for Defendants
CHASE BANK USA, N.A.,
erroneously sued as CHASE
MANHATTAN BANK USA, N.A.,
and JPMORGAN CHASE & CO.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

LA 51005838v3