# *Hale & Associates*

ATTORNEYS AND COUNSELORS AT LAW
45 RIVERMONT DRIVE
NEWPORT NEWS, VIRGINIA 23601

———

P.O. BOX 1951
NEWPORT NEWS, VIRGINIA 23601

———

TELEPHONE (757) 596-1143
E-MAIL: matthale@verizon.net


November 25, 2007


The Honorable Martin J. Jenkins
U.S. District Court
Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102


Re:   *David J. Lee et al. v. Chase Manhattan Bank, U.S.A, N.A., et al.*
      *Civil Docket No.: CV-07-4732 MJJ*

Dear Judge Jenkins:

Since the filing of the Plaintiffs' Reply Memorandum of Points and Authorities on November 13, 2007, a decision has been reported which supports the denial of the Defendants' Motion to Dismiss of which Plaintiffs now advise this Court:

1.   Hunter v. General Motors Corp., 2007 Cal.App.Unpub. 9252 at *19 and 32-33 (Cal.App. November 10, 2007), a copy of which is appended hereto for the Court's convenience, presents an analogous microcosm of the arguments made by the parties in this action. That decision reversed the lower court's grant of a demurrer that no claim under the Consumer Legal Remedies Act ("CLRA") or Unfair Competition Law ("UCL") had been stated by holding, relative to the UCL:

> "We reject the trial court's ruling that Pulgarin had to have alleged that her parking brakes actually failed to establish that she sustained an injury in fact and had lost money or property within the meaning of Business and Professions Code section 17204. The allegation that the parking brakes were defective when her vehicle was delivered to her and, thereafter, showed "abnormal and premature wear" is sufficient to allege an injury in fact and a loss of money or property--Pulgarin need not wait for a

1

catastrophic event such as brake failure to bring an action under the UCL based on the facts alleged in the fourth amended complaint."

Sincerely,

Matthew S. Hale

Case 3:07-cv-04732-MJJ   Document 18   Filed 11/25/2007   Page 3 of 13

Page 1
2007 Cal. App. Unpub. LEXIS 9252, *

LEXSEE 2007 CAL.APP.UNPUB. 9252

LA RONDA HUNTER, et al., Plaintiffs and Appellants, v. GENERAL MOTORS CORPORATION, Defendant and Respondent.

B190809

COURT OF APPEAL OF CALIFORNIA, SECOND APPELLATE DISTRICT, DIVISION FIVE

2007 Cal. App. Unpub. LEXIS 9252

November 19, 2007, Filed

**NOTICE:**   NOT TO BE PUBLISHED IN OFFICIAL REPORTS. CALIFORNIA RULES OF COURT, RULE 8.1115(a), PROHIBITS COURTS AND PARTIES FROM CITING OR RELYING ON OPINIONS NOT CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED, EXCEPT AS SPECIFIED BY RULE 8.1115(b). THIS OPINION HAS NOT BEEN CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED FOR THE PURPOSES OF RULE 8.1115.

**PRIOR HISTORY:**  [*1]
   APPEAL from a judgment of dismissal of the Superior Court of Los Angeles County, No. BC324622. Carl J. West, Judge.

**DISPOSITION:**   Reversed.

**COUNSEL:** Spiro Moss Barness, Dennis F. Moss, David M. Arbogast; Heard, Robins, Cloud & Lubel, Adam Q. Voyles (pro hac vice) for Plaintiffs and Appellants.

Kirkland & Ellis, James Ransom, J. Andrew Langan (pro hac vice), Brian P. Kavanaugh (pro hac vice) for Defendant and Respondent.

**JUDGES:** MOSK, J.; ARMSTRONG, Acting P.J., KRIEGLER, J. concurred.

**OPINION BY:** MOSK

**OPINION**

**INTRODUCTION**

Plaintiffs and appellants La Ronda Hunter (Hunter), Rosana Pulgarin (Pulgarin), and Robin Gonzales (Gonzales) (collectively plaintiffs) brought a putative class action against defendant and respondent General Motors Corporation (defendant) for violation of California's Consumer Legal Remedies Act (CLRA) (*Civ. Code, § 1750 et seq.*) and California's Unfair Competition Law (UCL) (*Bus. & Prof. Code, § 17200 et seq.*). The putative class action was based on defendant's allegedly "false, misleading, unfair, defective, unlawful and fraudulent representations" concerning the allegedly defective parking brake system in certain of defendant's vehicles for the 1999 through 2005 model years. The trial court sustained without leave to  [*2] amend defendant's demurrer to plaintiffs' fourth amended class action complaint. On appeal, plaintiffs contend that the trial court erred by holding them to an unduly strict pleading standard by concluding that plaintiffs' numerous factual allegations were non-actionable "puffing," and that Gonzales could not base her CLRA and UCL claims on breach of warranty claims, and by denying Gonzales leave to amend the complaint to add

