Matthew S. Hale, Esq.
HALE & ASSOCIATES
Calif. State Bar No. 136690
45 Rivermont Drive
Newport News, VA 23601

Mailing Address:
P.O. Box 1951
Newport News, VA 23601

Telephone No. (757) 596-1143
E-Mail: matthale@verizon.net

Attorney for Plaintiffs, DAVID J. LEE and
DANIEL R. LLOYD

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID J. LEE and DANIEL R. LLOYD, as individuals and, on behalf of others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>CHASE MANHATTAN BANK U.S.A., N.A., a Delaware corporation, CHASE MANHATTAN BANK U.S.A., N.A. d.b.a. CHASE BANK U.S.A., N.A., JPMORGAN CHASE & CO., a Delaware corporation; and DOES 1, through 100, inclusive,<br><br>　　　　Defendants. | Case No.: C 07-4732 MJJ<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND STATEMENT OF RECENT DECISIONS RE: DEFENDANTS' MOTION TO DISMISS**<br><br>DATE:  January 29, 2008<br>TIME:  9:30 a.m.<br>CTRM:  11<br>　　　　19th Floor<br>　　　　450 Golden Gate Ave.<br>　　　　San Francisco, Ca. 94102 |

Plaintiffs hereby respond and object to Chase's[1] Local Rule 7-2(d) Second Statement of Recent Decisions in Support of Motion to Dismiss. That Second Statement advised (and supplied) this Court with the transcript of a Scheduling Conference held before Judge Marilyn Hall Patel on December 10, 2007 in <u>Lee v. Capital One Bank, et al.</u>, Case No. C-07-4599 MHP (N.D. Cal. filed September 5, 2007). The filing of that transcript is not authorized by Local Rule 7-2(d) which limits such a filing to "a relevant judicial opinion." It should be ignored.

On the off-side chance that it is not ignored, the transcript was obviously offered to "poison the well" because of Judge Patel's statement of her preliminary suspicion that Plaintiff's injuries might be "manufactured," a perception made before any motion to dismiss had been filed[2] and certainly before she had been apprised of the breadth of controlling and persuasive precedent underlying Plaintiff's legal theories and causes of action.   Plaintiffs now respond to those suspicions in order to dispel any prejudice that may arise from them as well as from any similar concerns this Court may have.

An understanding of the alleged injuries is thus key to a realization that the Plaintiffs' injury is "real" and not "manufactured.[3]   Simply stated, the core of that injury is: (1) that

---

[1]    Unless otherwise referred to, Defendants Chase Manhattan Bank, U.S.A., N.A., Chase Manhattan Bank d.b.a. Chase Bank U.S.A., N.A., and JPMorgan Chase & Co. are collectively referred to as "Chase."

[2]    Capital One has filed a motion to dismiss and, in the alternative, for judgment on the pleadings which is set for argument on March 3, 2008.

[3]    The crux of the respective Complaints is a head-on challenge to the unconscionability of the card issuer's arbitration provisions arising from, <u>inter alia</u>, their class action ban, consolidation of claims ban, and injunction ban. <u>See, e.g.</u>, <u>Discover Bank v. Superior Court</u>, 36 Cal.App.4th 148, 40 Cal.Rtpr.3d 76 (2005); <u>Shroyer v. New Cingular Wireless Services, Inc.</u>, 498 F.3d 976 (9th Cir. 2007) (adopting <u>Discover Bank</u>); <u>Nagrampa v. Mailcoups, Inc.</u>, 469 F.3d 1257, 1289-1293 (9th Cir. 2006); <u>Ingle v. Circuit City Stores, Inc.</u>, 328 F.3d 1165, 1176 (9th Cir.

1

**David Lee, et al. vs. Chase Manhattan Bank U.S.A., N.A. et al.**
**Plaintiffs' Response to Defendants' Second Statement of Recent Decisions Re: Defendants' Motion to Dismiss**

Plaintiffs, in obtaining their credit cards, necessarily also obtained the vested contractual right to mandatory arbitration of claims they each had against the card issuer (as defined in the respective Arbitration Provisions) as a result of paying the card's annual fee[4] but, (2) because the card issuer made its adhesive arbitration provision patently unconscionable (and resultantly both illegal and unenforceable), (3) Plaintiffs did not receive the enforceable contractual right to mandatory arbitration for which they paid[5] and, (4) are thus unable as a matter of law and fact to

