1  Matthew S. Hale, Esq.
   HALE & ASSOCIATES
2  Calif. State Bar No. 136690
   45 Rivermont Drive
3  Newport News, VA 23601

4  Mailing Address:
   P.O. Box 1951
5  Newport News, VA 23601

6  Telephone No. (757) 596-1143
   E-Mail: matthale@verizon.net
7
   Attorney for Plaintiffs, DAVID J. LEE and
8  DANIEL R. LLOYD

9

10              UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13  DAVID J. LEE and DANIEL R. LLOYD,    )  Case No.: C 07-4732 MJJ
    as individuals and, on behalf of others )
14  similarly situated,                   )  PLAINTIFFS' STATEMENT OF
                                          )  RECENT DECISION IN SUPPORT OF
15                                        )  OPPOSITION TO MOTION TO
            Plaintiffs,                   )  DISMISS
16                                        )
         vs.                              )
17                                        )
                                          )  DATE:  January 29, 2008
18  CHASE MANHATTAN BANK U.S.A.,          )  TIME:  9:30 a.m.
    N.A., a Delaware corporation, CHASE   )  CTRM:  11
19  MANHATTAN BANK U.S.A., N.A. d.b.a.    )         19th Floor
    CHASE BANK U.S.A., N.A., JPMORGAN     )         450 Golden Gate Ave.
20  CHASE & CO., a Delaware corporation;  )         San Francisco, Ca. 94102
    and DOES 1, through 100, inclusive,   )
21                                        )
                                          )
22                                        )
                                          )
23            Defendants.                 )
                                          )
24                                        )

25  _____

26

27

28

David Lee, et al. vs. Chase Manhattan Bank U.S.A., N.A., et al.
Plaintiffs' Statement of Recent Decision in Support of Opposition to Motion to Dismiss

Pursuant to Civil Local Rule 7-2(d), Plaintiffs hereby advise the Court of recent authority bearing on the Defendants' Motion to Dismiss scheduled for hearing on January 29, 2007.

**<u>Recent Decision</u>**

<u>T.C. Jefferson v. Chase Home Finance, et al.</u>, No. C 06-6520, 2007 U.S.Dist.LEXIS 94652 (N.D.Cal., December 14, 2007) (a copy of the decision is appended hereto as Appendix I for the Court's convenience).

Dated: January 17, 2008

Respectfully submitted,



_____
Matthew S. Hale
Attorney for Plaintiffs

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Appendix I

<u>**David Lee, et al. vs. Chase Manhattan Bank U.S.A., N.A., et al.**</u>
**Plaintiffs' Statement of Recent Decision in Support of Opposition to Motion to Dismiss**

2007 U.S. Dist. LEXIS 94652, *

**T.C. JEFFERSON, et al., Plaintiffs, v. CHASE HOME FINANCE, et al., Defendants.**

**NO. C 06-6510 TEH**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**2007 U.S. Dist. LEXIS 94652**

**December 14, 2007, Decided**
**December 14, 2007, Filed**

**COUNSEL:** [*1] For T. C. Jefferson on behalf of himself & all those similarly situated, Plaintiff: James Andrew Quadra, LEAD ATTORNEY, G. Scott Emblidge, Robert Durston Sanford, Moscone Emblidge & Quadra, LLP, San Francisco, CA; Mark T Johnson, LEAD ATTORNEY, James C. Sturdevant, Monique Olivier, The Sturdevant Law Firm, San Francisco, CA; Rebecca Bedwell-Coll, Moscone Emblidge & Quadra, LLP, San Francisco, CA; Samantha W. Zutler, Meyers Nave Riback Silver & Wilson, Oakland, CA.

For Chase Home Finance LLC, Defendant: George Geoffrey Weickhardt, LEAD ATTORNEY, John A. Rowland, Pamela Jeanne Zanger, Ropers Majeski Kohn & Bentley, San Francisco, CA; Danielle J. Szukala, LeAnn Pedersen Pope, Robert Jerald Emanuel, Burke Warren Mackay & Serritella, P.C., Chicago, IL.

**JUDGES:** THELTON E. HENDERSON, JUDGE.

**OPINION BY:** THELTON E. HENDERSON

**OPINION**

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, VACATING HEARING DATE, AND SETTING STATUS CONFERENCE

This matter came before the Court on November 14, 2007 on Defendant's Motion for Summary Judgment. This class action for damages, restitution, and injunctive relief alleges that certain of Defendant Chase Home Finance's practices relating to the way it services mortgages violate California's [*2] Consumer Legal Remedies Act, Cal. Civil Code §§ 1750 *et seq.* ("CLRA"), the False Advertising Act, Cal. Business and Professions Act §§ 17500 *et seq.,* the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"), and constitute conversion under California law. Chase moves for summary judgment.

As discussed more fully in this Order, Plaintiff has significantly reformulated his claims in his opposition to Chase's summary judgment motion. Nonetheless, his theories of liability fall within a broad construction of the First Amended Complaint. The Court will therefore construe Plaintiff's opposition as a request to amend the Complaint to conform to the more specific theories set out in response to this Motion. *Apache Survival Coalition v. United States,* 21 F.3d 895, 910-911 (9th Cir. 1994).

This Order analyzes Plaintiff's claims as so articulated. For reasons set out below, the Court finds that Plaintiff's state law claims are not preempted by the National Bank Act and regulations promulgated thereunder. Moreover,

2007 U.S. Dist. LEXIS 94652, *

Chase has not shown it is entitled to summary judgment on any of Plaintiff's causes of action. Accordingly, Chase's motion for summary judgment is DENIED.

## FACTUAL [*3] BACKGROUND

Plaintiff T.C. Jefferson refinanced his Oakland Home in February, 2003. He signed a promissory note ("Note") which described, among other things, the borrower's right to prepay:

> I have the right to make payments of Principal at any time before they are due. ...When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

> I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the prepayment amount, before applying my Prepayment to reduce the Principle amount of the Note. ...

Jefferson Decl. Exh. A, Note P 4. The Deed similarly provided that:

> 2. Application of Payments or Proceeds:

> ... all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. ...

> Any remaining amounts shall be applied first to late charges, [*4] second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note. ... [P] Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

In July, 2003, Defendant Chase Home Finance L.L.C. ("Chase") began servicing Plaintiff's loan.

The payment coupon at the bottom of each monthly statement Plaintiff received from Chase provided:

> Please designate how you want to apply any additional funds. **Undesignated funds first pay outstanding late charges and fees, then principal.** Once paid, additional funds cannot be returned.

Jefferson Decl. Exh. B. (emphasis added).

In December, 2004, Plaintiff called Chase to see how he could make occasional prepayments. The customer service representative told him any prepayment would be used to pay principal, and mentioned no special requirements for payment. Jefferson Decl. P 4. [1] Soon afterward, Plaintiff began making additional monthly prepayments of $ 167.00 per month, using the automatic "bill pay" service of his own bank. He also continued to pay his regular monthly principal and interest.

1  Defendant's objections to those portions of Plaintiff's Declaration describing [*5] statements by Chase's customer service representatives are OVERRULED. The statements are not hearsay because they are not offered for the truth of the

matter asserted. Fed. R. Evid. 801(c); see also Fed. R. Evid. 801(c) Advisory Committee Note (noting that "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay"); *Prudential Property & Cas. Ins. Co. v. Lillard-Roberts,* 2002 U.S. Dist. LEXIS 25542, 2002 WL 31974401, *6 (D.Or. 2002)(party entitled to offer statement that is allegedly misrepresentation on which she relied over hearsay objection because not offered for the truth).