Case 3:07-cv-04732-MJJ   Document 18   Filed 11/25/2007   Page 4 of 13

Page 2
2007 Cal. App. Unpub. LEXIS 9252, *

separate causes of action for breach of warranty claims. We hold that the facts alleged in the fourth amended complaint state causes of action under the CLRA and UCL. Accordingly, we reverse the judgment of dismissal. Because we reverse the judgment, we do not reach the issue of whether the trial court should have granted Gonzales leave to amend the complaint.

## BACKGROUND

### I. Procedural History

On November 16, 2004, Hunter filed a class action complaint against defendant asserting causes of action for breach of implied warranty, breach of express warranty and contract, breach of warranty under the Song-Beverly Consumer Warranty Act (*Civ. Code, § 1790 et seq.*), and violation of the UCL based on defendant's development, design, manufacture, and sale of certain vehicles [*3] with a defective rear brake system. On May 20, 2005, Pulgarin joined Hunter in filing a first amended class action complaint against defendant asserting causes of action for breach of express warranty, breach of implied warranty, breach of warranty under the Song-Beverly Consumer Warranty Act, violation of the CLRA, and violation of the UCL. The first amended complaint concerned an allegedly defective parking brake system in certain of defendant's vehicles and defendant's alleged misrepresentations concerning those brakes.

On June 20, 2005, defendant filed a demurrer to Hunter and Pulgarin's first amended complaint. On August 23, 2005, prior to the due date for their response to defendant's demurrer, Hunter and Pulgarin filed a second amended class action complaint against defendant. The pared-down, second amended complaint asserted only two of the causes of action raised in the first amended complaint: violation of the CLRA and violation of the UCL. The second amended complaint concerned the allegedly defective parking brake system in certain of defendant's vehicles and defendant's alleged misrepresentations with respect to those brakes.

On September 23, 2005, defendant filed a demurrer [*4] to the second amended complaint. On November 2, 2005, the trial court sustained defendant's' demurrer and granted Hunter and Pulgarin leave to amend. Hunter's and Pulgarin's third amended class action complaint against defendant, asserting causes of action for violation of the CLRA and UCL, was filed on December 2, 2005. On December 9, 2005, before defendant's responsive pleading to the third amended complaint was due, Gonzalez joined Hunter and Pulgarin in filing the fourth amended class action complaint against defendant. The fourth amended complaint asserted causes of action for violations of the CLRA and UCL based on the allegedly defective parking brake system in certain of defendant's vehicles for the model years 1999 through 2005 and defendant's alleged misrepresentations with respect thereto.

On January 30, 2006, defendant filed a demurrer to the fourth amended complaint. On March 17, 2006, the trial court sustained defendant's demurrer without leave to amend. The trial court entered a judgment of dismissal on April 11, 2006. Plaintiffs' appeal followed.

### II. Allegations in the Fourth Amended Complaint

In their fourth amended complaint, plaintiffs state that they brought the class [*5] action "on behalf of themselves and all other similarly situated for damages, restitution, and other relief against [defendant] for, among other things, designing, manufacturing, certifying, distributing and selling vehicles with a defective parking brake system." Below, we set forth plaintiffs' allegations that serve as the basis for plaintiffs' causes of action for violation of the CLRA and UCL.

### A. *The Alleged Defect in the Parking Brake System*

Plaintiffs allege that in 1998, defendant introduced several models of trucks and sports utility vehicles based on its GMT 800 platform. These vehicles were equipped with a newly designed parking brake system called a drum-in-hat or Banksia-style parking brake system. Defendant designed and intended the parking brake system to be a "'life of the vehicle part' with an expected life span of well over 200,000 miles." The parking brake system was defectively designed. The brakes were designed in a manner that allowed the brake linings, upon the brakes' first use, to misalign in such a way that they contacted, and remained in contact with, the brake drum. This misalignment caused the brakes to fail, or to wear out prematurely - after an average of [*6] 24 months in service.