---

2003); Broughton v. Cigna Healthplans, 21 Cal.4th 1066, 90 Cal.Rptr.2d 334, 988 P.2d 334 (1999); and, Cruz v. PacificCare Health Systems, Inc., 30 Cal.4th 303, 133 Cal.Rptr.2d 58, 66 P.3d 1157 (2003).  The result of that unconscionability is multiple violations of California's Consumer Legal Remedies Act, Civil Code §§ 1750 et seq., particularly § 1770(a)(19) that makes "[i]nserting an unconscionable term in the contract" an unlawful act ("CLRA"), and Unfair Competition Law, Bus. & Prof. Code §§ 17200 et seq., particularly § 17203 which allows a cause of action for, among other things, violation of California Civil Code § 1670.5 (proscribing unconscionable contracts and contractual terms), and California Code of Civil Procedure 1280.4 (payment provisions re. conduct of arbitration), and unfair practices generally (which include insertion of unconscionable contract terms)("UCL").

[4]   The two customer agreements – while vesting almost unlimited one-sided contractual rights in the card issuer – vests just two contractual rights in its cardholders:  (1) the card holder may use the card to charge items (and thus may receive the "convenience service" for which, in part, his annual fee pays, see Capital One Complaint, ¶¶ 15-16, Chase Complaint, ¶¶ 17-18, as long as he timely pays his monthly bill and does not exceed the card's charge limit; and, (2) the cardholder has the vested contractual right to invoke mandatory arbitration against the card issuer/merchant relative to certain "claims" that are carefully delineated in the Arbitration Provision.  See Capital One Complaint, Ex. Nos. 8-9, at pages 77-79; Chase Complaint, Ex. 14.

[5]   In this context, any argument that Plaintiffs received exactly what was promised them and for which they paid – a credit card with an arbitration provision containing unconscionable terms – lacks merit.  Otherwise the concept of unconscionability and, indeed, California's consumer protection laws would have no meaning or application in any context.  This is due to the unexceptionable, principle that a party cannot, as a matter of law, agree to and be bound by unconscionable contract terms since they are illegal.  See, e.g., Baker v. Liberty Mut. Ins. Co., 143 F.3d 1260, 1264 (9th Cir. 1998)("parties may not generally bargain for or agree to an illegal term"); Gantt v. Sentry Insurance, 1 Cal.4th 1083, 1093, 4 Cal.Rptr.2d 874, 824 P.2d 680 (1992) ("We have … long declined to enforce contracts inimical to law or the public interest"); Kreamer v. Earl, 91 Cal. 112, 117, 27 P. 735 (1891)(same); 1 Witkin, Summary of California Law, "Contract" § 420 p. 461 (10th ed.)(a contract is "illegal if it is in conflict either with

arbitrate what would otherwise be arbitrable claims they have against the card issuer including the fraud claim and claim that certain non-arbitration provision terms of the customer agreement are unconscionable and violate the UCL and CLRA. In addition to the specifically alleged fact that the right to mandatory arbitration has a pecuniary value, [Chase Complaint, ¶¶ 33-34], basic contract law principles establish that Plaintiffs' respective annual fee was paid, at least in part, as monetary consideration for the contractual right to mandatory arbitration which was "lost" as a result of the Arbitration Provision's unconscionability. See, e.g., First National Bank v. Pomono Tile Mfg. Co., 82 Cal.App.2d 592, 603-04, 186 P.2d 693 (1947) ("[o]ne consideration may support the several promises of one end of the bargain"). The fact that the cardmember agreement was adhesive does not change this result since the consideration was paid for all promises regardless of the adhesive nature of the agreement.

With all due respect, any perception that this injury is "manufactured" frankly assumes -- and overlooks -- far too much and is erroneous. The injuries alleged by Plaintiffs are of the same type and variety of injuries that any person suffers who, having paid their money in a contractual context, receive non-conforming or inferior quality goods or who, because of some deceptive practice, receive less than that for which they paid. Rhetorically, would any court accuse a plaintiff of having a "manufactured" injury when he had paid for a certain class or type of goods but received non-conforming goods?[6] Or, for that matter, that such a plaintiff did not have

---

express statutes or public policy"). Nor can the illegality of a contract or one of its provisions be waived. See also 6 Williston on Contracts (4th ed. 1995) § 12.5.