In late January, 2005, Plaintiff received his monthly statement and was surprised to learn that the additional $ 167.00 payment he had made that month was not applied to the principal, but instead had been placed in "suspense." He called Chase customer service to find out why the payment had not been applied to the principal on his loan. The customer representative informed him that he would have to make a formal request in writing that his extra payment be applied to principal.

On January 24, 2005, Plaintiff sent Chase [*6] a letter requesting that his additional payments be applied to the principal:

> ...[I] formally request that Chase Bank apply each individual monthly payment of $ 167 to the principal of loan # [] beginning with the January 2005 payment.
>
> Each $ 167.00 payment will be made in addition to the standard monthly payment and should be applied to the principal of the loan immediately upon receipt.

Jefferson Decl. Exh. D. Chase responded with a letter stating "[w]e have received your request to apply the amount of $ 167.00 each month to the principal balance of your loan. Your account has been noted." *Id.* Exh. E.

Letters notwithstanding, Chase failed to apply subsequent prepayments to the principal of the loan. The next month Plaintiff again received notice that the $ 167.00 had been applied to "suspense." What followed over the next few months was a series of phone calls, letters, requests for information and action, and form-letter responses. [2] Although Chase eventually credited most of Plaintiff's $ 167.00 payments to principal, Plaintiff states that not all of the prepayments have been credited on the date they were received. Plaintiff alleges that Chase continues to apply each of Plaintiff's [*7] $ 167.00 payments to "suspense" rather than to principal.

> 2   The parties dispute precisely what the customer service representatives told Plaintiff when he called. Plaintiff states that early on, several customer service representatives told him they could not apply his prepayments to his principal because they had insufficient staff to do so, or were not able to do so. Jefferson Decl. PP 11 - 12. He claims he received no explanation for why Chase refused to credit his prepayments to principal in a timely manner in response to his multiple letters to Chase.
>
> Chase, on the other hand, maintains that as of March, 2005, customer service representatives told him that his additional payments were not being applied to principal because he was using his own bank's automatic bill payment feature. Contemporaneous notes by the customer service representative note that on March 28, 2005, a Chase employee told Plaintiff the prepayment "cannot be applied, as he pays online w/ his bank, the ch[ec]k sent by bank do[e]sn't mention how it needs to be applied, thus advis[e]d to go in for ACH to sort the prob., but

Case 3:07-cv-04732-MJJ     Document 33     Filed 01/17/2008     Page 7 of 23

Page 4
2007 U.S. Dist. LEXIS 94652, *

h/o do[e]sn't that option, said that had sent in a writt[e]n req[ues]t [*8] to Chase for the same...." Supplemental Declaration of Christina Copeland Exh. B, "Customer Service Notes" at CHF00141. (Plaintiff's objection to the Customer Service Notes is OVER-RULED because the supplemental declaration of Ms. Copeland adequately authenticates the exhibit as a business record). Plaintiff does remember that the representative suggested he use other payment methods. Jefferson Decl. at 93-94, 96:17-23.

Chase asserts that its practice is to apply *additional payments* received after the full monthly payment to principal *only if the payments are specifically designated as principal prepayments.* Christina Copeland, a Chase Vice-President who has worked in the payment processing department for nine years, explained that if the borrower's loan is current, and Chase receives extra funds in the same check as the regular monthly payment, Chase automatically applies the extra funds directly to prepayment of principal. If, however, Chase receives undesignated funds after the borrower has made a regular monthly payment, Chase places the funds in "suspense," and requests the borrower how those funds should be applied in the next monthly statement (e.g., to the following month's payment, [*9] to principal, to unpaid fees, or to escrow).

Chase explains it adopted this practice because many borrowers send in multiple undesignated partial payments each month to make up a regular monthly payment. If Chase were to process partial payments as prepayments of principal, those borrowers might not have sufficient funds to make up a regular mortgage payment at the end of the month, and inappropriately incur a late fee. Copeland Declaration PP 7-8.

Plaintiff filed his First Amended Complaint in May, 2007. The First Cause of Action al-leges violation of the Consumer Legal Remedies Act, Cal. Civil Code § 1750 *et seq.*, specifically, that Chase unlawfully:

> . made representations that its services had sponsorship approval, characteristics or benefits it did not have, in violation of 1770(a)(5);
>
> . advertised goods and services with intent not to sell them as advertised, in violation of § 1770(a)(9);
>
> . made representations that a transaction conferred or involved rights, remedies or obligations which it did not have in violation of § 1770(a)(14).

First Amended Complaint PP 20-22. The Second Cause of Action alleges that Chase violated California's False Advertising Act, Business and Professions Code [*10] § 17500 *et seq.*, by disseminating information about its services that contained untrue or misleading statements which Chase knew or should have known were misleading. FAC P 29. The Third Cause of Action is brought under California's Unfair Competition Law, Business and Professions Code § 17200 *et seq.*, and alleges that Chase engaged in unfair, illegal, and/or fraudulent practices. Id. PP 32-36. The Fourth Cause of Action is one for conversion. *Id.* PP 37-44.

Chase moves for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d

202 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* The court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, [*11] and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Id. at 322-23. However, on an issue for which its opponent will have the burden of proof at trial, the moving party can prevail merely by "pointing out to the District Court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets its initial burden, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial" to defeat the motion. Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250.

## ANALYSIS

### I. Plaintiff's Claims Under State Law

A threshold question is the precise nature of Plaintiff's state law claims. In opposition to summary judgment, Plaintiff argues that his claims stem from Chase's misrepresentations about how it would credit payments. Opposition at 13-18. Specifically, Plaintiff points to Chase's statement in the payment [*12] coupons Plaintiff received every month that "[u]ndesignated funds first pay outstanding late charges and fees, then principal," Jefferson Decl. Exh. B, as the "primary language" on which Plaintiff relies. At the hearing, Plaintiff

also identified the language in the deed of trust setting out the "Application of Payments or Proceeds," and, with respect to Mr. Jefferson's individual claim, the disputed telephone statements of customer service representatives as unlawful misrepresentations. Reporter's Transcript of November 14, 2007 Hearing ("Hearing RT") at 36, 42-43, 45.

Chase contends this is a complete reinvention of Plaintiff's claims -- that his First Amended Complaint alleged that Chase's practice of holding payments in suspense rather than immediately applying them to the loan principal was unlawful under state consumer protection laws, and any misrepresentation claims were limited, at most, to the language in the mortgage note allowing borrowers to make prepayments to principal without penalty. Chase protests that Plaintiff should not be permitted to allege new facts and theories at this stage to escape summary judgment.

Plaintiff is not alleging an entirely new theory, distinct [*13] from what he alleged in the First Amended Complaint and articulated in discovery. The Complaint certainly intimated that Chase's substantive failure to apply payments to Plaintiff's account promptly was unlawful. *See, e.g.,* FAC PP 3, 11, 15(b) (common question of law is whether it was lawful for Chase "to fail to promptly apply prepayments to its consumers' mortgage accounts"). But it also clearly alleged that Chase's *misrepresentations* were unlawful. For example, Plaintiff alleged that "DEFENDANTS' mortgage notes and other documents relating to these mortgages specifically include provisions allowing California consumers to make such prepayments without penalty, and/or provisions that such payments will be applied to the account principal or unpaid interest." FAC P 10. The First Cause of Action alleges that Chase's acts were "intended to result in DEFENDANTS making representations that their services had ... characteristics or benefits that they did not have," advertised goods and services with the

intent not to sell them as advertised, and made representations that "a transaction conferred or involved rights, remedies or obligations" that it did not have or involve, in violation of [*14] the CLRA. FAC PP 20-22. The Second Cause of Action explicitly alleges deceptive advertising. The UCL claim generally alleges that the above was unlawful, deceptive, illegal, and/or fraudulent. In sum, the First Amended Complaint heavily emphasized misrepresentation as a basis for the claims.