Plaintiffs allege that defendant learned of the defect almost immediately after the launch of the vehicles equipped with the defective parking brake system, but attempted to "cover up" its knowledge. In 2000, defendant received numerous reports of parking brake failures. These reports prompted the National Highway Traffic Safety Administration (NHTSA) to initiate an investigation in 2001. As part of that investigation, defendant disclosed to the NHTSA that in September 2000, the brand quality manager for the GMT 800 line of vehicles sent a letter to defendant's "dealer partners stating that the drum-in-hat parking brake system found on these vehicles 'is not self-adjusting . . . requir[ing] frequent adjustments.'" An engineering report from defendant to the NHTSA states that "'the parking brake friction linings may wear to an extent where the parking brake can become ineffective in immobilizing a parked vehicle.'" The report further states, "'Consequence: IF THE PARKING BRAKE DOES NOT HOLD, UNATTENDED VEHICLE MOVEMENT COULD OCCUR, WHICH COULD RESULT IN A CRASH." Notwithstanding its earlier knowledge of the defect, defendant did not begin to investigate solutions [*7] until 2001.

In October 2001, defendant issued an Engineering Work Order (EWO) to address the defect in the parking brake system. Defendant did not implement the EWO in its new vehicle model lines until 2003. During the intervening period, defendant issued a Technical Service Bulletin to dealers and repair centers offering a brake kit that could be sold to consumers to fix the defect. Neither the EWO nor the brake kit remedied the defect. Defendant later acknowledged this failure "in a letter forwarded to NHTSA."

Plaintiffs further allege, upon information and belief, that defendant "realized it could no longer continue to ignore the . . . parking brake system defect" after it conducted "durability testing" on the brakes in October of 2004. Defendant ultimately corrected the defect by redesigning the parking brake system for new vehicles sold beginning sometime in 2005.

In 2005, defendant announced a safety recall concerning the defective parking brakes. As part of the recall, defendant provided free repair and replacement of the defective parking brakes on certain model vehicles for certain model years from 1999 through 2005. The recall was limited to vehicles with manual transmissions, [*8] however, and covered only a small percentage of the allegedly 4.1 million vehicles with defective parking brake systems. Plaintiffs allege that defendant's recall response to the defective parking brake system was inadequate because, "[w]ithout explanation or rational justification," it did not cover consumers who have vehicles with automatic transmissions - which vehicles have parking brake systems identical to vehicles with manual transmissions.

### B. *Defendant's Alleged Misrepresentations About the Alleged Defect in the Parking Brake System*

Case 3:07-cv-04732-MJJ   Document 18   Filed 11/25/2007   Page 6 of 13

Page 4
2007 Cal. App. Unpub. LEXIS 9252, *

Plaintiffs allege that defendant, notwithstanding it knowledge of the parking brake system defect, "made false, misleading, unfair, deceptive, unlawful and fraudulent representations to consumers, including [plaintiffs], about the quality, safety and braking systems of its defective vehicles." Plaintiffs allege that defendant knew these statements were false when it made them. Plaintiffs group these alleged misrepresentations into six categories.

First, plaintiffs contend that defendant falsely affixed a certification label or tag to each of the subject vehicles stating, "This Vehicle Conforms to All Applicable U.S. Federal Motor Vehicle Safety Standards [*9] in Effect on the Date of Manufacture Show[n] above." Such action was a violation of Federal Motor Vehicle Safety Standards. Second, plaintiffs contend that defendant's "Pre-Delivery Inspection Procedure" required authorized dealers to test and inspect each vehicle prior to sale to determine if the vehicle, including the parking brake system, was in working order. If the vehicle passed the inspection, the certified service representative was to fill out a certification stating that the vehicle passed the inspection. The certification was given to the vehicle's purchaser. With respect to the subject vehicles, plaintiffs allege that defendant knew the certifications were false when given to purchasers.

Third, plaintiffs allege that defendant's "Completely Satisfied - New Vehicle Delivery System" procedure required authorized dealers, in connection with the sale of each vehicle, to inspect, explain, and demonstrate the vehicle's features to the purchaser. A form was to be filled out by an authorized representative of defendant at each of three stages. Plaintiffs contend that defendant knew that the representations made in connection with this procedure were false when made. Fourth, plaintiffs [*10] contend that the owner's manual provided with the sale of each vehicle described the parking brakes as a safety feature of the vehicle and contained various instructions concerning the operation of the parking brakes. The representations contained in the owner's manual allegedly were false.

Fifth, plaintiffs allege that defendant provided brochures to each person who purchased a vehicle. The brochures allegedly contained various false representations about the quality of defendant's vehicles generally, the quality of the parking brakes on the vehicles, and defendant's commitment to its customers. Although listing these representations, the fourth amended complaint does not identify the specific vehicles to which the representations apply. Sixth, plaintiffs allege that defendant made representations in its national advertising campaigns "stressing the quality, safety and performance of [its] products, including the Subject Vehicles." Defendant knew these representations were false when it made them.