[6] To the contrary, such matters are considered "injuries" supporting a lawsuit. See, e.g., Vallens v. Tillman, 103 Cal. 187, 37 P. 213 (1894)(failure to supply satisfactory cigars); C.W. Anderson Hosiety Co. v. Dixie Knitting Mills, 204 F.2d 503 (4th Cir. 1953) (unfinished nylon defective); Applicance Distributors, Inc. v. Mercury Electric Corp., 202 F.2d 651 (10th Cir.

3
**David Lee, et al. vs. Chase Manhattan Bank U.S.A., N.A. et al.**
**Plaintiffs' Response to Defendants' Second Statement of Recent Decisions Re: Defendants' Motion to Dismiss**

standing to sue the supplier providing the non-conforming goods after he had received them? Or, further, that a plaintiff's claim was "manufactured" since he alleged that he had paid for "any time" cell phone minutes but had not been credited with them and that he was otherwise damaged by an unconscionable arbitration provision in the cell phone agreement? Of course not (and, in the latter regard, the Ninth Circuit in Lozano v. AT&T Wireless Services, 504 F.3d 718, 734 (9th Cir. 2007) clearly answered "no" to all of these questions).

While the lack of merit of the defendants' motions to dismiss is set forth and discussed elsewhere, several preliminary matters should be noted in order to place the filing of these actions in proper context. First, the card issuers have intransigently retained the terms of their Arbitration Provisions and card member agreements in the face of and despite an unbroken line of California and Ninth Circuit precedents which uniformly hold that terms identical to them are unconscionable. Second and addressing what appeared to be a primary concern of Judge Patel, the Capital One lawsuit (as well as the present one), rather than being "manufactured," is informed by the public's and courts' growing awareness of the unconscionability and unenforceability of the terms various businesses include in their adhesive "service" or "customer" agreements (including, notably, credit card issuers, telephone service providers, and other public-service entities).

The Plaintiffs in both cases, as a result this awareness, chose to exercise the contractual right explicitly given him by the card issuers' respective Arbitration Provisions to make a "claim." The Chase Arbitration Provision states, in relevant part:

---

1953)(awning fans defective and non-conforming); Willingham v. Hooven, Owens, Rentschler & Co., 74 Ga. 233, 249-50 (1894)(mill unfit for purpose for which purchased in that quality inferior to that contracted for).

> "**Either you or we** may, without the other's consent, **elect mandatory, binding arbitration of any claim, dispute or controversy by either you** or us **against the other**, or against the employees, parents, subsidiaries, affiliates, beneficiaries, agents or assigns of the other, **arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement …  The Arbitration Agreement governs all Claims, whether such claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision , or any legal theory of law such as respondeat superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to the Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement."**

Chase Complaint, ¶ 48 (Ex. 14)(emphasis supplied). The Capital One arbitration provision similarly states:

> "You and we agree that **either you or we may, at either party's sole election, require that any Claim (as defined below) be resolved by binding arbitration**.
>
> "**For purposes of this arbitration provision** ("Arbitration Provision"), **the following definition shall apply** …. [¶] "'**Claim**' means any claim, controversy or dispute of any kind or nature between you and us**.
>
> **This definition includes, without any limitation, any Claim that in any way arises from or relates to**:
>
> ● the Agreement and any of its terms…
> ● **this Arbitration Provision (including whether any Claim is subject to arbitration)** …
> ●  any other matters relating to your account or your relationship with us.
>
> **This definition also includes, without limitation, any Claim …**
>
> ●  based on any theory of relief or damages (including … any form of … injunctive, declaratory or other equitable relief)
> ● **based on any theory of law or equity (including** contract, tort, **fraud**, constitution, **statute**, regulation, ordinance or wrongful acts or omissions of any type, whether negligent, reckless or intentional) …

Capital One Complaint, ¶ 42 (Ex. No. 9, at p. 79)(emphasis supplied).