Plaintiff did not previously identify the payment coupon statement as an unlawful misrepresentation. The Complaint does not mention it. The most specific cause of action alleges only that the "untrue and/or misleading statements and misrepresentations made by these DEFENDANTS" included "words and images disseminated to the general public" and "clauses in mortgage notes and deeds of trust" that stated or implied consumers could make prepayments without penalty, and that such payments would be promptly applied to the consumers' account principals or unpaid interest. FAC P 29(a), (b).

Nor did Plaintiff specifically identify the payment coupon statement during his deposition:

> Q: Do you feel like Chase made misrepresentations to you?
>
> A: Yes.
>
> Q: And can you tell me what those misrepresentations were?
>
> A: Suggesting that I could make prepayment on my loan without penalty.
>
> Q: Any other misrepresentations?
>
> A: Suggesting [*15] that -- they contended to provide quality customer service, when they failed

to respond to multiple written requests for information.

> Q: The first misrepresentation, was that made to you in writing, or orally?
>
> A: You mean, penalty for making prepayments; is that what you are talking about?
>
> Q: Well, I don't want to recharacterize that portion of your testimony, but I think what you said is that you could make prepayments without penalty.
>
> A: Yes.
>
> Q: Does that accurately reflect what you said?
>
> A: Yes.
>
> Q: Was that made to you in writing or orally?
>
> A: The loan contract states there would be no prepayment penalty.

Reporter's Transcript of Deposition of T.C. Jefferson, 4/26/07 ("Jefferson Depo."), 130:28-131:23. While Plaintiff's testimony is vague, he appears to be referring to the loan contract itself. Later, however, Plaintiff stated: "[t]hey represented to me that they would credit my prepayment mortgage payments properly. They have consistently failed to do that." *Id.* at 140:11-13.

Numerous courts -- including this one -- have recited that a plaintiff cannot raise a new theory in opposition to summary judgment. *See, e.g., Patmont Motor Werks, Inc. v. Gateway Marine, Inc.,* 1997 U.S. Dist. LEXIS 20877, 1997 WL 811770, *5 (N.D. Cal 1997)(Henderson, [*16] J.)(plaintiff cannot rely on new theory of what acts breached a contract to survive a summary judgment motion).

2007 U.S. Dist. LEXIS 94652, *

A more accurate statement of the law, however, is that a court has discretion to refuse to allow a new theory in opposition to summary judgment. The leading case in the Ninth Circuit, *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1291-92 (9th Cir. 2000), held only that the district court did not err when it refused to entertain new theory of liability raised for first time at summary judgment stage. *See also In re Stratosphere Corp. Securities Litigation,* 66 F.Supp.2d 1182, 1201 (D.Nev. 1999), *citing Apache Survival Coalition v. United States,* 21 F.3d 895, 910 (9th Cir. 1994)(when new issues or evidence supporting a legal theory outside scope of complaint are introduced in opposition to summary judgment, district court should construe matter as request to amend pleadings).

Courts regularly refuse to allow new theories in opposition to summary judgment where the defendant would suffer prejudice. In *Coleman,* 232 F.3d at 1292, for example, the Ninth Circuit affirmed the district court's refusal to allow a plaintiff who alleged disparate *treatment* age discrimination in the complaint [*17] to argue a disparate *impact* theory for the first time on summary judgment. The court noted that the new theory was asserted after the close of discovery, involved different burdens and defenses and would require defendant to develop "entirely different defenses." The plaintiffs were not permitted to amend their complaint because the pretrial order deadline for amendments had passed, and they had not shown good cause for allowing amendment under Rule 16(b). *Id.* at 1294-95. Another court refused to allow new theories where "[d]iscovery ended months ago; the trial is only two months away. Allowing new theories of liability at this late stage of litigation would prejudice defendants." *Jimmie's Limousine Service, Inc. v. City of Oakland,* 2005 U.S. Dist. LEXIS 27275, 2005 WL 2000947, *5 (N.D.Cal. 2005). Courts also refuse to allow new theories where doing so would deprive the defendant the right to conduct discovery on the claim or to make pretrial motions regarding the

theory of liability. *Harry A. v. Duncan,* 351 F.Supp.2d 1060, 1067 (D.Mont. 2005).

One court persuasively explained why plaintiffs might be allowed to raise new theories where there is no prejudice to the defendant.

[Cases] distinguish between raising an [*18] entirely new claim and refining an existing theory. [*Hang On, Inc. v. City of Arlington,* 65 F.3d 1248, 1255 (5th Cir. 1995)]. Additionally, even where plaintiffs shift gears and set forth an entirely new theory in opposition to summary judgment, some prejudice to defendant must be shown for this court to reject a new theory. "As a general rule, a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover, 'provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense on the merits.'" *See Evans v. McDonalds Corp.,* 936 F.2d 1087-88 (10th Cir. 1991) (citing Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 1219 at 194 (1990).

*Lively v. Washington Inventory Service, Inc.,* 2004 U.S. Dist. LEXIS 30556, 2004 WL 3090165, *3 (D.Or. 2004); *see also Smith v. Wells Fargo Bank, N.A.,* 135 Cal.App.4th 1463, 1470, 1484-86, 38 Cal. Rptr. 3d 653 (2005) (court considers in preemption case UCL and CLRA theories articulated for the first time at the summary judgment hearing in the trial court).

Defendants have articulated no genuine prejudice that they would suffer were this Court

Case 3:07-cv-04732-MJJ    Document 33    Filed 01/17/2008    Page 11 of 23

Page 8
2007 U.S. Dist. LEXIS 94652, *

to allow amendment.  [*19] At oral argument, Chase's counsel claimed that "a great deal of time and money [were] spent on this case as pled." But Chase has not described why that time or money has been wasted. Although Chase's counsel states that Plaintiff took several depositions of Chase witnesses pursuant to Fed. R.Civ. Pro. 30(b)(6), Plaintiff's counsel stated that the discovery would have gone forth in any case. Although Chase may have responded to discovery involving how it credits prepayments, as a practical matter, Plaintiff will have to compare Chase's representations not only to its stated policy on prepayments, but to its actual practice. In addition, Chase has conducted little discovery apart from the Plaintiff's deposition, and the discovery period is not yet closed.

Moreover, Chase is at least in part at fault for any uncertainty at this stage. Chase has never argued Plaintiff's claims were insufficiently specific under the heightened pleading standards of Fed. R. Civ. Pro. 9(b).  [*20] Chase also apparently failed to ask pointed questions that could have committed the Plaintiff to a legal theory -- such as a simple contention interrogatory asking Plaintiff to list each misrepresentation on which he relies.

The Court finds that Plaintiff's claims, as reframed, fall within a broad construction of the First Amended Complaint as it now stands. The Court will, however, construe Plaintiff's reframing of its claims as a request to amend the complaint to allege the claims more specifically. Plaintiff is granted leave to amend his Complaint solely to make specific and conform the claims and theories in the Complaint to his claims and theories as articulated in his opposition and at oral argument on this motion.

## II. Preemption By The National Bank Act And OCC Regulations

Chase argues that OCC regulations, which together provide that national banks can make real estate loans without regard to certain state law limitations in various areas, including terms of credit, the schedule for repayment, and servicing and processing of loans, expressly preempt the consumer protection laws on which Plaintiff relies. For the reasons set out below, the Court finds that the Plaintiff's claims,  [*21] as currently framed, are not preempted by federal law.

### A. National Banking Laws and Preemption

Federal law can preempt state law under the Supremacy Clause in three ways. As the Ninth Circuit recently explained:

> Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field.