## C. Defendant's Alleged Concealment of the Alleged Defect in the Parking Brake System

Plaintiffs allege that defendant fraudulently concealed information about the alleged defect in the parking [*11] brake system. In a section of the fourth amended complaint entitled "Facts Common To All Causes of Action," plaintiffs allege that defendant "fraudulently concealed the unreasonable risk of injury occurring as a result of the defective design of the PBR/TRW parking brake system" and that consumers were unaware of the defect in the parking brake system because of defendant's "failure to disclose and concealment of its exclusive knowledge of the defect(s) to Plaintiffs and others similarly situated." In the statute of limitations tolling section of the fourth amended complaint, plaintiffs allege that defendant's "acts of fraudulent concealment include, but are not limited to intentionally covering up and refusing to publically [sic] disclose critical internal memoranda, design plans, studies, Notices of Action, Problem Detail Reports and other reports of failure and injury. Through such acts of fraudulent concealment, [defendant] was able to actively

Case 3:07-cv-04732-MJJ   Document 18   Filed 11/25/2007   Page 7 of 13

Page 5
2007 Cal. App. Unpub. LEXIS 9252, *

conceal from the public for years the truth about the defective design and manufacture of the parking brake systems on the Subject Vehicles . . . ." In their CLRA cause of action, plaintiffs allege that "[k]nowing the truth and motivated [*12] by profit and market share, [defendant] has knowingly and willfully engaged in the acts and/or omissions to mislead and/or deceive Plaintiffs and others similarly situated" and "[t]he facts which [defendant] has misrepresented and concealed as alleged in the preceding paragraphs, were material to the decisions about whether to purchase the Subject Vehicles in that Plaintiffs and other similarly situated would not have purchased these defective and unsafe vehicles but for Defendants' misrepresentations and concealment of material facts . . . ." In their UCL cause of action, plaintiffs allege that "[d]efendant's acts, omissions, misrepresentations, practices and non-disclosures of as alleged herein constitute unlawful, unfair and/or fraudulent business acts and/or practices . . . ."

### D. *Defendant's Conduct Allegedly Violated California's Secret Warranty Act*

Plaintiffs allege that defendant had a policy of repairing, free of charge, the known defect in its parking brake system only for those vehicle owners who complained "loudly enough," without notifying all vehicle owners of the defect and paying for its repair. Plaintiffs contend that this policy violated California's Secret Warranty [*13] Act (*Civ. Code, § 1795.90 et seq.*) which required, among other things, that defendant notify all eligible consumers of any "program or policy that expands or extends the consumer's warranty beyond its stated limit or under which a manufacturer offers to pay for all or any part of the cost of repairing, or to reimburse consumers for all or any part of the cost of repairing, any condition that may substantially affect vehicle durability, reliability, or performance . . . ." (*Civ. Code, §§ 1795.90, subd. (d) & 1795.92, subd. (a).*)

### E. *Effect of the Misrepresentations on Plaintiffs*

Plaintiffs allege that the representations were made to them. They allege that Gonzalez sought to have the defective parking brake system on her vehicle repaired by defendant while her vehicle was still under warranty. Despite the defendant's dealer's notation in a summary of repairs, "PARKING BRAKE INOP," defendant's authorized representative told Gonzalez that she did not need parking brakes and refused to make the repair. Gonzalez spent $ 417 to have the defective brakes replaced. Defendant refused to correct or replace Pulgarin's defective parking brake system. Her parking brakes were "[m]alfunctioning and/or [*14] . . . failing before the end of their expected useful life." Hunter made efforts to have defendant "correct, repair, replace or otherwise rectify the unsafe and defective parking brake system" but defendant refused to do so. She had to spend $260 "to have the defective brakes replaced."

### III. The Trial Court's Ruling

The trial court in sustaining the demurrer without leave to amend held there was no violation of law and the alleged misrepresentations constituted non-actionable "puffing." The trial court said that in connection with the allegation that the brakes violated Federal Motor Vehicle Safety Standards, there was no allegation that the parking brake system did not comply with the specific requirements of the applicable regulations. The trial court said that "[w]hile Plaintiff [sic] does allege in P 74 that the parking brakes were defective 'in that they did not work,' such an allegation is insufficient . . . ." The trial court said such allegations are "generic." The trial court said that the allegations did not demonstrate that defendant did not conduct the pre-delivery inspection and certification procedure, and there is no allegation that defendant did not complete the authorized [*15] forms. The trial court said the Owner's Manuals did not affirm the durability or service life of the brakes.