5

**David Lee, et al. vs. Chase Manhattan Bank U.S.A., N.A. et al.**
**Plaintiffs' Response to Defendants' Second Statement of Recent Decisions Re: Defendants' Motion to Dismiss**

Pursuant to these respective Provisions, a card holder's "claim" can arise from a "tangible" such as those specifically mentioned by Judge Patel on December 10 as being her idea of what would serve as a lawsuit's predicate: e.g., a charge made on the card for some good or service or fee that was not actually purchased or wrongly assessed. However, just as surely, the explicit terms of these Provisions also authorize a claim involving "intangibles" such as the ones giving rise to the plaintiffs' claims that directly arise from and relate to "the Agreement and any of its terms … [and the] Arbitration Provision (including whether any Claim is subject to arbitration)." Indeed, as a matter of law, Plaintiffs' claims are "choses in action" which are considered to be "intangible" rather than "tangible."[7] See, e.g., Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 123, 44 S.Ct. 471, 68 L.Ed. 934 (1924)("The value of property may be greater or lesser than its cost, and this is true of contract rights and other intangibles"); Parker v. Community First Bank, 123 F.3d 1243, 1246 (9th Cir. 1997)(contract claim is an intangible chose in action).

Faced with a situation in which credit card issuers essentially thumb their respective noses at the Ninth Circuit, its lower courts, the California Supreme Court, and its lower appellate courts,[8] and resultantly injure card holder's contractual rights, Plaintiffs stepped

---

[7]  Drawing lines between "tangible" and "intangible" in the context of "injury" is, in reality, a creating a distinction without any difference. An "injury," as defined by Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), is "an invasion of a legally protected interest…" Both the "tangible" and "intangible" injuries discussed all arise from and revolve around the same "legally protected interest" – i.e., a contract right arising from and created by the cardmember agreement, including its arbitration provision. In each instance, that "injury" is manifested by a financial loss (paying for unordered goods and for an unenforceable mandatory arbitration provision, respectively). See Oscar v. University Students Coop Ass'n, 965 F.2d 783, 785 (9th Cir. 1992).

forward to challenge Chase's and Capital One's conduct. After paying the annual fees for their cards in 2007 and hearing of the changes in the law concerning arbitration provisions, Plaintiffs reviewed the provisions of the customer agreement and arbitration provision. Plaintiffs believed that they had been the victims of fraud. So too upon learning that the Arbitration Provision (as well as other terms in the cardmember agreement) were unconscionable and illegal under California law they realized that they could not request arbitration of those normally arbitrable claims (which Plaintiffs did want to do) because the only mechanism for their doing so – their contractual right to mandatory arbitration – was unconscionable and unenforceable. This despite each Plaintiff being a believer in the efficacy of mandatory arbitration. Plaintiffs then filed suit.

They filed their respective lawsuits consistent with and under the explicit terms of the Arbitration Provisions. Relative to Chase, Plaintiffs filed in a judicial rather than arbitral forum because they were required to do so by <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 126 S. Ct. 1204, 1209, 163 L. Ed. 2d 1038 (2006)("<u>Buckeye</u>"), and <u>Nagrampa v. Mailcoups, Inc.</u>, 469 F.3d 1257, 1263 (9th Cir. 2006)(<u>en</u> <u>banc</u>)("<u>Nagrampa</u>"), respectively, and in the case of Capital One and American Express because of those respective Arbitration Provisions' exclusion of plaintiffs' claims from "claims" subject to mandatory arbitration under

---

[8]    It bears noting that the card issuer's arrogance is not restricted to just ignoring the precedents of the Ninth Circuit and the California Supreme Court but also extends to their treatment of card holders.  Pursuant to Cal. Civ. Code § 1782, Plaintiff wrote to Capital One requesting that it change its practice of including unconscionable provisions in its Arbitration Provision and card member agreement, respectively.  Complaint, ¶ 63 (Ex. 10).  Capital One's response was "If you are not satisfied with the terms of your Customer Agreement, please contact our Customer Service Department and request that you account be coded to close."  Capital One Complaint, ¶ 63, (Ex. 11).  Chase did not even bother to respond to Plaintiffs' respective letters.  Chase Complaint, ¶ 69.

the Provision.[9] They filed in federal court because only it may entertain his challenge to the unconscionability of the arbitration provision pursuant to the Class Action Fairness Act of 2005 (S.B. 5, Sec. 4).