*Engine Mfrs. Ass'n v. South Coast Air Quality Management Dist.,* 498 F.3d 1031, 1039 (9th Cir. 2007); *see also Kroske v. U.S. Bank Corp.,* 432 F.3d 976, 981 (9th Cir. 2005)(same); *Bank of America v. City and County of San Francisco,* 309 F.3d 551, 558 (9th Cir. 2002)(same).

National banks' business activities are controlled by the National Bank Act ("NBA"), 12 U.S.C. § 21 *et seq.* and regulations promulgated thereunder by the Office of the Comptroller of Currency ("OCC"). *Watters v. Wachovia Bank,* N.A.,    U.S.    , 127 S.Ct. 1559, 1564, 167 L. Ed. 2d 389 (2007). The NBA authorizes banks to engage in real estate lending, 12 U.S.C. § 371, and to exercise "incidental powers" necessary to carry on  [*22] the business of banking. *Id.* § 24 Seventh. It was enacted to "protect national banks against intrusive regulation by the states." *Bank of America,* 309 F.3d at 561.

The National Banking Act does not "preempt the field" of banking. "Federally chartered

banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA." *Watters,* U.S. at , 127 S.Ct. at 1567. State regulation is permissible "when it does not prevent or significantly interfere with the national bank's exercise of its powers." *City and County of San Francisco,* 309 F.3d at 558-59 (citation omitted).

Several OCC regulations therefore set out the preemptive reach of national banking law. Title 12 C.F.R. § 34.4(a) provides that state laws that impair a national bank's ability to exercise its "real estate lending powers" do not apply to national banks, [3] and goes on to state that a national bank may "make real estate loans" without regard to state law limitations regarding, *inter alia,*

> . "The terms of credit, including schedule for repayment of principal and interest, [and] amortization of loans..." § 34.4(a)(4);

> . "Disclosure [*23] and advertising, including laws requiring specific statements, information, or other content to be included in ... billing statements ... or other credit-related documents," § 34.4(a)(9);

> . "Processing, origination, servicing... or participation in mortgages," § 34.4(a)(10);

> . "Disbursements and repayments," § 34.4(a)(11); and

> . "Rates of Interest on Loans." § 34.4(a)(12).

Moreover, 12 C.F.R. § 7.4009 provides that state laws that "obstruct, impair, or condition" a bank's ability to conduct activities authorized under state law do not apply to national banks, and this provision governs "with respect to any national bank power or aspect of a national bank's operations that is not covered by another OCC regulation specifically addressing the applicability of state law." § 7.4009(b), (c)(1).

> 3    The preemptive reach of the NBA also extends to "operating subsidiaries" of national banks, such as Chase. *Watters,* U.S. at , 127 S.Ct. at 1572. Chase produced ample evidence, such as the Secretary of JPMorgan Chase Bank's certification that Chase is a subsidiary and an OCC list of National Bank Operating Subsidiaries, which show that it is an operating subsidiary of JPMorgan Chase Bank, N.A, a national [*24] bank supervised by the OCC. *See* Supplemental Declaration of Lauren Harris and exhibits thereto.

Chase argues that 12 C.F.R. §§ 7.4009 and 34.4 preempt Plaintiff's state law claims. Although Plaintiff argues that only Congress, not regulations, can expressly preempt state law, OCC regulations can clearly have preemptive effect. In general, "[f]ederal regulations have no less pre-emptive effect than federal statutes," *Fidelity Federal Sav. and Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S. Ct. 3014, 73 L. Ed. 2d 664 (1982). The Ninth Circuit has held that the OCC has "authority to displace contrary state regulation where the Bank Act itself preempts contrary state regulation of national banks," *Wells Fargo Bank N.A. v. Boutris,* 419 F.3d 949, 962 (9th Cir. 2005); *see also Rose v. Chase Manhattan Bank USA, N.A.,* 396 F.Supp.2d 1116 (C.D. Cal. 2005)(finding OCC regulations preempt certain state consumer protection laws); *Silvas v. E*Trade Mortgage Corp.,* 421 F.Supp.2d 1315, 1319 (S.D. Cal. 2006)(finding analogous regulations under the parallel regulation under Home Owners Loan Act ("HOLA"), 12 U.S.C. § 1461 et seq., expressly preempt laws in enumerated categories); *Gibson v. World Savings and Loan Association,* 103 Cal.App.4th 1291, 1300-1301, 128 Cal. Rptr. 2d 19 (2002)(same).

[*25] The NBA itself sets out procedures the OCC must follow to issue a rule concluding that "federal law preempts the application to a national bank of any State law regarding ... consumer protection [or] fair lending...." 12 U.S.C. § 43(a).

Thus, state laws are preempted by the OCC regulations if they are either expressly preempted, or if they conflict with federal law, that is, where

"compliance with both federal and state regulations is a physical impossibility," *Florida Lime and Avocado Growers, Inc. v. Paul,* 373 U.S.132, 142-43, 83 S. Ct. 1210, 10 L. Ed. 2d 248 (1963), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."' *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S. Ct. 399, 85 L. Ed. 581 (1941).

*Bank of America,* 309 F.3d at 558. With respect to 12 C.F.R. §§ 7.4009 and 34.4, the two are indistinguishable, as both regulations expressly preempt state laws that "obstruct, impair, or condition" a bank's ability to exercise its real estate lending powers - a formulation explicitly intended to be "consistent with the various formulations" of "the conflicts standard" articulated by the Supreme Court. "Bank Activities and Operations; Real Estate Lending and Appraisals," 69 Fed. Reg. 1904-1, 1910 (January 13, 2004)(citing [*26] *Hines v. Davidowitz,* 312 U. S. 52, 67, 61 S. Ct. 399, 85 L. Ed. 581 (1941) and *Barnett Bank of Marion County v. Nelson,* 517 U. S. 25, 33-34, 116 S. Ct. 1103, 134 L. Ed. 2d 237 (1996); *see also Rose v. Chase Manhattan Bank USA, N.A.,* 396 F.Supp.2d at 1121-23 (analyzing 12 C.F.R. § 7.4008 (the counterpart to § 34.4 for non-real-estate lending, promulgated together with §§ 7.4009 and 34.4), determining it lists what

types of state laws "obstruct, impair, or condition" a bank's ability to act, and finding that the regulation expressly preempts a state law requiring certain disclosures).

No presumption against preemption applies. Where Congress legislates "in a field which the States have traditionally occupied," the court starts with the assumption that "the historic police powers" of the state are not to be superseded. *U.S. v. Locke,* 529 U.S. 89, 107-108, 120 S. Ct. 1135, 146 L. Ed. 2d 69 (2000), *quoting Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S. Ct. 1146, 91 L. Ed. 1447 (1947). This creates a presumption against federal preemption in areas of "traditional state regulation." *Bates v. Dow Agrosciences L.L.C.,* 544 U.S. 431, 449, 125 S. Ct. 1788, 161 L. Ed. 2d 687 (2005). Consumer protection is often considered an area traditionally regulated by the states pursuant to their historic police powers. *See, e.g., California v. ARC America Corp.,* 490 U.S. 93, 101, 109 S. Ct. 1661, 104 L. Ed. 2d 86 (1989)(remedies [*27] for unfair business practices); *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 146, 83 S. Ct. 1210, 10 L. Ed. 2d 248 (1963)(regulations designed to prevent deception of consumers within historic police powers); *Gibson,* 103 Cal.App.4th at 1300 ("states' historic police powers include the regulation of consumer protection").

However, the presumption does *not* apply when the state regulates in an area where there is history of significant federal presence in the field -- such as national banking. *Boutris,* 419 F.3d at 956; *Bank of America,* 309 F.3d at 558.