Case 3:07-cv-04732-MJJ   Document 18   Filed 11/25/2007   Page 8 of 13

Page 6
2007 Cal. App. Unpub. LEXIS 9252, *

The trial court concluded that defendant's brochures and advertisements to be "non-actionable puffery." The court said that the "non-puffery" alleged representations - the brakes were defective and did not meet regional legal requirements and that defendant did not perform repairs as represented and warranted - were in essence warranty claims that had already been withdrawn from earlier complaints. The trial court stated that plaintiffs did not allege a violation of any section of the CLRA. The trial court then concluded because there was no violation of the CLRA, plaintiffs could not satisfy the "unlawful" prong of the UCL claim.

Finally, the trial court said the "Secret Warranty Law" could not satisfy the "unlawful prong" of the UCL because there was no alleged violation of that "Secret Warranty Law"-- plaintiffs did not allege that there was the requisite "adjustment program" required by the statute.

The trial court said plaintiffs failed to allege actual reliance or misrepresentations, and failed to plead unfair or fraudulent activity with reasonable particularity. The trial [*16] court also said that Pulgarin failed to plead that her brakes "actually have failed."

## DISCUSSION

### I. Standard of Review

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry v. Tri-City Hospital Dist. (1992) 2 Cal.4th 962, 966-967*; *Committee on Children's Television, Inc. v. General Foods Corp. (1983) 35 Cal.3d 197, 213-214*, superseded by statute on another point [*17] as stated in *Californians for Disability Rights v. Mervyn's, LLC (2006) 39 Cal.4th 223, 228*.) The legal sufficiency of the complaint is reviewed de novo. (*Montclair Parkowners Assn. v. City of Montclair (1999) 76 Cal.App.4th 784, 790*.)

### II. The Trial Court Erred When It Sustained Defendant's Demurrer

Plaintiffs contend that the trial court erred when it sustained defendant's demurrer to their CLRA and UCL causes of action. We hold that the facts alleged in the fourth amended complaint state causes of action under both legal theories.

### A. *Plaintiffs' CLRA Claim*

"'The Consumers Legal Remedies Act, enacted in 1970, "established a nonexclusive statutory remedy for 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer. . . .' [Citation.]"' (*Reveles v. Toyota by the Bay (1997) 57 Cal.App.4th 1139, 1154 [67 Cal.Rptr.2d 543, 82 A.L.R.5th 781]*.) 'The self-declared purposes of the act are "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." (*Civ. Code, § 1760* [*18] . . . .)' (*Hogya v. Superior Court (1977) 75 Cal.App.3d 122, 135 [142 Cal.Rptr. 325]*.)" (*Wang v. Massey Chevrolet (2002) 97 Cal.App.4th 856, 869*.)

Case 3:07-cv-04732-MJJ    Document 18    Filed 11/25/2007    Page 9 of 13

Page 7
2007 Cal. App. Unpub. LEXIS 9252, *

To bring an action under the CLRA, a plaintiff must be a consumer who has suffered "any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770." (*Civ. Code, § 1780, subd. (a)* [1] .) To state a claim under the CLRA, a plaintiff must allege that the defendant's representations likely would deceive a reasonable consumer. (*Consumer Advocates v. Echostar Satellite Corp. (2003) 113 Cal.App.4th 1351, 1358-1360*.) The CLRA is to be liberally construed. (*§ 1760*; *Wang v. Massey Chevrolet, supra, 97 Cal.App.4th at p. 869*.)

> 1   All statutory citations in the discussion of plaintiffs' CLRA claim are to the Civil Code unless otherwise noted.

Section 1770, subdivision (a) proscribes 23 "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer . . . ." Plaintiffs allege defendant violated certain of the provisions of section 1770, subdivision [*19] (a) when it made various representations concerning its parking brake system knowing, at the time it made the representations, that the parking brake system was defective. Plaintiffs allege that defendant violated section 1770, subdivision (a)(3) [2] of the CLRA when it knowingly affixed a certification label or tag to each of the subject vehicles falsely stating, "This Vehicle Conforms to All Applicable U.S. Federal Motor Vehicle Safety Standards in Effect on the Date of Manufacture Show[n] above." Defendant's defective braking system, plaintiffs allege, violated Federal Motor Vehicle Safety Standards 105 and 135.

> 2   "Misrepresenting the affiliation, connection, or association with, or certification by, another."

The Federal Motor Vehicle Safety Standards are codified at 49 C.F.R. part 571 (2006). With respect to parking brake systems, *49 C.F.R. part 571.105*, subpart 5.2.1 provides, in pertinent part, that "[e]xcept as provided in § 5.2.2, the parking brake system on a passenger car . . . shall be capable of holding the vehicle stationary (to the limit of traction on the braked wheels) for 5 minutes in both a forward and reverse direction on a 30 percent grade." The conditions and procedures [*20] under which parking brakes are to be tested are set forth in *49 C.F.R. part 571.135*, subpart 7.12.2. Under those conditions and applying those procedures, subpart 7.12.3 provides, "[t]he parking brake system shall hold the vehicle stationary for 5 minutes in both a forward and reverse direction on the grade." With respect to "[b]rake system integrity," *49 C.F.R. part 571.135*, subpart 5.6(a) provides, in pertinent part, "[a]ll mechanical components of the braking system shall be intact and functional."