In both the Chase and Capital One lawsuit Plaintiffs alleged a specific injury to themselves that -- although basic to the concepts of contract law, the CLRA, and the UCL, and falling well within the definition of "claims" in the respective Arbitration Provisions -- has not yet been explicitly recognized by the courts in the context of unconscionable arbitration provisions inserted in an adhesive contract. That most assuredly does not mean that the injury does not exist and cannot give standing. The spirit and genius of the law embodied in the evolving rules of decision developed by the courts in exercise of their power to adopt the law to new situations certainly contemplate and exist so that the law will be extended to include a previously judicially unrecognized injury as being sufficient to establish standing.[10] That is a reflection of the fundamental principle of contract law that an injury occurs when one does not get that for which one pays, and that principle does not change according to whether the thing

---

[9] Capital One's Arbitration Provision states that "the validity and enforcement of any class action waiver is a question for a court of competent jurisdiction, not an arbitrator, to decide." Capital One Complaint, Ex. 9 at p. 79.  The American Express Arbitration Provision similarly, albeit more broadly, states: "As used in this Arbitration Provision, the term 'Claim' [that is subject to mandatory arbitration] means any claim, dispute or controversy between you and us arising from … this Agreement **except for the validity, enforceability or scope of this Arbitration Provision or the Agreements**."  American Express Complaint, ¶ 62 (Ex. 19 at p. 143)(emphasis supplied).

[10] Both the Federal and California courts have recognized that the hallmark of American jurisprudence is the constant adaptation of settled principles to previously unrecognized injuries. See, e.g., Metropolitan Water Dist. v. Superior Court, 22 Cal.4th 491, 515, 9 Cal.Rptr.3d 857, 84 P.3d 966 (2004)("common law as an organic element of the law intended to adapt itself to new circumstances"); Richards v. Owens-Illinois, 14 Cal.4th 985, 993 (recognizing the evolution of tortuous injuries).

paid for is an unenforceable mandatory right to arbitration, or non-conforming goods, inferior quality goods, a few "any time" cell phone minutes, transferable college credits, an automobile with defective brakes, a domestically made hammer actually made in China, all of which (except for the unenforceable arbitration right) have been held to create an injury sufficient for standing under Art. III, or the UCL, or the CLRA. So too does it reflect adaptability and recognition of new injuries is a fundamental principle of consumer protection laws, particularly under the UCL: <u>e.g.</u>, the UCL "was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable "'new schemes which the fertility of man's invention would contrive.'" <u>Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.</u>, 20 Cal.4th 163, 181, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1996).

In that Plaintiffs' "claims" and lawsuit were specifically authorized by the Capital One and Chase Arbitration Provisions, respectively, it is as true here as it was in <u>Morta v. Korea Ins. Co.</u>, 840 F.2d 1452 (9th Cir., 1989), that:

> "At root, this case is about the respect the law ought to accord agreements between private parties. Despite recent cynicism, **sanctity of contract remains an important civilizing concept**. *See, e.g.*, C. Fried, *Contract as Promise* 1, 132 (1981) ("these are indeed the laws of freedom"). **It embodies some very important ideas about the nature of human existence and about personal rights and responsibilities: that people have the right, within the scope of what is lawful, to fix their legal relationships by private agreement; that the future is inherently unknowable and that individuals have different visions of what it may bring; that people find it useful to resolve uncertainty by "mak[ing] their own agreement and thus designat[ing] the extent of the peace being purchased,"** *Bernstein*, **290 Md. at 459, 430 A.2d at 606; that courts will respect the agreements people reach and resolve disputes thereunder** according to objective principles that do not favor one class of litigant over another; and that enforcement of these agreements will not be held hostage to delay, uncertainty, the cost of litigation or the generosity of juries…."

<u>Id.</u> at p. 1460 (emphasis supplied). In light of this, the relevant Arbitration Provisions, and the courts' never-ending duty to advance the law, it would appear to mock logic and justice alike for

9
**David Lee, et al. vs. Chase Manhattan Bank U.S.A., N.A. et al.**
**Plaintiffs' Response to Defendants' Second Statement of Recent Decisions Re: Defendants' Motion to Dismiss**

a court to circumvent the basic public policy under girding the sanctity of contracts (particularly in the context of remedial statutes such as the CLRA and UCL) as well as their duty to expand the law by labeling claims such as those brought by Plaintiffs as being "manufactured" and unworthy of judicial consideration of their merits. This differentiates this case from the type at which Proposition 64 was directed or, for that matter, lawsuits in which a levy of Fed.R.Civ.P. 11 sanctions may even be properly contemplated.

Dated:   January 17, 2008

Respectfully submitted,

/s/ M. Hale

Matthew S. Hale
Attorney for Plaintiffs

David Lee, et al. vs. Chase Manhattan Bank U.S.A., N.A. et al.,
Plaintiffs' Response to Defendants' Second Statement of Recent Decisions Re: Defendants' Motion to Dismiss