Relying on the Ninth Circuit's opinion in *Kroske,* 432 F.3d at 981, Plaintiff argues that there is an exception to this exception when the state law is enacted pursuant to the state's historic police powers. But Plaintiffs' convoluted reading of *Kroske* is circular -- there is a presumption against preemption if historic police powers are involved, unless there is a significant federal regulatory presence so that there is

no presumption, unless historic police powers are involved so that there is a presumption. This Court follows *Boutris,* and district courts since *Kroske,* in holding that the presumption against preemption does not apply in the area of federal [*28] banking. *See Augustine v. FIA Card Services, N.A.,* 485 F.Supp.2d 1172, 1175 (E.D.Cal. 2007)(presumption against preemption not triggered in area of significant federal presence, including national banking); *Montgomery v. Bank of America Corp.*, 515 F. Supp. 2d 1106, 2007 WL 2907324 *6 (C.D. Cal. Sept. 24, 2007)(finding that "from the days of *M'Culloch v. Maryland,*" the field of banking is an area where the presumption does not operate); *Silvas v. E*Trade Mortgage Corp.,* 421 F.Supp.2d at 1318 (no presumption against preemption when state law regulates banking).

## B. Plaintiff's State Law Causes of Action Are Not Preempted

Chase argues that Plaintiff's state law claims are preempted because they are either expressly preempted by or conflict with the provisions of the NBA and 12 C.F.R. §§ 7.4009 and 34.4(a) which provide that banks may make real estate loans without state law limitations regarding terms of credit, disclosure and advertising, processing and servicing of mortgages, repayments, and rates of interest on loans. 12 C.F.R. § 34.4(a)(4), (9), (10), (11), and (12).

But Plaintiff asserts only that Chase made misrepresentations about how it would apply prepayments, in violation of the CLRA [*29] and the False Advertising Act, and therefore the UCL. [4] The Court holds that such laws of general application, which merely require all businesses (including banks) to refrain from misrepresentations and abide by contracts and representations to customers do not impair a bank's ability to exercise its lending powers. They only "incidentally affect" the exercise of a Bank's powers, do not fall into the enumerated

categories of § 34.4(a), and are therefore not preempted.

> 4    The UCL "borrows" violations of other laws, and makes them independently actionable as unfair business practices. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th 163, 180, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999).

California courts have long held that consumer protection laws of general application are not preempted by federal banking laws. In *Gibson v. World Savings and Loan Association, supra,* for example, the plaintiff's UCL claims alleged that the amount a savings and loan charged for certain loan insurance was too high because it included a charge for administrative services, in violation of the deeds of trust. It also alleged that the lending institution falsely represented that the insurance premiums it charged to [*30] plaintiffs were equal to its cost for the premiums -- both of which principally concerned the violation of contractual duties. 103 Cal.App.4th at 1294-95. The defendant lending institution argued that the claims were preempted by the HOLA and an Office of Thrift Supervision ("OTS") regulation closely analogous to 12 C.F.R. § 34.4 (12 C.F.R. § 560.2). The Court of Appeal refused to find that the UCL claims were preempted.

The Court first held that the claims were not preempted under the express preemption analysis set out in *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 523-24, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992). It examined the language of the preemptive regulation and each of plaintiff's state claims and inquired whether "the legal duty that is the predicate of the claims constitutes a requirement or prohibition of the sort that federal law expressly preempts." *Gibson,* 103 Cal.App.4th at 1301. The Court found that plaintiff's claims that the lender violated the terms of the deeds of trust and misrepresented the insurance were

predicated on the duties of a contracting party to comply with its contractual obligations and to act reasonably to mitigate its damages in the event of a breach by the other party, on the [*31] duty not to misrepresent material facts, and on the duty to refrain from unfair or deceptive business practices.

Those predicate duties are not requirements or prohibitions of the sort that section 560.2 preempts. That section preempts (1) state laws that (2) either purport to regulate federal savings associations or otherwise materially affect their credit activities. The predicate duties underlying the plaintiffs' claims do not meet that description.

The plaintiffs' principal complaint concerns the violation of contractual duties. ... A stated intent to preempt requirements or prohibitions imposed by state law does not reasonably extend to those voluntarily assumed in a contract.

Moreover, none of the predicate duties are directed toward federal savings associations. Instead, the duties on which the plaintiffs' claims are predicated govern, not simply the lending business, but anyone engaged in any business and anyone contracting with anyone else. On their face, they do not purport to regulate federal savings associations and are not specifically directed toward them. Nor is there any evidence that they were designed to regulate federal savings associations more than any other type of [*32] business, or

that in practice they have a disproportionate impact on lending institutions. Any effect they have on the lending activities of a federal savings association is incidental rather than material.

*Gibson,* 103 Cal.App.4th at 1301-02. Nor were the UCL claims preempted under the agency's formula set out in the final rule promulgating the regulation. The types of laws Plaintiff sought to enforce were not the types listed in § 560.2(b) (which parallels the list enumerated in § 34.4(a)). Instead, the plaintiffs sought to enforce "a general proscription of unfair business practices." 103 Cal.App.4th at 1303. Even though the consumer protection laws affected the lending business, just as they affect all businesses, they were "general contract and commercial laws that only incidentally affect lending operations." *Id.* They were not designed to regulate lending, nor did they have a disproportionate or other substantial effect on lending; to the contrary, they were "part of the legal infrastructure that undergird[s] all contractual commercial transactions." *Id.* at 1304. Accordingly, they were not preempted.

*Fenning v. Glenfed, Inc.,* 40 Cal.App. 4th 1285, 47 Cal. Rptr. 2d 715 (1995) used the same analysis. There, [*33] plaintiff alleged that a brokerage engaged in fraud, misrepresentation, and deceptive advertising by intentionally creating the impression it was part of a bank. The claims were not preempted:

The Bank's argument that, by permitting fraud and unfair trade practices suits, the state is regulating the Bank's conduct, is off the mark. Plaintiffs' ability to sue the Bank for fraud does not interfere with what the Bank may do, that is, how it may conduct its operations; it simply insists that the Bank cannot misrepresent how it operates,

or employ fraudulent methods in its operations. Put another way, the state cannot dictate to the Bank how it can or cannot operate, but it can insist that, however the Bank chooses to operate, it do so free from fraud and other deceptive practices.

*Id.* at 1299.

Although these cases both involved preemption under the HOLA (which has arguably broader preemptive effect, because its regulations provide that OTS "occupies the entire field of lending regulation for federal savings associations," 12 C.F.R. § 560.2(a)), their reasoning applies here. Moreover, a third California case, *Smith v. Wells Fargo Bank, N.A.,* 135 Cal.App.4th 1463, 38 Cal. Rptr. 3d 653 (2005) applied the same logic [*34] to an OCC regulation. The Court of Appeal held that the NBA and an OCC regulation did not preempt a UCL cause of action "based on the predicate act of a systematic breach of its contractual disclosure obligations," because "enforcement of a contractual obligation under a state's general laws on contracts only incidentally affects, at most, a national bank's" powers. *Id.* at 1484.

At least one federal Court has intimated it found the reasoning of *Gilbert, Fenning,* and *Smith* persuasive. In *Silvas v. E* Trade Mortgage Corporation, supra,* plaintiffs alleged the defendant lender did not refund a certain fee to plaintiffs, even though the federal Truth in Lending Act ("TILA") required them to do so. Rather than suing under the TILA, plaintiffs alleged the TILA violations as predicate acts supporting clauses of action under the UCL and CLRA, claiming that the lender had misrepresented the plaintiff's legal rights, and failed to disclose their right to a refund of the fee. 421 F. Supp.2d at 1317.