The trial court ruled that plaintiffs' Federal Motor Vehicle Safety Standards allegations do not state a basis for a misrepresentation under the CLRA because they fail to allege that "the parking brake systems were not 'capable' of holding the subject vehicles stationary for 5 minutes in both a forward and reverse direction on a 30 percent grade, nor is there an allegation that the parking brake system did not hold the vehicle stationary for 5 minutes in both a forward and reverse direction on the grade." The trial court's reading of plaintiffs' allegations is unduly narrow and inconsistent with the mandate to construe the CLRA liberally (*§ 1760*; *Wang v. Massey Chevrolet, supra, 97 Cal.App.4th at p. 869*) [*21] and to give the complaint a reasonable interpretation (*Aubry v. Tri-City Hospital Dist., supra, 2 Cal.4th at pp. 966-967*). Plaintiffs allege that the label or tag affixed to each of the subject vehicles certifying that the vehicle conformed to all effective Federal Motor Vehicle Safety Standards was false because the parking brake system was defective. Liberally construed, that allegation al-

Case 3:07-cv-04732-MJJ   Document 18   Filed 11/25/2007   Page 10 of 13

Page 8
2007 Cal. App. Unpub. LEXIS 9252, *

leges that the parking brakes could not hold the subject vehicles as required by *49 C.F.R. part 571.105*, subpart 5.2.1 and *49 C.F.R. part 571.135*, subpart 7.12.3 and, accordingly, is sufficient to establish a misrepresentation under the CLRA.

Also, plaintiffs' allegations establish a misrepresentation under the CLRA based on *49 C.F.R. part 571.135*, subpart 5.6(a) which provides, in pertinent part, "[a]ll mechanical components of the braking system shall be intact and functional." Plaintiffs allege that defendant knew that "the parking brakes on the Subject Vehicles were defective in that they did not work." We must accept that allegation as true. (*Aubry v. Tri-City Hospital Dist., supra, 2 Cal.4th at pp. 966-967*.) If the parking brakes "did not work," then they were not "functional" as required by [*22] subpart 5.6(a), and a certification that a vehicle equipped with such parking brakes conformed to "All Applicable U.S. Federal Motor Vehicle Safety Standards in Effect on the Date of Manufacture" is an actionable misrepresentation under the CLRA.

Plaintiffs also allege that defendant violated section 1770, subdivisions (a)(5) [3] and (a)(7) [4] of the CLRA when defendant represented that the subject vehicles had characteristics and benefits they did not have and were a particular standard, quality, or grade they were not. In support of their CLRA cause of action, plaintiffs allege that defendant made representations about the quality, safety, and performance of the parking brake system on the subject vehicles while failing to disclose information it knew about the defect in the parking brakes. The list of proscribed practices in section 1770 includes the concealment or suppression of material facts. In the CLRA context, "[f]raud or deceit may consist of the suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact." (*Outboard Marine Corp. v. Superior Court (1975) 52 Cal.App.3d 30, 37*; [*23] compare with *Bardin v. DaimlerChrysler Corp. (2006) 136 Cal.App.4th 1255* and *Daugherty v. American Honda Motor Co., Inc. (2006) 144 Cal.App.4th 824, 835* ["although a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose"].) Plaintiffs' allegations are sufficient to state a violation of the CLRA based on defendant's alleged representations about the parking brakes and concealment of the defect. (See *Outboard Marine Corp. v. Superior Court, supra, 52 Cal.App.3d at p. 37*.)

> 3    "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

> 4    "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

Thus, the fourth amended complaint states facts sufficient to constitute a cause of action under the CLRA with respect [*24] to defendant's alleged misrepresentations about its vehicles' compliance with Federal Motor Vehicle Safety Standards and with respect to defendant's alleged affirmative representations about the parking brake system and concealment of information about the defect in the parking brakes. We need not consider whether other facts alleged in the fourth amended complaint independently would state a cause of action under the CLRA.