Plaintiffs argued that the UCL and CLRA claims should not be preempted by the HOLA

because they did not impose any substantive lending requirements on the defendant, but to simply enforced pre-existing [*35] federal requirements. *Id.* at 1318. The Court disagreed, finding that the TILA itself had express regulations on the subject (that the fee must be refunded), and that it had its own remedies. *Id.* at 1319-20. Plaintiffs could not use state law to add an additional remedy for the TILA violation where federal regulations explicitly preempted the field. *Id.* at 1320, citing 12 C.F.R. § 560.2.

In so doing, the *Silva* court explicitly distinguished *Gibson* and *Fenning, supra.* It explained that the UCL claims in those cases were not preempted because they "alleged predicate acts that were violations of the general legal duties with which every business must comply." *Id.* at 1320. But in *Silva,* the Court explained, the UCL claims involved duties under TILA which were specific to defendant's lending activities, not general legal duties. *Id.*

This preemption analysis is wholly consistent with the "savings clause" in the very OCC preemption regulation at issue here. That clause provides that state laws on contracts and torts are not inconsistent with the real estate lending powers of national banks, and provides that such state laws apply to national banks "to the extent that they only incidentally affect [*36] the exercise of national banks' real estate lending powers," 12 C.F.R. § 34.4(b).

The core of each of Plaintiff's causes of action is the claim that Chase misrepresented how it would credit prepayments to Plaintiff's account. Plaintiff also contends that Chase's systematic breach of the promises about how it would credit prepayments is an unfair business practice under the UCL. All these claims are analogous to those considered in *Gilbert, Fenning,* and *Smith.* Plaintiff does not claim that California consumer protection laws require Chase to service or process loans, include specific content in its disclosures, or handle re-

payment of loans in any particular manner - requirements that would be preempted. *See* 12 C.F.R. § 34.4(a). Instead Plaintiff claims that the laws require Chase to refrain from misrepresenting the manner in which it *does* service loans. The core issue in this case will be not whether or when Chase is permitted to place payments in suspense accounts, but whether Chase misrepresented to customers what it would do with their payments.

The duty to refrain from misrepresentation falls on all businesses. It does not target or regulate banking or lending, and it only incidentally [*37] affects the exercise of banks' real estate lending powers. Chase has not articulated any way that enforcing state laws prohibiting misrepresentation to consumers would interfere with a bank's nationwide operation or "obstruct, impair or condition" its ability to engage in real estate lending any more than those laws impair the operation of any business.

Nearly each case Chase cites is fundamentally distinguishable because it involves state law claims either brought under or based on a substantive state law rule specifically directed at banking or lending activities and institutions. *Johnson v. Chase Manhattan Bank USA, N.A.* F.Supp.2d    , 2007 U.S. Dist. LEXIS 50569, 2007 WL 2033833 *5 -*6 (E.D. Pa. July 11, 2007) involved claims under a Pennsylvania consumer protection statute which prohibited collecting certain non-interest charges, and combining cash loans with home improvement financing. Although the court held that the claims were preempted by 12 C.F.R. § 34.4(a)(4) and (a)(11)(preempting state laws that limit terms of credit and payments due and disbursements and repayments), the state statute at issue placed substantive restrictions on the bank's lending practices. Johnson also asserted a state law misrepresentation [*38] claim under a statute nearly identical to one prong of the CLRA at issue here (Civil Code § 1770(a)(5)). Tellingly, the *Johnson* court did *not* analyze whether the misrepresentation

claim was preempted - and instead analyzed the merits of the claim. 2007 U.S. Dist. LEXIS 50569, [WL] at *6.

Other cases on which Chase relies similarly involve state laws specifically directed at banking or lending. In *Bank of America,* 309 F.3d at 555-56, 562-63, the court held that federal regulations allowing banks to collect non-interest charges preempted a local law governing what ATM fees a bank could charge. In *Wachovia Bank, N.A. v. Burke,* 414 F.3d 305, 310 (2nd Cir. 2005), the court found that § 34.4 preempted state laws which required mortgage lenders to obtain special licenses and maintain certain records. *Mayor of New York v. Council of New York,* 780 N.Y.S.2d 266, 272, 4 Misc.3d 151, 157-58 (N.Y.App.Div. 2004) found that an earlier version of § 34.4 preempted a local ordinance that penalized banks for certain acts the city deemed predatory lending. The recent *Montgomery v. Bank of America*, 515 F. Supp. 2d 1106, 2007 WL 207324 (C.D. Cal. 2007) held 1) that a federal regulation which gives banks discretion to set their non-interest [*39] fees, provided they are arrived at in a certain manner, preempted plaintiffs' UCL claims that fees were too high, and 2) that a federal regulation allowing banks to exercise deposit-taking powers without state law disclosure requirements preempted plaintiffs's UCL claim based on a failure to disclose. 515 F. Supp. 2d 1106, [WL] at *6. In *Rose v. Chase Manhattan Bank USA, supra,* the court held that plaintiff's UCL claims were preempted by a regulation analogous to § 34.4 (12 C.F.R. § 7.4008) -- but the court treated all the UCL claims themselves as predicated on violation of a substantive state law that required specific kinds of disclosures relating to credit card convenience checks. 396 F.Supp.2d at 1122-1123.

Similarly, in *Washington Mutual Bank v. Superior Court,* 95 Cal.App.4th 606, 621, 115 Cal. Rptr. 2d 765 (2002), the California Court of Appeal found that a parallel regulation under HOLA (12 C.F.R. § 560.2) expressly pre-

empted UCL and CLRA claims. However, the UCL and CLRA claims were based on a state law that prohibited interest on mortgages during certain periods, *id.* at 621 n.7 -- again a substantive law directed solely at lending activities. That substantive law fell within one of the enumerated categories of preempted [*40] state law (laws limiting "terms of credit," "deferral and capitalization of interest and adjustments to the interest rate, balance, payment due, or term to maturity," 12 C.F.R. § 560.2(b)(4)). *Id.* at 621.

Chase cites only one case finding a UCL claim that was not based on laws directed at banking or lending preempted. *Martinez v. Wells Fargo Bank,* N.A., 2007 U.S. Dist. LEXIS 27388, 2007 WL 963965 (N.D. Cal. March 30, 2007) held that UCL claims alleging it was an unfair practice to charge more than the actual cost of certain underwriting fees were preempted. 2007 U.S. Dist. LEXIS 27388, [WL] at *2, *8. But, as in *Montgomery,* the *Martinez* court identified specific regulations that created a substantive conflict with the Plaintiff's UCL allegations -- namely, regulations that allow banks to set non-interest charges and fees in a certain manner. 2007 U.S. Dist. LEXIS 27388, [WL] at *7, *citing* 12 C.F.R. § 7.4002(b)(2). Plaintiffs in *Martinez* did not even argue that their fees fell outside of the scope of the federal regulations -- only that the OCC had "expressly endorsed UCL liability" and advised banks they are subject to consumer protection laws.

The Court declines to follow *Martinez* in this case. The logic of the decision is not entirely clear. The court reasoned that because [*41] the defendant bank's acts at issue fell within the authority conferred by the National Bank Act, then "to the extent plaintiffs contend that Wells's conduct nevertheless constitutes unfair or deceptive business practices or acts under § 17200, such claims are preempted by the National Bank Act ...." 2007 U.S. Dist. LEXIS 27388, [WL] at * 8. Although the court

explains it does not conclude that § 17200 claims are *per se* preempted, *id.* at fn. 12, a literal reading of the court's opinion inevitably produces that result: any acts that are part of the business of national banking are not actionable under the "unfair" prong of the UCL.