### B. Plaintiffs' UCL Claim

Business and Professions Code Section 17200 (*section 17200*) defines "unfair competi-

Case 3:07-cv-04732-MJJ   Document 18   Filed 11/25/2007   Page 11 of 13

Page 9
2007 Cal. App. Unpub. LEXIS 9252, *

tion" as including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." The coverage of the unfair competition law is "'sweeping, embracing "'anything that can properly be called a business practice and that at the same time is forbidden by law.'"' (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1200 [17 Cal.Rptr.2d 828, 847 P.2d 1044], quoting *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 113 [101 Cal.Rptr. 745, 496 P.2d 817].) It governs 'anti-competitive business practices' as well as injuries to consumers, and has as a major purpose 'the preservation of fair business competition.' [*25] (*Barquis v. Merchants Collection Assn., supra,* 7 Cal.3d at p. 110; see also *People v. McKale* (1979) 25 Cal.3d 626, 631-632 [159 Cal.Rptr. 811, 602 P.2d 731]; *People ex rel. Mosk v. National Research Co. of Cal.* (1962) 201 Cal.App. 2d 765, 771 [20 Cal.Rptr. 516].) By proscribing 'any unlawful' business practice, '*section 17200* "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable. (*State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1103 [53 Cal.Rptr.2d 229], citing *Farmers Ins. Exchange v. Superior Court* [(1992)] 2 Cal.4th [377,] 383.)" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.)

*Section 17200* "'establishes three varieties of unfair competition --acts or practices which are unlawful, or unfair, or fraudulent. "In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa."' [Citation.]" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra,* 20 Cal.4th at p. 180*.*) "Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires [*26] 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer. (*McKell v. Washington Mutual, Inc.* [(2006)] 142 Cal.App.4th [1457], 1472, 1473; see also *People v. McKale* (1979) 25 Cal.3d 626, 635 [159 Cal.Rptr. 811, 602 P.2d 731].)" (*Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 134-135.) Particularized fact-pleading is not required to state a claim under the UCL. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 46-47; see also *Schnall v. Hertz Corp.* (2000) 78 Cal.App.4th 1144, 1167 [distinguishing the factual basis for the "fraud" prong of the UCL from common law fraud or deception].)

### 1. Unlawful

"An 'unlawful' business activity includes "'*anything* that can properly be called a business practice and that at the same time is forbidden by law." [Citation.]' [Citation.] Virtually any law--federal, state or local--can serve as a predicate for an action under *Business and Professions Code section 17200*. [Citation.]" (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 717-718.)

Plaintiffs allege that defendant's actions and misrepresentations with respect to its defective parking [*27] brake system were unlawful because they allegedly violated various state and federal laws. Among the laws plaintiffs allege that defendant violated was the Federal Motor Vehicle Safety Act pursuant to which the Federal Motor Vehicle Safety Standards were issued. As set forth in our discussion of plaintiffs' CLRA cause of action, plaintiffs properly pleaded a violation of the Federal Motor Vehicle Safety Standards. Such a violation, if true, would also be a violation of the "unlawful" prong of the UCL. Likewise, the violation of the CLRA itself, which plaintiffs incorporated into their UCL claim by reference, is a proper basis for a violation of the "unlawful" prong of the *UCL.* [5] (*Falk v. General Motors Corporation* (N.D. Cal. 2007) 496 F. Supp. 2d 1088, 1098.)

5   Although the better practice would have been to state affirmatively the violation of the CLRA as a basis for their

Case 3:07-cv-04732-MJJ   Document 18   Filed 11/25/2007   Page 12 of 13

Page 10
2007 Cal. App. Unpub. LEXIS 9252, *

"unlawful" claim in their UCL cause of action, plaintiffs were not required to so plead. (*Skopp v. Weaver (1976) 16 Cal.3d 432, 440* ["We conclude that the allegations of plaintiffs' first cause of action, incorporated by reference into their second and third causes of action, adequately plead agency, fiduciary duty, [*28] and breach of duty, and thus state facts sufficient to entitle plaintiffs to relief. [Fn. omitted.]"].)

In its ruling sustaining defendant's demurrer, the trial court stated, "To the extent Plaintiffs are attempting to base their UCL 'unlawful' claim on 'misrepresentations,' there is no allegation of actual reliance by the named Plaintiffs on any of those misrepresentations." To the contrary, in an allegation incorporated by reference in plaintiffs' UCL cause of action, plaintiffs allege, "Plaintiffs and others similarly situated would not have purchased these defective and unsafe vehicles but for Defendants' misrepresentations and concealment of material facts . . . ." [6]

> 6  It was stated that a violation of the UCL "can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage." (*Schnall v. Hertz Corp., supra, 78 Cal.App.4th at p. 1167*.) The recent amendments to *Business and Professions Code sections 17203* and *17204* require that the named plaintiff has suffered "injury in fact and has lost money or property as a result of such unfair competition." (*Bus. & Prof. Code, § 17204*.) It is not clear if this amendment applies to reliance.