A general claim that a lender's practice is "unfair" -- that it is "immoral, unethical, unscrupulous, or substantially injurious to consumers" and the harm it causes outweighs its utility under the test described in *Smith v. State Farm Mutual Automobile Ins. Co.,* 93 Cal.App.4th 700, 718-19, 113 Cal. Rptr. 2d 399 (2001) -- may well be preempted. It involves an individual analysis of the lender's acts, untethered to any rule of general application (such as a prohibition on misrepresentation to consumers). But Plaintiff does not make such a claim. As set out in his opposition to summary judgment and at the hearing, [*42] Plaintiff's UCL claims are solely that Chase's acts were "unlawful" under the CLRA and Bus. & Professions Code 17500 *et seq.*, (and *Martinez* itself distinguished such claims, 2007 U.S. Dist. LEXIS 27388, 2007 WL 963965 at *8 n.11) and "unfair" insofar as they constitute a systematic breach of contract. As set out above, these claims involve obligations that apply to all businesses and only incidentally affect banking and lending.

Accordingly, the Court finds that Plaintiff's state law causes of action are not preempted by the NBA or OCC regulations.

## III. First Cause of Action Under the Consumer Legal Remedies Act

Plaintiff's First Cause of Action alleges Chase violated the Consumer Legal Remedies Act, Cal. Civil Code § 1750 *et seq.* Specifically, Plaintiff claims that by making representations 1) in each monthly loan statement coupon that "[u]ndesignated funds first pay outstanding late charges and fees then principal," 2) in the Deed about the application of payments, and 3) (as to Plaintiff only) through cus-

tomer service representatives about how pre-payments would be credited, Chase represented that its services had sponsorship approval, characteristics or benefits it did not have, in violation of § 1770(a)(5); advertised [*43] goods and services with intent not to sell them as advertised, in violation of § 1770(a)(9); and represented that a transaction conferred or involved rights, remedies or obligations which it did not have, in violation of § 1770(a)(14).

Representations are actionable under the CLRA if they are "likely to deceive" a reasonable consumer. *Consumer Advocates v. Echostar Satellite Corp.,* 113 Cal.App.4th 1351, 1358-60, 8 Cal. Rptr. 3d 22 (2003). "The term 'likely' means probable, not just possible." *Williams v. Gerber Prods. Co.,* 439 F.Supp.2d 1112, 1115 (S.C. Cal. 2006). The Court can decide whether a statement is a factual misrepresentation likely to deceive, *see, e.g., Stickrath v. Globalstar, Inc.,* 2007 U.S. Dist. LEXIS 73763, 2007 WL 2790727 (N.D. Cal. September 27, 2005)(determining that certain phrases are actionable and others are not), and can do so as a matter of law. *Shvarts v. Budget Group, Inc.,* 81 Cal.App.4th 1153, 1160, 97 Cal. Rptr. 2d 722 (2000).

Chase first argues that the CLRA claim has no merit [5] because none of its statements were either misrepresentations or likely to deceive. Chase concedes that its practice is to apply undesignated payments that arrive separately from regular monthly payments to suspense until it hears from the borrower. [*44] See Declaration of Christina Copeland PP 6-8. Nonetheless, Chase claims that the statement in its payment coupons that "[u]ndesignated funds first pay outstanding late charges and fees then principal" is accurate because the phrase "obviously" applies only "to payments made with the coupon" itself, Chase Reply at 8:26-27, and/or when borrowers "are including additional funds with their single monthly mortgage payment check." Hearing RT at 28:13-17.

[5] Chase claims that the Court should dismiss this Cause of Action under Civil Code § 1781(c)(3), which provides for a special "no merit" finding rather than summary judgment proceedings. Chase cites to no federal cases that use this state court procedure. Federal courts have, in fact, granted summary judgment on CLRA claims under Fed. R. Civ. Pro. 56. *See, e.g., Chamberlan v. Ford Motor Co.,* 369 F.Supp.2d 1138 (N.D.Cal. 2005), and even state courts all but ignore it and apply summary judgment standards and procedures. *See Smith v. Wells Fargo Bank, N.A.,* 135 Cal.App.4th at 1474. Accordingly, the Court will analyze this claim under Fed. R. Civ. Pro. 56.

The Court disagrees. Nothing in the payment coupon conditions its promise to apply undesignated [*45] funds to principal, or limits that promise to payments sent in with the payment coupon or together with and in addition to the regular monthly mortgage payment. In fact, as Chase noted at the hearing, Plaintiff testified that he received two mortgage statements with payment coupons per month, Jefferson Depo. at 102:6-11 - so that it is entirely foreseeable that borrowers might send their monthly mortgage payment with one coupon and an undesignated payment with another. No explicit statement to the customer describes the policy Chase explained in its moving papers of applying only certain undesignated funds to principal. The payment coupon representation that undesignated funds are applied is (as Chase acknowledges) consistent with the Plaintiff's deed of trust, which provides that payments will be applied first to interest, then to principal due, then to escrow items, and "[a]ny remaining amounts shall be applied first to late charges, second to any other amounts due under the Security Instrument, and then to reduce the principal balance of the Note." Jefferson Decl. Exh. A. These representations are unqualified. Nothing supports Chase's interpretation reading conditions and restrictions [*46] into these straight-

forward statements as to how Chase will apply undesignated funds.

Chase next argues that Plaintiff did not allege that he relied on the misrepresentations in the payment coupons (or articulate how he was harmed by relying on them) in his own declaration in opposition to summary judgment, much less the complaint. *See, e.g., Buckland v. Threshold Enterprises, Ltd.,* 155 Cal.App.4th 798, 809-810, 66 Cal. Rptr. 3d 543 (2007), citing Civil Code § 1780(a)(plaintiff must show actual reliance on misrepresentation and harm under CLRA). In fact, Chase argues, Plaintiff could not have been deceived by the misrepresentations, both because the Note itself clearly informed him he would have to designate his payments ("When I make a prepayment, I will tell the Note Holder in writing that I am doing so"), and because customer service representatives repeatedly told him that he would have to designate his payments as principal prepayments in writing, and could not use his bank to send the payments electronically.

Here, Plaintiff's declaration does communicate his reliance, albeit not expressly. Plaintiff's declaration states that each monthly statement included the payment coupon language. Jefferson Declaration [*47] P 3. In December 2004, Plaintiff wanted to start making additional payments, and called Chase to make sure there were no additional requirements. *Id.* P 4-5. The representative told him the prepayment would be used to pay principal upon receipt. *Id.* Plaintiff then sent in an extra payment through his bank's online payment service. *Id.* P 5. Plaintiff states that he continued to pay his regular monthly mortgage statements, and "continued to receive Statements from Chase ...each of which included the statement on detachable payment coupon [sic] as described above." *Id.* P 6. In January 2005, he received the statement that indicated his $ 167 prepayment had been placed in suspense. *Id.* P 7. He called Chase and was told he would have to send in a written request that his payments would be applied to

the principal, "*despite*... the representation in the payment coupons that undesignated funds" would go to principal. *Id.* P 7 (emphasis added). He denies Chase told him his payments would not be credited to principal if he paid through his bank's automatic payment function. Jefferson Decl. P 21.

The Plaintiff's declaration that he continued to send in payments and was told he would have to send a written [*48] request "despite" the payment coupon representation is sufficient to raise a triable issue of fact as to reliance. It is far more than the bare allegation that the defendant had made misrepresentations and the plaintiffs had been harmed in *Stickrath v. Globalstar, Inc.,* 2007 U.S. Dist. LEXIS 73763, 2007 WL 2790727 (September 25, 2007)(Henderson, J.). There, plaintiffs failed to allege they had even read any of the misrepresentations, that the representations were made before they purchased the service, or that they would not have bought the service or paid as much but for the misrepresentations. 2007 U.S. Dist. LEXIS 73763, [WL] *2.