2.  [*29] *Unfair*

"'The "unfair" standard, the second prong of [*Business and Professions Code] section 17200*, also provides an independent basis for relief. This standard is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud. [Citation.] The test of whether a business practice is unfair "involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim . . . . [Citations.]" [Citation.] . . . [A]n "unfair" business practice occurs when that practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." [Citation.]' [Citation.]" (*Smith v. State Farm Mutual Automobile Ins. Co., supra, 93 Cal.App.4th at pp. 718-719*.)

Plaintiffs allege that defendant knowingly sold vehicles with a defective parking brake system while making false representations about the parking brakes' quality, including the false representation that the parking brakes conformed to [*30] Federal Motor Vehicle Safety Standards. Plaintiffs allege that the defect, in some instances, rendered the parking brakes inoperable which resulted in injuries and deaths. Such conduct, if true, would be "immoral, unethical, oppressive, unscrupulous, [and] substantially injurious to consumers" and a violation of the "unfair" prong of the UCL. (*Smith v. State Farm Mutual Automobile Ins. Co., supra, 93 Cal.App.4th at pp. 718-719*.)

3. *Fraudulent*

"When an unfair competition claim is based on an alleged fraudulent business practice - that is, a practice likely to deceive a reasonable consumer - 'a plaintiff need not plead the exact language of every deceptive statement; it is sufficient for [the] plaintiff to describe a scheme to mislead customers, and allege that each misrepresentation to each customer conforms to that scheme.' (*Committee on Children's Television, Inc. v. General Foods Corp. (1983) 35 Cal.3d 197, 212-213 [197 Cal.Rptr. 783, 673 P.2d 660]*.) The allegation 'may be based on representations to the public which are untrue, and

"'also those which may be accurate on some level, but will nonetheless tend to mislead or deceive . . . . A perfectly true statement couched in such a [*31] manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under'" the UCL.' (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1471 [49 Cal.Rptr. 3d 227].)" (*Linear Technology Corp. v. Applied Materials, Inc., supra,* 152 Cal.App.4th at p. 134.)

Plaintiffs allege that "[a]s a result of Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein, members of the public are likely to be deceived and/or have lead [sic] to consumer confusion that the Subject Vehicles contain and/or are equipped with a fully functional and operational parking brake system to use as an immobilization device to prevent the vehicle from unintended rolling . . . . Said acts, omissions, misrepresentations, practices and non-disclosures as alleged herein therefor[e] constitute fraudulent business acts and/or practices within the meaning of *California Business & Professions Code §§ 17200, et seq.*" If true, these allegations, based on defendant's alleged misrepresentations about the quality of its parking brake system and its alleged active concealment of the defect in the parking brake system, [*32] establish a violation of the "fraudulent" prong of the UCL. (See *Linear Technology Corp. v. Applied Materials, Inc., supra,* 152 Cal.App.4th at p. 134.)

Plaintiffs allege that they relied on defendant's representations and that they suffered damages as required by *Business and Professions Code sections 17203* and *17204*. Plaintiffs allege that each named plaintiff either expended money to replace the brakes, or, in the case of Pulgarin, has an automobile with defective brakes. Although not required to plead facts with particularity, plaintiffs plead with specificity the facts underlying their UCL cause of action. (*Quelimane Co. v. Stewart Title Guaranty Co., supra,* 19 Cal.4th at pp. 46-47; *Schnall v. Hertz Corp., supra,* 78 Cal.App.4th at p. 1167.) We reject the trial court's ruling that Pulgarin had to have alleged that her parking brakes actually failed to establish that she sustained an injury in fact and had lost money or property within the meaning of *Business and Professions Code section 17204*. The allegation that the parking brakes were defective when her vehicle was delivered to her and, thereafter, showed "abnormal and premature wear" is sufficient to allege an injury in fact and [*33] a loss of money or property--Pulgarin need not wait for a catastrophic event such as brake failure to bring an action under the UCL based on the facts alleged in the fourth amended complaint.

Accordingly, the trial court erred when it sustained, without leave to amend, defendant's demurrer to plaintiffs' fourth amended complaint. Because the fourth amended complaint states facts sufficient to constitute a cause of action under the UCL as set forth above, we need not consider whether other facts alleged in the fourth amended complaint also state a cause of action under the UCL. Also, we do not have to determine the issue of leave to amend the fourth amended complaint.

## DISPOSITION

The judgment of dismissal is reversed. Plaintiffs are awarded their costs on appeal.

MOSK, J.

We concur:

ARMSTRONG, Acting P.J.

KRIEGLER, J.