Finally, although the precise nature of the harm plaintiff suffered is not clear, he has at least raised a triable issue of fact as to whether he was divested of the use of funds placed into the suspense account until they were applied to his principal. FAC P 3. [6]

> 6   Although the Court invited the Plaintiff to clarify at the hearing how Chase's misrepresentation caused him to be charged an artificially high principal amount, Plaintiff's counsel did not do so.

## III. Second Cause of Action Under California's False Advertising Act

Plaintiff's Second Cause of Action alleges that Chase violated California's False Advertising [*49] Act, Business and Professions Code § 17500 *et seq.,* by disseminating false or misleading statements about its services. FAC P 29. Plaintiff's opposition brief further specifies

that this Cause of Action refers to the representations made on the payment coupons. None of the reliance or harm issues are present here, because under both the False Advertising Act and the UCL, Plaintiff does not have to show he was actually deceived. "The statute affords protection against the probability or likelihood as well as the actuality of deception or confusion." *McCann v. Lucky Money, Inc.,* 129 Cal.App.4th 1382, 1388, 29 Cal. Rptr. 3d 437 (2005), *quoting Committee on Children's Television, Inc. v. General Foods Corp.,* 35 Cal.3d 197, 211, 197 Cal. Rptr. 783, 673 P.2d 660 (1983). Therefore, "[a]llegations of actual deception, reasonable reliance, and damage are unnecessary." *Buckland,* 155 Cal.App.4th at 810, *quoting Children's Television,* 35 Cal.3d at 211. Moreover, the False Advertising Act prohibits "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Colgan v. Leatherman Tool Group, Inc.* 135 Cal.App.4th 663, 679, 38 Cal. Rptr. 3d 36 (2006). [*50] The "misleading character" of a given representation "appears on applying its words to the facts." *Id., quoting People v. Wahl* 100 P.2d 550, 39 Cal.App.2d Supp. 771, 774 (1940).

Chase argues that its monthly statements to its existing customers are not advertisements or "statements to the public" within the meaning of § 17500, citing to *Tercica, Inc. v. Insmed Inc.,* 2006 U.S. Dist. LEXIS 41804, 2006 WL 1626930, *5, *18-19 (N.D.Cal. 2006). But the *Tercica* court dismissed plaintiff's misrepresentation-based causes of action, including a cause of action under § 17500, on the ground that the alleged statements to potential *investors* were not advertisements; the plaintiff failed to allege that actual or potential consumers heard the representations. Here, in contrast, the representations were made to consumers, in documents likely to induce them to send their money to Chase. Moreover, California courts have construed statements made to individuals about

their loans as "advertising" within the meaning of § 17500. *Smith v. Wells Fargo Bank, N.A.,* 135 Cal.App.4th at 1488 n.22, *citing Chern v. Bank of America,* 15 Cal.3d 866, 875-876, 127 Cal. Rptr. 110, 544 P.2d 1310 (1976)(definition of advertising "sufficiently broad to include false or misleading statements [*51] made to the public by banking institutions in connection with their loans [or deposit accounts]"). Chase has not shown it is entitled to summary judgment on this claim.

## IV. Third Cause of Action Under California's Unfair Competition Law

Plaintiff claims that Chase engaged in unfair, fraudulent, and unlawful practices in violation of California's Unfair Competition Law, Business and Professions Code § 17200 *et seq.* FAC PP 32-36. First, Plaintiff correctly claims that if Chase's misrepresentations violate the CLRA and False Advertising Act, as set out above, they are also "unlawful" under the UCL. *See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th 163, 180, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999)("unlawful" prong of the UCL "borrows violations of other laws and treats them as independently actionable under § 17200 *et seq.*) [7]

> 7    The Court specifically asked, in written questions distributed at the hearing, whether Plaintiff was relying on a breach of contract as a basis for a claim that Chase acted unlawfully under the UCL. However, counsel for Plaintiff clarified that Plaintiff was asserting only a claim that Chase engaged in an unfair business practice by systematically breaching its contracts [*52] with consumers. Hearing RT at 43-44.

Second, Plaintiff claims that the misrepresentations are "fraudulent," because they are likely to deceive the public. *See Committee on Children's Television, Inc.,* 35 Cal.3d at 211. The same standards apply under both the

CLRA and the False Advertising Act to determine if a representation is misleading. *Consumer Advocates v. Echostar Satellite Corp.,* 113 Cal.App.4th at 1360. Under the UCL, even a "perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer" is actionable. *Id.* at 1362. As set out above, the payment coupon is likely to lead a consumer to believe that all undesignated payments after the monthly mortgage payment is made will be applied first to late charges and fees and then to principal.

Finally, Plaintiff alleges that Chase engaged in a "systematic breach" of contract as reflected in the Deed and payment coupon that constitutes an unfair business practice under the UCL. *See, e.g, Smith v. Wells Fargo Bank, N.A.,* 135 Cal.App.4th at 1483 *and cases cited therein* (systematic breach of a standard consumer contract). Chase treats this argument as a typographical error, Reply at 14 n.10, and argues [*53] solely that it did not breach the contract because the Note requires Plaintiff to tell Chase in writing when he is making a prepayment of principal. *See* Jefferson Decl. Exh. A at 4. The Deed and the payment coupon, however, do not require designation. Chase has not shown at this point that it is entitled to summary judgment on this claim.

**IV. Cause of Action for Conversion**

Plaintiff's Fourth Cause of Action is for conversion. FAC PP 37-44. To state a claim for conversion, Plaintiff must show "plaintiff's ownership or right to possession of property; defendant's wrongful act toward or disposition of the property, interfering with plaintiff's possession; and damage to plaintiff." *McKell v. Washington Mut., Inc.,* 142 Cal.App.4th 1457, 1491, 49 Cal. Rptr. 3d 227 (2006).

In its May 3, 2005 Order denying Chase's motion for judgment on the pleadings, the Court found that Plaintiff had not adequately alleged his ownership interest in his additional monthly payments after they had been paid over to Chase. Plaintiff now claims that Chase was bound by its representations to credit the prepayments to Plaintiff's principal balance immediately, and by keeping the funds in suspense, Chase interfered with Plaintiff's possession [*54] of the funds.

Chase does not challenge this allegation of ownership interest directly. Instead, it argues broadly that it was entitled to place Plaintiff's funds in suspense because he failed to inform Chase in writing that his payments should go to principal. However, Plaintiff notified Chase multiple times, in writing, that he wanted his payments of $ 167.00 to be applied to his principal balance. Jefferson Decl. Exhs. D, G, I, K, P and S. Chase points to nothing in the Note that specifies Plaintiff must inform Chase of his intent to make a prepayment in a writing attached to each check. The Court will not, therefore, grant summary judgment on the basis of this argument alone.

**CONCLUSION**

Chase's Motion for Summary Judgment is hereby DENIED. Plaintiff is hereby ordered to file an amended complaint no later than 21 calendar days from the date of this Order. [8] The hearing on Plaintiff's Motion for Class Certification, currently set for January 14, 2008, is hereby VACATED. A Status Conference is hereby set for Monday, February 4, 2008, at 1:30 p.m. Parties are to file a Joint Status Conference Statement no later than January 28, 2008, and should be prepared to discuss ADR options and a [*55] subsequent motion schedule.

---

[8] The Court cautions the Plaintiff that only amendments to conform the complaint to his articulation of his claims in opposition to this motion are permitted. No further amendments or changes other than these will be permitted at any time in the future absent extraordinary circumstances.

2007 U.S. Dist. LEXIS 94652, *

**IT IS SO ORDERED.**

Dated: December 14, 2007

/s/ Thelton E. Henderson

THELTON E. HENDERSON, JUDGE

UNITED STATES DISTRICT COURT